232 F.R.D. 399

<u>Motions, Pleadings and Filings</u>

United States District Court,
M.D. Florida,
Orlando Division.
Gilbert POLO, Plaintiff,
v.
GOODINGS SUPERMARKETS, INC., E*Trade Access, Inc., Defendants.
No. 6:03CV134ORL-28JGG.
March 16, 2004.

**Background:** Customer brought putative class action seeking money damages and injunctive relief against operators of automated teller machine (ATM) for failure to disclose actual amount of ATM fee in violation of Electronic Funds Transfer Act. Customer moved for certification of single opt-out class.

**Holdings:** The District Court, <u>Antoon</u>, J., adopted report and recommendation of United States Magistrate Judge Glazebrook, J., which held that:

<u>(1)</u> proposed class did not satisfy commonality requirement for certification;

<u>(2)</u> numerosity requirement was satisfied, assuming class members were identifiable;

<u>(3)</u> typicality requirement was not satisfied;

<u>(4)</u> adequacy of representation requirement was not satisfied due to putative class representative's potential conflicts of interest with some members of class;

<u>(5)</u> any common questions did not predominate over individual questions about detrimental reliance on posted fees; and

<u>(6)</u> putative representative would not be granted leave to amend class definition.

Report and Recommendation adopted and confirmed; motion to certify class denied.

West Headnotes

[1]  KeyCite Citing References for this Headnote

<u>170A</u> Federal Civil Procedure
    <u>170AII</u> Parties
    <u>170AII(D)</u> Class Actions
      <u>170AII(D)1</u> In General
        <u>170Ak165</u> k. Common Interest in Subject Matter, Questions and Relief; Damages Issues.  <u>Most Cited Cases</u>

To satisfy the commonality requirement, a class action must involve issues that are susceptible to class-wide proof. <u>Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A</u> .

[2]  KeyCite Citing References for this Headnote

<u>170A</u> Federal Civil Procedure
    <u>170AII</u> Parties
    <u>170AII(D)</u> Class Actions
      <u>170AII(D)2</u> Proceedings
        <u>170Ak174</u> k. Consideration of Merits. <u>Most Cited Cases</u>

When considering whether to certify a class pre-trial, the district court has no authority to conduct a preliminary inquiry into the merits of a suit. <u>Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A</u> .

[3] ☑ KeyCite Citing References for this Headnote

⇐ 170A Federal Civil Procedure
  ⇐ 170AII Parties
   ⇐ 170AII(D) Class Actions
    ⇐ 170AII(D)2 Proceedings
     ⇐ 170Ak172 k. Evidence; Pleadings and Supplementary Material.  Most Cited Cases

    Plaintiff bears the burden of showing that commonality requirement for class certification has been satisfied. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A .

[4] ☑ KeyCite Citing References for this Headnote

⇐ 170A Federal Civil Procedure
  ⇐ 170AII Parties
   ⇐ 170AII(D) Class Actions
    ⇐ 170AII(D)3 Particular Classes Represented
     ⇐ 170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors.  Most Cited Cases

    Commonality requirement was not satisfied to certify class of all customers who used one of 15,000 automated teller machines (ATMs), and who paid fee that differed from posted fee disclosures in violation of Electronic Funds Transfer Act (EFTA), absent allegation that operators systematically failed to post proper disclosures at ATMs and showing that any ATM other than one used by putative class representative ever charged fee that was higher than amount disclosed; questions as to whether defendants were EFTA "operators" and whether they violated EFTA were not susceptible to class-wide proof, as demonstration that operator failed to comply with notice requirement at one ATM would not dispose of issue with respect to consumers at different location. Consumer Credit Protection Act, § 902 et seq., 15 U.S.C.A. § 1693 et seq.; Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

[5] ☑ KeyCite Citing References for this Headnote

⇐ 170A Federal Civil Procedure
  ⇐ 170AII Parties
   ⇐ 170AII(D) Class Actions
    ⇐ 170AII(D)3 Particular Classes Represented
     ⇐ 170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors.  Most Cited Cases

    Numerosity requirement would be satisfied to certify class of all customers who used one of 15,000 automated teller machines (ATMs), and who paid fee that differed from posted fee disclosures in violation of Electronic Funds Transfer Act (EFTA), as their joinder would be impracticable, assuming those customers could be identified from hundreds of thousands of customers who used machines. Consumer Credit Protection Act, § 902 et seq., 15 U.S.C.A. § 1693 et seq.; Fed.Rules Civ.Proc.Rule 23(a)(1), 28 U.S.C.A.

