Westlaw Delivery Summary Report for BURNS,IAN M 6026348

| | |
|---|---|
| Date/Time of Request: | Monday, July 14, 2008 18:49 Central |
| Client Identifier: | 126/01 |
| Database: | DCT |
| Citation Text: | Slip Copy |
| Lines: | 355 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Westlaw.

Slip Copy                                                                                                                          Page 1
Slip Copy, 2007 WL 1772142 (N.D.Ill.)
**(Cite as: 2007 WL 1772142 (N.D.Ill.))**

H
Mowry v. JP Morgan Chase Bank, N.A.
N.D.Ill.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern Division.
Bryan MOWRY, et al., Plaintiffs,
v.
JP MORGAN CHASE BANK, N.A., Defendant.
No. 06 C 4312.

June 19, 2007.

John D. Blythin , Guri Ademi , Richard Andre Lilly , Robert K. O'Reilly , Shpetim Ademi , Ademi & O'Reilly LLP, Cudahy, WI, Marvin Alan Miller , Matthew E. Van Tine , Miller Law LLC, Chicago, IL, for Plaintiffs.
Gregory David Isbell , JP Morgan Chase Legal Department, Jordan Samuel Ginsberg , Mark Bruce Blocker , Sidley Austin LLP, Chicago, IL, John Kenneth Van De Weert , Sidley Austin Brown & Wood LLP, Washington, DC, for Defendant.

*MEMORANDUM OPINION*

SAMUEL DER-YEGHIAYAN, District Judge.
*1 This matter is before the court on Plaintiff Jason Paradise's ("Paradise") and Plaintiff Andrew Syrios' ("Syrios") (collectively referred to as "Plaintiffs") motion for class certification. For the reasons stated below, we deny the motion for class certification.

## BACKGROUND

Plaintiffs allege that they were consumers who withdrew funds between August 9, 2005, and August 9, 2006 from automated teller machines ("ATMs") that were owned by Defendant JP Morgan Chase Bank, N.A. ("Chase"). Plaintiffs contend that they do not hold bank accounts with Chase and that they used Chase's ATMs to withdraw funds from their respective financial institutions. Plaintiffs claim that each of Chase's ATMs has a notice provision that appears on the screen for customers who do not hold accounts with Chase, which states, in part, that "[t]his Chase terminal *may* charge a fee of $2.00 for a cash withdrawal."(Comp. Par. 30) (emphasis added). Plaintiffs claim that they received no further notice prior to making a cash withdrawal and were subsequently charged a fee in the dollar amount indicated on the screen notice on the ATMs.

Plaintiffs brought the instant action alleging that they were charged a fee for use of Chase's ATMs in violation of the Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq.* (Count I), and Regulation E, 12 C.F.R. § 205*et seq.* (Count II) (collectively referred to as "EFTA"). This case was originally assigned to another judge and on September 26, 2006, Chase moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiffs' prayer for actual damages as to Count I and to dismiss Count II. On September 27, 2006, the court granted Chase's motion to dismiss Count II. On October 13, 2006, the court amended its September 27, 2006, order to reflect that the court struck the actual damages claim as to Count I in Plaintiffs' complaint. On February 2, 2007, the Executive Committee reassigned the instant action to the undersigned judge. On April 5, 2007, Plaintiff Bryan Mowry, one of the original Plaintiffs in the instant action, dismissed his claims in the instant action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1). Plaintiffs now seek class certification pursuant to Federal Rule of Civil Procedure 23.

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) ("Rule 23(a)") provides that a class may be certified if: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."Fed.R.Civ.P. 23(a). The four elements of Rule 23(a) are requirements for class certification. *See Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993) (stating that a failure to meet any one of the Rule 23(a) requirements precludes certification as a class). A proposed class action must also satisfy at least one of the alternative routes provided in Federal Rule of Civil Procedure 23(b) ("Rule 23(b) ").Fed.R.Civ.P. 23(b) ; *Rosario v. Livadatis,* 963 F.2 1013, 1017 (7th Cir.1992). A plaintiff seeking class certification has the burden of proving that the proposed class meets the requirements of Rule 23. *See Retired Chicago Police Ass'n,* 7 F.3d at 596 (holding that the "party seeking class certification assumes the burden of demonstrating that certification is appropriate").

