**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CARMEN FLORES, | ) | |
| | ) | Case No. 07 C 6403 |
| Plaintiff, | ) | |
| | ) | Judge Hibbler |
| v. | ) | |
| | ) | Magistrate Judge Valdez |
| DIAMOND BANK, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR SANCTIONS, TO COMPEL DESTRUCTION OF
PLAINTIFF'S MEDICAL RECORDS AND TO QUASH SUBPOENAS TO PEAK
PERFORMANCE HEALTH CARE, TCF BANK AND ANY UNKNOWN RECIPIENTS
OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDERING PREVENTING
<u>DISCLOSURE OF MEDICAL AND FINANCIAL RECORDS</u>**

Plaintiff Carmen Flores, by her attorneys, The Consumer Advocacy Center, P.C., and pursuant to Fed. R. Civ. P. 45(c)(3) and 26(c), moves this Court to sanction Defendant Diamond Bank's counsel, to compel destruction of Plaintiff's medical records and to quash subpoenas issued by Defendant to Peak Performance Health Care ("Peak Performance"), TCF Bank ("TCF") and any unknown subpoena recipients or, in the alternative to quashing, to enter a protective order preventing disclosure of Plaintiff's medical and financial records to Defendant. In support of her motion, Plaintiff states as follows:

1.   Plaintiff alleges that Defendant Diamond Bank violated the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq*. ("EFTA") by failing to post a notice on its automated teller machine ("ATM") that it would charge consumers a fee for using the ATM.

**<u>Motion for Sanctions</u>**

2.   "Rule 45 governs the use of subpoenas. A party must serve each party with prior notice if the subpoena commands the production of documents." *Judson Atkinson Candies, Inc.*

*v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008). "Prior notice is required in order 'to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things.'" *Id*. (quoting Fed. R. Civ. P. 45 committee note, 1991 amendments).

3. On July 22, 2008, Defendant issued a subpoena to Peak Performance seeking "Copies of any and all medical records and bills from August 2007." A copy of the Peak Performance subpoena is attached hereto as **Exhibit 1**.

4. Defendant's counsel did not serve a copy of the subpoena or notice of the subpoena on Plaintiff's counsel.

5. Plaintiff's counsel found out about the subpoena to Peak Performance from Plaintiff, who found out about it from Peak Performance.

6. On July 23, 2008, pursuant to Rule 37.2, Plaintiff's undersigned counsel spoke by telephone with Defendant's counsel, Mark Belongia ("Belongia"), to determine why he sought such sweeping records of Plaintiff and attempted to resolve the parties' dispute as to the privileged and protected status, relevancy and scope of the information sought by Defendant's subpoena.

7. Belongia advised that he sought Plaintiff's medical records for an entire month so he could verify whether Plaintiff had an appointment with her medical provider on the date she used Defendant's ATM, given that Peak Performance is proximately located to Defendant's ATM.

8. Defendant's subpoena to Peak Performance seeking Plaintiff's medical and billing records, especially when it could have sought such information from Plaintiff or limited

its request to a statement from Peak Performance that Plaintiff did or did not have an appointment on the date in question (she did), served only one purpose, to harass Plaintiff and seek improper disclosure of her personal, private records.  Such action was in bad faith and oppressive.

9. Notwithstanding Plaintiff's belief that such information is irrelevant, the parties agreed that Defendant would immediately withdraw its subpoena to Peak Performance and notify Peak Performance of said withdrawal and, in return, Plaintiff would obtain a statement from Peak Performance advising whether she had an appointment on the date in question.  In fact, when Plaintiff's undersigned counsel again raised the topic of withdrawing the subpoena, Belongia adamantly responded, "I said I'd do it, and I'll do it."

10. During that July 22 telephone conversation and by email on July 23, 2008, Plaintiff's undersigned counsel advised that Defendant had not received a copy of the subpoena to Peak Performance or notice of the subpoena and requested that Belongia forward a copy of the subpoena.  A copy of the email is attached hereto as **Exhibit 2** and incorporated herein by reference.

11. Belongia did not serve a copy of the subpoena or notice of the subpoena on Plaintiff's counsel following the telephone conversation or email.

