IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARMEN FLORES, individually and on behalf of all others similarly situated, ( ( ( Plaintiff, ( ( v. ( ( DIAMOND BANK, FSB, ( ( Defendant. ( | Case No. 07 C 6403 Judge Hibbler Magistrate Judge Valdez |

**DEFENDANT DIAMOND BANK'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SANCTIONS, TO COMPEL, AND TO QUASH**

NOW COMES Defendant DIAMOND BANK, FSB (hereinafter the "Bank"), by and through its attorneys, Belongia & Shapiro, LLP (hereinafter the "Bank's Counsel"), and for its Response in Opposition to Plaintiff CARMEN FLORES' (hereinafter "Plaintiff") Motion for Sanctions, to Compel Destruction of Plaintiff's Medical Records and to Quash Subpoenas to Peak Performance Health Care, TCF Bank and Any Unknown Recepients or, in the Alternative, For a Protective Order Preventing Disclosure of Medical and Financial Records, states as follows:

**I.     INTRODUCTION AND FACTUAL BACKGROUND**

Plaintiff has filed with this Court a Motion for Sanctions against the Bank's Counsel, to Compel Destruction of Plaintiff's Medical Records and to Quash Subpoenas to Peak Performance Health Care, TCF Bank and Any Unknown Recepients or, in the Alternative, for a Protective Order Preventing Disclosure of Medical and Financial Records (hereinafter "Motion for Sanctions"). (Please see Plaintiff's July 25, 2008 Motion for Sanctions [doc 52]).

Notwithstanding the fact that this Court entered a Confidentiality Stipulation on March 6, 2008 under which the Bank agrees to designate all documents received pursuant to the subpoenas in questions as "Confidential"[1]; Plaintiff's Motion for Sanctions is, to say the least, overbearing and completely unnecessary. (Please see March 6, 2008 Confidentiality Stipulation [doc 25] attached hereto as Exhibit "1"). Unfortunately, it follows and clearly represents a pattern of conduct that has been continuously employed by Plaintiff's counsel throughout the duration of this case. For this reason, and as Plaintiff's Motion for Sanctions is a direct and personal attack on the integrity and professionalism of the Bank's counsel, the Bank and the Bank's counsel feels it is necessary to file a written response with this Court.

Plaintiff alleges that the Bank violated the Electronic Funds Transfer Act (hereinafter the "EFTA") by failing to post a required notice on the automated teller machine located at 100 West North Avenue, Chicago, Illinois 60610 and known as ATM 049E4 (hereinafter the "ATM"). (Please see Plaintiff's Second Amended Class Action Complaint, attached hereto as Exhibit "2"). Specifically, Plaintiff alleges that the Bank violated the "on the machine" notice requirement of § 1693b(d)(3)(B)(i) of the EFTA and § 205.16 of Regulation E. (Please see Exhibit "2", Count I, ¶¶ 23, 24).

    a.    *<u>Defense Counsel's Proper Conduct:</u>*

Plaintiff's deposition was conducted on June 27, 2008. During her deposition, Plaintiff testified that: *she does not live near the defendant bank, does not work near the defendant bank, never used the ATM machine at the defendant bank prior to the date at issue, and never used the ATM machine at the defendant bank after the date at issue. She*

---

[1] Amongst all of the accusations against Bank's counsel for lies, misrepresentations and other alleged wrongdoing, Plaintiff's counsel never once inquired to the Bank's intentions of following this Court's March 6, 2008 Confidentiality Stipulation.

*testified that she was in the area of the defendant's bank due to her doctor's appointment.* (See Plaintiff's deposition transcript pages, attached hereto as Group Exhibit "3", pages 18-19, lines 6-12).

*Plaintiff also testified she avoids ATM machines that charge her for the transaction. As the defendant's ATM machine allegedly did not have a fee notice on it on the day in question, she assumed that she was not going to be charged for the transaction and decided to use the machine. Once Plaintiff saw the on the screen notice, she knew that she was going to be charged for the transaction but chose to proceed with the transaction anyway.* (See Group Exhibit "3", pages 35-36, lines 10-14).

