59

1                    McCorkle Court Reporters, Inc.
                     200 N. LaSalle Street, Suite 300
2                       Chicago, Illinois 60601-1014
3
4   DATE:  June 27, 2008
    Consumer Advocacy Center, P.C.
5   ATTN:  Mr. Lance A. Raphael
    180 West Washington Street, Suite 700
6   Chicago, Illinois 60602
7   IN RE:  Flores vs. Diamond Bank
    COURT NUMBER:  07 C 6403
8   DATE TAKEN:  June 24, 2008
    DEPONENT:  Carmen Flores
9
    Dear Mr. Raphael:
10
    Enclosed is the deposition transcript for the
11  aforementioned deponent in the above-entitled
    cause.  Also enclosed are additional signature
12  pages, if applicable, and errata sheets.
13  Per your agreement to secure signature, please
    submit the transcript to the deponent for review
14  and signature.  All changes or corrections must
    be made on the errata sheets, not on the
15  transcript itself.  All errata sheets should be
    signed and all signature pages need to be signed
16  and notarized.
17  After the deponent has completed the above,
    please return all signature pages and errata
18  sheets to me at the above address, and I will
    handle distribution to the respective parties.
19
    If you have any questions, please call me at the
20  phone number below.
21  Sincerely,
22  Margaret Setina              Court Reporter:
    Signature Department         Kimberley M. Titsworth
23
    cc:  Mr. Belongia
24

EXHIBIT
Group
3

ORIGINAL

```
 1           IN THE UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF ILLINOIS
 3                     EASTERN DIVISION
 4    CARMEN FLORES,            )
 5    individually and on      )
 6    behalf of all others     )
 7    similarly situated,      )  No. 07 C 6403
                               )  Judge Hibbler
 8         Plaintiff,          )  Magistrate
 9      vs.                    )  Judge Valdez
10    DIAMOND BANK,            )
11         Defendant.          )
12
13         The discovery deposition of CARMEN FLORES,
14    taken in the above-entitled cause, before
15    KIMBERLEY M. TITSWORTH, a notary public of Cook
16    County, Illinois, on Tuesday, June 24, 2008, at
17    2:20 p.m., at 53 West Jackson Boulevard,
18    Suite 315, Chicago, Illinois, pursuant to
19    notice.
20
21
22
23    Reported by: Kimberley M. Titsworth, CSR
24    License No.: 084-004670
```

1

---

INDEX

| WITNESS | EXAMINATION |
|---|---|
| CARMEN FLORES | |
| By Mr. Belongia | 6 |

E X H I B I T S

| NUMBER | MARKED FOR ID |
|---|---|
| Flores Deposition Exhibit | |
| A | 17 |
| B | 27 |

3

---

```
 1    APPEARANCES:
 2    CONSUMER ADVOCACY CENTER, P.C.
 3    BY:  MR. LANCE A. RAPHAEL
 4    180 West Washington Street
 5    Suite 700
 6    Chicago, Illinois  60602
 7    (312) 782-5808
 8         Representing the Plaintiff;
 9
10    BELONGIA & SHAPIRO, LLP
11    BY:  MR. MARK D. BELONGIA
12    53 West Jackson Boulevard
13    Suite 315
14    Chicago, Illinois  60604
15    (312) 662-1030
16         Representing the Defendant.
17
18
19
20
21
22
23
24
```

2

---

1          (WHEREUPON, the witness was duly
2     sworn.)
3          MR. BELONGIA:  Could you please state and
4     then spell your name for the record.
5          THE WITNESS:  Carmen Flores.  You want the
6     full name spelled?
7          MR. BELONGIA:  Correct.
8          THE WITNESS:  C-a-r-m-e-n, F-l-o-r-e-s.
9          MR. BELONGIA:  Let the record reflect that
10    this deposition will be taken in accord with all
11    applicable rules and statutes, taken today
12    pursuant to notice and agreement of the parties.
13          Ms. Flores, have you ever given a
14    deposition before?
15          THE WITNESS:  No.
16          MR. BELONGIA:  I'm sure counsel has met with
17    you and gone over the ground rules for a
18    deposition, but just in case, I'm going to go
19    over some of the general guidelines for a
20    deposition in order to make this process move as
21    smooth as possible; okay?
22          THE WITNESS:  Okay.
23          MR. BELONGIA:  It's very important that in
24    this room with high ceilings that you speak

4

McCORKLE COURT REPORTERS, INC.
CHICAGO, ILLINOIS (312) 263-0052

1  loudly so everybody can hear you. There's a
2  slight echo in the room, so it's important,
3  again, that you speak slowly and clearly so that
4  the court reporter can take everything down. Is
5  that fair?
6      THE WITNESS: Yes.
7      MR. BELONGIA: If you don't understand any
8  one of my questions, which has been known to
9  happen from time to time, you can please let me
10 know that, in fact, you don't understand the
11 question, and I'll be happy to rephrase it;
12 okay?
13     THE WITNESS: Okay.
14     MR. BELONGIA: It's important that you
15 respond to all of my questions with verbal
16 responses. The court reporter, who's taking
17 everything down here on a machine, can't take
18 down shrugs, nods, uh-huhs, so everything has to
19 be a verbal response. Fair?
20     THE WITNESS: Okay. Yes.
21     MR. BELONGIA: If at any point you need a
22 break for whatever reason, as long as there is
23 not a pending question, we will break to use the
24 washroom, get you something to drink or for just

5

1  a break to have a break; okay?
2      THE WITNESS: Okay.
3      MR. BELONGIA: Given that I don't know you,
4  let me just take a brief second to explain the
5  deposition. It's an opportunity for me, as the
6  attorney for the defendant bank, Diamond Bank,
7  FSB, and the case that you brought against it to
8  ask you questions on the record; okay?
9      THE WITNESS: Yes.
10     MR. BELONGIA: And as I don't know you, I'm
11 going to ask some general background questions,
12 and I'm sure Mr. Raphael will let you know that
13 I'll be doing that. And don't be offended by
14 any means by the questions. It's just that I
15 don't know you, and this is my only opportunity
16 to speak to you on the record; okay?
17     THE WITNESS: All right.
18         CARMEN FLORES,
19 having been first duly sworn, was examined and
20 testified as follows:
21         EXAMINATION
22 BY MR. BELONGIA:
23     Q.  What is your current home address?
24     A.  2707 North McVicker. That's in

6

1  Chicago.
2      Q.  How do you spell the street name,
3  please.
4      A.  M-c-V-i-c-k-e-r.
5      Q.  Is that a capital V?
6      A.  Capital V.
7      Q.  And that's in Chicago?
8      A.  Yes.
9      Q.  What's the ZIP code?
10     A.  60639.
11     Q.  And what is your current age, please.
12     A.  God, I'm trying to calculate that. 55.
13     Q.  And what's the last four digits of your
14 Social Security number?
15     A.  9516.
16     Q.  And your marital status?
17     A.  I'm divorced.
18     Q.  Do you have any children?
19     A.  Yes.
20     Q.  How many?
21     A.  Two.
22     Q.  And how old are they?
23     A.  31 and 34.
24     Q.  Do either of them work in the legal

7

1  field?
2      A.  No.
3      Q.  They don't work for a law firm or any
4  law school?
5      A.  No.
6      Q.  What's your highest level of education?
7      A.  About second year of college.
8      Q.  Did you receive any type of certificate
9  or degree?
10     A.  No.
11     Q.  And where did you attend?
12     A.  I attended — well, I've attended
13 Harold Washington.
14     Q.  Were you seeking any specific type of
15 coursework, business or marketing or anything?
16     A.  Yes, accounting.
17     Q.  Accounting?
18     A.  Yes.
19     Q.  Are you currently employed?
20     A.  Yes.
21     Q.  Where are you employed?
22     A.  I work for World Book.
23     Q.  What is World Book?
24     A.  An encyclopedia company.

8

2 (Pages 5 to 8)

1    Q.  Where are they located?
2    A.  On Michigan Avenue.
3    Q.  In Chicago?
4    A.  Yes.
5    Q.  How long have you worked there?
6    A.  Let's see. 15 years.
7    Q.  What is your job title there?
8    A.  I am a fulfillment supervisor.
9    Q.  And describe for me generally what is
10   meant by the title fulfillment manager?
11       A.  I monitor all the warehouses and make
12   sure that the orders are fulfilled. And I also
13   take care of the database that handles all the
14   prices and things like that for order
15   processing.
16   Q.  Do you work a 40-hour work week?
17       A.  It's 37 and a half.
18   Q.  And is it a standard work week, it's
19   the same hours each week?
20       A.  Yes.
21   Q.  During the course of the written
22   discovery phase, I believe it was listed,
23   identified that you had previously filed a
24   bankruptcy; is that right?

9

1    A.  Correct.
2    Q.  And what year did you file bankruptcy?
3    A.  Oh, bankruptcy?
4    Q.  Yeah.
5    A.  No.
6    Q.  Never filed a bankruptcy?
7    A.  No.
8    MR. RAPHAEL: Did I say she filed a
9    bankruptcy?
10   MR. BELONGIA: No. There was a question
11   about that. I sent you a letter inquiring as to
12   whether or not there was a Carmen Flores.
13   BY MR. BELONGIA:
14   Q.  There was actually two that filed
15   bankruptcy here in the Northern District, and we
16   didn't know if that was you or not.
17       A.  No, not me.
18   MR. RAPHAEL: Good. I thought I had said she
19   filed a bankruptcy when she didn't.
20   BY MR. BELONGIA:
21   Q.  Besides this lawsuit, are you a
22   plaintiff in any other litigation?
23       A.  The Credit Union 1.
24   Q.  So there is another pending lawsuit

10

1    involving you as a plaintiff, is that right?
2    A.  Yes.
3    Q.  And is that the case Smith versus
4    Credit Union 1?
5    A.  That's correct.
6    Q.  Who is Smith?
7    A.  I don't know.
8    Q.  Are you a plaintiff in that case?
9    A.  Yes.
10   Q.  Do you know how many other plaintiffs,
11   besides you and Smith, there are in the Credit
12   Union 1 case?
13       A.  No.
14   Q.  Can you tell me generally what are your
15   claims in that lawsuit?
16       A.  What do you mean claims? I'm sorry.
17   Q.  That's okay. I know you're not an
18   attorney. I don't expect you to give me legal
19   responses.
20       But you are a plaintiff, and when
21   you're a plaintiff, you filed a lawsuit against
22   somebody. And when you filed a lawsuit, you
23   were making claims. They did something wrong.
24       A.  Right.

