# **APPENDIX 2**

Westlaw Delivery Summary Report for SINN,NATE R 6026349

| | |
|---|---|
| Date/Time of Request: | Monday, July 28, 2008 15:19 Central |
| Client Identifier: | 0126/01 |
| Database: | IL-CS |
| Citation Text: | 834 N.E.2d 549 |
| Lines: | 561 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Westlaw.

834 N.E.2d 549                                                                                                                    Page 1
359 Ill.App.3d 448, 834 N.E.2d 549, 295 Ill.Dec. 968

**359 Ill.App.3d 448, 834 N.E.2d 549, 295 Ill.Dec. 968**

▷
Tomczak v. Ingalls Memorial Hosp.
Ill.App. 1 Dist.,2005.

Appellate Court of Illinois,First District, Third Division.
Michael TOMCZAK and Eleanor Tomczak, Special Administrators of the Estate of Victoria Tomczak, deceased,
Plaintiffs-Appellees,
v.
INGALLS MEMORIAL HOSPITAL, incorrectly Sued Herein as Ingalls Health System, an Illinois not-for-profit
corporation, Defendant-Appellant (Shashi Malhotra, M.D., Primary Care Partners, LLC, Darryl Fleishman, M.D., Walid
F. Kandah, D.O., and Midwest Emergency Associates, Ltd., Defendants).
No. 1-04-1746.

Aug. 17, 2005.

**Background:**
Special administrators of emergency room patient's estate brought wrongful death and survival action against hospital. The Circuit Court, Cook County, Joseph N. Casciato , J., granted administrators' motion to compel information related to emergency room records of nonparty patients. Hospital refused, and on its own motion, was held in contempt and fined $50 for refusal to comply. Hospital appealed.

**Holdings:** The Appellate Court, Hoffman , J., held that:
(1)
triage time, treatment time, and triage designations for 62 nonparty patients was not protected by physician-patien privilege;

(2) trial court was not required to issue protective order in compelling disclosure of such information;

(3) requested information was material and relevant to claims;

(4) vacation of order of contempt was warranted.

Affirmed in part; vacated in part; remanded.

West Headnotes

[1] Witnesses 410 211(1)

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged Communications
            410k207 Communications to or Information Acquired by Physician or Surgeon
                410k211 Subject-Matter of Communications or Information
                    410k211(1) k. In General. Most Cited Cases

Request by special administrators of emergency room patient's estate that hospital disclose emergency room triage time for 62 nonparty patients, together with treatment time and triage acuity designation, did not implicate physician-patient privilege, in wrongful death and survival action; "time" information sought was not related to or necessary for diagnosis and treatment of patients. S.H.A. 735 ILCS 5/8-802 .

[2] Witnesses 410 208(1)

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged Communications
            410k207 Communications to or Information Acquired by Physician or Surgeon
                410k208 In General
                    410k208(1) k. In General. Most Cited Cases

The physician-patient privilege exists to both encourage disclosure between a physician and a patient and to protect the patient from an invasion of privacy. S.H.A. 735 ILCS 5/8-802 .

[3] Witnesses 410 208(1)

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged Communications
            410k207 Communications to or Information Acquired by Physician or Surgeon
                410k208 In General
                    410k208(1) k. In General. Most Cited Cases

Witnesses 410 212

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged Communications
            410k207 Communications to or Information Acquired by Physician or Surgeon

410k212 k. Mode or Form of Communications or Acquisition of Information. Most Cited Cases

The medical records of nonparties are protected by the physician-patient privilege, as is any information gathered by a nurse for the purpose of enabling a physician's treatment of a patient. S.H.A. 735 ILCS 5/8-802 .

[4] Witnesses 410 ⚷ 212

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged Communications
            410k207 Communications to or Information Acquired by Physician or Surgeon
                410k212 k. Mode or Form of Communications or Acquisition of Information. Most Cited Cases

Although the physician-patient privilege does afford some level of protection to the medical records of nonparty patient: this protection is not absolute. S.H.A. 735 ILCS 5/8-802 .