[6] ☑ KeyCite Citing References for this Headnote

⇐ 170A Federal Civil Procedure
  ⇐ 170AII Parties
   ⇐ 170AII(D) Class Actions
    ⇐ 170AII(D)3 Particular Classes Represented
     ⇐ 170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors.  Most Cited Cases

    Typicality requirement was not satisfied for certification of class of customers who used one of 15,000 automated teller machines (ATM) owned by the 8,000 different merchants and were charged fee higher than posted fee in violation of Electronic Funds Transfer Act (EFTA); absent evidence that

customers other than putative class representative had been overcharged or showing of pattern or practice common to machines, claims or defenses applicable to representative's claim were not shown to be typical of those of rest of class. Consumer Credit Protection Act, § 902 et seq., 15 U.S.C.A. § 1693 et seq.; Fed.Rules Civ.Proc.Rule 23(a)(3), 28 U.S.C.A .

[7] ☑ KeyCite Citing References for this Headnote

☞170A Federal Civil Procedure
  ☞170AII Parties
   ☞170AII(D) Class Actions
    ☞170AII(D)3 Particular Classes Represented
     ☞170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors.  Most Cited Cases

   Adequacy of representation requirement for certification of putative class of customers who used one of 15,000 automated teller machines (ATM) and were not charged posted fee was not satisfied, due to potential conflicts of interest of putative class representative, whose interests would differ from those members of class who were undercharged, rather than overcharged, and whose circumstances likely differed from those of customers who used ATMs other than one he used. Fed.Rules Civ.Proc.Rule 23(a), 28 U.S.C.A .

[8] ☑ KeyCite Citing References for this Headnote

☞170A Federal Civil Procedure
  ☞170AII Parties
   ☞170AII(D) Class Actions
    ☞170AII(D)1 In General
     ☞170Ak165 k. Common Interest in Subject Matter, Questions and Relief; Damages Issues.  Most Cited Cases

   To satisfy the predominance requirement, the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.  Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A .

[9] ☑ KeyCite Citing References for this Headnote

☞170A Federal Civil Procedure
  ☞170AII Parties
   ☞170AII(D) Class Actions
    ☞170AII(D)3 Particular Classes Represented
     ☞170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors.  Most Cited Cases

   Any common questions of law or fact did not predominate over individual questions as required to certify class of customers who were not charged posted fee for use of automated teller machines (ATMs) in violation of Electronic Funds Transfer Act (EFTA) due to necessity of showing individual detrimental reliance on posted fee to recover actual compensatory damages, particularly where individual prosecution of claims for statutory damages, costs, and attorney fees might be feasible. Fed.Rules Civ.Proc.Rule 23(b)(3), 28 U.S.C.A .

[10] ☑ KeyCite Citing References for this Headnote

☞170A Federal Civil Procedure
  ☞170AII Parties
   ☞170AII(D) Class Actions
    ☞170AII(D)3 Particular Classes Represented
     ☞170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors.  Most Cited Cases

☞170A Federal Civil Procedure ☑ KeyCite Citing References for this Headnote

◁═170AII Parties
  ◁═170AII(J) Defects, Objections and Amendments
    ◁═170Ak392 k. Amendments. Most Cited Cases

Leave to amend complaint would not be granted to substitute revised class definition; new proposed definition was also overly broad, plaintiff had adequate time to discover relevant facts and submit proposed class definition, and court had no obligation to sua sponte craft new class. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**\*401** Brian Pincket, Esq., Milam & Howard, P.A., Jacksonville, FL, Stacy Bardo, Esq., Consumer Advocacy Center, P.C., Chicago, IL, Lance Raphael, Esq., Consumer Advocacy Center, P.C., Chicago, IL, for plaintiff.

David A. Vogel, Esq., Arnold & Porter, McLean, VA, for defendants.

## ORDER

ANTOON, District Judge.
    This cause comes before the Court on Plaintiff's Motion for Class Certification (Doc. 58). The United States Magistrate Judge has submitted a Report an Recommendation (Doc. 94) recommending that the motion be denied.