## DISCUSSION

*2 Plaintiffs seek to certify a class consisting of:

(a) [A]ll consumers in the United States (b) who initiated an electronic funds transfer at a Chase ATM, (c) the screen of which gave a notice stating in part "This Chase terminal may charge a fee ..." (d) and were charged a fee for withdrawing cash from the Chase ATM, (e) on or after a date one year prior to the filing of this action.

(Mot.1).

*I. Rule 23(a) Requirements*

Plaintiffs argue that the proposed class meets all of the requirements of Rule 23(a). Chase concedes that Plaintiffs meet all of the requirements of Rule 23(a), except for the adequacy of representation requirement.

*A. Numerosity Requirements*

Given that the possible number of claimants is potentially as high as twenty million individuals and that Chase operates more than seven thousand ATMs, we agree that the joinder of all proposed individuals would be impractical. Chase does not contest that the numerosity requirement is satisfied. Therefore, we find that the proposed class meets the numerosity requirement.

*B. Commonality Requirements*

A plaintiff must show that the potential class members' claims share a "common nucleus of operative fact" in order to meet the commonality requirement. *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir.1998) (citing *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992) ). Such a common nucleus of operative facts can arise when each class member's claim will depend on the same conduct by the defendants. *See id.* at 594. Once a common nucleus of facts is identified, commonality will not be upset by "factual variations among class members' grievances."*Id.* (citing *Patterson v. General Motors Corp.,* 631 F.2d 476, 481 (7th Cir.1980) ). In the instant action, we have identical common facts before us since all of the proposed class members allege that Chase failed to adequately disclose service fees to users of the ATMs who did not hold accounts with Chase. Chase also concedes that the commonality requirement is met. Therefore, we find that the proposed class meets the commonality requirement.

*C. Typicality Requirement*

A representative plaintiff meets the typicality requirement by showing that his claim " 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.' " *Id.* (quoting *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983) ). A plaintiff can meet the typicality requirement "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members" and "[t]hus, similarity of legal theory may control even in the face of differences of fact." *De La Fuente,* 713 F.2d at 232. Plaintiffs' claims arise from the same alleged course of conduct by Chase concerning the sufficiency of the notice that Chase charged a service fee to users of its ATMs who did not hold accounts with Chase. In addition, the claims of the proposed class members are all based upon the same provisions of the EFTA that Plaintiffs base their claims upon. Therefore, we find that the proposed class satisfies the typicality requirement.

*D. Adequacy of Representation Requirement*

*3 Chase argues that Plaintiffs are inadequate as class representatives due to the close relationship between Syrios, Paradise, and class counsel. In order for a class to fulfill the adequacy of representation requirement, (1) " 'the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation,' " and (2) " 'the plaintiff

must not have interests antagonistic to those of the class.' " *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir.1977) (quoting *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3rd Cir.1975) ). Whether a party would adequately protect the interests of the class is a "question of fact depending on the circumstances of each case." *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 704 (7th Cir.1986) (quoting in part *Susman*, 561 F.2d at 90).

Chase argues that Plaintiffs are inadequate representatives due to a likely conflict of interest caused by the facts that Syrios' brother ("Attorney Syrios") is an attorney at one of the law firms that will be class counsel and that Paradise is a close friend with Attorney Syrios as well as the former roommate of Syrios. As noted by the Seventh Circuit, "relatives [of class representatives], or business associates" of class representatives are likely too closely related to class representatives to act as class counsel and to adequately represent the interests of the class. *Susman*, 561 F.2d at 95 . This inadequacy stems from the likelihood that a conflict of interest will exist when there is a close relationship between class representatives and class counsel. *See id.* at 91, 95-96 (explaining that courts "fear as to the danger of champerty" when there is a "close relationship between the putative class representative and counsel"). The determination of inadequacy based on close relationships is on a case-by-case basis. *Id.* at 90.

*1. Syrios*

As to the adequacy of class representation by Syrios, the Seventh Circuit has stated that a conflict of interest is likely when the named plaintiff is a brother of class counsel. *Id.* at 95.(holding that the likelihood a conflict of interest would exist is "supported by 'the natural assumption that brothers enjoy a close personal and family relationship and, consequently, would be inclined to support each other's interests' ").