12. On July 24, 2008, at 10:53 a.m., Peak Performance responded by facsimile to Defendant's subpoena and produced some of Plaintiff's medical records to Belongia.

13. On July 25, 2008, at 12:16 p.m., more than 24 hours after receiving Peak Performance's response, Defendant's counsel's office forwarded by email Peak Performance's

response to Plaintiff's counsel. A copy of the email, without the medical records attached, is attached hereto as **Exhibit 3** and incorporated herein by reference.

14. Still, Belongia had not served a copy of the Peak Performance subpoena or notice of subpoena on Plaintiff's counsel.

15. Only at 3:34 p.m. on July 25, 2008, after yet another request by Plaintiff's counsel, did Defendant's counsel fax a copy of the Peak Performance subpoena to Plaintiff's counsel.

16. By that time, Peak Performance had already answered the subpoena that was improperly issued and not withdrawn, as promised, by Defendant's counsel, thus precluding Plaintiff's counsel from moving to quash prior to the time Plaintiff's medical records were wrongly disclosed.

17. "A court, under its inherent powers, may sanction conduct that it finds to be an abuse of the judicial process." *Judson*, 529 F.3d at 386.

18. This Court should sanction Defendant's counsel for abuse of the discovery process, failing to serve notice of the Peak Performance subpoena on Plaintiff's counsel and for lying to Plaintiff's undersigned counsel. See e.g., *Judson*, 529 F.3d at 387 (affirming sanctions for failure to provide notice of subpoenas to opposing party, thus precluding opposing party from objecting and leading to the improper disclosure of records).

**Motion to Compel Defendant to Destroy Plaintiff's Medical Records**

19. Plaintiff incorporates herein by reference paragraphs 1-18.

20. Because Defendant improperly sought, then obtained, Plaintiff's medical records that are irrelevant to this case, and because Peak Performance disclosed some records prior to

Plaintiff getting a copy of the subpoena or having a chance to move to quash, this Court should compel Defendant and Defendant's counsel to destroy all copies of Plaintiff's medical records, both hard copies and electronic copies, and compel each person having access to such records to provide an affidavit that such copies have been destroyed.

### Motion to Quash or for Protective Order Regarding Peak Performance Subpoena

21.  Plaintiff incorporates herein by reference paragraphs 1-20.

22.  Defendant's subpoena to Peak Performance seeks privileged, protected and irrelevant information and is overly broad.

23.  No reasonable basis exists for the production of Plaintiff's medical records and bills in this case that has nothing to do with Plaintiff's health.

24.  Even if Defendant were curious as to why Plaintiff was in the neighborhood of Defendant's ATM, it is irrelevant to this strict liability case.

25.  Defendant's subpoena to Peak Performance was solely for the purpose of harassment, and this Court should quash Defendant's subpoena to Peak Performance pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iii), because they would require the disclosure of privileged or other protected matter.

26.  Alternatively, this Court should enter a protective order pursuant to Fed. R. Civ. P. 26(c)(1) that precludes Peak Performance from disclosing to Defendant any of Plaintiff's records and precludes Defendant or its counsel from obtaining Plaintiff's records, because Defendant seeks irrelevant and overly broad personal information in violation of Fed. R. Civ. P. 26(b)(1).

**Motion to Quash or for Protective Order Regarding TCF Subpoena**

27. Plaintiff incorporates herein by reference paragraphs 1-26.

28. On July 21, 2008, Defendant issued a subpoena to TCF Bank seeking "Copies of any and all account statements from August 2006 to July 2008." A copy of the TCF subpoena is attached hereto as **Exhibit 4**.

29. During the July 22, 2008 telephone conference between Plaintiff's undersigned counsel and Belongia, Belongia advised that he sought Plaintiff's TCF bank statements because he wanted to know if Plaintiff had used other ATMs that charged fees.[1]

30. The undersigned counsel expressed his belief that such information was protected and irrelevant.

31. The parties' respective counsel were unable to resolve the dispute.

32. A party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense…." Fed. R. Civ. P. 26(b)(1). However, "the party seeking to compel discovery bears the burden of persuading the Court of its entitlement to that discovery." *Ty, Inc. v. Salvino, Inc.*, Case No. 98 C 6318, 1999 WL 162774, *1 (N.D. Ill. March 16, 1999).