In its response to Plaintiff's Motion for Class Certification, Defendant has raised the legal argument that recovery of actual damages under the statute in question requires a plaintiff's detrimental reliance. (Please see the Bank's Response in Opposition to the Motion for Class Certification [doc 46]). Plaintiff's testimony that she chooses not to use ATM machines that will charge her a fee is subject to corroboration by reviewing her bank statements to see if her ATM transaction history supports her deposition testimony.

Therefore, on July 21, 2008, Bank's counsel issued a subpoena to Plaintiff's banking institution, TCF Bank, to obtain copies of her bank statements, and did not seek deposit slips or cancelled checks. (Please see Subpoena issued to TCF Bank attached hereto as Exhibit "4"). On July 22, 2008, in order to confirm the testimony of Plaintiff that she had a doctor's appointment on the day in question, Defense counsel issued a subpoena to Plaintiff's physician's offices, Peak Performance seeking to obtain these medical records. (See Subpoena issued to Peak Performance attached hereto as Exhibit "5"). Contrary to the assertions of Plaintiff's counsel, Defense counsel did provide him

3

with notice of the subpoenas. A copy of the subpoena to TCF Bank was mailed to Plaintiff's counsel on July 21, 2008. (Please see Affidavit of Lucy Nava attached hereto). Thereafter, the Notice of both Subpoenas was properly given to Plaintiff's counsel by United States Mail on July 22, 2008, along with a certificate of service affirming the mailing of said subpoenas to Plaintiff's counsel. (Please see the July 22, 2008 Certificate of Service attached hereto as Exhibit "6").

On July 22, 2008, Plaintiff's counsel contacted the Bank's counsel to object to the issuance of the subpoena to Peak Performance. During this conversation, defense counsel also notified him that a subpoena had been issued to TCF Bank. Plaintiff's counsel then objected to the issuance of that subpoena as well. During the Rule 37.2 teleconference, the Bank's counsel agreed to withdraw the request for Plaintiff's medical records and to provide Plaintiff's counsel proof that the request for medical records was withdrawn. Importantly, on July 22, 2008, the Bank's counsel's office sent a Certificate of Service and copies of both subpoenas to Plaintiff's counsel. (Please see Exhibit "6").

On the very next day, July 23, 2008, defense counsel sent a letter to Peak Performance notifying it that the prior subpoena request was being modified to only request copies any of Plaintiff's medical bills for the month of August 2007, which is the month at issue. (Please see Defense counsel's July 23, 2008 letter attached hereto as Exhibit "7"). A copy of this letter was sent to Plaintiff's counsel on that day via email. (Please see Exhibit "7", cc).

For the reasons stated herein, Plaintiff's Motion for Sanctions should be denied.

b.   *Plaintiff's Counsel's Improper Conduct:*

On July 15, 2008, Defense counsel filed its objection to the Motion for Class Certification. Shortly thereafter, Plaintiff's counsel (hereinafter "Rapheal") sent Defense counsel Belongia an email which states in relevant part *"Also, have you ever heard of the concept of positional conflict? It is where a lawyer takes one position on an issue of law before one judge and at or near the same time takes the opposite position on an issue of law before another judge in the same courthouse."* (See Raphael July 15, 2008 email attached hereto as Exhibit "8"). When asked for what he was referring to, Mr. Raphael responded by stating:

> *"I will address it more specifically in our reply to your opposition to class certification. Remember, I have access to Pacer and all of the publicly filed documents you and Mr. Sinn have filed. However, based on your filings on behalf of people such as but not limited to Mr. Langston, in support of class certification, I would ask that you withdraw your opposition to class certification in this case as you have asserted legal positions in your opposition which conflict with your legal positions you are presently asserting before Judge Coar on the same legal issues involving certification."* (Please see Exhibit "8").