11

1    Q.  What did Credit Union 1 do wrong?
2    MR. RAPHAEL: Objection. Calls for work
3    product, attorney-client privilege information.
4    And if you go off the record for a second, I'll
5    explain something to you.
6    MR. BELONGIA: Off.
7    (WHEREUPON, a discussion was had
8    off the record.)
9    MR. BELONGIA: For the record, we're going to
10   stipulate between the parties that the Smith
11   versus Credit Union 1 case involving Ms. Flores
12   is the same claim as -- similar claims as
13   brought in the Diamond Bank case.
14   MR. RAPHAEL: Correct. And it's the subject
15   of a preliminary approved settlement and class
16   basis where the first-named plaintiff is Smith,
17   not Ms. Flores.
18   BY MR. BELONGIA:
19   Q.  Ms. Flores, besides the Smith case and
20   this case you're here today about, are there any
21   other lawsuits that you ever filed?
22       A.  Not that I can recall at this time.
23   Q.  So is it fair to say you never filed
24   any actions for workers' comp or for personal

12

1  injury?
2      A.  No, not that I can recall.
3      Q.  So is it fair to say that you've,
4  besides the Smith case, never been a class
5  plaintiff, other than these two cases?
6      A.  Correct.
7      Q.  Do you currently have a bank account?
8      A.  Yes.
9      Q.  How many bank accounts do you have?
10     A.  How many bank accounts?
11     Q.  Yes.
12     A.  Maybe three.
13     Q.  Are they all at the same financial
14  institution?
15     A.  Yes.
16     Q.  And what institution is that?
17     A.  TCF.
18     Q.  And at the time of the alleged
19  occurrence in this lawsuit of August 2nd, 2007,
20  were your accounts at TCF Bank?
21     A.  Yes.
22     Q.  How long have you maintained bank
23  accounts at TCF Bank?
24     A.  Several years.  I don't remember how

                                                13

1  many.
2      Q.  And do you have an ATM card for the
3  bank accounts at TCF Bank?
4      A.  Yes.
5      Q.  And how many ATM cards do you have?
6      A.  I carry only one with me.  So I think I
7  have three.
8      Q.  So you have three total cards?
9      A.  ATM, yes.
10     Q.  The one that you carry currently, is
11  that linked to all three accounts?
12     A.  Yes.
13     Q.  And that card, do you have it with you
14  today?
15     A.  Yes.
16     MR. RAPHAEL:  Are we going to do the same
17  thing we did?
18     MR. BELONGIA:  Yes.
19     MR. RAPHAEL:  Fine.
20     In the other depositions of the bank
21  president and the bank vice president, they
22  produced to me their ATM cards for their
23  accounts, their bank accounts, so that we could
24  write down the number for their bank account on

                                                14

1  a piece of paper that I said I would keep
2  strictly confidential, only my eyes, no one else
3  sees it.
4      It's just for the evidence to establish
5  that -- I guess for you he's going to be using
6  it for the evidence to establish that you
7  actually took out money from this ATM.  For me
8  it was to establish that the bank president had
9  used his own ATM.  No one will see it, except
10  for him; correct?
11     MR. BELONGIA:  It'll be maintained and we do
12  what is called a little stipulation to
13  confidentiality.  And what I'm going to do is
14  inspect your card, I'm going to write the number
15  down, he's going to verify that the number is
16  correct, he's going to sign this piece of paper
17  and your number will be kept in our office in a
18  locked drawer so that it can't be revealed to
19  anyone.
20     And we understand the identity theft
21  issues, and we did the same thing when we
22  produced our clients', employees, bank ATM
23  cards, okay?  But we need to, as did
24  Mr. Raphael, verify that transactions did incur

                                                15

1  so that we can cross-reference with the
2  discovery produced in the case; okay?
3      MR. RAPHAEL:  So if you have your ATM card,
4  toss it to him.
5  BY MR. BELONGIA:
6      Q.  Do you have any questions?
7      A.  No.
8      MR. RAPHAEL:  I stipulate that this is her
9  ATM stuff.  I'd just staple this closed so that
10  no one else but you or I saw it.
11     MR. BELONGIA:  Yeah.
12     MR. RAPHAEL:  And we should mark it as a
13  confidential exhibit.
14     MR. BELONGIA:  Exhibit A.  For the record,
15  Ms. Flores's numbers for her ATM account
16  number --
17     MR. RAPHAEL:  I didn't give any in the
18  others.
19     MR. BELONGIA:  Right.  I'm not going to.
20     Has been written on a piece of paper.
21  Counsel and I have signed the stipulation of
22  confidentiality.  It has been folded up.  It
23  will be maintained in a safe place within our
24  law firm, not revealed outside of this

                                                16

                        4  (Pages 13 to 16)

1  litigation, and destroyed at the conclusion of
2  the litigation, so as to ensure the safety of
3  the information.
4      It will be marked as Confidential
5  Exhibit A, and the number not read on the
6  record.
7          (WHEREUPON, Flores Deposition
8          Confidential Exhibit A was
9          marked for identification by
10         the attorney.)
11     MR. RAPHAEL: Off the record for a second.
12         (WHEREUPON, a discussion was had
13         off the record.)
14 BY MR. BELONGIA:
15     Q.  Was this the ATM card that was used at
16 the time of the alleged occurrence on --
17     A.  Yes.
18     Q.  -- August 2nd, 2007?
19     A.  Yes.
20     Q.  It's important to add one more ground
21 rule at this point. It's important for the
22 transcript purposes that you wait until I ask
23 the entire question. It's human nature; once I
24 start talking, you know what I'm going to say,

17

1  to answer but we need to get it all on the
2  record clean; okay?
3      A.  Okay.
4      Q.  What bank branch of TCF Bank do you
5  usually use for your financial transactions?
6      A.  I usually go to the one that's close to
7  my house. That's on -- what do you want, the
8  address?
9      Q.  Yes.
10     A.  I don't have the address. I can tell
11 you --
12     Q.  Give me the nearest intersection.
13     A.  It's on Narragansett, close to
14 Diversey. It's a Jewel's.
15     Q.  And your employer is located on
16 Michigan Avenue, correct?
17     A.  Correct.
18     Q.  Whereabouts on Michigan Avenue?
19     A.  South Water.
20     Q.  So can we agree that neither one of
21 those locations is close to Diamond Bank?
22     A.  Yes.
23     Q.  To the best of your recollection, where
24 is Diamond Bank located?

18

1      A.  It's right on Clark and North Avenue.
2      Q.  And prior to using the ATM on
3  August 2nd, 2007, had you ever used the ATM at
4  that bank before?
5      A.  No.
6      Q.  This was the first time you ever used
7  this bank ATM?
8      A.  Yes.
9      Q.  What was the reason you were in the
10 vicinity of Clark and North Avenue on
11 August 2nd, 2007?
12     A.  I was by my chiropractor.
13     Q.  And where is your chiropractor located?
14     A.  My chiropractor is on Wells by North
15 Avenue.
16     Q.  And what's your chiropractor's name?
17     A.  Peak Performance.
18     MR. RAPHAEL: Peak or Pete?
19     THE WITNESS: Peak, P-e-a-k.
20 BY MR. BELONGIA:
21     Q.  And do you have a specific physician
22 that you see at Peak Performance?
23     A.  They changed, so I got a new one now.
24 It's not the same. But it's the same office.

19

1      MR. RAPHAEL: At the time. He's asking you
2  at the time.
3  BY MR. BELONGIA:
4      Q.  Yeah, at the time who was your
5  chiropractor?
6      A.  Dr. Crevy.
7      Q.  How do you spell that?
8      A.  I think it's C-r-e-v-y.
9      Q.  And prior to August 2nd, 2007, for how
10 long a period of time had you been treating with
11 Dr. Crevy at Peak Performance at Wells and North
12 Avenue?
13     A.  About two years.
14     Q.  And is it your testimony that in that
15 two-year period you had never gone to the corner
16 of Clark and North Avenue to utilize the ATM
17 machine at Diamond Bank or any of its
18 predecessors?
19     A.  No, I have not. Not that I can recall.
20     Q.  When you would treat with Dr. Crevy,
21 did you pay by cash, credit card or check?
22     A.  I don't remember.
23     Q.  Was it covered, do you know, by medical
24 insurance?

20

5 (Pages 17 to 20)

```
 1      A.   Part of it is.  So sometimes if I have
 2  the cash, I'll pay cash.  Sometimes credit card.
 3  So I don't remember on that day.
 4      Q.   On August 2nd, 2007, do you recall the
 5  specific reason why you needed to use an ATM
 6  machine?
 7      A.   I can't remember.
 8      Q.   Do you recall specifically how much
 9  money that you took out of the ATM machine at
10  Diamond Bank on August 2nd, 2007?
11      A.   I don't remember.
12      Q.   Do you remember what time of day that
13  you went to the machine to use the machine for
14  whatever purpose?
15      A.   I think it was late afternoon.
16      Q.   Was it before or after your doctor's
17  appointment?
18      A.   I don't remember if it was before or
19  after.
20      Q.   Do you recall typically during that
21  two-year period on and prior to August 2nd,
22  2007, whether your appointments with Dr. Crevy
23  were after work?
24      A.   They're usually after work.
                                              21
```

```
 1      Q.   And do you have a standing appointment
 2  time with Dr. Crevy?
 3      A.   The majority of the time was around --
 4  it's after 4:00, 5:00 o'clock.
 5      Q.   What's your dismissal time from work?
 6  In other words, what time do you leave?
 7      A.   Well, I work -- it's usually
 8  4:00 o'clock, 4:15.  But many times I stay over.
 9      Q.   At the time you used the ATM at Diamond
10  Bank on August 2nd, 2007, was anyone with you?
11      A.   No.
12      Q.   At the time you used the ATM, were you
13  talking on a cell phone?
14      A.   Not that I can remember.
15      Q.   Prior to using the Diamond Bank ATM on
16  August 2nd, 2007, had you ever used an ATM
17  machine before?
18      A.   Yes.
19      Q.   Can you give me an approximate number
20  of times that you used an ATM machine prior to
21  August 2nd, 2007?
22      A.   No.
23      MR. RAPHAEL:  Objection.
24         Wait, pause.
                                              22
```

```
 1      Form of the question.  You can answer.
 2      THE WITNESS:  No.
 3  BY MR. BELONGIA:
 4      Q.   Would it be fair to say it was more
 5  than 100 times?
 6      MR. RAPHAEL:  Same objection, form of the
 7  question.  You can answer.
 8      THE WITNESS:  I don't know how many times.
 9  BY MR. BELONGIA:
10      Q.   You testified earlier that you have
11  three ATM cards, is that correct?
12      A.   Correct.
13      Q.   And had you ever used any of the other
14  two ATM cards, besides the one that you've
15  produced today?
16      A.   Very rarely.
17      Q.   What is the purpose of having these two
18  other ATM cards?
19      A.   I have them joint with my kids.
20      Q.   And that's the next question.  Who else
21  is on these three bank accounts at TCF Bank,
22  besides yourself?
23      MR. RAPHAEL:  Objection.  Form.  You can
24  answer.  Always answer, unless I say don't
                                              23
```

```
 1  answer.  And if you can answer, always answer.
 2  BY MR. BELONGIA:
 3      Q.   The reason I asked is that you just
 4  testified that your children were on the
 5  accounts.  And so now I'm asking --
 6      A.   They're on the other two accounts.  On
 7  this one I'm the only one.
 8      Q.   So let me ask this question.  You have
 9  three total accounts at TCF Bank, correct?
10      A.   Correct.
11      Q.   You're on all three accounts, correct?
12      A.   Correct.
13      Q.   On any one of those three accounts, is
14  there somebody else that's a signatory on those
15  accounts?
16      A.   Like I said, my kids.  Each one of my
17  kids has one account with me.
18      Q.   Again, that's why we ask these
19  questions.  And they may seem redundant or
20  repetitive, but we have to get to the minutia of
21  the details.  That's what lawyers do.
22         So is it fair to say one of the
23  accounts, the account that you accessed on
24  August 2nd, 2007, you're the sole signatory on
                                              24
```