[5] Pretrial Procedure 307A ⚷ 41

307A Pretrial Procedure
    307AII Depositions and Discovery
        307AII(A) Discovery in General
            307Ak41 k. Objections and Protective Orders. Most Cited Cases

**Witnesses 410 ⚷ 211(1)**

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged Communications
            410k207 Communications to or Information Acquired by Physician or Surgeon
                410k211 Subject-Matter of Communications or Information
                    410k211(1) k. In General. Most Cited Cases

Request that hospital disclose emergency room triage times for 62 nonparty emergency room patients, together wi treatment times and triage acuity designations, did not constitute request for "protected health information," and thus, t court was not required to issue protective order with respect to order compelling disclosure of such information, in wrongful death and survival action brought by special administrators of emergency room patient's estate; informat requested contained neither nonparty patients' names, nor history of prior or present medical conditions, treatment diagnoses. 45 C.F.R. § 164.512(e)(1) (i, ii), (v)(A, B).

[6] Pretrial Procedure 307A ⚷ 41

307A Pretrial Procedure
    307AII Depositions and Discovery
        307AII(A) Discovery in General
            307Ak41 k. Objections and Protective Orders. Most Cited Cases

Even assuming that request for hospital's emergency room triage times related to 62 nonparty patients, together wi treatment times, and triage acuity designation involved protected health information, within meaning of regulatio governing disclosure of such information, trial court was not required to issue protective order after having entered granting motion by special administrators of emergency room patient's estate to compel disclosure of such informat wrongful death and survival action. 45 C.F.R. § 164.512(e)(1) (i, ii), (v)(A, B).

**[7]** Pretrial Procedure 307A ⟸36.1

307A Pretrial Procedure
    307AII Depositions and Discovery
        307AII(A) Discovery in General
            307Ak36 Particular Subjects of Disclosure
                307Ak36.1 k. In General. Most Cited Cases

Request by special administrators of emergency room patient's estate for triage times of 62 nonparty patients, together with treatment times and triage acuity designations, was material and relevant to recovery in wrongful death and surv action against hospital, as justification for compelling disclosure of such information, where action was based on claim that hospital violated its own procedural guidelines for treating emergency room patients based on acuity designatior treating nonparty patients with lower triage acuity designation before patient, and that such violation of policy caused fatal delay in treatment of patient. Sup.Ct.Rules, Rule 201(b)(1).

**[8]** Pretrial Procedure 307A ⟸31

307A Pretrial Procedure
    307AII Depositions and Discovery
        307AII(A) Discovery in General
            307Ak31 k. Relevancy and Materiality. Most Cited Cases

**Pretrial Procedure 307A ⟸32**

307A Pretrial Procedure
    307AII Depositions and Discovery
        307AII(A) Discovery in General
            307Ak32 k. Probable Admissibility at Trial. Most Cited Cases

The circuit court is afforded great latitude in determining the scope of pretrial discovery, as the concept of relevanc discovery purposes encompasses not only what is admissible at trial, but also that which may lead to the discover admissible evidence. Sup.Ct.Rules, Rule 201(b)(1).

**[9]** Contempt 93 ⟸66(2)

93 Contempt
    93II Power to Punish, and Proceedings Therefor
        93k66 Appeal or Error
            93k66(2) k. Decisions Reviewable. Most Cited Cases

**Contempt 93 ⟸66(8)**

93 Contempt
    93II Power to Punish, and Proceedings Therefor
        93k66 Appeal or Error
            93k66(8) k. Determination and Disposition of Cause. Most Cited Cases

Hospital's refusal to comply with order compelling disclosure of emergency room triage times for 62 nonparty patie together with treatment time and triage acuity designations, was made in good faith and without contempt of circuit court's authority, thus warranting vacation of contempt order and $50 fine, even though order compelling disclosure was

justified; rather, hospital merely sought appellate review of order compelling disclosure based on assertions physician-patient privilege and nonissuance of protective order.

[10] Contempt 93 ⚿66(2)

93 Contempt
   93II Power to Punish, and Proceedings Therefor
      93k66 Appeal or Error
         93k66(2) k. Decisions Reviewable. Most Cited Cases

In order to facilitate the interlocutory appeal of a trial court's discovery order, the party challenging the order may move the circuit court for the entry of a contempt order, and where the party does so in good faith and without contempt for circuit court's authority, vacation of the contempt order is warranted.