    Specifically, the Report concludes that although the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1) is satisfied, the remaining requirements of Rule 23(a)-commonality, typicality, and adequacy of representation-are not met in this case. Additionally, the Report concludes that even if all four elements of Rule 23(a) had been met, the requirements of predominance and superiority in Rule 23(b)(3) are not satisfied in this case either.

    Plaintiff Gilbert Polo has filed an Objection (Doc. 97) to the Report, and Defendants E\*Trade Access, Inc. and Goodings Supermarkets, Inc. have filed Responses (Docs. 99 & 100) to that Objection. After an independent *de novo* review of the record in this matter, and considering the Objection and Responses that have been filed, the Court agrees with the findings and conclusions in the Report and Recommendation.

    In his Objection (Doc. 97), Plaintiff argues that the Report improperly makes a determination of the merits of the case, that the Report's conclusion on commonality is incorrect, and that even if the Court accepts the findings in the Report Plaintiff should be given leave to amend to redefine the proposed class. However, the Court rejects each of these arguments. As aptly stated in the Report:

    Polo does not show that there are fact issues common to all class members. On the contrary, there seem to be hundreds of permutations of possible facts regarding the members of the putative class and the 15,000 ATMs that they used. The ATMs may be owned by E\*Trade; may be owned by Gooding's; may be owned by one of 8,000 merchants other than Gooding's; may be in any state; may be subject to varying site location agreements that affect the parties' rights and obligations; **\*402** may have been purchased or leased pursuant to a sales agreement or rental agreement that affects the parties' rights and obligations; may impose varying transaction fees collected by E\*Trade or by a merchant; may impose varying transaction surcharges collected by E\*Trade or by a merchant; may collect no transaction fees and no transaction surcharges from some consumers under varying circumstances, such as customers of certain banks; may have "overcharged" or "undercharged" the consumer when measured against the posted fee; and my service the customers of financial institutions that do not debit consumer's accounts for ATM fees.

(Doc. 94 at 9-10). The Court agrees with the Report's conclusion that the commonality requirement of Rule 23(a)(2) has not been satisfied, and it is abundantly clear that common questions do not "predominate over any questions affecting only individual members" as required by Rule 23(b)(3). Moreover, the Report does not impermissibly rule on the merits of the cause of action in its consideration of the class certification issues. Finally, as to the issue of amendment, as noted in the

http://web2.westlaw.com/result/documenttext.aspx?sv=Split&servic...

Report "Polo has had adequate time to discover relevant facts," and "has already abandoned one class definition[ ] and substituted a new one after both defendants' briefs had been filed." (Doc. 94 at 16). Thus, Plaintiff has had ample opportunity to submit proposed class definitions, and he may not now again amend that proposal after being permitted to do so even after extensive briefing.

Accordingly, it is **ORDERED** as follows:

1. The Report and Recommendation (Doc. 94, filed February 5, 2004) is **ADOPTED** and **CONFIRMED** and made a part of this Order.

2. Plaintiff's Motion for Class Certification (Doc. 58) is **DENIED**.

## REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

### TO THE UNITED STATES DISTRICT COURT
This cause came on for hearing on January 15, 2004 on the following motion:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION [Docket No. 58]** |
| **FILED:** | **June 9, 2003** |
| **THEREON** it is **RECOMMENDED** that the motion be **DENIED**. | |

### I. THE ISSUES
Plaintiff Gilbert Polo alleges that he withdrew money from his bank account on July 5, 2002 at an automatic teller machine at the Gooding's Supermarket in Lake Buena Vista, Florida. *See* Polo's First Amended Complaint, Docket No. 4 at 3. According to Polo, the ATM screen stated that he would be charged $1.50 for the transaction, but his receipt showed that he actually was charged $2.00. *Id.* Polo claims that defendant Gooding's Supermarkets, Inc. ["Gooding's"] and defendant E*Trade Access, Inc. ["E*Trade"] [FN1] failed to properly disclose the amount of the ATM fee in violation of the Electronic Funds Transfer Act ["EFTA"], 15 U.S.C. § 1693 *et seq.* and its implementing regulations, 12 CFR 205 *et seq.* [commonly referred to as "Reg. E"]. Polo seeks unspecified money damages, injunctive relief, costs, and attorney's fees from Gooding's and E*Trade not only on his own behalf, but also on behalf of at least 15,000 unknown individuals ***403** whom Polo believes may have suffered a similar injury. *Id.* at 4.