Further, when the possible recovery for each plaintiff as a member of the class is an amount "dwarfed by [the] attorney's fees" which could be awarded to class counsel, it is likely that a conflict of interest exists when there is a close relationship between class counsel and named representatives. *In re Disc. Zone Secs. Litig.*, 169 F.R.D. 104, 108-09 (N.D.Ill.1996) (citing *Susman*, 561 F.2d at 95 for the proposition that when the "possible recovery of the class representatives is far exceeded by potential attorneys' fees, courts fear that a class representative who is closely associated with the class attorney would allow settlement on terms less favorable to the interest of absent class members"). In addition, a court may find that this conflict of interest exists even where the representative party will not take benefit in the attorneys' fees from that case, as the nature of the close relationship creates the possibility that the class representative may not fulfill his duty of aggressively presenting the class' claims, but instead, become more concerned with "maximizing the 'return' to his counsel."*Susman*, 561 F.2d at 95 nn.4-7 (listing cases holding that a plaintiff associated with the putative class attorney's law firm, relatives of an attorney in the law firm, and business associates of the law firm cannot adequately protect the interest of class members).

*4 In the instant case, the possible amount that each class plaintiff can recover, which as explained below amounts to approximately three cents for each of the nearly twenty million transactions during the time period in question, (D.Mot.11), is marginal compared to the potential amount of attorneys' fees that may be awarded. In addition, Attorney Syrios asked his brother to represent the class in this action and there exists the potential that Syrios may be more interested in helping to maximize his brother's return as class counsel than aggressively advancing the interest of the class. (Syrios Dep. 11). This relationship creates a likely conflict of interest since Syrios has little to gain personally and did not pursue this litigation on his own initiative. *See Susman*, 561 F.2d at 95 nn.4-7 (listing cases holding that a plaintiff associated with the putative class attorney's law firm, relatives of an attorney in the law firm, and business associates of the law firm cannot adequately protect the interest of class members). Therefore, the close familial relationship between Syrios and Attorney Syrios makes Syrios an inadequate representative of the class' interests.

*2. Paradise*

Chase argues that Paradise's relationship with class counsel is too close since Paradise is the former roommate of Syrios and close friends with Attorney Syrios. Paradise and Syrios are long time friends and roommates. Through this relationship, Paradise has known Attorney Syrios for approximately six years. In addition, Attorney Syrios has previously represented Paradise and Syrios in other legal proceedings, and it was Attorney Syrios who recruited Paradise to represent the class.

Even though the relationship between Paradise and Attorney Syrios does not rise to the level of a familial relationship, the close relationship between Paradise and Attorney Syrios raises serious concerns as to Paradise's adequacy to represent the instant class. Given that the potential recovery for Plaintiffs is minimal compared to the potentially high amount of attorneys' fees that may be awarded, Paradise may be more concerned with helping to maximize the monetary return of his friend, Attorney Syrios, than to zealously advocate on behalf of the class' interests. This proposition is apparent to the court from Paradise's admission during his deposition that he is only "here to represent Ademi & O'Reilly and to represent their point in the case ... I'm here to help [the firm]. I'm representing the class."(Paradise Dep. 11-12). While this particular relationship may not be sufficient to render Paradise an inadequate representative on his own, the relationship between Paradise and Attorney Syrios is of the type that creates a conflict of interest that Paradise's presence cannot cure the inadequacy of Syrios as a representative. Based on the analysis above, since the close familial relationship between Syrios and class counsel results in a conflict of interest and Paradise is not sufficiently independent to cure this inadequacy, we find that Plaintiffs do not satisfy the adequacy of representation prong. Therefore, we deny Plaintiffs' motion for class certification.

*II. Rule 23(b) Requirements*

*5 As is indicated above, in order to obtain certification, a plaintiff must show that certification is appropriate under one of the alternative routes offered in Rule 23(b). Plaintiffs seek to proceed under Rule 23(b)(3), under which "[a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: ... the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."Fed.R.Civ.P. 23(b)(3). In determining the applicability of Rule 23(b) (3), the court should consider factors such as: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."*Id.*

As Rule 23(b)(3) states, "[a]n action may be maintained as a class action if the prerequisites of [Rule 23(a)] are satisfied."Fed.R.Civ.P. 23(b)(3). As explained above, Plaintiffs have failed to satisfy the requirements of Rule 23(a). However, even if the Plaintiffs had satisfied the prerequisites of Rule 23(a), as explained below, Plaintiffs cannot satisfy the requirements of Rule 23(b).