33. Plaintiff's bank statements are protected financial information entirely irrelevant to this action, and Defendant's request for two (2) years' worth of such statements is overly broad.

---

[1] Belongia premised his "basis" for seeking Plaintiff's bank statements on the fact that Plaintiff testified at deposition that she tried to avoid ATMs that charge fees. Indeed, Plaintiff testified that "[i]f I see a fee notice, I try and go to another bank that doesn't have one. If it's – thinking it's free." See condensed transcript of deposition of Carmen Flores at 36:6-8, attached hereto as **Exhibit 5** and incorporated herein by reference. However, Belongia's questions during the deposition sought irrelevant information, and the information he seeks now is also irrelevant.

34. Belongia's stated purposed (i.e., to find out if Plaintiff used other ATMs that charged fees) does not demonstrate that the requested financial records are remotely relevant to any claim or defense in this case.

35. This case is premised not on whether Plaintiff has ever used another ATM and been charged a fee for such use, but on whether <u>this</u> defendant violated the EFTA by failing to post a fee notice on the ATM at issue in <u>this</u> case.

36. Plaintiff could have used ATMs everyday for the two (2) year period for which Defendant seeks bank statements and been charged a fee for each use, and it would have no bearing on whether or not Defendant violated the EFTA in this particular instance.

37. The EFTA is a strict liability statute, and Plaintiff's claim turns on whether Defendant posted a fee notice, not on whether another financial institution ever charged Plaintiff an ATM fee.

38. Further, Plaintiff's use or non-use of other ATMs has no bearing on Defendant's claimed defense in this case, i.e., that Defendant had posted on fee notice on its ATM.

39. Plaintiff used Defendant's ATM on August 2, 2007, and Defendant has not identified a single shred of information from Plaintiff's bank statements that is relevant to that transaction.

40. Instead, Defendant seeks merely to harass Plaintiff by obtaining her very personal and private medical and financial records in hopes of finding some tool to force her to drop her claim.

41. This Court should not countenance Defendant's tactics and should quash Defendant's subpoenas pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iii), because they would require the disclosure of privileged or other protected matter.

42. Alternatively, this Court should enter a protective order pursuant to Fed. R. Civ. P. 26(c)(1) that precludes the subpoenaed parties from disclosing to Defendant any of Plaintiff's records and precludes Defendant or its counsel from obtaining Plaintiff's records, because Defendant seeks irrelevant and overly broad personal information in violation of Fed. R. Civ. P. 26(b)(1).[2]

## Motion to Quash any Unknown Subpoenas

43. Plaintiff incorporates herein by reference paragraphs 1-42.

44. Plaintiff is unaware of whether Defendant has issued any other subpoenas without having given notice to Plaintiff.

45. To date in this litigation, Defendant's counsel has meticulously filed with this Court certificates of service whenever it has issued, or responded to, discovery requests.

46. Except this time. Defendant did not file such certificates of service regarding the aforementioned subpoenas, did not serve the Peak Performance subpoena on Plaintiff's counsel and then refused to forward a copy after repeated requests.

47. Therefore, Plaintiff requests that this Court quash any pending subpoenas issued by Defendant.

---

[2] To the extent Defendant wants to know if Plaintiff has ever used an ATM other than Defendant's ATM and been charged a fee, which is what Belongia's stated purpose for Plaintiff's records is, Plaintiff will stipulate that she has used an ATM other than Defendant's ATM and been charged a fee.

WHEREFORE, for the foregoing reasons, Plaintiff requests that this Court sanction Defendant's counsel, compel the destruction of Plaintiff's medical records and to quash Defendant's subpoenas to Peak Performance, TCF Bank and any other subpoena recipient or, alternatively to quashing, enter a protective order precluding disclosure of the requested information and grant such other relief as this Court deems proper.

                                            CARMEN FLORES, Plaintiff,

                              By:    /s/ Lance A. Raphael
                                        One of Plaintiff's Attorneys

Dated: July 25, 2008

Lance A. Raphael
Stacy M. Bardo
Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
180 West Washington, Suite 700
Chicago, IL 60602
Tel: (312) 782-5808
Fax: (312) 377-9930