Mr. Raphael proceeds to next state, *"Positional conflicts of interest are addressed indirectly in the Rules of Professional Conduct Rule 1.7…. I am quoting from a federal case on the subject. But there is ample authority for you to research the issue."* (Please see Exhibit "8"). There does not exist "ample authority." Mr. Rapheal's email is an implied threat to the Bank's counsel to withdraw the objection to class certification.

Not content to stop there, during the ongoing dispute over the issued subpoenas, Mr. Raphael sent another harassing email to defense counsel on July 25, 2008. (Please see Raphael July 25, 2008 email attached hereto as Exhibit "9"). By this time, Defense counsel had mailed copies of the subpoenas to Mr. Raphael, mailed him a certificate of service, emailed him a copy of the letter to Plaintiff's physician withdrawing the request

5

for medical records and only requesting medical bills, and sent him a copy of the one page of medical billing received from the physician's office. In this July 25, 2008, Plaintiff's counsel again cites to the Rules of Professional Conduct and proceeds to accuse the Bank's counsel of misconduct.

After referring the Bank's counsel in a threatening manner to the Rules of Professional Conduct 4.4, 8.3 and 8.4, Mr. Raphael goes on to state:

> *I will be moving to quash all of your third party subpoenas, since I don't know what ones you have sent or not sent. I will be moving for sanctions for your conduct with regard to this [sic] my client's personal private medical records. And I will be moving for an order compelling you to destroy my client's medical records and produce an affidavit from each and every one of your office staff who may have seen the records that they will maintain their confidence if they saw them and that all her records have in fact been destroyed, including from your computer system where you scanned it in.* (Please see Exhibit "9").

The emails speak for themselves.[2] Plaintiff's counsel continues to attempt to intimidate and use the Professional Rules of Conduct as threats.

Outraged at the aforementioned latest email, the Bank's counsel contacted Mr. Rapheal shortly thereafter. During this conversation Mr. Raphael accused the Bank's employees of committing perjury, accused Defense counsel of suborning perjury, accused defense counsel of violating federal law in issuing the disputed subpoenas, demanded that Attorney Belongia personally pay his client money for wrongfully issuing the subpoenas and demanded that Attorney Belongia call him by the end of business on July 28, 2008 with a monetary offer to pay his Plaintiff. Raphael also stated that he would sue Defense counsel for issuing these subpoenas and instructed Belongia to inform the firm's malpractice carrier of the pending lawsuit. (See Affidavit of Attorney Mark D. Belongia attached hereto).

---

[2] These are not the only threatening or disrespectful emails sent by Plaintiff's counsel during the course of this litigation. (Please see emails attached hereto as Group Exhibit "10").

6

Now, in the wake of the above-described conduct, Plaintiff files a Motion for Sanctions against Defense counsel directly. For the reasons stated herein, Plaintiff's Motion for Sanctions must be denied in its entirety and these unprofessional attempts at intimidation cannot stand.

## II.　LEGAL STANDARD

"The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D.Colo. 1997) (*citing Oliver Cannon and Son, Inc. v. Fidelity and Cas. Co. of N.Y.*, 519 F.Supp. 668 (D.Del. 1981)).

In Illinois, treatment times are not barred from disclosure by the physician-patient privilege. *Tomczak v. Ingalls Memorial Hospital*, 359 Ill.App.3d 448, 455, 834 N.E.2d 549, 555 (Ill.App. 1 Dist. 2005); *See also Department of Professional Regulation v. Manos*, 326 Ill.App.3d 698, 708, 761 N.E.2d 208, 216 (Ill.App. 1 Dist. 2001) (subpoenaed physicians' appointment book records indicating patients' names and addresses on certain dates does not violate the physician-patient privilege).

Counsels are officers of the Court and are not only entitled to the courtesy due one gentleman from another but also to that respectful treatment which that position demands. *People of the State of Illinois v. Ackerman*, 146 Ill.App. 301 (Ill.App. 1st Dist. 1909).

A sharp, ugly or disrespectful attitude on the part of one officer of the court toward another adds nothing to the pleasure of judicial position, to the respect of the public for the bar, and certainly is not helpful to the court in the performance of its

difficult duties. *U.S. ex. rel. Tennesse Valley Authority v. Indian Creek Marble Co.*, 40 F.Supp. 811, 822 (D.C.Tenn. 1941).