1  that account?
2      A.  That's correct.
3      Q.  You have another account where you have
4  one child as also a signatory, is that right?
5      A.  That's correct.
6      Q.  And that has its own ATM card, is that
7  right?
8      A.  That's correct.
9      Q.  And you have a third account with the
10  other child as the other signatory, correct?
11      A.  That's correct.
12      Q.  And that has, also, another ATM card;
13  correct?
14      A.  That's correct.
15      Q.  But the only thing we care about today
16  that we're talking about is the account that you
17  have with the ATM card that you produced because
18  you're the only signatory on that account,
19  right?
20      A.  That's correct.
21      MR. RAPHAEL:  If there's anything you want me
22  to stipulate to, let me know.
23      MR. BELONGIA:  Okay.
24      MR. RAPHAEL:  Because we'll do it the same

25

1  from the Diamond Bank ATM, on August 2nd?
2      A.  Correct, I don't remember.
3      MR. RAPHAEL:  Objection.  Asked and answered
4  twice.
5      MR. BELONGIA:  And we'll mark this as
6  Exhibit B.
7          (WHEREUPON, Flores Deposition
8          Exhibit B was marked for
9          identification.)
10  BY MR. BELONGIA:
11      Q.  Looking at Exhibit B, do you recognize
12  what is represented to be Exhibit B?
13      MR. RAPHAEL:  Can we stipulate that it's the
14  same?  It's Flores 1.
15      MR. BELONGIA:  Yes.
16      THE WITNESS:  I'm sorry?
17      MR. RAPHAEL:  Do you recognize that?
18      THE WITNESS:  Yes.
19  BY MR. BELONGIA:
20      Q.  What is it?
21      A.  It's the receipt that I got after I
22  withdrew the money.
23      Q.  Does this refresh your recollection as
24  to the amount of money you withdrew from the

27

1  way we did it at the other deps.  We'll try to
2  stipulate.
3          Stipulate means agree to it.
4      THE WITNESS:  Okay.
5  BY MR. BELONGIA:
6      Q.  And so I'm correct you testified a
7  little bit earlier that you don't recall the
8  specific purpose for why you were accessing or
9  using the ATM at Diamond Bank on August 2nd,
10  correct?
11      A.  Correct.  I can't remember.
12      Q.  And is it fair to say you don't
13  remember how much money -- strike that.
14          Going to the actual transaction at the
15  ATM, do you remember whether you withdrew money
16  or made a deposit?
17      A.  At Diamond Bank?
18      Q.  Correct.
19      A.  It would be to withdraw money.
20      Q.  And is it fair to say you did not make
21  a deposit at that time, correct?
22      A.  Correct.
23      Q.  And am I correct that you do not recall
24  how much money that you took out from the ATM,

26

1  Diamond Bank ATM?
2      A.  Yeah, it stated $50.
3      Q.  Now that you can recall that it was
4  $50, do you remember what you used that $50 for?
5      A.  No.
6      MR. RAPHAEL:  Say it louder so she can --
7  you're going to drive her crazy.  You're so
8  soft.
9      THE WITNESS:  I'm sorry.
10  BY MR. BELONGIA:
11      Q.  So it would be fair to say that after
12  you withdrew the money you completed your
13  transactions at the ATM at Diamond Bank?
14      A.  Yes.
15      Q.  You didn't deposit any of the money
16  back into your account, correct?
17      A.  No.
18      MR. RAPHAEL:  Do you want me to stipulate
19  there was no deposit made?
20      MR. BELONGIA:  Yes.
21      MR. RAPHAEL:  We're stipulating no deposit
22  was made by my client into the Diamond Bank
23  account.
24          We withdrew Count 2 of the Complaint, I

28

7 (Pages 25 to 28)

1  think; right?
2       MR. BELONGIA: Yeah.
3       MR. RAPHAEL: Was it Count 2 or Count 1?
4       MR. BELONGIA: Count 2.
5       MR. RAPHAEL: So if you want to reopen it for
6  being subject to, you know, admissible to --
7       MR. BELONGIA: No.
8       MR. RAPHAEL: -- discovery, you can keep
9  asking the questions and then I'll start asking
10  your client those questions. But I've steered
11  away from them.
12  BY MR. BELONGIA:
13      Q.  When you first -- strike that.
14          Not having ever used this ATM before at
15  Diamond Bank, what made you decide to use the
16  ATM at Diamond Bank versus some other location?
17      MR. RAPHAEL: Objection. Form and
18  foundation. You can answer.
19      THE WITNESS: Well, it was the bank I
20  remembered seeing when I go to the chiropractor,
21  so I stopped there when I needed the cash.
22  BY MR. BELONGIA:
23      Q.  How do you get from -- strike that.
24          Did you on August 2nd, 2007, go

                                                29

1  directly from your employer to Dr. Crevy's
2  office?
3      A.  Yes.
4      Q.  What route did you take from
5  Dr. Crevy's -- from work to Dr. Crevy's office?
6      A.  I have a couple of routes, so I don't
7  remember that day which route I took.
8      Q.  Well, describe for me the routes and
9  the alternative routes that you take.
10      A.  I take the Clark bus down to -- I think
11  it's Armitage. And then I walk the half block
12  or block there.
13      Q.  Whereabouts on Wells Street is
14  Dr. Crevy's office?
15      A.  It's right on Wells between North
16  Avenue and that other street. Is it Armitage?
17      MR. RAPHAEL: You're looking at the wrong guy
18  because I actually told him I've never been to
19  Diamond Bank.
20          You've been there, so you know what
21  she's talking about. I don't.
22      THE WITNESS: The next big street after North
23  Avenue. I think it's Armitage.
24      MR. RAPHAEL: And by the way, you can't ask

                                                30

1  him or me questions. So even though you're
2  saying it in a questioning type of fashion, it's
3  coming out as if you are saying this as an
4  emphatic statement. So if you don't know
5  exactly, tell him. Otherwise --
6  BY MR. BELONGIA:
7      Q.  What other routes do you take, besides
8  the route you just described?
9      A.  I take the Brown Line to Sedgwick, and
10  then I walk down.
11      Q.  Where do you pick up the Brown Line?
12      A.  On State and Lake.
13      Q.  Besides the Brown Line and the Clark
14  bus, is there any other way you get from your
15  work to Dr. Crevy's office?
16      A.  No.
17      Q.  Do you know if there are any other
18  ATM's within a one-block radius of Dr. Crevy's
19  office, besides Diamond Bank?
20      MR. RAPHAEL: Objection. Form of the
21  question.
22      THE WITNESS: No, not that I can remember
23  seeing any.
24

                                                31

1  BY MR. BELONGIA:
2      Q.  On August 2nd, 2007, when you used the
3  ATM machine at Diamond Bank, did you look at the
4  machine to see whether or not there was a fee
5  notice placed on the machine?
6      A.  Yes.
7      Q.  Why did you look on the machine --
8      A.  I always do.
9      Q.  -- to see whether or not there was a
10  fee notice?
11      A.  I always do.
12      Q.  Why do you always look?
13      A.  To see if I'm going to get charged a
14  fee.
15      Q.  Prior to August 2nd, 2007, had you ever
16  been charged a fee for using a bank that was not
17  a TCF Bank?
18      A.  I don't remember if it was before or
19  after. I don't remember.
20      Q.  When did you open up your account?
21  When I say account, we're just talking about
22  this specific one account you identified that
23  you're the sole signatory at TCF Bank.
24      A.  Several years ago. I don't remember

                                                32

8 (Pages 29 to 32)

1 how long.
2     Q.  When you opened up that account at TCF
3 Bank, do you recall getting any type of
4 disclosures from the bank concerning your
5 account?
6     A.  I don't remember.
7     Q.  Do you recall getting a disclosure from
8 TCF Bank that anytime you performed an ATM cash
9 withdrawal from a non-TCF Bank that you may be
10 charged a fee by that other bank?
11     MR. RAPHAEL:  Objection.  Form and
12 foundation.
13     THE WITNESS:  I don't remember getting -- if
14 they did, I don't remember.
15 BY MR. BELONGIA:
16     Q.  The ATM at Diamond Bank, where was that
17 located?  Was it in the inside or the outside of
18 the building?
19     A.  It's on the outside of the building.
20     Q.  And you testified that the bank is at
21 Clark and North Avenue, is that right?
22     A.  No.  I'm sorry.  I'm wrong on that
23 one -- yeah, it is Clark and North Avenue.
24     Q.  On what side of the building was the

33

1 the ATM whether or not you had to wait for
2 anyone in front of you to finish a transaction
3 at the machine?
4     A.  There was no one there.
5     Q.  While you were performing your
6 transaction at the machine, was anyone waiting
7 in line behind you for you to finish your
8 transaction?
9     A.  No.
10     Q.  You testified that you always look at
11 the machine to see if there's a fee notice
12 posted on the machine before you do a
13 transaction, correct?
14     A.  Correct.
15     Q.  If you see a fee notice on a non-TCF
16 Bank, do you -- strike that.
17     On and prior to August 2nd, 2007, when
18 you would look at an ATM machine that was a
19 non-TCF Bank machine and you did not see a fee
20 notice, would you continue with the transaction?
21     MR. RAPHAEL:  Objection.  Form.  You can
22 answer.
23     THE WITNESS:  If I did not see a fee notice?
24 Yes.

35

1 ATM, Clark or North Avenue?
2     A.  It's on --
3     MR. RAPHAEL:  You can't use your hands to
4 gesture.
5     THE WITNESS:  I'm thinking.  I'm sorry.  It's
6 on Clark.
7 BY MR. BELONGIA:
8     Q.  And was it closer to the North Avenue
9 side of the building, or was it closer to the
10 other side of the building farthest away from
11 North Avenue?
12     A.  It's closer to North Avenue.
13     Q.  As you're looking at the building and
14 standing on Clark, is the ATM on the right --
15 strike that.
16     Do you recall where the entrance to the
17 bank is located?
18     A.  No.
19     Q.  Is it on the North Avenue side or the
20 Clark side?
21     A.  I don't remember.
22     MR. RAPHAEL:  Objection.  Form.  Go ahead.
23 BY MR. BELONGIA:
24     Q.  Do you remember when you went to use

34

1 BY MR. BELONGIA:
2     Q.  If you saw a fee notice on a non-TCF
3 Bank, would you continue to consummate the
4 transaction at the machine?
5     MR. RAPHAEL:  Same objection, form.
6     THE WITNESS:  If I see a fee notice, I try
7 and go to another bank that doesn't have one.
8 If it's -- thinking it's free.
9 BY MR. BELONGIA:
10     Q.  On August 2nd, 2007, when you used the
11 ATM at Diamond Bank, was it your understanding,
12 based on your testimony of a moment ago, that
13 the transaction would be free?
14     THE WITNESS:  Yes.
15     MR. RAPHAEL:  Objection.  Form.  But go
16 ahead.
17 BY MR. BELONGIA:
18     Q.  When you were consummating your
19 transaction at the ATM machine at Diamond Bank,
20 do you recall seeing an on-screen notice on that
21 ATM alerting you to the fact that you were going
22 to be charged a fee because you were a
23 non-Diamond Bank customer?
24     MR. RAPHAEL:  Objection to form.  Go ahead.