**551 Anderson, Rasor & Partners, LLP, Chicago (Patricia A. Barker, Diane I. Jennings and Alicia B. Perrone, of counsel), for Appellant.
Cirignani, Heller, Harman & Lynch, LLP, Chicago (William A. Cirignani and Deborah A. Alroth, of counsel), for Appellees.
Justice HOFFMAN delivered the opinion of the court:
*449                                                         ***970
The plaintiffs, Michael and Eleanor Tomczak, as special administrators of the estate of their deceased daughter, V Tomczak, filed the instant wrongful death and survival action against Ingalls Memorial Hospital (Ingalls), severa physicians, and two healthcare corporations. During the course of discovery, the circuit court ordered Ingalls to discl certain information from the emergency department records of numerous nonparty patients. Ingalls refused, claiming tha the information sought was privileged and would not reasonably lead to the discovery of relevant information. *450 Thereafter, at its own request, Ingalls was held in contempt of court and fined $50 for failing to comply with the c discovery order. It is from these orders that Ingalls now appeals and, for the reasons which follow, we affirm in part, vacate in part, and remand this cause to the circuit court for further proceedings.

On July 16, 2001, the plaintiffs initiated the instant action, seeking damages under the Wrongful Death Act (740 ILCS 180/0.01 et seq. (West 2000)) and the Survival Act (755 ILCS 5/27-6 (West 2000)). Generally, the complaint alleged that the decedent entered Ingalls' emergency department at approximately 7 p.m. on October 18, 2000, and died early th morning as a result of the defendants' delay in examining her and in administering appropriate treatment. During discovery, the plaintiffs served a number of interrogatories and requests for production of documents upon Ingalls. response to these requests, Ingalls produced, *inter alia*, a redacted copy of its Emergency Department Daily Log (the Daily Log) from October 18, 2000, and October 19, 2000, which listed the sex, triage date, triage time, mode of arrival chief complaint, treating physician, disposition, exit time, and final diagnosis for 140 patients, including the decedent Ingalls also produced several documents relating to the organization, plan of care, and standard of care for its emergency departm These documents reflect that the emergency department utilizes a triage process in order to facilitate the safe and t treatment of each patient according to their relative needs. Pursuant to this process, a triage nurse or technician assigns each patient an acuity designation of either critical, emergent, or urgent depending on an initial determination of the patient's subjective complaint. Critical patients are immediately taken into the emergency department to be treated physician, while non-critical patients are treated when a physician is available and based on the priority of their **552 ***971 designation, with emergent patients receiving care prior to urgent patients.

After receiving the documents mentioned above, the plaintiffs served a third set of interrogatories upon Ingalls Interrogatory No. 3, which forms the basis for this appeal, requested that Ingalls disclose the following information nonparty patients who were seen in the emergency department between 7:36 p.m. on October 18, 2000, and 2:45 a.n

October 19, 2000:(1) " 'Time In,' i.e., the time at which the patient is placed in the Emergency Department treatment area;" (2) the time each patient was first examined by a physician (hereinafter referred to as the "treatment time"); (3) an the triage acuity designation. Ingalls objected to the interrogatory as overly broad and unduly burdensome. The p responded by filing a motion to compel wherein they argued that the requested information **451** was relevant and necessary to support their theory that the decedent's treatment was negligently delayed.

On December 22, 2003, the circuit court granted the plaintiffs' motion to compel, and ordered Ingalls to produce information sought in interrogatory No. 3 by January 31, 2004. On January 30, 2004, Ingalls filed a motion to reconsider the court's order of December 22, 2003. In its motion, Ingalls argued that the information requested in interrogatory No. 3, as well as the information contained in the previously tendered Daily Log, was protected from disclosure by physician-patient privilege (735 ILCS 5/8-802 (West 2002)) and by certain regulations promulgated under the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA) (Pub.L. No. 104-191, 110 Stat.1936 (1996) ). Ingalls also claimed that the plaintiffs' request was overly broad, and was not likely to lead to the discovery of any relevant evidence admissible at trial.

The plaintiffs responded to Ingalls' motion by arguing that the information sought in interrogatory No. 3 was mere incidental to the nonparty patients' treatment and was, therefore, not protected by the physician-patient privilege. Furthe they argued that the information did not identify, nor could it be used to identify, the nonparty patients and, accordir HIPAA was inapplicable. Finally, the plaintiffs claimed that the information was "plainly relevant" because, without it, they could not determine whether Ingalls violated its own procedural guidelines by treating a lower priority patient befor the decedent. In support of their response, the plaintiffs attached excerpts from the depositions of several of the dece treating doctors and nurses which showed that, within each acuity designation, patients are prioritized according to the time in which they are placed in the emergency department.