FN1. Polo's First Amended Class Action Complaint alleges that E*Trade Access, Inc. owns and operates the ATM that Polo used at the Gooding's store in Lake Buena Vista, and that E*Trade owns and operates similar ATMs across the country, by itself or in conjunction with other partners such as Goodings. Docket No. 4 at 3. At oral argument, however, Polo retreated from his allegation that E*Trade owns the ATM that Polo used at Goodings in Lake Buena Vista, and instead argued that Gooding's and E*Trade were operators who jointly imposed the $2.00 fee. According to E*Trade, E*Trade Access, Inc. provides network services to more than 15,000 ATMs, which ATMs are operated on the premises of approximately $,000 merchants like Gooding's. Docket 77 at 18. Polo initially sued E*Trade Bank as well, but has since dismissed that claim. Docket No. 55.

On June 9, 2004, Polo moved this Court to certify a single opt-out class pursuant to Fed.R.Civ.P. 23(a) and (b)(3) comprising:

> All consumers who were provided host transfer services by Defendants in violation of the disclosure requirements of EFTA (Title 15 U.S.C. § 1693b(d)(3)(B), and its implementing regulation, 12 CFR Part 205.16(c)) during the year preceding the filing of this action.

Docket No. 58, 59 at 4; *see also* 15 U.S.C. § 1693m (g) (requiring that any action under EFTA be brought within one year from the date of the occurrence of the violation). Gooding's and E*Trade filed separate memorands opposing Polo's proposed class. Docket Nos. 76, 77. In an effort to avoid defendants' objections, Polo then substituted the following proposed definition in a reply brief:

> All consumers who, within the time period beginning one year prior to the filing of this action and ending on the date of the certification of this action, were provided host transfer services from an automated teller machine operated by any Defendant, and who were charged a "transaction fee" that was different from one or more of the transaction fee notices that appeared on the outside of the machine.

Reply, Docket No. 87 at 3-4 (filed October 6, 2003). This report and recommendation considers only the revised definition.

At oral argument, Goodings and E*Trade asked this Court to deny class certification because Polo had offered virtually no evidence that his proposed class (as revised) meets the Rule 23 requirements, and because Polo had ignored the factual differences existing among putative class members. *See also* Docket No. 76 at 2; Docket No. 77 at 1. Gooding's concedes that the Lake Buena Vista ATM overcharged unidentified persons in 7,127 transactions, but denies any improper charges at Gooding's two other ATMs. [FN2] Docket No. 76 at 3. Gooding's and E*Trade argue that Polo's unverified contention that he was overcharged $.50 on a single ATM transaction at the Lake Buena Vista Gooding's Supermarket does not support certification of a nationwide class comprising the users of 15,000 ATMs operated by 8,000 merchants. [FN3] Docket No. 76 at 2.

> FN2. Gooding's owns the ATM used by Polo [the "Lake Buena Vista ATM"], as well as two other E*Trade ATMs-one in the International Drive [Orlando, Florida] area, and the other in Celebration, Florida. Docket 28 at 2.

> FN3. Polo contends that he was actually overcharged $2.00 because EFTA prohibits an operator from imposing any fee that does not match the posted fee disclosures.

Specifically, Gooding's and E*Trade argue that 1.) Polo's revised class definition impermissibly requires the court to determine the merits of each user's claim in order to determine class membership; 2.) that individual issues predominate because every potential class member must prove that he detrimentally relied on improper fee disclosures; 3.) that a simple alternative to class action exists in the EFTA dispute resolution process; 4.) that the cost of identifying class members is prohibitive compared to the amount of the claim; and 5.) that the proposed nationwide class is wildly overbroad absent evidence of any EFTA violations outside Lake Buena Vista, Florida. Docket No. 77 at 1-2; Docket No. 76 at 1-3.

Polo's motion for class certification was referred to the undersigned on September 18, 2003. Docket No. 84. The hearing set for October 22, 2003 was continued to January 15, 2004 to accommodate counsel. Oral argument having been held, Polo's motion for class certification [Docket No. 58] is now ripe for decision.

## II. THE LAW

### A. The Electronic Funds Transfer Act

The Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* [hereinafter "EFTA"], governs all varieties of electronic fund transfers, not just those involving ATMs. With regard to ATM transactions,

however, EFTA specifies as follows:

(3) Fee disclosures at automated teller machines

(A) In general

*404 The regulations prescribed under paragraph (1) shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of-

(i) the fact that a fee is imposed by such operator for providing the service; and

(ii) the amount of any such fee.