*A. Predominance Requirement*

Plaintiffs contend that the common issues of law and fact between the claims of the proposed class members predominate over the individual issues. In the instant action, the common issues concerning the service fee notice given to users of Chase's ATMs who were not banking clients of Chase will predominate these proceedings. Chase also concedes that Plaintiffs meet the predominance requirement. Therefore, we find that Plaintiffs have satisfied the predominance

requirement.

B. *Superiority Requirement*

As noted above, a class action should proceed only if it is superior to other methods for adjudicating the claims of the class. Chase argues that a class action is not the superior method for resolving this dispute since the potential class recovery is *de minimis,* while the recovery for Plaintiffs in individual actions could be much higher, and since the potential class would be unmanageable due to difficulty in identifying and notifying the class members. Plaintiffs contend that a class action is appropriate since even though an individual's recovery in an action may be higher, such recovery is still not an incentive for an individual plaintiff to bring an action.

Under the EFTA, individual plaintiffs are permitted to recover statutory damages in "an amount not less than $100 and no greater than $1,000."15 U.S.C. § 1693m(2)(A) . In addition, named plaintiffs in a class action suit are entitled to recover such statutory damages, but other class members' recovery "shall not be more than the lesser of $500,000 or one per centum of the net worth of the defendant."15 U.S.C. § 1693m(a)(2)(B) . In both individual and class actions, attorneys' fees may be recovered under the EFTA. 15 U.S.C. § 1693m(a)(3) . As Chase's net worth is greater than $50,000,000, the possible class recovery is limited to $500,000 plus attorneys' fees.

**\*6** Chase argues that any recovery by class members would be minimal. During the period of time that Plaintiffs are complaining, approximately twenty million transactions occurred at more than seven thousand ATMs operated by Chase. (D Mot. 11). As such, the maximum number of potential class members is approximately twenty million, with the possible recovery for each class member limited to approximately three cents. Although it is also likely that multiple class members performed transactions at several of Chase's ATMs, which would make the per person recovery higher, such recovery by class members would nonetheless be *de minimus.* However, the EFTA provides that "no minimum recovery shall be applicable" as to "each member of the class," 15 U.S.C. § 1693m(a)(2)(B) , and such *de minimus* recovery does not necessarily bar a class action since "[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action."*Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir.1997) .

In addition to the recovery amount by class member, the court should also weigh the logistical concerns associated with a potential class. Chase argues that the instant case is unmanageable as a class action due to the difficulty of identifying and notifying the possible twenty million class members. We agree. In assessing the manageability of a class action, the court should consider problems in identifying and notifying class members. *Simer v. Rios,* 861 F.2d 655, 669 (7th Cir.1981) . In the instant action, the only identifying information associated with the approximately twenty million transactions in question are the sixteen digit personal account numbers ("PAN") that Chase's ATMs record during each withdrawal. These PANs consist of a six digit code identifying the bank that the cardholder has an account with, and a ten digit personal identification number, which is known only to each respective bank. Due to the vast number of transactions involved in a potential class action, identifying the financial institutions that are not affiliated with Chase in order to identify the potential class members will be difficult. In addition, once a financial institution that is not affiliated with Chase is properly identified and contacted, that financial institution is not likely to be willing to share identity information for security and privacy reasons. Further, even if financial institutions that are not affiliated with Chase are willing to identify and locate potential class members, the financial institutions may be unable to do so if the potential class members no longer hold accounts with the financial institution. Attempts to identify the potential class members individually will undoubtably result in prolonged litigation, and even then it is likely that a large number of potential class members will be left out. Therefore, a class action is not superior to other methods for adjudicating the claims of the class and Plaintiffs have not satisfied Rule 23(b) . Based on the analysis above, Plaintiffs have not satisfied the requirement of either Rule 23(a) or Rule 23(b) and we deny Plaintiffs' motion for class certification.

## CONCLUSION

*7 Based on the foregoing analysis, we deny Plaintiffs' motion for class certification.

N.D.Ill.,2007.
Mowry v. JP Morgan Chase Bank, N.A.
Slip Copy, 2007 WL 1772142 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.