### III.　　ARGUMENT

Notwithstanding the scandalous and impertinent allegations and content of Plaintiff's Motions for Sanctions, the entirety of said motion centers on Plaintiff's attempts to quash the two (2) aforementioned subpoenas duces tecum at issue. As stated previously, the Bank agrees to designated all documents received pursuant to the two (2) subpoenas as "Confidential" pursuant to the March 6, 2008 Confidentiality Stipulation entered by this Court. Notwithstanding, for the reasons stated herein, Plaintiff's attempt to quash said subpoenas must be denied, and her Motion for Sanctions must be denied in its entirety.

"The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D.Colo. 1997) (*citing Oliver Cannon and Son, Inc. v. Fidelity and Cas. Co. of N.Y.*, 519 F.Supp. 668 (D.Del. 1981)); *See also Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2nd Cir. 1975) ("in the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness"); *Nova Products, Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (citations omitted) ("a party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right").

However, the Seventh Circuit and courts in this District have slightly expounded upon this general rule. A party only has standing to quash a subpoena served on a third-

party if it infringes on their legitimate interests. *United States v. Segal*, 276 F.Supp.2d 896, 900 (N.D.Ill. 2003) (*citing United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982)); *See also Orange v. Burge*, Not Reported in F.Supp.2d, No. 04 C 168, 2006 WL 2567786, *2 (N.D.Ill. Aug. 15, 2006).

  A. <u>The Bank issued a proper subpoena to Peak Performance Health and Plaintiff's Motion for Sanctions must be denied.</u>

As stated above, on July 22, 2008, the Bank issued a subpoena to Plaintiff's medical provider, Peak Performance Health, to verify her testimony at deposition that she visited said medical provider on the date she was allegedly "injured" by the Bank. Plaintiff also testified that she neither lives nor works near the ATM at issue in this case. As Plaintiff is a named plaintiff in a mirror EFTA class action lawsuit filed by the same counsel making identical allegations[3]; verification for her reason for using the ATM falls within the broad relevancy scope of discovery.

The Bank recognizes that Plaintiff's medical records are subject to the physician-patient privilege in the state of Illinois. As such, the Bank agrees that the initial subpoena issued to Plaintiff's medical provider on July 22, 2008 may have been overbroad despite being limited to only one month's time frame. Accordingly, on the same day the subpoena was issued, the Bank's counsel agreed to amend the subpoena to only request information verifying Plaintiff visited the medical provider on the date she testified to during her deposition. Therefore, on July 23, 2008, the next day, the Bank's counsel sent a letter to the medical provider limiting the scope of the subpoena issued to only billing records for the month of August 2007. (Please see Exhibit "7"). Plaintiff's counsel received a copy of this letter as he was a "cc" recipient. Plaintiff's medical provider then

---

[3] Please see Smith, et al. v. Credit Union 1, Case No. 07-CV-05939, Judge Ronald A. Guzman presiding.

provided the Bank's counsel with a one (1) page statement reflecting Plaintiff's billing records for one (1) month, August 2007.

While medical records are clearly subject to the physician-patient privilege in Illinois, not all information pertaining to treatment received from medical providers is covered by said privilege. The Bank only sought the date of Plaintiff's visit to her medical provider, and the medical provider's one (1) page response to the subpoena depicts that information. In Illinois, treatment times are not barred from disclosure by the physician-patient privilege. *Tomczak* at 455, at 555; *See also Department of Professional Regulation* at 708, at 216 (subpoenaed physicians' appointment book records indicating patients' names and addresses on certain dates does not violate the physician-patient privilege). Therefore, verifying the date of Plaintiff's visit to her medical provider by a subpoena duces tecum is not barred by the physician-patient privilege.