36

9  (Pages 33 to 36)

1    THE WITNESS: I saw a fee, yes, after I
2    started the transaction.
3    BY MR. BELONGIA:
4        Q.  And did you continue with the
5    transaction after seeing the notice that you
6    were going to be charged a fee?
7        A.  Yes.
8        Q.  Let me ask you, the next question is,
9    why did you continue to consummate the
10   transaction after you were alerted that you were
11   going to be charged a fee?
12       MR. RAPHAEL: Objection to form. Go ahead.
13       THE WITNESS: I was already in the
14   transaction, so I just finished it off and --
15   BY MR. BELONGIA:
16       Q.  Would you agree with me that if you
17   would have chosen not to be charged a fee
18   pursuant to the on-screen notice that the
19   transaction would have stopped and you would not
20   have been charged a fee?
21       MR. RAPHAEL: Objection. Foundation. Go
22   ahead.
23       THE WITNESS: I'm sorry, repeat that again.
24
                                                    37

1    BY MR. BELONGIA:
2        Q.  Do you agree with me that upon seeing
3    this on-screen notice that you were about to be
4    charged a fee that if you chose no, not to
5    continue with the transaction, that you, in
6    fact, would have not been charged for any
7    transaction?
8        MR. RAPHAEL: Same objection.
9        THE WITNESS: Okay. Yes.
10   BY MR. BELONGIA:
11       Q.  But you chose to continue with the
12   transaction after seeing the on-screen notice of
13   the fee, correct?
14       A.  Yes.
15       MR. RAPHAEL: Off the record.
16       (WHEREUPON, a discussion was had
17       off the record.)
18   BY MR. BELONGIA:
19       Q.  After you completed the transaction,
20   you were issued a receipt; is that correct?
21       A.  Yes.
22       Q.  And after getting the receipt from the
23   ATM, would you agree with me that the ATM
24   identified a charge on that receipt?
                                                    38

1        A.  Yes.
2        Q.  Is it fair to say Exhibit B, which is
3    in front of you, Flores Bates Stamp 1,
4    identifies that you were charged a $2 fee; is
5    that right?
6        A.  Yes.
7        Q.  After receiving that receipt, did you
8    ever contact anyone at Diamond Bank to object to
9    the fee being charged for the transaction?
10       MR. RAPHAEL: Objection. Form.
11       THE WITNESS: No.
12   BY MR. BELONGIA:
13       Q.  Would it be fair to say you did not
14   contact anyone at Diamond Bank to object to the
15   fee because you had chosen to proceed with the
16   transaction after reading the on-screen notice
17   that you were going to be charged a fee?
18       A.  Can you repeat that?
19       MR. BELONGIA: Can you read that back?
20       (WHEREUPON, the record was read
21       by the reporter as requested.)
22       THE WITNESS: Yes.
23   BY MR. BELONGIA:
24       Q.  Do you recall on August 2nd, 2007,
                                                    39

1    observing any signage on the ATM at Diamond
2    Bank?
3        MR. RAPHAEL: Objection. Form.
4        THE WITNESS: I don't remember seeing
5    anything else.
6    BY MR. BELONGIA:
7        Q.  And when you say anything else, what
8    did you see?
9        MR. RAPHAEL: Same objection, form.
10       THE WITNESS: I didn't see any notice on
11   there. And I don't remember seeing anything on
12   the ATM.
13   BY MR. BELONGIA:
14       Q.  Is it your testimony that if you had
15   seen a fee notice on the ATM machine you
16   wouldn't -- you would have not used that ATM and
17   chosen an alternative ATM?
18       MR. RAPHAEL: Objection. Form of the
19   question, foundation, calls for speculation.
20   You can answer.
21       THE WITNESS: I probably would have. I don't
22   know.
23   BY MR. BELONGIA:
24       Q.  Well, you gave two answers there so
                                                    40

**10 (Pages 37 to 40)**

**Page 41**

1  let's explore that a little further.
2  A.  Sorry.
3  Q.  You said, I probably would have but
4  maybe -- I didn't quite understand the response.
5  This is very simple.  If you had seen a
6  fee notice on any ATM on August 2nd, 2007, would
7  you have chosen to use a different ATM instead
8  of the ATM at Diamond Bank?  Go.
9  MR. RAPHAEL:  Objection.  Foundation, form of
10  the question, calls for speculation, incomplete
11  hypothetical.  Subject to that, you can answer.
12  THE WITNESS:  I'm not sure.
13  BY MR. BELONGIA:
14  Q.  Why are you not sure?
15  MR. RAPHAEL:  Same objection.
16  THE WITNESS:  Like I said before, I would try
17  and find a bank that didn't have the sticker,
18  and I'm not sure if I would have.
19  BY MR. BELONGIA:
20  Q.  Have you ever used an ATM at Diamond
21  Bank since August 2nd, 2007?
22  A.  No.
23  Q.  Have you yourself ever taken
24  photographs of the ATM at Diamond Bank?

**Page 42**

1  A.  No.
2  Q.  Do you have any friends or family who
3  are plaintiffs in any pending class action
4  cases?
5  MR. RAPHAEL:  Objection.  Foundation.  Let me
6  think about this for a second because I don't
7  know if it's work product or attorney-client
8  privilege.
9  Can I ask you a question?
10  MR. BELONGIA:  Yeah.
11  MR. RAPHAEL:  I don't know the answer to the
12  question you just asked her.  But I'm concerned
13  that if any of them are and they're not on file
14  and she doesn't know about it and it's not a
15  public record.  And it would be attorney-client
16  or work product information --
17  MR. BELONGIA:  It's regarding pending class
18  actions.  So if it's not filed, then
19  obviously --
20  MR. RAPHAEL:  So if you know if anything is
21  on file.
22  For any friends, family or relatives;
23  did you say?
24  MR. BELONGIA:  Correct.

**Page 43**

1  THE WITNESS:  I don't know.
2  BY MR. BELONGIA:
3  Q.  Prior to the Smith case and the current
4  case against Diamond Bank, have you ever engaged
5  the office of Mr. Raphael before for any legal
6  purpose?
7  A.  No.
8  Q.  After you left the ATM on August 2nd,
9  2007, where did you go?
10  A.  I don't remember.
11  Q.  Prior to August 2nd, 2007, had you ever
12  walked up to an ATM machine that did not have a
13  fee notice, perform a transaction and not get
14  charged an ATM fee?
15  MR. RAPHAEL:  Objection.  Form.
16  THE WITNESS:  I don't remember.  I don't
17  remember.
18  BY MR. BELONGIA:
19  Q.  As you sit here today, do you know of
20  any non-TCF Bank ATM machines that you can use
21  to perform a withdrawal of cash that will not
22  charge you a fee?
23  MR. RAPHAEL:  Objection.  Form.  You can
24  answer.

**Page 44**

1  THE WITNESS:  I think it's WaMu.
2  BY MR. BELONGIA:
3  Q.  So it's your understanding that even
4  though you're not a WaMu customer you can use
5  their machines to withdraw money and not pay a
6  fee?
7  A.  Right.
8  Q.  Do you have any knowledge as to who
9  removed the ATM fee notice from the Diamond Bank
10  ATM?
11  MR. RAPHAEL:  Objection.  Form of the
12  question, foundation, assumes facts not in
13  evidence.
14  THE WITNESS:  No.
15  MR. BELONGIA:  It was worth asking.  You
16  never know.
17  MR. RAPHAEL:  We don't even know that it was
18  removed.
19  BY MR. BELONGIA:
20  Q.  Prior to August 2nd, 2007, were you,
21  Carmen Flores, aware of the legal requirement
22  that a bank post an ATM fee notice on an ATM
23  machine?
24  A.  Yes.

11 (Pages 41 to 44)

**Page 45**

```
 1      Q.  And how did you know that?
 2      A.  My daughter told me.
 3      Q.  When did your daughter tell you?
 4      A.  I don't remember that.
 5      Q.  How soon before August 2nd, 2007, did
 6  she tell you that?
 7      A.  I don't remember.
 8      Q.  Do you know how she knew that?
 9      A.  Through her friend.
10      MR. RAPHAEL:  Objection. Foundation, form.
11  BY MR. BELONGIA:
12      Q.  And do you know who her friend is?  A
13  name?
14      MR. RAPHAEL:  Tell him, if you know. If you
15  don't know, then you don't know.  This isn't a
16  memory test.  Don't feel bad if you don't know
17  questions or answers that he's asking.  If you
18  don't remember, say I don't remember and that's
19  okay.
20      THE WITNESS:  I don't know who told her. She
21  said it was a friend.
22  BY MR. BELONGIA:
23      Q.  Did you ever talk to that friend, or is
24  it just solely a friend?
```

**Page 46**

```
 1      A.  She's just a friend.  I don't know who
 2  told her.
 3      Q.  Do you know if that friend was a
 4  plaintiff in any pending litigation regarding
 5  ATM fee notices?
 6      A.  When she told me it was a friend, she
 7  didn't tell me who the friend was at the time.
 8  So I don't know who the friend was.
 9      Q.  Can you tell me about the conversation
10  you had with your daughter about the legal
11  requirement that fee notices be posted on an ATM
12  machine?  In other words, how did this
13  conversation first start?
14      A.  I don't remember how it started but she
15  just -- I remember her telling me about it.  But
16  I don't remember how it started.
17      Q.  Was this a conversation she just out of
18  the blue said, hey, by the way, did you know the
19  fabulous fact that ATM's need to have fee
20  notices posted, or was this in response to
21  something you said to her?
22      A.  I don't remember.  I don't remember how
23  it started.  We sometimes talk about things, and
24  it must have come up.
```

**Page 47**

```
 1      Q.  What did you do after this conversation
 2  with your daughter where you learned that,
 3  according to your daughter, an ATM has to have a
 4  fee set and posted on its face?
 5      A.  Nothing.
 6      Q.  Obviously, at some point you did do
 7  something, because we're sitting here today with
 8  counsel here, who has filed a lawsuit on your
 9  behalf and behalf of others regarding the
10  alleged failure of the ATM at Diamond Bank to
11  have a fee sign posted.
12      So would it be fair to say at some
13  point you engaged counsel, is that right?
14      A.  Yes.
15      Q.  And as a ground rule, we're going to
16  state right now, and your lawyer is going to
17  agree with me, that any of my questions from
18  here forth when I ask you something I'm not
19  asking you anything that you talked about with
20  counsel, anything that you shared with counsel,
21  any documents you gave him.
22      Those are all attorney-client,
23  attorney-work product, and those are all
24  privileged; okay?  So I'm not asking about any
```