Following a hearing, the circuit court entered an order on April 15, 2004, which directed the plaintiffs to return the Dail Log and barred its use at trial, and modified its December 22, 2003, discovery order so that Ingalls was only required submit the triage time, treatment time, and triage acuity designation for all patients assessed by a triage nurse between 6 p.m. and 10:30 p.m. on October 18, 2000. Thereafter, Ingalls filed a motion in the circuit court seeking the entry of an order holding it in contempt and imposing a $50 fine for refusing to comply with the court's discovery order of April 1 2004, which the circuit court granted. Ingalls now brings this appeal under Supreme Court Rule 304(b)(5) (155Ill.2dR. 304(b)(5)) .

[1] Relying on *Ekstrom v. Temple,* 197 Ill.App.3d 120, 142 Ill.Dec. 910, 553 N.E.2d 424 (1990) , Ingalls first contends that the nonparty patients' triage times, treatment times, and triage acuity designations**553 ***972 are protected **452** from disclosure by the physician-patient privilege. The plaintiffs respond that the information is not necessary to e physician to serve a patient and, therefore, does not fall under the ambit of the physician-patient privilege.

[2]                                                                                                     [3]
At issue in this case is the physician-patient privilege, codified at section 8-802 of the Code of Civil Procedure, wh provides that, "No physician or surgeon shall be permitted to disclose any information he or she may have acquired attending any patient in a professional character, necessary to enable him or her professionally to serve the patient * * *." 735 ILCS 5/8-802 (West 2002). There are 10 specifically enumerated exceptions to the privilege, none of which are applicable to the matter at hand. See 735 ILCS 5/8-802 (West 2002). The privilege exists to both encourage disclosure between a physician and a patient and to protect the patient from an invasion of privacy. *Reagan v. Searcy,* 323 Ill.App.3d 393, 395, 256 Ill.Dec. 216, 751 N.E.2d 606 (2001) . The medical records of nonparties are protected by the privilege (*In re D.H.,* 319 Ill.App.3d 771, 776, 253 Ill.Dec. 826, 746 N.E.2d 274 (2001) ; *Parkson v. Central DuPage Hospital,* 105 Ill.App.3d 850, 855, 61 Ill.Dec. 651, 435 N.E.2d 140

(1982) ), as is any information gathered by a nurse for the purpose of enabling a physician's treatment of a patient (*House v. SwedishAmerican Hospital,* 206 Ill.App.3d 437, 446, 151 Ill.Dec. 467, 564 N.E.2d 922 (1990) ). We review the circuit court's application of the physician-patient privilege *de novo. LoCoco v. XL Disposal Corp.,* 307 Ill.App.3d 684, 689, 240 Ill.Dec. 474, 717 N.E.2d 823 (1999) .

In *Ekstrom,* a patient who developed toxic shock syndrome after a breast biopsy necessitating the amputation of her legs and several fingers brought a medical malpractice action against the hospital where her surgery took place, several physicians and their employers, and two medical equipment manufacturers. During the course of discovery, the pl requested the production, *inter alia,* of records regarding any and all breast biopsy procedures performed by one of the defendant physicians over a period of five years, and documents regarding a specific operation performed by anot defendant physician on a nonparty patient, "including but not limited to records revealing time of operation." *Ekstrom,* 197 Ill.App.3d at 124-25, 142 Ill.Dec. 910, 553 N.E.2d 424 . The hospital refused to produce the requested information, arguing that it was privileged. Thereafter, the plaintiff filed a motion to compel, which was granted. The hospital eventually held in contempt for its continued refusal to produce the information. On appeal, the *Ekstrom* court simply held that the plaintiff's discovery request was improper because it called for "records of nonparty patients." *Ekstrom,* 197 Ill.App.3d at 130, 142 Ill.Dec. 910, 553 N.E.2d 424 .

[4] Ingalls maintains that there is no substantive difference between **\*453** the information the *Ekstrom* court found privileged and the information the circuit court ordered it to disclose in the instant case. Although the court in *Ekstrom* declared that the discovery request was improper because it called for "records of nonparty patients," the court di distinguish between the types of information sought by the plaintiff. *Ekstrom,* 197 Ill.App.3d at 130, 142 Ill.Dec. 910, 553 N.E.2d 424 . Rather, the court found that, as a whole, disclosure of the requested information would infringe upon the nonparty patients' rights to privacy. Although the physician-patient privilege does afford some level of protection to the medic records of nonparty patients, this protection is not absolute..**\*\*554 \*\*\*973** See *House,* 206 Ill.App.3d at 445, 151 Ill.Dec. 467, 564 N.E.2d 922 . Accordingly, we must determine here whether the triage times, treatment times, and triage acuity designations are necessary to enable a physician to serve a patient. See *Geisberger v. Willuhn,* 72 Ill.App.3d 435, 437, 28 Ill.Dec. 586, 390 N.E.2d 945 (1979) .