(B) Notice requirements

(i) On the machine

The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

(ii) On the screen

The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction, except that during the period beginning on November 12, 1999, and ending on December 31, 2004, this clause shall not apply to any automated teller machine that lacks the technical capability to disclose the notice on the screen or to issue a paper notice after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction.

(C) Prohibition on fees not properly disclosed and explicitly assumed by consumer

No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless-

(i) the consumer receives such notice in accordance with subparagraph (B); and

(ii) the consumer elects to continue in the manner necessary to effect the transaction after receiving such notice.

15 U.S.C. § 1693b (d)(3). The term "Automated teller machine operator" means any person who "operates an automated teller machine at which consumers initiate electronic fund transfers," but excluding a financial institution that holds the consumer's account.   15 U.S.C. § 1693b (d)(3)(D)(i).

Polo contends that both Gooding's and E*Trade are "automated teller machine operators" within the meaning of §§ 1693b (d)(3)(A) and (d)(3)(D)(i) who imposed a fee on him for providing host transfer services, and were therefore obligated to comply with both of the notice requirements detailed in § 1693b (d)(3)(B).[FN4] Polo further contends that 1.) the defendants failed to comply because the on-screen notice did not accurately disclose the amount of the fee and 2.) as a result of this notice failure, the defendants were barred by § 1693b (d)(3)(C) from imposing any transaction fee whatsoever.

FN4. E*Trade denies that it meets the EFTA's definition of "operator" for ATMs that it did

not own, such as the Lake Buena Vista ATM used by Polo. Docket 77 at 4.

EFTA provides for the imposition of civil liability in the event of a failure to comply with its provisions, including 1.) any actual damages suffered by a consumer as a result of such failure; 2.) a sum of between $100 and $1,000 in an individual action or, in a class action, a sum not to exceed the lesser of $500,000 or one percent of the defendant's net worth; and 3.) attorney's fees and costs. *See* 15 U.S.C. § 1693m (a). Section 1693m also provides guidelines for the court to determine the size of any such award.

### B. Class Certification

A class action may be maintained only when it satisfies all of the requirements of Fed.R.Civ.P. 23(a), and at least one of the alternative requirements of Rule 23(b). ***405*** *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir.1997). In this case, Polo seeks to certify a class under the so-called "opt-out" provisions of Rule 23(b)(3). Docket 59 at 13. Thus, Polo must satisfy the following provisions of Rule 23:

**(a) Prerequisites to a Class Action**. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**(b) Class Actions Maintainable**. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(a) and (b)(3) (2003).

The four requirements of Rule 23(a) are generally referred to as numerosity, commonality, typicality, and adequacy of representation. The requirements of commonality, typicality, and adequacy of representation tend to merge, and "[c]ommonality and typicality represent the 'nexus' necessary between class representatives and class members." *Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1569 n. 8 (11th Cir.1992).

The Local Rules of the Middle District of Florida require both a class action complaint and a motion for class certification to contain detailed allegations of fact showing the existence of the Rule 23 prerequisites. Local Rule 4.04(a)-(b). The motion for class certification must also contain a detailed description or definition of the class and sub-classes, if any, and the number of persons in the class. Local Rule 4.04(b).

### III. APPLICATION

#### A. Rule 23(a)
Polo contends that his proposed class meets the four requirements of Rule 23(a). The Court reviews each requirement separately.

## 1. Overbreadth/Commonality

[1] ☑ [2] ☑ Gooding's and E*Trade argue that Polo's proposed class is wildly overbroad because-except for one ATM at a Gooding's Supermarket in Lake Buena Vista, Florida-there is no evidence that any Gooding's or E*Trade ATM anywhere in the United States ever charged a fee that exceeded the amount posted. Docket No. 77 at 18. To satisfy the commonality requirement, a class action must involve issues that are susceptible to class-wide proof. *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir.2001). When considering whether to certify a class pre-trial, the district court has no authority to conduct a preliminary inquiry into the merits of a suit. *Nelson v. United States Steel Corp.*, 709 F.2d 675, 679 (11th Cir.1983). Nevertheless, evidence relevant to commonality is often intertwined with the merits. *Id.*

[3] ☑ A court cannot presume that the commonality requirement has been satisfied. Rather, the plaintiff bears the burden of proof on this issue. 709 F.2d at 679-80. Actual conformance, not presumed conformance with Rule 23(a), is indispensable. 709 F.2d at 680. Polo therefore must show, at least in a preliminary fashion, the required commonality between his claim and those of the putative class. *Nelson*, 709 F.2d at 680 ( *citing, inter alia,* *406 *Gilchrist v. Bolger*, 89 F.R.D. 402, 406 (S.D.Ga.1981) ( "Plaintiff's burden of proof to demonstrate the existence of this common question entails more than the simple assertion of its existence, but less than a prima facie showing of liability")).