How the diligence displayed by the Bank's counsel of informing Plaintiff's counsel on the exact same day the subpoena was issued by United States Mail to Peak Performance and agreeing that the subpoena issued should be limited in scope rises to a level of sanctionable conduct is beyond comprehension. The Bank sought one (1) piece of information to verify Plaintiff's testimony, and received one (1) page in response that was limited in scope to the specific information sought and falls outside of the physician-patient privilege. For the reasons stated herein, Plaintiff's Motion for Sanctions against the Bank's counsel should be denied. Additionally, Plaintiff's demand to compel the Bank's counsel to destroy the one (1) page billing statement received from Peak Performance; and to have every attorney or staff member from the Bank's counsel's office execute an affidavit that the information contained on said billing statement will

not be disclosed must also be denied. Plaintiff's counsel's utter lack of respect and professional courtesy afforded the Bank and the Bank's counsel is astounding.

      B.      <u>The Bank issued a proper subpoena to TCF Bank and Plaintiff's Motion for Sanctions must be denied.</u>

"The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought." *Windsor* at 668. Plaintiff's statements are not protected by any privilege. While she has a privacy interest in the contents of her bank statements, that interest cannot shield her from proper discovery in a lawsuit she initiates centered on the EFTA and a transaction involving the specific bank account at issue.

As stated above, Plaintiff testified that she avoids using ATM's where she knows that she will be charged a fee. This testimony is notwithstanding the fact that Plaintiff has to affirmatively act by acknowledging and accepting said fee when faced with the "on the screen" notice on the ATM at issue. Additionally, as previously stated, she has initiated two separate identical class action lawsuits. Verifying Plaintiff's conduct as testified to by her goes to the credibility of the witness, and again easily falls within the broad relevancy scope of discovery.

In addition to being used to discredit Plaintiff's sworn testimony, Plaintiff is seeking actual damages as well as statutory damages under the EFTA. The field of available case law nationwide regarding this new phenomenon of ATM notice class action lawsuits under the EFTA is understandably barren at this date. However, several district courts have ruled that Plaintiff must show that she relied to her detriment on the missing ATM "on the machine" notice in order to be entitled to actual damages. The Bank has raised this argument in its Response in Opposition to Plaintiff's Motion for

11

Class Certification [doc 46]. Plaintiff's use of ATM's prior to and subsequent to the date of the alleged "injury" is relevant to whether or not Plaintiff relied on said missing notice to her detriment.

For these reasons, and that she has effectively waived her privacy interest in this account by putting said bank account with TCF Bank at issue in this litigation, Plaintiff does not even possess standing to contest the TCF subpoena.

As described above, the Bank's subpoena to TCF Bank was issued on July 21, 2008. On that same date, a copy of the subpoena was sent to Plaintiff's counsel via United States Mail. (Please see Affidavit of Lucy Nava). A copy of said subpoena was then resent to Plaintiff's counsel the following day via United States Mail along with a copy of the Peak Performance Health subpoena that was issued that same day. (Please see Exhibit "6"). Additionally, the Bank's counsel spoke to Plaintiff's counsel on July 22, 2008 regarding both subpoenas. Again, how this diligence by the Bank's counsel in notifying Plaintiff's counsel of said subpoenas can be characterized as improper, let alone as being in bad faith and rising to a level requiring sanctions, is beyond understanding. For the reasons stated herein, Plaintiff's Motion for Sanctions should be denied in its entirety.

    C.    <u>Plaintiff's Counsel's Conduct and attempts at intimidation are not befitting of the conduct expected of an officer of the court and must be brought to this Court's attention.</u>

It is an over one hundred (100) year old precedent in the state of Illinois that the conduct and filings of an officer of the court be devoid of scandalous materials and afford the opposing advocate the respect that such a position demand. *Rosenberg v. Stern*, 77 Ill.App. 248 (Ill.App. 1st Dist. 1898); *Scroggin v. Brown*, 14 Ill.App. 338 (Ill.App. 3rd

Dist. 1883); *Chicago & A.R. Co. v. Bragonier*, 13 Ill.App. 467 (Ill.App. 3rd Dist. 1883); *Smith v. Bingman*, 3 Ill.App. 65 (Ill.App. 3rd Dist. 1878); *Confrey v. Stark*, 73 Ill. 187 (Ill. 1874). More specifically, counsels are officers of the Court and are not only entitled to the courtesy due one gentleman from another but also to that respectful treatment which that position demands. *Ackerman* at 301.