**Page 48**

```
 1  of those things.
 2      MR. RAPHAEL:  I'm in agreement with him.
 3      THE WITNESS:  Okay.
 4      MR. RAPHAEL:  He said I was going to agree
 5  with him, and he was right.
 6  BY MR. BELONGIA:
 7      Q.  So I'm not inquiring into any of those
 8  things, and I don't want to know any of your
 9  conversations.
10      MR. RAPHAEL:  So when he asks you a question,
11  if you can answer it without referencing
12  anything I may have told you or any of the
13  people working at my office may have told you,
14  cool.  If not, you can't answer it.
15      THE WITNESS:  Okay.
16  BY MR. BELONGIA:
17      Q.  The alleged transaction at the alleged
18  deficient ATM occurred on August 2nd, 2007, and
19  the lawsuit was filed on November 21st, 2007.
20      Do you recall approximately when you
21  first contacted Mr. Raphael to discuss a
22  potential lawsuit?
23      A.  No.
24      Q.  Would it be fair to say that you did
```

1  not participate in the drafting of the lawsuit?
2      MR. RAPHAEL:  Objection.  Form.
3      THE WITNESS:  What do you mean in the
4  drafting of the lawsuit?
5  BY MR. BELONGIA:
6      Q.  You didn't sit at a computer and work
7  on a draft lawsuit with Mr. Raphael?  You left
8  that to the attorneys to prepare the pleadings,
9  is that right?
10     A.  The attorney does everything for me.
11     Q.  And I believe you testified – and if I
12  already asked this and you answered, I
13  apologize.  I'm getting old and senile.
14         But you did not ever take any
15  photographs of the ATM at issue, correct?
16     A.  That's correct.
17     Q.  Prior to coming to this deposition
18  today, did you review any documents to prepare
19  for this deposition?
20     MR. RAPHAEL:  I'm going to object to work
21  product, attorney-client privilege but I'll let
22  her – without waiving that objection and
23  subject to that objection, answer the question.
24     THE WITNESS:  I just looked –

49

1      MR. RAPHAEL:  He asked a yes or no question.
2      THE WITNESS:  Oh, I'm sorry.  Yes.
3  BY MR. BELONGIA:
4      Q.  What documents did you review?
5      MR. RAPHAEL:  Now I'm going to object based
6  on the work product and attorney-client
7  privilege and instruct my client not to answer
8  that question.
9         If you ask a different question, it'll
10  be okay.
11  BY MR. BELONGIA:
12     Q.  Did you review photographs?
13     MR. RAPHAEL:  I'm not objecting.
14     THE WITNESS:  Yes.
15     MR. BELONGIA:  And can we stipulate those are
16  the photographs that you have not yet produced
17  in this case?
18     MR. RAPHAEL:  No, I wouldn't stipulate to
19  that.  That would be problematic.
20  BY MR. BELONGIA:
21     Q.  What photographs did you review?
22     MR. RAPHAEL:  If you can tell him, you can
23  answer.
24     THE WITNESS:  It was of the ATM at the

50

1  Diamond Bank.
2  BY MR. BELONGIA:
3      Q.  Were these photographs taken after the
4  time that you used the machine?
5      MR. RAPHAEL:  Objection.  Foundation.
6      THE WITNESS:  I wouldn't know.
7      MR. RAPHAEL:  You want me to make this
8  easier?
9      MR. BELONGIA:  Yeah.
10     MR. RAPHAEL:  I showed her the website photo,
11  and the two photos you guys took.  If you would
12  ask her about those photos, she would have some
13  familiarity with them.
14     MR. BELONGIA:  Okay.
15     MR. RAPHAEL:  And as far as I know, I didn't
16  show her any other photos, other than those.
17  BY MR. BELONGIA:
18     Q.  After you completed your transaction at
19  the ATM at Diamond Bank on August 2nd, 2007, did
20  you ever notify anyone at the bank to alert them
21  to the fact that the ATM did not have a fee sign
22  posted on its face?
23     MR. RAPHAEL:  Objection.  Asked and answered.
24  You can answer.

51

1      THE WITNESS:  No.
2  BY MR. BELONGIA:
3      Q.  And earlier you testified that you
4  never notified them that you were charged a fee,
5  but this was about whether or not you notified
6  them about the fee sign being posted.
7         And why did you not choose to notify
8  them of the fee notice not being on the ATM
9  machine?
10     MR. RAPHAEL:  Objection.  Form of the
11  question.  You can answer.
12     THE WITNESS:  I didn't think about it at the
13  time.
14  BY MR. BELONGIA:
15     Q.  I guess I'll ask a follow-up question
16  here.  Why didn't you think about it at the
17  time?
18     MR. RAPHAEL:  Objection.  Form, foundation,
19  calls for speculation.
20     THE WITNESS:  I don't know.
21  BY MR. BELONGIA:
22     Q.  Prior to today, besides this incident
23  at Diamond Bank, besides the incident at Credit
24  Union 1, has there been any other instance where

52

13  (Pages 49 to 52)

**Page 53**

1  you used an ATM machine that did not have a fee
2  sign posted and you were charged for the
3  transaction?
4      A.  I can't remember right now.
5      MR. BELONGIA:  Just give me a minute here.
6      MR. RAPHAEL:  You're almost done?
7      MR. BELONGIA:  Yeah.
8  BY MR. BELONGIA:
9      Q.  Do you recall while performing the
10  transaction at the ATM at Diamond Bank what
11  specifically the fee notice said on the screen?
12      A.  On the screen?
13      Q.  Correct.
14      A.  It said $2.
15      Q.  And it said you would be charged $2 if
16  you continued with the transaction, is that
17  right?
18      A.  Yes.
19      Q.  And we agree that you continued with
20  the transaction?
21      A.  Yes.
22      Q.  After you leave the doctor's office, do
23  you typically go home from there?
24      A.  Most of the time.

**Page 54**

1      Q.  How do you get home from the doctor's
2  office?  Do you take the El or take a cab?
3      A.  I take the El.
4      Q.  And that's the Brown Line that you use?
5      A.  Yes.
6      Q.  Do you recall after using the ATM at
7  Diamond Bank whether you proceeded to take the
8  El home, or did you take a cab?
9      A.  I know I don't take cabs, so I don't
10  remember if I took the El home.
11      Q.  If you don't use the El, what other way
12  do you use to get home?
13      A.  I take a walk down Clark by the lake
14  going north.
15      Q.  And how long does it take you to walk
16  home?
17      A.  Well, I don't walk all the way home.  I
18  just walk up one of the big streets, maybe
19  Diversey, and then take the bus.
20      MR. BELONGIA:  Nothing further.  I'll order.
21  Signature?
22      MR. RAPHAEL:  Reserved.  I might have a
23  question.  Off the record for a second.
24

**Page 55**

1      (WHEREUPON, a discussion was had
2      off the record.)
3  MR. BELONGIA:  We're done.
4      (FURTHER DEPONENT SAITH NAUGHT.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**Page 56**

1      IN THE UNITED STATES DISTRICT COURT
2      FOR THE NORTHERN DISTRICT OF ILLINOIS
3      EASTERN DIVISION
4  CARMEN FLORES,          )
5  individually and on     )
6  behalf of all others    )  No. 07 C 6403
7  similarly situated,     )  Judge Hibbler
8      Plaintiff,  )  Magistrate
9  vs.             )  Judge Valdez
10  DIAMOND BANK,           )
11      Defendant.  )
12      I, CARMEN FLORES, being first duly sworn,
13  on oath say that I am the deponent in the
14  aforesaid deposition taken on June 24, 2008;
15  that I have read the foregoing transcript of my
16  deposition, and affix my signature to same.
17
18      _____
    CARMEN FLORES
18
19  Subscribed and sworn to
    before me this      day
20  of        , 2008
21
22  Notary Public
23
24

14  (Pages 53 to 56)

1  STATE OF ILLINOIS    )
2                       ) SS:
3  COUNTY OF C O O K    )
4      I, KIMBERLEY M. TITSWORTH, a notary
5  public within and for the County of Cook County
6  and State of Illinois, do hereby certify that
7  heretofore, to-wit, on June 24, 2008, personally
8  appeared before me, at 53 West Jackson
9  Boulevard, Suite 315, Chicago, Illinois,
10 CARMEN FLORES, in a cause now pending and
11 undetermined in the United States District
12 Court, Northern District, wherein CARMEN FLORES,
13 individually and on behalf of all others
14 similarly situated, is the Plaintiff, and
15 DIAMOND BANK is the Defendant.
16     I further certify that the said
17 CARMEN FLORES was first duly sworn to testify
18 the truth, the whole truth and nothing but the
19 truth in the cause aforesaid; that the testimony
20 then given by said witness was reported
21 stenographically by me in the presence of the
22 said witness, and afterwards reduced to
23 typewriting by Computer-Aided Transcription, and
24 the foregoing is a true and correct transcript

57

1  of the testimony so given by said witness as
2  aforesaid.
3      I further certify that the signature to
4  the foregoing deposition was reserved by counsel
5  for the respective parties and that there were
6  present at the deposition the attorneys
7  hereinbefore mentioned.
8      I further certify that I am not counsel
9  for nor in any way related to the parties to
10 this suit, nor am I in any way interested in the
11 outcome thereof.
12     IN TESTIMONY WHEREOF: I have hereunto
13 set my hand and affixed my notarial seal this
14     day of        , 2008.
15
16
17
18
19  _Kimberley M. Titsworth_
20  NOTARY PUBLIC, COOK COUNTY, ILLINOIS
21
22
23
24

58

McCorkle Court Reporters, Inc.
200 N. LaSalle Street, Suite 300
Chicago, Illinois 60601-1014

DATE: June 27, 2008
Consumer Advocacy Center, P.C.
ATTN: Mr. Lance A. Raphael
180 West Washington Street, Suite 700
Chicago, Illinois 60602
IN RE: Flores vs. Diamond Bank
COURT NUMBER: 07 C 6403
DATE TAKEN: June 24, 2008
DEPONENT: Carmen Flores

Dear Mr. Raphael:

Enclosed is the deposition transcript for the aforementioned deponent in the above-entitled cause. Also enclosed are additional signature pages, if applicable, and errata sheets.
Per your agreement to secure signature, please submit the transcript to the deponent for review and signature. All changes or corrections must be made on the errata sheets, not on the transcript itself. All errata sheets should be signed and all signature pages need to be signed and notarized.
After the deponent has completed the above, please return all signature pages and errata sheets to me at the above address, and I will handle distribution to the respective parties.