Our research has revealed no Illinois decision which has addressed the precise issue before us; namely, whether a patient's triage time, treatment time, and triage acuity designation are protected information under the physician-patient privilege The plaintiff, however, directs our attention to two New York cases, *Gourdine v. Phelps Memorial Hospital,* 40 A.D.2d 694, 336 N.Y.S.2d 316 (N.Y.App.Div.1972) , and *Holiday v. Harrows, Inc.,* 91 A.D.2d 1062, 458 N.Y.S.2d 669 (N.Y.App.Div.1983) , which address the applicability of New York's physician-patient privilege to certain "time data" similar to the triage and treatment times sought in this case.

In *Gourdine,* the plaintiff filed a medical malpractice action alleging, *inter alia,* that certain injuries she suffered were caused by her anesthesiologist's inadequate post-operative care. During discovery, she sought the times during anesthesiologist was attending her and the times when he was assisting in other operations. The hospital refused to disclose what the *Gourdine* court labeled as the "time data" contained in the nonparty patients' anesthesia charts on the ground that those reco privileged. The plaintiff responded by filing a motion to strike the hospital's answer for failure to comply with the discovery request, which the trial court denied. On appeal, the *Gourdine* court reversed, finding that disclosure of the time data would not violate New York's statutory physician-patient privilege [FN1] because the privilege "does not apply to ordinary incidents and facts which can be perceived by laymen and which are not necessary for a physician to treat patient." *Gourdine,* 336 N.Y.S.2d at 319 .

FN1. New York's statutory physician-patient privilege, which is now codified at N.Y. C.P.L.R. § 4504 (a) (2004), has been at all relevant times substantially similar to the Illinois privilege found in section 8-802 of the Code of Civil Procedure (735 ILCS 5/8-802 (West 2004)).

*454 In *Holiday,* the plaintiff brought a wrongful death action alleging that the defendant hospital negligently delayed examining and treating the decedent. Prior to trial, the plaintiff was provided with an emergency department log which listed the admittance and departure times of several nonparty patients who were treated around the same time as the decedent. plaintiff subsequently requested the specific times at which these nonparty patients were treated, and the hospital moved for the entry of a protective order precluding such discovery on the ground that the information was protecte physician-patient privilege. The trial court granted the motion. On appeal, the *Holiday* court held that "nonmedical information (i.e. 'time data'), which is not related to the diagnosis or treatment of the [nonparty] patients would not fa within the ambit of the statutory [physician-patient privilege]." *Holiday,* 458 N.Y.S.2d at 670, citing *Gourdine,* 336 N.Y.S.2d at 319.

In this case, as in *Gourdine* and *Holiday,* we believe that the "time data" sought by the plaintiffs falls outside the scope of Illinois' physician-patient privilege. A stated above, the privilege acts to bar the disclosure of information obtained by or for a physician which is necessary enable the physician to serve the patient. 735 ILCS 5/8-802 (West 2002). Thus, for the physician-patient privilege to **555 ***974 bar disclosure of the triage and treatment times at issue here, those times "must have been necessary for the performance of a professional duty on the part of the physician. That is, a duty to treat, prescribe or act for the patient." *Geisberger,* 72 Ill.App.3d at 437, 28 Ill.Dec. 586, 390 N.E.2d 945. Ingalls, however, has failed to present any facts showing how the mere times at which a patient is assessed by a triage nurse or initially treated by a physician are necessary to enable the physician to care for or treat the patient. See *Cox v. Yellow Cab Co.,* 61 Ill.2d 416, 419-20, 337 N.E.2d 15 (1975), quoting *Krupp v. Chicago Transit Authority,* 8 Ill.2d 37, 42, 132 N.E.2d 532 (1956) ("[O]ne who claims to be exempt by reason of privilege from the general rule which compels all persons to disclose the truth has the burden of showing the facts which give rise to the privilege."). Moreover, we believe that this "time data" has no relation to, and would not provide any insight into any particular patient's medical condition, diagnosis, or t contravention of that patient's right to privacy. See *Parkson,* 105 Ill.App.3d at 855, 61 Ill.Dec. 651, 435 N.E.2d 140. Thus, in accord with the reasoning of *Gourdine* and *Holiday,* we find that the nonparty patients' triage and treatment times are mere incidents of fact unnecessary to enable a physician to perform his or her professional duty and, therefore, fa outside the ambit of the physician-patient privilege.