[4] ☑ Gooding's and E*Trade are correct that Polo's proposed nationwide class fails to meet the commonality requirement of Rule 23(a)(2) due to overbreadth. Polo's amended complaint and motion for class certification lack the detailed allegations of fact necessary to show commonality as required by Local Rule 4.04(a)-(b). Polo proposes a broad nationwide class that includes every individual who used one of 15,000 ATMs that either Gooding's or E*Trade operated since February 2, 2002 where the user paid a fee that differed from either of the required fee disclosures. But Polo's amended complaint and motion contain no detailed allegations of fact showing that any ATM other than the one in Lake Buena Vista ever charged a fee that differed from the amount disclosed. [FN5]

> FN5. In his declaration, E*Trade's president says that E*Trade has never been notified that any ATM other than the Lake Buena Vista ATM bore an improper EFTA notice. *See* Docket No. 77, Exh. 1 at 5.

Similarly, the amended complaint does not allege that either defendant systematically failed to post proper disclosures at its various machines, or had a policy of doing so. *See Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir.1986) (reversing decertification on grounds that plaintiffs, contrary to lower court's finding, had alleged a policy of discrimination, not merely individual acts of discrimination); *see also Murray*, 244 F.3d at 812 (finding commonality requirement met where state policy at issue, which allegedly forced individuals to select only one of two health programs for which individuals were eligible "raises issues common to all class members and is susceptible to generalized proof").

Polo does not show that there are fact issues common to all class members. On the contrary, there seem to be hundreds of permutations of possible facts regarding the members of the putative class and the 15,000 ATMs that they used. The ATMs may be owned by E*Trade; may be owned by Gooding's; may be owned by one of 8,000 merchants other than Gooding's; may be in any state; may be subject to varying site location agreements that affect the parties' rights and obligations; may have been purchased or leased pursuant to a sales agreement or rental agreement that affects the parties' rights and obligations; may impose varying transaction fees collected by E*Trade or by a merchant; may impose varying transaction surcharges collected by E*Trade or by a merchant; may collect no transaction fees and no transaction surcharges from some consumers under varying circumstances, such as customers of certain banks; may have "overcharged" or "undercharged" the consumer when measured against the posted fee; and may service the customers of financial institutions that do not debit consumer's accounts for ATM fees. *See*, E*Trade / Gooding's ATM Site Location Agreement (dated March 15, 2001), Docket No. 76, Exhibit 2, Declaration of Anthony Marcus, Exhibit A.

Polo does propose two questions of law that he believes are common to the class: first, "whether, under [EFTA and Reg. E] each of the defendants was ... an ATM operator who imposed a fee on consumers for providing host transfer services to those consumers"; and second, "whether each of the Defendants complied ... with the notice requirements of [EFTA and Reg. E]." Docket 59 at 10. But these questions are not common to the proposed class because they are not "susceptible to class-wide proof." Answering either question one time-for example, with regard to Polo's claim-will not settle that issue with regard to the claims of most of the putative class members.

Stated differently, a determination that either or both of the defendants failed to meet EFTA's definition of "operator" with regard to the Lake Buena Vista ATM used by Polo on July 5, 2002 will not resolve that issue with regard to the 15,000 other ATMs used by other putative class members since February 3, 2002. Absent some evidence that consumers other than Polo were charged improper fees at other ATMs, E*Trade's status as an EFTA "operator" with regard to those *407 ATMs is irrelevant. Similarly, a demonstration that either defendant failed to comply with EFTA's notice requirement at another ATM on some other date will not dispose of that issue as to Polo. The two questions offered by Polo are not susceptible to class-wide proof, and are not "common to the class." Rather, they are questions that must be answered repeatedly for each user.