A matter is deemed "scandalous" when it improperly casts a derogatory light on someone. *See Gilbert v. Eli Lilly & Co.*, 56 F.R.D. 116 (D.C. Puerto Rico 1972); *Nault's Auto. Sales, Inc. v. American Honda Motor Co., Acura Auto. Div.*, 148 F.R.D. 25 (D.C. NH 1993). Plaintiff's Motion for Sanctions contains explicitly "scandalous" allegations towards the Bank's counsel. Said allegations also completely disregard the Bank's counsel's long standing entitlement to the courtesy due one gentleman from another.

Plaintiff's Motion for Sanctions specifically states, "This Court should sanction Defendant's counsel for abuse of the discovery process, failing to serve notice of the Peak Performance subpoena on Plaintiff's counsel and for **lying** to Plaintiff's undersigned counsel." (Please see Plaintiff's Motion for Sanctions [doc 52], ¶ 18) (emphasis added). Plaintiff's direct accusation that the Bank's counsel is "lying" when the documentation supports the opposite is a direct question to the professionalism and integrity of the Bank's counsel.

This explicit personal allegation coupled with the above-described accusations and demands accusing the Bank's employees of committing perjury, accusing the Bank's counsel of suborning perjury, accusing the Bank's counsel of violating federal law in issuing the disputed subpoenas, demanding that Attorney Belongia personally pay his client money for wrongfully issuing the subpoenas, demanding that Attorney Belongia

13

call him by the end of business on July 28, 2008 with a monetary offer to pay his Plaintiff, and threatening to sue the Bank's counsel for issuing these subpoenas while instructing the Bank's counsel to notify the firm's malpractice carrier cannot go without written response from the Bank's counsel. (See Affidavit of Attorney Mark D. Belongia).

Unfortunately, the Bank's counsel has been placed in the present situation by Plaintiff's counsel's lack of respect for them personally and for the profession and in the face of the wild accusations made against the Bank's counsel. While many aspects of the legal profession are far from "clear," it is abundantly **clear** that this conduct is advantageous to no one.

One district court has commented on this type of conduct. "The court must, in order to discharge its functions to the maximum, have a respectful, cordial and cooperative attitude among its officers. *A sharp, ugly or disrespectful attitude on the part of one officer of the court toward another adds nothing to the pleasure of judicial position, to the respect of the public for the bar, and certainly is not helpful to the court in the performance of its difficult duties.*" U.S. ex. rel. Tennessee Valley Authority at 822 (emphasis added).

## CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Sanctions must be denied. The Bank, or the Bank's counsel, in no way acted in a manner to harass or oppress the Plaintiff. To the contrary, the Bank seeks limited information relevant to the issues in this case and relevant to the credibility of Plaintiff. None of the information sought is barred by a privilege. Additionally, the Bank agrees to designate all documents received

as "Confidential" pursuant to the March 6, 2008 Confidentiality Stipulation entered byt the Court.  For the reasons described above, Plaintiff's Motion for Sanctions must be denied.

WHEREFORE, Defendant DIAMOND BANK, FSB, respectfully requests this Honorable Court enter an Order denying Plaintiff CARMEN FLORES' Motion for Sanctions; and for any other relief this Court deems just.

Respectfully Submitted,

DIAMOND BANK, FSB, Defendant

Dated: July 30, 2008

/s/ Mark D. Belongia
One of Defendant's Attorneys

Mark D. Belongia, Atty # 6269391
mbelongia@belongiashapiro.com
Nathaniel R. Sinn, Atty # 6284004
nsinn@belongiashapiro.com
Belongia & Shapiro, LLP
53 W. Jackson Blvd., Suite 315
Chicago, Illinois 60604
P:  312.662.1030
F:  312.662.1040