If you have any questions, please call me at the phone number below.
Sincerely,
Margaret Setina      Court Reporter:
Signature Department   Kimberley M. Titsworth

cc: Mr. Belongia

59

15 (Pages 57 to 59)

57

1    STATE OF ILLINOIS    )

2                    )   SS:

3    COUNTY OF C O O K    )

4        I, KIMBERLEY M. TITSWORTH, a notary

5    public within and for the County of Cook County

6    and State of Illinois, do hereby certify that

7    heretofore, to-wit, on June 24, 2008, personally

8    appeared before me, at 53 West Jackson

9    Boulevard, Suite 315, Chicago, Illinois,

10    CARMEN FLORES, in a cause now pending and

11    undetermined in the United States District

12    Court, Northern District, wherein CARMEN FLORES,

13    individually and on behalf of all others

14    similarly situated, is the Plaintiff, and

15    DIAMOND BANK is the Defendant.

16        I further certify that the said

17    CARMEN FLORES was first duly sworn to testify

18    the truth, the whole truth and nothing but the

19    truth in the cause aforesaid; that the testimony

20    then given by said witness was reported

21    stenographically by me in the presence of the

22    said witness, and afterwards reduced to

23    typewriting by Computer-Aided Transcription, and

24    the foregoing is a true and correct transcript

58

1    of the testimony so given by said witness as

2    aforesaid.

3         I further certify that the signature to

4    the foregoing deposition was reserved by counsel

5    for the respective parties and that there were

6    present at the deposition the attorneys

7    hereinbefore mentioned.

8         I further certify that I am not counsel

9    for nor in any way related to the parties to

10   this suit, nor am I in any way interested in the

11   outcome thereof.

12        IN TESTIMONY WHEREOF:  I have hereunto

13   set my hand and affixed my notarial seal this

14   27 day of June       , 2008.

15

16

17

18

19   _Kimberley M. Titsworth_

20        NOTARY PUBLIC, COOK COUNTY, ILLINOIS

21

22

23

24

**A**

above-ent...
1:14 59:11
accessed
24:23
accessing
26:8
accord
4:10
account
13:7 14:24
16:15 24:17
24:23 25:1
25:3,9,16
25:18 28:16
28:23 32:20
32:21,22
33:2,5
accounting
8:16,17
accounts
13:9,10,20
13:23 14:3
14:11,23,23
23:21 24:5
24:6,9,11
24:13,15,23
action
42:3
actions
12:24 42:18
actual
26:14
additional
59:11
address
6:23 18:8,10
59:18
admissible
29:6
Advocacy
2:2 59:4
affix
56:16
affixed
58:13
aforement...
59:11
aforesaid
56:14 57:19
58:2
afternoon

21:15
age
7:11
ago
32:24 36:12
agree
18:20 26:3
37:16 38:2
38:23 47:17
48:4 53:19
agreement
4:12 48:2
59:13
alert
51:20
alerted
37:10
alerting
36:21
alleged
13:18 17:16
47:10 48:17
48:17
alternative
30:9 40:17
amount
27:24
anytime
33:8
apologize
49:13
APPEARANCES
2:1
appeared
57:8
applicable
4:11 59:12
appointment
21:17 22:1
appointments
21:22
approved
12:15
approximate
22:19
approxima...
48:20
Armitage
30:11,16,23
assumes
44:12
ATM

14:2,5,9,22
15:7,9,22
16:3,9,15
17:15 19:2
19:3,7
20:16 21:5
21:9 22:9
22:12,15,16
22:20 23:11
23:14,18
25:6,12,17
26:9,15,24
27:1 28:1
28:13 29:14
29:16 32:3
33:8,16
34:1,14
35:1,18
36:11,19,21
38:23,23
40:1,12,15
40:16,17
41:6,7,8,20
41:24 43:8
43:12,14,20
44:9,10,22
44:22 46:5
46:11 47:3
47:10 48:18
49:15 50:24
51:19,21
52:8 53:1
53:10 54:6
ATM's
31:18 46:19
attend
8:11
attended
8:12,12
ATTN
59:5
attorney
6:6 11:18
17:10 49:10
attorneys
49:8 58:6
attorney-...
12:3 42:7,15
47:22 49:21
50:6
attorney-...
47:23

August
13:19 17:18
19:3,11
20:9 21:4
21:10,21
22:10,16,21
24:24 26:9
27:1 29:24
32:2,15
35:17 36:10
39:24 41:6
41:21 43:8
43:11 44:20
45:5 48:18
51:19
Avenue
9:2 18:16,18
19:1,10,15
20:12,16
30:16,23
33:21,23
34:1,8,11
34:12,19
aware
44:21

**B**

background
6:11
bad
45:16
bank
1:10 6:6,6
12:13 13:7
13:9,10,20
13:22,23
14:3,3,20
14:21,23,24
15:8,22
18:4,4,21
18:24 19:4
19:7 20:17
21:10 22:10
22:15 23:21
23:21 24:9
26:9,17
27:1 28:1
28:13,22
29:15,16,19
30:19 31:19
32:3,16,17
32:23 33:3

33:4,8,9,10
33:16,20
34:17 35:16
35:19 36:3
36:7,11,19
36:23 39:8
39:14 40:2
41:8,17,21
41:24 43:4
43:20 44:9
44:24 47:10
51:1,19,20
52:23 53:10
54:7 56:10
57:15 59:7
bankruptcy
9:24 10:2,3
10:6,9,15
10:19
based
36:12 50:5
basis
12:16
Bates
39:3
behalf
1:6 47:9,9
56:6 57:13
Belongia
2:10,11 3:4
4:3,7,9,16
4:23 5:7,14
5:21 6:3,10
6:22 10:10
10:13,20
12:6,9,18
14:18 15:11
16:5,11,14
16:19 17:14
19:20 20:3
23:3,9 24:2
25:23 26:5
27:5,10,15
27:19 28:10
28:20 29:2
29:4,7,12
29:22 31:6
32:1 33:15
34:7,23
36:1,9,17
37:3,15
38:1,10,18

39:12,19,23
40:6,13,23
41:13,19
42:10,17,24
43:2,18
44:2,15,19
45:11,22
48:6,16
49:5 50:3
50:11,15,20
51:2,9,14
51:17 52:2
52:14,21
53:5,7,8
54:20 55:3
59:23
best
18:23
big
30:22 54:18
block
30:11,12
blue
46:18
Book
8:22,23
Boulevard
1:17 2:12
57:9
branch
18:4
break
5:22,23 6:1
6:1
brief
6:4
brought
6:7 12:13
Brown
31:9,11,13
54:4
building
33:18,19,24
34:9,10,13
bus
30:10 31:14
54:19
business
8:15

____C____
cab

54:2,8
cabs
54:9
calculate
7:12
capital
7:5,6
card
14:2,13
15:14 16:3
17:15 20:21
21:2 25:6
25:12,17
cards
14:5,8,22
15:23 23:11
23:14,18
Carmen
1:4,13 3:3
4:5 6:18
10:12 44:21
56:4,12,17
57:10,12,17
59:8
carry
14:6,10
case
4:18 6:7
11:3,8,12
12:11,13,19
12:20 13:4
16:2 43:3,4
50:17
cases
13:5 42:4
cash
20:21 21:2,2
29:21 33:8
43:21
cause
1:14 57:10
57:19 59:11
cc
59:23
ceilings
4:24
cell
22:13
Center
2:2 59:4
certificate
8:8

certify
57:6,16 58:3
58:8
changed
19:23
changes
59:14
charge
38:24 43:22
charged
32:13,16
33:10 36:22
37:6,11,17
37:20 38:4
38:6 39:4,9
39:17 43:14
52:4 53:2
53:15
check
20:21
Chicago
1:18 2:6,14
7:1,7 9:3
57:9 59:2,6
child
25:4,10
children
7:18 24:4
chiropractor
19:12,13,14
20:5 29:20
chiroprac...
19:16
choose
52:7
chose
38:4,11
chosen
37:17 39:15
40:17 41:7
claim
12:12
claims
11:15,16,23
12:12
Clark
19:1,10
20:16 30:10
31:13 33:21
33:23 34:1
34:6,14,20
54:13

class
12:15 13:4
42:3,17
clean
18:2
clearly
5:3
client
28:22 29:10
50:7
clients
15:22
close
18:6,13,21
closed
16:9
closer
34:8,9,12
code
7:9
college
8:7
comp
12:24
company
8:24
Complaint
28:24
completed
28:12 38:19
51:18 59:17
computer
49:6
Computer-...
57:23
concerned
42:12
concerning
33:4
conclusion
17:1
confidential
15:2 16:13
17:4,8
confident...
15:13 16:22
Consumer
2:2 59:4
consummate
36:3 37:9
consummating
36:18

contact
39:8,14
contacted
48:21
continue
35:20 36:3
37:4,9 38:5
38:11
continued
53:16,19
conversation
46:9,13,17
47:1
conversat...
48:9
Cook
1:15 57:5
58:20
cool
48:14
corner
20:15
correct
4:7 10:1
11:5 12:14
13:6 15:10
15:16 18:16
18:17 23:11
23:12 24:9
24:10,11,12
25:2,5,8,10
25:11,13,14
25:20 26:6
26:10,11,18
26:21,22,23
27:2 28:16
35:13,14
38:13,20
42:24 49:15
49:16 53:13
57:24
corrections
59:14
counsel
4:16 16:21
47:8,13,20
47:20 58:4
58:8
Count
28:24 29:3,3
29:4
County
1:16