Similarly, we find that Ingalls has failed to present any facts showing*455 how a triage acuity designation enables a physician to serve a patient within the meaning of the physician-patient privilege. A patient's acuity designation does n refer to a specific symptom, ailment, or complaint. Rather, it simply effects the time at which a patient is first treated, a there is no evidence that a physician uses the acuity rating in reaching a medical diagnosis. Further, as with the pre discussed triage and treatment times, we believe that the disclosure of a patient's triage acuity designation would provide no insight into that particular patient's medical condition, treatment, or diagnosis. See *Parkson,* 105 Ill.App.3d at 855, 61 Ill.Dec. 651, 435 N.E.2d 140. Accordingly, for the reasons set forth above, we find that the nonparty patients' triage times, treatment times, and tri acuity designations are not barred from disclosure by the physician-patient privilege.

[5] Ingalls also argues that the circuit court's discovery order is invalid because it does not comport with certain guidelines set

forth in a regulation issued by the Secretary of Health and Human Services (HHS) under HIPAA. The plaintiffs respond that Ingalls waived consideration of this argument by failing to raise this precise issue before the circuit court. Waiver aside, we find the regulation inapplicable.

Pursuant to HHS regulation 164.512(e)(1), a "covered entity" (such as Ingalls) may disclose "protected health information" in a judicial or administrative proceeding in one of two enumerated circumstances. First, regu 164.512(e)(1)(i) authorizes disclosure "in response to an order of a court * * *, provided that the covered entity disclose only the protected health information expressly authorized by such order." 45 C.F.R. § 164.512(e)(1)(i) (2002). Second, regulation 164.512(e)(ii), allows disclosure in response to a "subpoena, discovery request, or other lawful process that is *not* accompanied by an order of a court" if the covered entity receives satisfactory assurance that the party seeking t information has secured a "qualified protective order that meets the requirements of" section 164.512(e)(1)(v) . 45 C.F.R. § 164.512(e)(1)(ii) (2002) (Emphasis added).).**556 ***975 A "qualified protective order" is defined, "with respect to protected health information requested under paragraph (e)(1)(ii)," as an order of a court that prohibits the use or disclosure of the discovered information for any purpose other than the litigation in which it was requested, and requires the return or destruction of the information at the conclusion of the litigation. 45 C.F.R. § 164.512(e)(1)(v)(A) , (B) (2002).

In this case, Ingalls argues that regulation 164.512(e)(1) required the circuit court to issue a qualified protective order before it could order the disclosure of the requested information. We disagree. Regulation*456 164.512(e)(1), by its very terms, applies solely to "protected health information," which is defined in HHS regulation 160.103 as any informa received by a health care provider relating to the provision of health care to an individual that either identifies the individual, or could reasonably be used to identify the individual. 45 C.F.R. § 160.103 (2002) . Here, the information requested contains neither the nonparty patients' names, nor a history of their prior or present medical conditions treatments, or diagnoses. As such, we believe that the nonparty patients' identities could not be determined from information the court ordered Ingalls to disclose. Accordingly, we find that the nonparty patients' triage times, treatme times, and triage acuity designations fall outside the category of "protected health information" covered by re 164.512(e)(1).

[6] Moreover, even if we were to assume *arguendo* that the information sought is "protected health information," we would still find that it is discoverable in the absen qualified protective order. A proper reading of regulation 164.512(e)(1) shows that a qualified protective order must only be secured when a disclosure is being made in "response to a subpoena, discovery request, or other lawful process, that is *not* accompanied by an order of a court." 45 C.F.R. § 164.512(e)(1)(ii) (West 2002) (Emphasis added). Here, Ingalls was ordered by the circuit court to comply with the plaintiffs' discovery request and produce the specified information.

[7]
Ingalls next contends that the circuit court abused its discretion by ordering compliance with the discovery request because the information sought is not so material or relevant as to justify the burden of securing its disclosure. We disagree.