In his response to defendants' memoranda in opposition to class certification, Polo attempted to dodge the commonality problem by identifying a single EFTA disclosure violation at an "E*Trade Financial ATM" in Skokie, Illinois [hereinafter the "Skokie ATM"]. See Docket No. 88. Consumer Lauren Miller certifies that she was charged $1.50 and not the $2.00 fee disclosed on the placard on the Skokie ATM. Docket No. 88, Exhibit A. Polo argues that Miller is entitled to damages for an EFTA violation-and to membership in Polo's class-because she was charged *less* than the posted fee. Moreover, Polo contends that Miller's certification salvages his proposed nationwide class. Polo is mistaken.

It is far from obvious as a matter of law that EFTA entitles Miller to damages because she was charged less than the fee that she had authorized, or that Miller and Polo have any issues of fact and law in common. Nothing in Polo's amended complaint, in Polo's motion for class certification, or in the record explains how a determination of E*Trade's status an EFTA "operator" of the Lake Buena Vista ATM settles that issue with regard to the Skokie ATM, with regard to Miller, or with regard to any of the other 15,000 ATMs affiliated with E*Trade. A determination that E*Trade failed to meet the EFTA notice requirements with regard to Miller does nothing to resolve the claims of Polo or of the users of the other 15,000 ATMs. A comparison of Polo's allegations ($1.50 disclosed on screen, but charged $2.00) with Miller's allegations ($2.00 disclosed on placard, but charged $1.50) does nothing to suggest the existence of a uniform or systematic policy that might give rise to questions of law or fact common to the class within the meaning of Rule 23(a)(2).

### 2. Numerosity

[5] Assuming that the Court can identify which of the hundreds of thousands of ATM customers nationwide paid an ATM fee that violated EFTA, their joinder would be impracticable. Therefore, Polo's proposed class satisfies the numerosity requirement of Rule 23(a)(1).

### 3. Typicality

[6] The factors that cause a class definition to run afoul of the commonality requirement may also cause it to run afoul of the typicality requirement. See, e.g., Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir.1984) (holding that typicality is established "if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory"). Polo argues that he and his putative class members base their claims on the same legal theory, but Polo's argument infers unproved facts. Members of Polo's putative class may or may not have faced the same combination of fee notices on the 15,000 ATMs owned by the 8,000 different merchants, and may or may not have been charged the same fees as Polo. The bulk of Polo's putative class members might have been "overcharged" at an E*Trade-affiliated ATM after relying on a lower posted fee notice, but no evidence in the record supports such an inference. Nothing in the record suggests that the class members' claims-other than

perhaps those who used the Lake Buena Vista ATM-arise from the same event, pattern, or practice. The Court therefore cannot conclude that the claims or defenses applicable to Polo's claim are typical of those applicable to the rest of the nationwide class proposed by Polo. Polo has not established that his class satisfies Rule 23(a)(3).

### 4. Adequacy of representation

[7] ☑ Polo's interests differ from some members of the proposed class, e.g., consumers who were charged less than the fee they had authorized, and consumers who used a Gooding's ATM other than the Lake Buena Vista ATM. This opinion has already described the hundreds of permutations of possible *408 facts as to the other ATMs and their users. See discussion supra re Overbreadth/Commonality. Polo is unable to adequately represent so many divergent interests. Polo's attorneys are capable, however, and the Court assumes that (but for Polo's conflicts of interest with other class members) they would be able to protect the interests of the proposed class.

### B. Predominance and Superiority

Having determined that the proposed class fails to satisfy each of the four requirements of Rule 23(a), the Court need not consider whether it satisfies the requirements of Rule 23(b)(3): predominance and superiority. Nevertheless, the Court proceeds to consider predominance and superiority in order to assist further review.

[8] ☑ To satisfy the predominance requirement of Rule 23(b)(3), the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof. Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir.1997). The predominance inquiry focuses on the legal or factual questions that qualify each class member's case as a genuine controversy, and is far more demanding than Rule 23(a)'s commonality requirement. Id.

[9] ☑ As discussed above, Polo proffered two questions allegedly common to the proposed class: whether defendants were "operators" under EFTA, and whether defendants' ATMs provided adequate notice of fees under EFTA. The Court has already found that these issues are not common to the proposed nationwide class. Furthermore, even if these two issues were common to the class, they do not outweigh the issues that must be resolved as to each individual class member. FN6

> FN6. This opinion has already described the many permutations of facts that bear on a decision regarding liability and damages as to ATMs outside Lake Buena Vista. See discussion supra re Overbreadth/Commonality.