3

```
 1:16 57:3,5       defendant         directly           3:1,10           27:11,12
 57:5 58:20         1:11 2:16        30:1               earlier           39:2
couple               6:6 56:11       disclosure         23:10 26:7       expect
 30:6                57:15           33:7                52:3             11:18
course             deficient         disclosures       EASTERN          explain
 9:21               48:18            33:4               1:3 56:3          6:4 12:5
coursework         degree           discovery          echo             explore
 8:15               8:9              1:13 9:22          5:2              41:1
covered            Department        16:2 29:8         education        eyes
 20:23              59:22           discuss            8:6              15:2
crazy              deponent          48:21             either
 28:7               55:4 56:13      discussion         7:24             ┌─── F ───┐
credit              59:8,11,13       12:7 17:12        E1               fabulous
 10:23 11:4         59:17            38:16 55:1         54:2,3,8,10      46:19
 11:11 12:1        deposit          dismissal           54:11           face
 12:11 20:21        26:16,21        22:5               emphatic          47:4 51:22
 21:2 52:23         28:15,19,21     distribution       31:4             fact
Crevy              deps             59:18              employed          5:10 36:21
 20:6,11,20         26:1            District           8:19,21           38:6 46:19
 21:22 22:2        describe          1:1,2 10:15       employees         51:21
Crevy's             9:9 30:8         56:1,2           15:22             facts
 30:1,5,5,14       described         57:11,12         employer          44:12
 31:15,18           31:8            Diversey          18:15 30:1        failure
cross-ref...       destroyed         18:14 54:19       enclosed          47:10
 16:1               17:1            DIVISION           59:10,11         fair
CSR                details           1:3 56:3          encyclopedia      5:5,19 12:23
 1:23               24:21           divorced          8:24              13:3 23:4
current            Diamond           7:17             engaged           24:22 26:12
 6:23 7:11          1:10 6:6        doctor's          43:4 47:13        26:20 28:11
 43:3               12:13 18:21      21:16 53:22       ensure           39:2,13
currently           18:24 20:17      54:1             17:2             47:12 48:24
 8:19 13:7          21:10 22:9      documents         entire           familiarity
 14:10              22:15 26:9       47:21 49:18       17:23            51:13
customer            26:17 27:1       50:4             entrance         family
 36:23 44:4         28:1,13,22      Dr                34:16            42:2,22
C-a-r-m-e-n         29:15,16         20:6,11,20       errata           far
 4:8                30:19 31:19      21:22 22:2        59:12,14,15      51:15
C-r-e-v-y           32:3 33:16       30:1,5,5,14       59:17           farthest
 20:8               36:11,19         31:15,18         establish         34:10
                    39:8,14         draft             15:4,6,8        fashion
┌─── D ───┐        40:1 41:8         49:7             everybody         31:2
database            41:20,24        drafting          5:1             fee
 9:13               43:4 44:9        49:1,4           evidence          32:4,10,14
DATE                47:10 51:1      drawer            15:4,6 44:13      32:16 33:10
 59:4,8             51:19 52:23      15:18            EXAMINATION        35:11,15,19
daughter            53:10 54:7      drink             3:2 6:21         35:23 36:2
 45:2,3 46:10       56:10 57:15      5:24             examined          36:6,22
 47:2,3             59:7            drive             6:19             37:1,6,11
Dear               different         28:7             exhibit           37:17,20
 59:9               41:7 50:9                         3:12 16:13       38:4,13
decide             digits          ┌─── E ───┐         16:14 17:5       39:4,9,15
 29:15              7:13           E                  17:8 27:6,8       39:17 40:15
```

4

41:6 43:13
43:14,22
44:6,9,22
46:5,11,19
47:4,11
51:21 52:4
52:6,8 53:1
53:11
feel
45:16
field
8:1
file
10:2 42:13
42:21
filed
9:23 10:6,8
10:14,19
11:21,22
12:21,23
42:18 47:8
48:19
financial
13:13 18:5
find
41:17
Fine
14:19
finish
35:2,7
finished
37:14
firm
8:3 16:24
first
6:19 19:6
29:13 46:13
48:21 56:12
57:17
first-named
12:16
Flores
1:4,13 3:3
3:12 4:5,13
6:18 10:12
12:11,17,19
17:7 27:7
27:14 39:3
44:21 56:4
56:12,17
57:10,12,17
59:7,8

Flores's
16:15
folded
16:22
follows
6:20
follow-up
52:15
foregoing
56:15 57:24
58:4
form
23:1,6,23
29:17 31:20
33:11 34:22
35:21 36:5
36:15,24
37:12 39:10
40:3,9,18
41:9 43:15
43:23 44:11
45:10 49:2
52:10,18
forth
47:18
foundation
29:18 33:12
37:21 40:19
41:9 42:5
44:12 45:10
51:5 52:18
four
7:13
free
36:8,13
friend
45:9,12,21
45:23,24
46:1,3,6,7
46:8
friends
42:2,22
front
35:2 39:3
FSB
6:7
fulfilled
9:12
fulfillment
9:8,10
full
4:6

further
41:1 54:20
55:4 57:16
58:3,8
F-l-o-r-e-s
4:8

_____ G _____

general
4:19 6:11
generally
9:9 11:14
gesture
34:4
give
11:18 16:17
18:12 22:19
53:5
given
4:13 6:3
57:20 58:1
God
7:12
Good
10:18
ground
4:17 17:20
47:15
guess
15:5 52:15
guidelines
4:19
guys
51:11

_____ H _____

H
3:10
half
9:17 30:11
hand
58:13
handle
59:18
handles
9:13
hands
34:3
happen
5:9
happy
5:11

Harold
8:13
hear
5:1
hereinbefore
58:7
heretofore
57:7
hereunto
58:12
hey
46:18
Hibbler
1:7 56:7
high
4:24
highest
8:6
hours
9:19
house
18:7
human
17:23
hypothetical
41:11

_____ I _____

ID
3:11
identific...
17:9 27:9
identified
9:23 32:22
38:24
identifies
39:4
identity
15:20
important
4:23 5:2,14
17:20,21
incident
52:22,23
incomplete
41:10
incur
15:24
individually
1:5 56:5
57:13
information

12:3 17:3
42:16
injury
13:1
inquiring
10:11 48:7
inside
33:17
inspect
15:14
instance
52:24
institution
13:14,16
instruct
50:7
insurance
20:24
interested
58:10
intersection
18:12
involving
11:1 12:11
issue
49:15
issued
38:20
issues
15:21
it'll
15:11 50:9

_____ J _____

Jackson
1:17 2:12
57:8
Jewel's
18:14
job
9:7
joint
23:19
Judge
1:7,9 56:7,9
June
1:16 56:14
57:7 59:4,8

_____ K _____

K
57:3

keep
15:1 29:8
kept
15:17
kids
23:19 24:16
24:17
Kimberley
1:15,23 57:4
59:22
knowledge
44:8
known
5:8

_____ L _____
lake
31:12 54:13
Lance
2:3 59:5
LaSalle
59:1
late
21:15
lawsuit
10:21,24
11:15,21,22
13:19 47:8
48:19,22
49:1,4,7
lawsuits
12:21
lawyer
47:16
lawyers
24:21
learned
47:2
leave
22:6 53:22
left
43:8 49:7
legal
7:24 11:18
43:5 44:21
46:10
letter
10:11
level
8:6
License
1:24

linked
14:11
listed
9:22
litigation
10:22 17:1,2
46:4
little
15:12 26:7
41:1
LLP
2:10
located
9:1 18:15,24
19:13 33:17
34:17
location
29:16
locations
18:21
locked
15:18
long
5:22 9:5
13:22 20:10
33:1 54:15
louder
28:6
loudly
5:1

_____ M _____
machine
5:17 20:17
21:6,9,13
21:13 22:17
22:20 32:3
32:4,5,7
35:3,6,11
35:12,18,19
36:4,19
40:15 43:12
44:23 46:12
51:4 52:9
53:1
machines
43:20 44:5
Magistrate
1:8 56:8
maintained
13:22 15:11
16:23

majority
22:3
manager
9:10
Margaret
59:22
marital
7:16
mark
2:11 16:12
27:5
marked
3:11 17:4,9
27:8
marketing
8:15
McCorkle
59:1
McVicker
6:24
mean
11:16 49:3
means
6:14 26:3
meant
9:10
medical
20:23
memory
45:16
mentioned
58:7
Michigan
9:2 18:16,18
minute
53:5
minutia
24:20
moment
36:12
money
15:7 21:9
26:13,15,19
26:24 27:22
27:24 28:12
28:15 44:5
monitor
9:11
move
4:20
M-c-V-i-c...
7:4

_____ N _____
N
3:1 59:1
Narragansett
18:13
NAUGHT
55:4
nearest
18:12
neither
18:20
never
10:6 12:23
13:4 20:15
30:18 44:16
52:4
new
19:23
nods
5:18
non-Diamond
36:23
non-TCF
33:9 35:15
35:19 36:2
43:20
north
6:24 19:1,10
19:14 20:11
20:16 30:15
30:22 33:21
33:23 34:1
34:8,11,12
34:19 54:14
Northern
1:2 10:15
56:2 57:12
notarial
58:13
notarized
59:16
notary
1:15 56:22
57:4 58:20
notice
1:19 4:12
32:5,10
35:11,15,20
35:23 36:2
36:6,20
37:5,18
38:3,12

39:16 40:10
40:15 41:6
43:13 44:9
44:22 52:8
53:11
notices
46:5,11,20
notified
52:4,5
notify
51:20 52:7
November
48:19
number
3:11 7:14
14:24 15:14
15:15,17
16:16 17:5
22:19 59:7
59:20
numbers
16:15

_____ O _____
O
57:3,3
oath
56:13
object
39:8,14
49:20 50:5
objecting
50:13
objection
12:2 22:23
23:6,23
27:3 29:17
31:20 33:11
34:22 35:21
36:5,15,24
37:12,21
38:8 39:10
40:3,9,18
41:9,15
42:5 43:15
43:23 44:11
45:10 49:2
49:22,23
51:5,23
52:10,18
observing
40:1

6

obviously
42:19 47:6
occurred
48:18
occurrence
13:19 17:16
offended
6:13
office
15:17 19:24
30:2,5,14
31:15,19
43:5 48:13
53:22 54:2
old
7:22 49:13
once
17:23
one-block
31:18
on-screen
36:20 37:18
38:3,12
39:16
open
32:20
opened
33:2
opportunity
6:5,15
order
4:20 9:14
54:20
orders
9:12
outcome
58:11
outside
16:24 33:17
33:19
o'clock
22:4,8

P

pages
59:12,15,17
paper
15:1,16
16:20
participate
49:1
parties

4:12 12:10
58:5,9
59:18
pause
22:24
pay
20:21 21:2
44:5
Peak
19:17,18,19
19:22 20:11
pending
5:23 10:24
42:3,17
46:4 57:10
people
48:13
perform
43:13,21
Performance
19:17,22
20:11
performed
33:8
performing
35:5 53:9
period
20:10,15
21:21
personal
12:24
personally
57:7
Pete
19:18
phase
9:22
phone
22:13 59:20
photo
51:10
photographs
41:24 49:15
50:12,16,21
51:3
photos
51:11,12,16
physician
19:21
pick
31:11
piece

15:1,16
16:20
place
16:23
placed
32:5
plaintiff
1:8 2:8
10:22 11:1
11:8,20,21
12:16 13:5
46:4 56:8
57:14
plaintiffs
11:10 42:3
pleadings
49:8
possible
4:21
post
44:22
posted
35:12 46:11
46:20 47:4
47:11 51:22
52:6 53:2
potential
48:22
predecessors
20:18
preliminary
12:15
prepare
49:8,18
presence
57:21
present
58:6
president
14:21,21
15:8
previously
9:23
prices
9:14
prior
19:2 20:9
21:21 22:15
22:20 32:15
35:17 43:3
43:11 44:20
49:17 52:22

privilege
12:3 42:8
49:21 50:7
privileged
47:24
probably
40:21 41:3
problematic
50:19
proceed
39:15
proceeded
54:7
process
4:20
processing
9:15
produced
14:22 15:22
16:2 23:15
25:17 50:16
product
12:3 42:7,16
47:23 49:21
50:6
public
1:15 42:15
56:22 57:5
58:20
purpose
21:14 23:17
26:8 43:6
purposes
17:22
pursuant
1:18 4:12
37:18
P-e-a-k
19:19
P.C
2:2 59:4
p.m
1:17