[8]     Supreme     Court     Rule     201(b)(1)
allows a party to "obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in pending action." Official Reports Advance Sheets No. 8 (April 17, 2002), R. 201(b)(1), eff. July 1, 2002. The circuit court is afforded great latitude in determining the scope of pretrial discovery, as the concept of relevance for discovery purposes encompasses not only what is admissible at trial, but also that which may lead to the discovery of admissible evidence. D.C. v. S.A., 178 Ill.2d 551, 561, 227 Ill.Dec. 550, 687 N.E.2d 1032 (1997) ; *Monier v. Chamberlain,* 35 Ill.2d 351, 357, 221     N.E.2d     410     (1966)

. We will reverse a circuit court's ruling on a motion to compel discovery only where the appellant "affirmatively an clearly" shows an abuse of discretion. *Dufour v. Mobile Oil Corp.,* 301 Ill.App.3d 156, 160, 234 Ill.Dec. 587, 703 N.E.2d 448 (1998).

Here, the plaintiffs' theory of the case is that the defendants failed to timely diagnose and treat the decedent. To support this theory, the plaintiffs seek to establish that other emergency department patients were examined before the contravention of the procedures *457 established **557 ***976 by Ingalls' emergency department. In order to make this showing, the plaintiffs clearly need to know the triage time, treatment time, and triage acuity designation of the nonp patients identified in the court's discovery order of April 15, 2004. Thus, we find that the information sought could lead t the discovery of evidence which is relevant and material to the subject matter of the pending action.

Further, the production of the information sought by the plaintiffs would not constitute an undue burden on Ingalls Contrary to Ingalls' claim, it is no longer required to supply the "Time In" information originally requested by the plaintiffs in interrogatory No. 3. Rather, the court's discovery order of April 15, 2004, only requires Ingalls to submit t triage time, treatment time, and acuity designation for the emergency department patients who were assessed between 6 p.m. and 10:30 p.m. on October 18, 2000. The record shows that only 28 patients were assessed during the relevant t period, and the triage times of these patients are listed on the Daily Log which was previously submitted to the plainti Based on these facts, we do not believe that it would be oppressive or unduly burdensome for Ingalls to collect the tri acuity designations and treatment times from the charts of 28 patients who were all treated within a few hours of each other on the same date. *Cf. Leeson v. State Farm Mutual Automobile Insurance Co.,* 190 Ill.App.3d 359, 366-68, 137 Ill.Dec. 837, 546 N.E.2d 782 (1989) (finding discovery order oppressive in absence of showing of materiality and relevance where compliance would re creation of computer program and approximately 500 hours of work). Accordingly, we find that the circuit court did n abuse its discretion in entering the discovery order of April 15, 2004.

[9] [10]
Finally, Ingalls contends that the circuit court's June 10, 2004, contempt order should be vacated because it di contumaciously in refusing to comply with the court's discovery order of April 15, 2004. We agree. In order to facilitate the interlocutory appeal of a trial court's discovery order, a party may move the circuit court for the entry of a contemp order. *Webb v. Mount Sinai Hospital and Medical Center of Chicago, Inc.,* 347 Ill.App.3d 817, 828, 283 Ill.Dec. 185, 807 N.E.2d 1026 (2004). Where a party does so in good faith and without contempt for the circuit court's authority, we have vacated the conter order even if we found the underlying discovery order to be proper. See, *e.g., Berry v. West Suburban Hospital Medical Center,* 338 Ill.App.3d 49, 57, 272 Ill.Dec. 771, 788 N.E.2d 75 (2003). Here, we find that Ingalls' refusal to comply with the court's discovery order was made in good faith and without contempt for the circuit court's authority. Ingalls mere sought appellate review of its unsuccessful assertions of privilege. Accordingly, we vacate that portion of the circuit court's order of June 10, 2004, holding Ingalls in contempt and imposing a $50 fine.

*458
For the foregoing reasons, we affirm the circuit court's determination that the triage times, treatment times, and triage acuity designations of the nonparty patients identified in its discovery order of April 15, 2004, are discoverable; vacate that portion of the court's order of June 10, 2004, holding Ingalls in contempt and imposing a $50 fine; and remand th matter to the circuit court for further proceedings.

Affirmed in part; vacated in part; remanded.

KARNEZIS, P.J., and ERICKSON, J., concur.
Ill.App. 1 Dist.,2005.

Tomczak v. Ingalls Memorial Hosp.
359 Ill.App.3d 448, 834 N.E.2d 549, 295 Ill.Dec. 968

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.