Gooding's and E*Trade argue that individual issues predominate because every potential class member must prove that he detrimentally relied on an improper fee disclosure. EFTA establishes the rights and responsibilities of participants in electronic fund transfer systems. The "primary objective [of EFTA] is the provision of individual consumer rights." 15 U.S.C. § 1693. Nevertheless, Polo offers no authority for his inference that EFTA excuses plaintiffs from proving that their actual damages flowed from a detrimental reliance on erroneous fee postings. FN7 Proof of actual compensatory damages normally requires proof of an actual harm suffered by each consumer. Moreover, in determining the amount of damages in a class action, Congress directs this Court's attention not to the number of class members, but rather to "the number of persons adversely affected." 15 U.S.C. § 1693m(b)(2) (emphasis supplied).

> FN7. Polo and the putative class seek both actual compensatory damages and statutory damages. Gooding's and E*Trade do not contend that claimants must show detrimental reliance to recover statutory damages.

This Court would have to determine which ATM customers were actually harmed or adversely affected. For example, this Court would have to determine whether Lauren Miller was harmed or

adversely affected when the Skokie ATM charged her only $1.50 instead of the $2.00 fee that she had authorized. As to each class member, the Court must determine: 1.) whether the consumer actually saw and relied on an improper notice in deciding to proceed with the ATM transaction; 2.) if so, whether the consumer would have proceeded with that transaction had the notices all been correct; and 3.) whether the consumer actually paid the fee without reimbursement. <u>FN8</u> *See, e.g., Andrews v. American Tel. and Tel. Co.,* 95 F.3d 1014, 1025 (11th Cir.1996) (denying certification due to lack of predominance where, even if plaintiffs could demonstrate the existence of common scheme, "the plaintiffs would ... have to show, on an individual basis, that they relied on the misrepresentations, suffered **\*409** injury as a result, and incurred a demonstrable amount of damages").

> <u>FN8.</u> As Defendant E*Trade points out in its brief, Docket 77 at 13, numerous financial institutions have policies of waiving or reimbursing ATM fees for their customers.

Polo correctly notes that the existence of individualized issues as to the amount of damages do not automatically bar certification of a <u>Rule 23(b)(3)</u> class. Docket No. 88 at 5. Nevertheless, class certification is properly denied here where Polo has identified no common issues of fact and law, and where any common issues of fact and law would come nowhere near predominating over the individualized assessment required for each class member's claim, including reliance and damages.

<u>Rule 23(b)(3)</u> encompasses those cases in which a class action is superior to other available methods because it would achieve economies of time, effort, and expense. *See* <u>Fed.R.Civ.P. 23</u> Advisory Committee Note (1966 amendment). In Polo's case, trying hundreds of thousands of claims in one action offers no perceptible economy over individual actions. <u>Section 1693m(a)</u> permits prevailing consumers to recover statutory damages, costs, and attorney's fees. *See* <u>Andrews,</u> 95 F.3d at 1025 (even small individual claims may be made feasible to prosecute separately where the statute provides for treble damages and attorney's fees).

[10] Polo asks for certification of a nationwide class using the revised definition in his reply. Defendants are correct that Polo's definition is wildly overbroad. Even assuming that this Court could revise and limit an overly broad class definition *sua sponte, see, e.g.,* <u>Selby v. Principal Mutual Life Ins. Co.,</u> 197 F.R.D. 48, 56 (S.D.N.Y.2000), the Court sees no reason to do so here. The plaintiff has the burden of proposing a class that meets the <u>Rule 23</u> requirements. Discovery commenced on April 17, 2003, Docket No. 44 at 5, and Polo has had adequate time to discover relevant facts. Polo has already abandoned one class definition, and substituted a new one after both defendants' briefs had been filed. The revised definition has failed as well, this Court has no obligation to craft a new class.

## IV. CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiff's Motion for Class Certification, Docket No. 58, be **DENIED**. Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal. Extensions will not likely be granted.

Dated Feb. 5, 2004.

M.D.Fla.,2004.
Polo v. Goodings Supermarkets, Inc.
232 F.R.D. 399

Motions, Pleadings and Filings (Back to top)

• 6:03cv00134 (Docket) (Feb. 03, 2003)
END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.