Q

quite
41:4

R

radius
31:18
Raphael

2:3 6:12
10:8,18
12:2,14
14:16,19
15:24 16:3
16:8,12,17
17:11 19:18
20:1 22:23
23:6,23
25:21,24
27:3,13,17
28:6,18,21
29:3,5,8,17
30:17,24
31:20 33:11
34:3,22
35:21 36:5
36:15,24
37:12,21
38:8,15
39:10 40:3
40:9,18
41:9,15
42:5,11,20
43:5,15,23
44:11,17
45:10,14
48:2,4,10
48:21 49:2
49:7,20
50:1,5,13
50:18,22
51:5,7,10
51:15,23
52:10,18
53:6 54:22
59:5,9
rarely
23:16
reason
5:22 19:9
21:5 24:3
recall
12:22 13:2
20:19 21:4
21:8,20
26:7,23
28:3 33:3,7
34:16 36:20
39:24 48:20
53:9 54:6
receipt

7

27:21 38:20
38:22,24
39:7
receive
8:8
receiving
39:7
recognize
27:11,17
recollection
18:23 27:23
record
4:4,9 6:8,16
12:4,8,9
16:14 17:6
17:11,13
18:2 38:15
38:17 39:20
42:15 54:23
55:2
reduced
57:22
redundant
24:19
referencing
48:11
reflect
4:9
refresh
27:23
regarding
42:17 46:4
47:9
related
58:9
relatives
42:22
remember
13:24 20:22
21:3,7,11
21:12,18
22:14 26:11
26:13,15
27:2 28:4
30:7 31:22
32:18,19,24
33:6,13,14
34:21,24
40:4,11
43:10,16,17
45:4,7,18
45:18 46:14

46:15,16,22
46:22 53:4
54:10
remembered
29:20
removed
44:9,18
reopen
29:5
repeat
37:23 39:18
repetitive
24:20
rephrase
5:11
reported
1:23 57:20
reporter
5:4,16 39:21
59:22
Reporters
59:1
represented
27:12
Representing
2:8,16
requested
39:21
requirement
44:21 46:11
reserved
54:22 58:4
respective
58:5 59:18
respond
5:15
response
5:19 41:4
46:20
responses
5:16 11:19
return
59:17
revealed
15:18 16:24
review
49:18 50:4
50:12,21
59:13
room
4:24 5:2
route

30:4,7 31:8
routes
30:6,8,9
31:7
rule
17:21 47:15
rules
4:11,17

_____

**S**

S
3:10
safe
16:23
safety
17:2
SAITH
55:4
school
8:4
screen
53:11,12
seal
58:13
second
6:4 8:7 12:4
17:11 42:6
54:23
secure
59:13
Security
7:14
Sedgwick
31:9
seeking
8:14
senile
49:13
sent
10:11
Setina
59:22
settlement
12:15
SHAPIRO
2:10
shared
47:20
sheets
59:12,14,15
59:18
she's

30:21 46:1
show
51:16
showed
51:10
shrugs
5:18
side
33:24 34:9
34:10,19,20
sign
15:16 47:11
51:21 52:6
53:2
signage
40:1
signatory
24:14,24
25:4,10,18
32:23
signature
54:21 56:16
58:3 59:11
59:13,14,15
59:17,22
signed
16:21 59:15
59:15
similar
12:12
similarly
1:7 56:7
57:14
simple
41:5
Sincerely
59:21
sit
43:19 49:6
sitting
47:7
situated
1:7 56:7
57:14
slight
5:2
slowly
5:3
Smith
11:3,6,11
12:10,16,19
13:4 43:3

smooth
4:21
Social
7:14
soft
28:8
sole
24:24 32:23
solely
45:24
South
18:19
speak
4:24 5:3
6:16
specific
8:14 19:21
21:5 26:8
32:22
specifically
21:8 53:11
speculation
40:19 41:10
52:19
spell
4:4 7:2 20:7
spelled
4:6
Stamp
39:3
standard
9:18
standing
22:1 34:14
staple
16:9
start
17:24 29:9
46:13
started
37:2 46:14
46:16,23
States
1:1 56:1
57:11
status
7:16
statutes
4:11
steered
29:10
stenograp...

8

57:21
sticker
41:17
stipulate
12:10 16:8
25:22 26:2
26:3 27:13
28:18 50:15
50:18
stipulating
28:21
stipulation
15:12 16:21
stopped
29:21 37:19
street
2:4 7:2
30:13,16,22
59:1,5
streets
54:18
strictly
15:2
strike
26:13 29:13
29:23 34:15
35:16
subject
12:14 29:6
41:11 49:23
submit
59:13
Subscribed
56:19
suit
58:10
Suite
1:18 2:5,13
57:9 59:1,5
supervisor
9:8
sworn
4:2 6:19
56:12,19
57:17

**T**
take
5:4,17 6:4
9:13 30:4,9
30:10 31:7
31:9 49:14

54:2,2,3,7
54:8,9,13
54:15,19
taken
1:14 4:10,11
41:23 51:3
56:14 59:8
TCF
13:17,20,23
14:3 18:4
23:21 24:9
32:17,23
33:2,8
telling
46:15
test
45:16
testified
6:20 23:10
24:4 26:6
33:20 35:10
49:11 52:3
testify
57:17
testimony
20:14 36:12
40:14 57:19
58:1,12
theft
15:20
thereof
58:11
third
25:9
thought
10:18
three
13:12 14:7,8
14:11 23:11
23:21 24:9
24:11,13
title
9:7,10
Titsworth
1:15,23 57:4
59:22
told
30:18 45:2
45:20 46:2
46:6 48:12
48:13
toss

16:4
total
14:8 24:9
to-wit
57:7
transaction
26:14 35:2,6
35:8,13,20
36:4,13,19
37:2,5,10
37:14,19
38:5,7,12
38:19 39:9
39:16 43:13
48:17 51:18
53:3,10,16
53:20
transactions
15:24 18:5
28:13
transcript
17:22 56:15
57:24 59:10
59:13,15
Transcrip...
57:23
treat
20:20
treating
20:10
true
57:24
truth
57:18,18,19
Tuesday
1:16
twice
27:4
two
7:21 10:14
13:5 20:13
23:14,17
24:6 40:24
51:11
two-year
20:15 21:21
type
8:8,14 31:2
33:3
typewriting
57:23
typically

21:20 53:23

**U**
uh-huhs
5:18
understand
5:7,10 15:20
41:4
understan...
36:11 44:3
undetermined
57:11
Union
10:23 11:4
11:12 12:1
12:11 52:24
United
1:1 56:1
57:11
use
5:23 18:5
21:5,13
29:15 34:3
34:24 41:7
43:20 44:4
54:4,11,12
usually
18:5,6 21:24
22:7
utilize
20:16

**V**
V
7:5,6
Valdez
1:9 56:9
verbal
5:15,19
verify
15:15,24
versus
11:3 12:11
29:16
vice
14:21
vicinity
19:10
vs
1:9 56:9
59:7

**W**
wait
17:22 22:24
35:1
waiting
35:6
waiving
49:22
walk
30:11 31:10
54:13,15,17
54:18
walked
43:12
WaMu
44:1,4
warehouses
9:11
Washington
2:4 8:13
59:5
washroom
5:24
Water
18:19
website
51:10
week
9:16,18,19
Wells
19:14 20:11
30:13,15
West
1:17 2:4,12
57:8 59:5
Whereabouts
18:18 30:13
WHEREOF
58:12
withdraw
26:19 44:5
withdrawal
33:9 43:21
withdrew
26:15 27:22
27:24 28:12
28:24
witness
3:2 4:1,5,8
4:15,22 5:6
5:13,20 6:2
6:9,17

| | | | |
|---|---|---|---|
| 19:19 23:2 | **X** | 32:2,15 | 37 |
| 23:8 26:4 | X | 35:17 36:10 | 9:17 |
| 27:16,18 | 3:1,10 | 39:24 41:6 | |
| 28:9 29:19 | | 41:21 43:8 | **4** |
| 30:22 31:22 | **Y** | 43:11 44:20 | 4:00 |
| 33:13 34:5 | year | 45:5 48:18 | 22:4,8 |
| 35:23 36:6 | 8:7 10:2 | 51:19 | 4:15 |
| 36:14 37:1 | years | 2:20 | 22:8 |
| 37:13,23 | 9:6 13:24 | 1:17 | 40-hour |
| 38:9 39:11 | 20:13 32:24 | 200 | 9:16 |
| 39:22 40:4 | | 59:1 | |
| 40:10,21 | **$** | 2007 | **5** |
| 41:12,16 | $2 | 13:19 17:18 | 5:00 |
| 43:1,16 | 39:4 53:14 | 19:3,11 | 22:4 |
| 44:1,14 | 53:15 | 20:9 21:4 | 53 |
| 45:20 48:3 | $50 | 21:10,22 | 1:17 2:12 |
| 48:15 49:3 | 28:2,4,4 | 22:10,16,21 | 57:8 |
| 49:24 50:2 | | 24:24 29:24 | 55 |
| 50:14,24 | **0** | 32:2,15 | 7:12 |
| 51:6 52:1 | 07 | 35:17 36:10 | |
| 52:12,20 | 1:6 56:6 | 39:24 41:6 | **6** |
| 57:20,22 | 59:7 | 41:21 43:9 | 6 |
| 58:1 | 084-004670 | 43:11 44:20 | 3:4 |
| words | 1:24 | 45:5 48:18 | 60601-1014 |
| 22:6 46:12 | | 48:19 51:19 | 59:2 |
| work | **1** | 2008 | 60602 |
| 7:24 8:3,22 | 1 | 1:16 56:14 | 2:6 59:6 |
| 9:16,16,18 | 10:23 11:4 | 56:20 57:7 | 60604 |
| 12:2 21:23 | 11:12 12:1 | 58:14 59:4 | 2:14 |
| 21:24 22:5 | 12:11 27:14 | 59:8 | 60639 |
| 22:7 30:5 | 29:3 39:3 | 21st | 7:10 |
| 31:15 42:7 | 52:24 | 48:19 | 6403 |
| 42:16 49:6 | 100 | 24 | 1:6 56:6 |
| 49:20 50:6 | 23:5 | 1:16 56:14 | 59:7 |
| worked | 15 | 57:7 59:8 | 662-1030 |
| 9:5 | 9:6 | 27 | 2:15 |
| workers | 17 | 3:14 59:4 | |
| 12:24 | 3:13 | 2707 | **7** |
| working | 180 | 6:24 | 700 |
| 48:13 | 2:4 59:5 | | 2:5 59:5 |
| World | | **3** | 782-5808 |
| 8:22,23 | **2** | 300 | 2:7 |
| worth | 2 | 59:1 | |
| 44:15 | 28:24 29:3,4 | 31 | **9** |
| write | 2nd | 7:23 | 9516 |
| 14:24 15:14 | 13:19 17:18 | 312 | 7:15 |
| written | 19:3,11 | 2:7,15 | |
| 9:21 16:20 | 20:9 21:4 | 315 | |
| wrong | 21:10,21 | 1:18 2:13 | |
| 11:23 12:1 | 22:10,16,21 | 57:9 | |
| 30:17 33:22 | 24:24 26:9 | 34 | |
| | 27:1 29:24 | 7:23 | |