# APPENDIX 5

**Westlaw Delivery Summary Report for SINN,NATE R 6026349**

| | |
|---|---|
| Your Search: | "OFFICER! OF THE COURT" /P (SCAND! IMPERTINENT IMPROPER) /P (PLEADING! MOTION! BRIEF!) /p (rude irrelevant attack! personal) (respect responsibility) |
| Date/Time of Request: | Tuesday, July 29, 2008 18:08 Central |
| Client Identifier: | 0126/01 |
| Database: | USER-DEFINED-MB |
| Citation Text: | 40 F.Supp. 811 |
| Lines: | 976 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.



**40 F.Supp. 811**

**C**

UNITED STATES v. INDIAN CREEK MARBLE CO.
D.C.TENN. 1941.

District Court, E.D. Tennessee.
UNITED STATES ex rel. TENNESSEE VALLEY AUTHORITY
v.
INDIAN CREEK MARBLE CO. et al.
**No.3219.**

July 26, 1941.

At Law. Proceeding by the United States of America, on the relation of the Tennessee Valley Authority against the In Creek Marble Company and others, wherein the Indian Creek Marble Company and others requested that the com appointed by the court to fix just compensation be instructed in certain respects.

Decision in accordance with opinion.

West Headnotes

**[1] Eminent Domain 148 ⚷231**

148 Eminent Domain
148III Proceedings to Take Property and Assess Compensation

148k225 Assessment by Commissioners, Appraisers, or Viewers
148k231 k. Conduct of Proceedings in General. Most Cited Cases

In condemnation proceeding by Tennessee Valley Authority, the giving of instructions to commission appointed by court to fix just compensation was not objectionable, inasmuch as question of just compensation would be tried de nov three-judge court if exceptions should be filed to commission's finding by either party. Tennessee Valley Authority A 1933, § 25, 16 U.S.C.A. § 831x .

**[2] Evidence 157 318(2)**

157 Evidence
157IX Hearsay
157k315 Statements by Persons Other Than Parties or Witnesses
157k318 Writings
157k318(2) k. Letters and Telegrams. Most Cited Cases

In condemnation proceeding by Tennessee Valley Authority, unauthenticated letter written purportedly by officer expressing opinion therein as to quality or character of marble or stone on the property involved was inadmissibl Tennessee Valley Authority Act 1933, § 25, 16 U.S.C.A. § 831x .

**[3] Evidence 157 318(4)**

157 Evidence
157IX Hearsay
157k315 Statements by Persons Other Than Parties or Witnesses
157k318 Writings
157k318(4) k. Reports. Most Cited Cases

In proceeding by Tennessee Valley Authority to condemn land subject to lease which gave lessees exclusive right to remove marble, stone, and other mineral therefrom, expressions of opinion in report of congressional committe investigating certain matters in connection with the Authority, with respect to certain other purported leases, or the goo faith involved in their execution or subsequent handling, was not competent evidence or material in establishing the similar contention or negativing such contention with respect to the execution and handling of other purported simila leases, of other mineral on or under different land. Tennessee Valley Authority Act 1933, § 25, 16 U.S.C.A. § 831x .

**[4] Evidence 157 318(4)**

157 Evidence
157IX Hearsay
157k315 Statements by Persons Other Than Parties or Witnesses
157k318 Writings
157k318(4) k. Reports. Most Cited Cases

In condemnation proceeding by Tennessee Valley Authority, report of committee of Congress investigating certain matters in connection with the Authority was inadmissible, where that portion of report sought to be admitted was expression of opinion as distinguished from a recorded fact made pursuant to discharge of statutory or other legal Tennessee Valley Authority Act 1933, § 25, 16 U.S.C.A. § 831x .

**[5] Eminent Domain 148 232**

148 Eminent Domain
148III Proceedings to Take Property and Assess Compensation
148k225 Assessment by Commissioners, Appraisers, or Viewers
148k232 k. View. Most Cited Cases

Under Tennessee Valley Authority Act, commission appointed by court to fix just compensation can view the property and can draw therefrom proper inferences as to conditions as they existed before any taking occurred. Tennessee Authority Act 1933, § 25, 16 U.S.C.A. § 831x .

**[6] Eminent Domain 148 231**

148 Eminent Domain
148III Proceedings to Take Property and Assess Compensation
148k225 Assessment by Commissioners, Appraisers, or Viewers
148k231 k. Conduct of Proceedings in General. Most Cited Cases

In condemnation proceeding by Tennessee Valley Authority, commission appointed to ascertain value of prope compensation to be paid should consider and give due weight to testimony of witnesses who were sworn and testified, having in mind the knowledge of each witness as to the matter covered by the testimony given, and should consid observable matters and all facts established by the evidence tending to show any interest on the part of the witness wh might or would tend to influence or color the testimony or furnish a motive for the concealment of facts, known to t witness. Tennessee Valley Authority Act 1933, Sec. 25, 16 U.S.C.A. 831x .

**[7] Eminent Domain 148 233**

148 Eminent Domain
148III Proceedings to Take Property and Assess Compensation
148k225 Assessment by Commissioners, Appraisers, or Viewers
148k233 k. Scope of Inquiry and Questions to Be Determined. Most Cited Cases

In condemnation proceeding by Tennessee Valley Authority, commission appointed to ascertain value of prope compensation to be paid should enter into a determination of actual facts bearing on amount of compensation witl prejudice. Tennessee Valley Authority Act 1933, § 25, 16 U.S.C.A. § 831x .

**[8] Eminent Domain 148 231**

148 Eminent Domain
148III Proceedings to Take Property and Assess Compensation
148k225 Assessment by Commissioners, Appraisers, or Viewers
148k231 k. Conduct of Proceedings in General. Most Cited Cases

**Eminent Domain 148 233**

148 Eminent Domain
148III Proceedings to Take Property and Assess Compensation
148k225 Assessment by Commissioners, Appraisers, or Viewers
148k233 k. Scope of Inquiry and Questions to Be Determined. Most Cited Cases

In condemnation proceeding by Tennessee Valley Authority, commission appointed to ascertain value of prope compensation to be paid should decide the facts entering into determination of value with utter disregard of an considerations not affecting actual market value of property, and should neither consider nor receive ex parte unsv statement of fact or expression of opinion in making their ultimate conclusion as to just compensation. Tennessee Authority Act 1933, § 25, 16 U.S.C.A. § 831x .

**[9] Eminent Domain 148 136**

148 Eminent Domain
148II Compensation
148II(C) Measure and Amount

148k135 Taking Part of Tract or Property

148k136 k. In General. Most Cited Cases

In condemnation proceeding by Tennessee Valley Authority, commission appointed to ascertain value of prope compensation to be paid should approach their consideration of just compensation by determining value of whole property before any part was taken, and in doing so should assume the attitude of one willing to sell, but not under pressure to sell, at its fair market price for cash, and should consider all elements of value inherent in the property, including uses to which property was being put as well as uses to which property was reasonably susceptible and which would add to market value thereof. Tennessee Valley Authority Act 1933, § 25, 16 U.S.C.A. § 831x .

**[10] Evidence 157 ⚷142(1)**

157 Evidence

157IV Admissibility in General

157IV(C) Similar Facts and Transactions

157k142 Showing Value

157k142(1) k. Sales of Other Property in General. Most Cited Cases

In condemnation proceeding by Tennessee Valley Authority, commission appointed to ascertain value of property and compensation to be paid should consider the price at which similar property similarly situated was sold on a free market, if within a time not too remote from the date of the taking of the property involved in the proceeding. Tennessee Val Authority Act 1933, Sec. 25, 16 U.S.C.A. 831x .

**[11] Eminent Domain 148 ⚷138**

148 Eminent Domain

148II Compensation

148II(C) Measure and Amount

148k135 Taking Part of Tract or Property

148k138 k. Injuries to Part Not Taken. Most Cited Cases

In condemnation proceeding by Tennessee Valley Authority, commission appointed to ascertain value of prope compensation to be paid, after determining fair cash market value, should consider effect of taking by Authority, the actually taken wholly, and the part partially taken, including reasonable probabilities as to effect of easements and effect of water impounded by Norris Dam on market value as of date of taking, and should also consider condition and va property immediately before the taking, and condition and value of property as of date of taking, and the difference between the two values would represent the amount of cash due the owners, assuming it was paid on the day of the taking. Tennessee Valley Authority Act 1933, § 25, 16 U.S.C.A. § 831x .

**[12] Eminent Domain 148 ⚷148**

148 Eminent Domain

148II Compensation

148II(C) Measure and Amount

148k148 k. Interest as Element, and Damages for Delay in Payment, of Compensation. Most Cited Cases

In condemnation proceeding by Tennessee Valley Authority, if any part of the just compensation was not paid to owners or paid into court for the owners when the property was taken, commission appointed to ascertain value of property and compensation to be paid should consider the question of how much additional should be paid to compensate the owners for the delay, and the usual rate of interest in the locality would ordinarily be considered a fair measure of that an Tennessee Valley Authority Act 1933, § 25, 16 U.S.C.A. § 831x .

**[13] Eminent Domain 148 ⚷138**

148 Eminent Domain

148II Compensation
148II(C) Measure and Amount
148k135 Taking Part of Tract or Property
148k138 k. Injuries to Part Not Taken. Most Cited Cases

In condemnation proceeding by Tennessee Valley Authority, all the damage to marble deposits and marble quarr occasioned by operation of Authority would constitute an element requiring just compensation, if by reason of the damage the cash market value of the whole premises was reduced, the question being, would the fair cash market value of tl property as a whole, taking into account its elements of value, be reduced by reason of claimed damages, or would a buyer of property after damage complained of pay as much for it as he would have prior to the damage? Tennessee Valle Authority Act 1933, Sec. 25, 16 U.S.C.A. 831x .

**[14] Eminent Domain 148 ⚷138**

148 Eminent Domain
148II Compensation
148II(C) Measure and Amount
148k135 Taking Part of Tract or Property
148k138 k. Injuries to Part Not Taken. Most Cited Cases

In condemnation proceeding by Tennessee Valley Authority, if effect of operation of Authority resulting in shattering marble deposits, made no difference as to market value of the whole property, then the damage done by the Autho operation is not to enter into question of just compensation, and a determination of question of just compensation goes to value of marble deposits, and whether as a marble quarry the property was valuable or was merely a mass of commercially valueless material which would not enhance market value of property, and, if of value, whether the quantities involved left room for an equal market value of the premises in so far as the matter of operation is concerned, so that any marble shattered by Authority operations did not decrease its market value as such. Tennessee Valley Authority Act 1933, § 25, 16 U.S.C.A. § 813x.

**[15] Eminent Domain 148 ⚷123**

148 Eminent Domain
148II Compensation
148II(C) Measure and Amount
148k123 k. Sufficiency of Statutory Provisions as to Amount. Most Cited Cases

Under Fifth Amendment to Federal Constitution, Congress cannot excuse United States from obligation to pay compensation in condemnation proceeding, and cannot establish a standard of measurement which would necessaril deprive the citizen of any part of his just compensation. U.S.C.A.Const. Amend. 5 .

**[16] Eminent Domain 148 ⚷123**

148 Eminent Domain
148II Compensation
148II(C) Measure and Amount
148k123 k. Sufficiency of Statutory Provisions as to Amount. Most Cited Cases

State legislation designed to give less than just compensation in condemnation proceeding would be invalid. U.S.C.A.Const. Amend. 5 .

**[17] Eminent Domain 148 ⚷123**

148 Eminent Domain
148II Compensation

148II(C) Measure and Amount

148k123 k. Sufficiency of Statutory Provisions as to Amount. Most Cited Cases

State legislation undertaking to impose upon the United States, as a condition to exercise of right of eminent domain, obligations beyond those imposed in Fifth Amendment to Federal Constitution providing that private property shall not be taken for public use without j compensation, would be invalid. U.S.C.A.Const. Amend. 5 .

**[18] Eminent Domain 148 ⚷122**

148 Eminent Domain

148II Compensation

148II(C) Measure and Amount

148k122 k. Necessity of Just or Full Compensation or Indemnity. Most Cited Cases

**Eminent Domain 148 ⚷123**

148 Eminent Domain

148II Compensation

148II(C) Measure and Amount

148k123 k. Sufficiency of Statutory Provisions as to Amount. Most Cited Cases

The State of Tennessee cannot by statute or by decision fix either a greater or a less compensation for land taken by United States for public use than the Federal Constitution provides, which is just compensation. U.S.C.A.Const. Amend. 5 .

**[19] Eminent Domain 148 ⚷167(1)**

148 Eminent Domain

148III Proceedings to Take Property and Assess Compensation

148k167 Statutory Provisions and Remedies

148k167(1) k. In General. Most Cited Cases

In condemnation proceeding by Tennessee Valley Authority, decision of Tennessee Supreme Court that incidental benefits could only reduce compensation to be otherwise awarded for incidental damages in eminent domain case controlling or persuasive, since such a measure of compensation is unjust or might be unjust in many instances to the public. Code Tenn.1932, § 3122. Tennessee Valley Authority Act 1933, § 25, 16 U.S.C.A. § 831x .

**[20] Eminent Domain 148 ⚷136**

148 Eminent Domain

148II Compensation

148II(C) Measure and Amount

148k135 Taking Part of Tract or Property

148k136 k. In General. Most Cited Cases

It is not contemplated that, after the sovereign has taken property from a citizen in eminent domain case and has paid citizen therefor, the citizen can on the same market sell his residue for an amount which added to the compensation received aggregates more than the value of the whole from which part was taken. U.S.C.A.Const. Amend. 5 .

**[21] Eminent Domain 148 ⚷122**

148 Eminent Domain

148II Compensation

148II(C) Measure and Amount
148k122 k. Necessity of Just or Full Compensation or Indemnity. Most Cited Cases

"Just compensation", within Fifth Amendment to Federal Constitution that private property cannot be taken for publ without just compensation, means the amount of money required to leave the owner with property, including compensation, of the same market value as that which he had prior to the taking, and the theory of "compensation" revolves around the idea of willingness to sell under no compulsion and willingness and ability to buy, but with no coercive need. U.S.C.A.Const. Amend. 5 .

**[22] Eminent Domain 148 ⚷136**

148 Eminent Domain
148II Compensation
148II(C) Measure and Amount
148k135 Taking Part of Tract or Property
148k136 k. In General. Most Cited Cases

In determining "just compensation" to be paid for property taken for public use the after value of the property is subtracted from the before value. U.S.C.A.Const. Amend. 5 .

**[23] Eminent Domain 148 ⚷122**

148 Eminent Domain
148II Compensation
148II(C) Measure and Amount
148k122 k. Necessity of Just or Full Compensation or Indemnity. Most Cited Cases

**Eminent Domain 148 ⚷123**

148 Eminent Domain
148II Compensation
148II(C) Measure and Amount
148k123 k. Sufficiency of Statutory Provisions as to Amount. Most Cited Cases

**Eminent Domain 148 ⚷167(1)**

148 Eminent Domain
148III Proceedings to Take Property and Assess Compensation
148k167 Statutory Provisions and Remedies
148k167(1) k. In General. Most Cited Cases

The constitutional provision prohibiting the taking of private property for public use without just compensation is complete in itself, and unless supplemented by federal statute, which can only prescribe rules for ascertaining compensation, no resort to state statutes or decisions is required, and the courts must safeguard both the condemnor and the property owner to see that the just compensation is paid. U.S.C.A.Const. Amend. 5 .

**[24] Eminent Domain 148 ⚷145(1)**

148 Eminent Domain
148II Compensation
148II(C) Measure and Amount
148k144 Deduction or Set-Off of Benefits
148k145 In General

148k145(1) k. In General. Most Cited Cases

The constitutional requirement prohibiting the taking of private property for public use without just compensation has no reference to the form in which compensation shall be paid, whether in cash or in benefits incident to the use to which the property taken is put by the condemnor. U.S.C.A.Const. Amend. 5 .

**[25] Eminent Domain 148 ⚷122**

148 Eminent Domain
  148II Compensation
    148II(C) Measure and Amount
      148k122 k. Necessity of Just or Full Compensation or Indemnity. Most Cited Cases

The word "just", in the phrase "just compensation" in constitutional amendment providing that private property shall not be taken for public use without just compensation, is a word of limitation, as though the provision read "without n settlement with a citizen which leaves him no poorer or richer than he was before the property was taken". U.S.C.A.Const. Amend. 5 .

**[26] Eminent Domain 148 ⚷167(1)**

148 Eminent Domain
  148III Proceedings to Take Property and Assess Compensation
    148k167 Statutory Provisions and Remedies
      148k167(1) k. In General. Most Cited Cases

The Tennessee statute providing that, in estimating damages in condemning lands, the jury shall give value of land without deduction but incidental benefits which may result to the owner may be considered in estimating incidenta damages, is a matter of "substantive law" and is not purely "procedural" and therefore inapplicable under the conformity act, if the statute requires the United States to give the owner something in addition to the compensation provide Amendment to the Federal Constitution. Code Tenn.1932, § 3122; U.S.C.A.Const. Amend. 5 .

**[27] Eminent Domain 148 ⚷122**

148 Eminent Domain
  148II Compensation
    148II(C) Measure and Amount
      148k122 k. Necessity of Just or Full Compensation or Indemnity. Most Cited Cases

"Just compensation", within constitutional provision that private property shall not be taken for public use wit compensation, is measured by the loss caused to the property owner by the appropriation, and the property owner is entitled to receive the value of what he has been deprived of, and no more. U.S.C.A.Const. Amend. 5 .

**[28] Eminent Domain 148 ⚷138**

148 Eminent Domain
  148II Compensation
    148II(C) Measure and Amount
      148k135 Taking Part of Tract or Property
        148k138 k. Injuries to Part Not Taken. Most Cited Cases

**Eminent Domain 148 ⚷146**

148 Eminent Domain
  148II Compensation

148II(C) Measure and Amount
148k144 Deduction or Set-Off of Benefits
148k146 k. General or Special Benefits. Most Cited Cases
Where a part only of a parcel of land is taken for a public use, value of part taken is not sole measure of compensation to be paid to owner, but incidental injury or benefit to part not taken is also to be considered, and, when part not taken is left in such shape or condition as to be in itself of less value than before, owner is entitled to additional damages, but, when part which he retains is specially and directly increased in value by the public improvement, damages to whole appropriation of part of it are lessened. U.S.C.A.Const. Amend. 5 .

**[29] Eminent Domain 148 ⚿126(1)**

148 Eminent Domain
148II Compensation
148II(C) Measure and Amount
148k125 Nature and Extent of Right Taken
148k126 In General
148k126(1) k. In General. Most Cited Cases
Where an easement is taken for a public use, Tennessee rule is that the compensation to be paid the owner is to b assumption that easement will be enjoyed to fullest extent, and this is also the federal rule, except that, under the federa rule, the just compensation to be paid landowner turns on question of effect the right to enjoyment of easement to its fullest extent will have on cash market value of property upon which the easement is imposed. U.S.C.A.Const. Amend. 5 .

**[30] Eminent Domain 148 ⚿126(1)**

148 Eminent Domain
148II Compensation
148II(C) Measure and Amount
148k125 Nature and Extent of Right Taken
148k126 In General
148k126(1) k. In General. Most Cited Cases
In condemnation proceeding by Tennessee Valley Authority involving imposition of easements if imposed easements leave property less marketable because as to some of it the owner of fee or servient estate cannot use it at all or cannot use it as effectively or profitably, the commission appointed by court to fix just compensation will determine extent to v inability to use property upon which easement is imposed at all or in part, affects fair cash market price of whole, an adverse effect upon market price, that is, amount the imposition of easement has reduced the market value, will constitut the "just compensation" due the owner. Tennessee Valley Authority Act 1933, § 25, 16 U.S.C.A. § 831x .

**[31] Eminent Domain 148 ⚿233**

148 Eminent Domain
148III Proceedings to Take Property and Assess Compensation
148k225 Assessment by Commissioners, Appraisers, or Viewers
148k233 k. Scope of Inquiry and Questions to Be Determined. Most Cited Cases
In proceeding by Tennessee Valley Authority involving imposition of easements, effect of easement on uses of servie estate is "question of fact" to be worked out by commission appointed by court to fix just compensation from the evidence before the commission. Tennessee Valley Authority Act 1933, § 25, 16 U.S.C.A. § 831x .

**[32] Eminent Domain 148 ⚿126(1)**

148 Eminent Domain

148II Compensation
148II(C) Measure and Amount
148k125 Nature and Extent of Right Taken
148k126 In General
148k126(1) k. In General. Most Cited Cases
In condemnation proceeding by Tennessee Valley Authority involving imposition of easements over land containing marble, if marble beneath and adjacent to easement of road right of way has an element of profitable usability which would add market value to the premises, and if terms of easement destroys valuable right to quarry and market marble, and if, by reason of destruction of such valuable use, market value of premises has been reduced, that and similar invasions o the authority so adversely affecting market value would be considered as elements entering into "just compensation", but if presence of marble on property does not bear upon or influence fair market value of premises or if uses of marble servient estate are such that the adverse effect upon the uses of some of it incident to imposition of easement would n reduce market value of whole, the easement would not require payment of any compensation for loss of right to quarry such marble. Tennessee Valley Authority Act 1933, § 25, 16 U.S.C.A. § 831x .

**[33] Eminent Domain 148 ⚷137**

148 Eminent Domain
148II Compensation
148II(C) Measure and Amount
148k135 Taking Part of Tract or Property
148k137 k. Land Constituting Single Tract. Most Cited Cases
The contiguous land of an owner suited for similar uses is to be treated as a "parcel" in a condemnation proceeding, and the imposition of easements or taking of parts thereof are to be considered on the basis of their effect upon market value of such contiguous property of the owner, and property of the same owner, even though contiguous, if dissimilar in th valuable uses to which it may be put, is not within such rule, if to arrive at just compensation it should become necessary to treat the property, even though contiguous, as distinct parcels. U.S.C.A.Const. Amend. 5 .

**[34] Eminent Domain 148 ⚷126(1)**

148 Eminent Domain
148II Compensation
148II(C) Measure and Amount
148k125 Nature and Extent of Right Taken
148k126 In General
148k126(1) k. In General. Most Cited Cases
In proceeding by Tennessee Valley Authority to condemn land and to impose easements, commission appointed by court to fix just compensation should fix just compensation for each parcel taken and for each easement imposed, but th aggregate compensation should not exceed difference between before and after value of entire property. Tennessee Authority Act 1933, § 25, 16 U.S.C.A. § 831x .

**[35] Eminent Domain 148 ⚷122**

148 Eminent Domain
148II Compensation
148II(C) Measure and Amount
148k122 k. Necessity of Just or Full Compensation or Indemnity. Most Cited Cases
In condemnation proceeding, "just compensation" for land taken should not be fixed by multiplying the number of cubi feet or yards or tons by a given price per unit.

**[36] Evidence 157 ⚷571(7)**

157 Evidence
157XII Opinion Evidence
157XII(F) Effect of Opinion Evidence
157k569 Testimony of Experts
157k571 Nature of Subject
157k571(7) k. Value. Most Cited Cases

In condemnation proceeding by Tennessee Valley Authority, values fixed by witnesses on the basis of multiplying t number of cubic feet or yards or tons by a given price per unit are practically valueless, and should not be accep commission appointed to ascertain value of property and compensation to be paid. Tennessee Valley Authority Act 1933, § 25, 16 U.S.C.A. § 831x .

**[37] Eminent Domain 148 ⚷122**

148 Eminent Domain
148II Compensation
148II(C) Measure and Amount
148k122 k. Necessity of Just or Full Compensation or Indemnity. Most Cited Cases

In condemnation proceeding by Tennessee Valley Authority, if bad faith should appear from direct or circumstant evidence, and if commission appointed to ascertain value of property and compensation to be paid should, on the basis such evidence, believe that the original market value of the property had been enhanced or increased by expenditures made on the premises intended to support unreal and nonexistent value, the commission should disallow as just compensation any enhancement of the market value attributable to such expenditures. Tennessee Valley Authority Ac 1933, § 25, 16 U.S.C.A. § 831x .

***815**

H. James Hitching, Asst. Gen. Counsel for T.V.A., and Alvin Ziegler, Atty. for T.V.A., both of Chattanooga, Tenn., a Frank Montgomery, Atty. for T.V.A., of Knoxville, Tenn., for plaintiff.

James B. Wright, of Knoxville, Tenn., and D. S. Beeler, of Rutledge, Tenn., for defendant.

TAYLOR, District Judge.

This memorandum relates to a request by the respondents to instruct the Commission, appointed by the court to compensation, in certain respects deemed by respondents essential to a discharge of the Commission's duty. Th compensation to be fixed by the Commission is for certain lands taken in fee and for the imposition of easements o premises owned in fee by the Indian Creek Marble Co., ***816** which premises have a certain incumbrance in the form of a lease executed by Indian Creek Marble Co. to two individuals purporting to give the lessees the exclusive right over a period of years and for a consideration to remove therefrom marble, stone and other mineral. It is stipulated in the recor that the just compensation for the fee taken and for the imposition of the easements on the fee is to be divided equal between the lessor Indian Creek Marble Co. and the lessees. In view of this stipulation it is not the duty of the Commission to apportion the just compensation between the lessor and lessees.

The briefs and argument of the parties are concerned more with the questions of law involved in the requests than with the necessity, propriety or duty of the court to give instructions at all.

[1]

Since the same question of just compensation would be tried de novo by a three judge court, if exceptions are f Commission's finding by either party, it is believed that there could be no valid objection to the instructions, and instructions might be helpful to the Commission in fixing just compensation. I shall comment on certain of the principles involved by the requests, and rule specifically on certain others.

[2] [3] [4]

The Commission, by consent of the parties, requested the court to express an opinion as to the admissibility o unauthenticated letter written purportedly by an officer of the condemnor, in which the officer expressed an opinion as tc the quality or character of certain marble or stone on the property involved, and again as to the admissibility of a report of a committee of Congress which investigated certain matters in connection with T.V.A., in which report the same let appears. It is my opinion that the letter offered is inadmissible as such, and I think as to that counsel for respondents are in at least implied accord. As to the expressions of opinion of the committee with respect to certain other purported leases, or the good faith involved in their execution or subsequent handling, this could not be competent evidence or mater establishing the similar contention or negativing such contention with respect to the execution and handling of oth purported similar leases of other mineral on or under different land. This is not to be taken as an implied holding that report would be admissible if it related to the same leases, for it is clear from the authorities examined that such inadmissible. 22 Corpus Juris 516; 20 Amer.Juris. 1027. In the absence of authority, the general principles involved would exclude the report as a public record or document, because the matters urged by respondents as material and admissible are expressions of opinion as distinguished from recorded facts made pursuant to the discharge of a statutory or other legal duty.

I do not deem it necessary or even proper for the court to undertake to deal with each specific request made by e respondents or the petitioner. General principles will be discussed, and what is hereinafter said will, I think, ena Commission to arrive at a correct conclusion as to the amount of money which will represent the just compensatioı provided by the Constitution of the United States, no more, no less.

[5] [6] [7] [8] [9] [10] [11] [12] The Commission is entitled under the statute, Tit. 16 U.S.C.A., § 831x , to view the property. From such view the Commission will draw proper inferences as to conditions as they existed before any occurred. They will consider and give due weight to the testimony of witnesses who were sworn and testified, having i mind the knowledge of each witness as to the matter covered by the testimony given. They will consider all observal matters and all facts established by the evidence tending to show any interest on the part of the witness which might c would tend to influence or color the testimony or furnish a motive for the concealment of facts known to the wit Commission will enter into a determination of the actual facts bearing upon the amount of compensation without prejudice. They will decide the facts entering into a determination of value with utter disregard of any and all considerations which do not affect the actual market value of the property. Theey will neither consider nor receive any parte unsworn statement of fact or expression of opinion in making their ultimate conclusion as to just compensation. They will approach their consideration of just compensation by determining the value of the whole property before any part was taken. They will do that assuming the attitude of one willing to sell, but not under pressure to sell, at its fair market price for cash. They will ***817** consider all the elements of value inherent in the property, including the uses to which it was being put as well as the uses it was reasonably susceptible to, which would add to its market value. They will have in mind, in other words, wh: intelligent owner would know of the property in so far as the evidence before them and their inspection of the propert shows it. If they have before them evidence of the sale of similar property similarly situated on a free market, they ı consider the price at which such similar property was sold, if within a time not too remote from the date of the taking of this property. Having thus determined the fair cash market value, they will consider the evidence before them, including facts ascertained by inspection, the effect of the taking by T.V.A., the part actually taken wholly and the part partially taken, including the reasonable probabilities as to the effect of the easements and the effect of the water impounded by Norris Dam upon the market value as of the date of the taking, considering that the depreciation in value for all the takings was fully accomplished on the day of the a taking, that is, the date as of which they have previously fixed the unimpaired value of the property; the condition and value of the property immediately before being touched by T.V.A.; the condition and value of the property as of the sai date, but assuming that as of that date all of the taking and all of the damage that would affect market value had alre become an accomplished fact. Having determined these two values, the difference will represent the amount of cash due the owners, assuming it was paid on the day of the taking. If any part of the just compensation was not paid to the owners or paid into court for them when the property was taken, they will consider the question of how much additional should be paid to compensate the owners for the delay in payment. The usual rate of interest in the locality is ordinarily considered fair measure of that amount.

[13] [14]
Certain of the requests have to do with evaluation of just compensation on the assumption that one of the elements of value entering into it is that there is not only valuable marble on the premises, but that there was actually in operation when the taking occurred a marble quarry, and that the nature of the taking by T.V.A. damaged or wholly destroye valuable marble, and necessitated either removal at great expense of marble shattered by the T.V.A. operations, o re-location of the established quarry at a place on the premises where operation would be more difficult and expensive, and that just compensation would necessarily include the expense to the lessees incident to this situation. All of the damage done by T.V.A. in this particular would constitute an element requiring just compensation, if by reason of the damage the cash market value of the whole premises was reduced, the question being, would the fair cash market value c the property as a whole, taking into account its elements of value, be reduced by reason of the claimed damages, or would a buyer of the property after the damage complained of pay as much for it as he would have paid prior to the damage? If the effect of the operation of T.V.A. resulting in the shattering of certain marble deposits made no difference as to th market value of the whole, then the damage done by the operation, if any is shown to have occurred, is not to enter into the question of just compensation. A determination of this question goes, of course, to the value of the marble deposits, and whether as a marble quarry the property was valuable or was merely a mass of commercially valueless material w would not enhance the market value of the property, and if of value whether the quantities involved left room for an market value of the whole premises, in so far as a matter of operation is concerned, so that any marble shattered b operations of the T.V.A. did not decrease its market value as such. The contention of T.V.A. is that the value as a ma quarry is fanciful and not real, and that on the free open market the marble deposits would not enter into the considerat price at all. The respondents contend that a buyer would pay more for the premises because of the marble deposits, because such deposits and the use of the premises as a quarry constituted a substantial addition to its market value, an would be recognized as having such value by a purchaser on the open free market. That difference of opinion they wil settle on the basis of the facts shown by the evidence upon the principles suggested. If quarry value entered into the market value at all, how much less valuable as a whole was the property after T.V.A. entered and damaged the ***818** quarrying possibilities to the extent it did, if it did, than it was as a whole before T.V.A. entered?

[15] [16] [17] I am of opinion that the case of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, has no application to condemnation cases in which the United States is a party and where the right inheres in the sovereign as a means of self preservation and of necessity, and where the question presented is clearly one involving a construction of an amendment to the Constitution of the United States, as in the case at bar. The duty imposed upon the United States by the amendment is to pay just compensation, and even the Congress of the United States could not excuse it fro obligation or establish a standard of measurement which would necessarily deprive the citizen of any part of it. The State of Tennessee has enacted no legislation intended to affect condemnation suits in which the United States is a part legislation, if enacted, and if designed to give so-called compensation less than just, would be invalid. Such legislation, if it undertook to impose upon the United States, as a condition to the exercise of the right, obligations beyond those imposed in the Amendment to the Constitution, would likewise be stricken down as invalid.

[18]
The State of Tennessee cannot by statute or by decision fix either a greater or a less compensation for land taken by t United States than the Constitution of the United States provides, which is just compensation. It is inconceivable t contention would be seriously made that either the Supreme Court of Tennessee or the legislature of Tennessee coul express decision or legislation define 'just compensation' as employed in the Constitution of the United States so as require the United States to pay a citizen of Tennessee a greater sum for taking a fee or an easement than it would b required to pay a citizen of another State for a fee or easement of exactly the same value.

[19] [20] [21] [22]
The only difference between this suppositious legislation or decision and the insistence of the land owner here is th measure contended for is based upon decisions of the Supreme Court of Tennessee in which that court has decided tha cases of eminent domain to

which the United States was not a party that incidental benefits could only reduce compensation to be otherwise awarded for incidental damages. In so far as Tennessee cases so hold they are not controlling, nor are they persuasive, because, in my opinion, such a measure is unjust or might be unjust in many instances to the public, and were compelled by t Tennessee statute, sec. 3122, Tennessee Code 1932. It is not in contemplation of law, by statute or otherwise, that after the sovereign has taken from a citizen and paid him for that which it has taken, that the citizen can on the same market se residue for an amount which, added to the compensation he has received, aggregates more than the value of the whole from which the part was taken. That cannot be just compensation, for just compensation is compensation only, compensation is simply that amount of money required to leave the owner with property, including his compensation, of the same market value as that which he had prior to the taking. The whole theory of compensation revolves around the idea of willingness to sell, under no compulsion, and willingness and ability to buy, but with no coercive need. circumstances the parties believe they have knowledge of the value, before and after. They subtract the after value from the before value, and the condemnor compensates in cash. Nothing could be fairer, and any other method of ar compensation could conceivably arrive at something else, either more or less, than compensation.

[23] [24] [25]
Under the Tennessee statute considered in Wray v. Knoxville, etc., Railroad, cited hereinafter, the valuation of the lan taken, where taken and in the form taken, necessarily includes the element of the effect of carving a part from the whole and in a relationship to the whole, such as would enhance its value to the owner, because of its severance effect u remainder. The fair cash value of that 'particular quantity at the place and in that form would be the measure compensation', carries the inescapable implication that the cash value contains an element of damage to the remainder of the parcel from which the condemnor took his fee or easement. It is not compensation but more than compensation to twice give the owner severance damage. If the form in which the land is taken enters into its value, it can only be upon the theory that its value is greater to the owner as a supplement to his contiguous property. Form ***819** could not enter into the value except as it would leave that from which it is separated less valuable than before by reason of its form. If the State rule is to be so taken, then the inevitable result would be that the land owner would twice receive incidental damages, either in cash compensation or partly in cash and partly in incidental benefits. That type of so-called compensation is ar must be grounded upon a statutory provision setting up an artificial measure based upon neither justice nor the se conception of the meaning of the word 'compensation'. In Wray v. Knoxville, etc., Railroad, 113 Tenn. 544, 548, 82 S.W. 471, 473, in an opinion relied upon by respondents, the following significant language is found: 'It will be noted that jus compensation for property taken is provided for by Constitution (state and federal). Incidental benefits and damage creatures of statute, and are in addition to the compensation provided by the Constitution, and separate from it. (Paducah & M.) R.R. v. Stovall, 12 Heisk. (Tenn., 1), 5; Memphis v. Bolton, 9 Heisk. (Tenn.), 508; Woodfolk v. (Nashville & C.) R.R. Co., 2 Swan (Tenn., 422), 437'. These cases all involve property acquired by a municipality or a railroad, and the question of the applicability of State law was, of course, not before the State court. If, as said by the court in the opinion just quoted from, the compensation to which a citizen is entitled is provided for by the Constitution, both state and federal, it is complete in itself, and unless supplemented by federal statute, which could only prescribe rules for ascertaining it, no resort to st statutes or decisions is required, but the courts must themselves safeguard both the condemnor and the respondent to see that the just compensation is paid, and, unless Congress shall otherwise prescribe the rules for ascertaining it, see to it that respondent receives no more than the Constitution provides-compensation. It may be well to observe here that constitutional requirement has no reference to the form in which compensation shall be paid, whether in cash or in benefits incident to the use to which the property taken is put by the condemnor. If the word 'just' in the phrase 'just compensation' has any significance, it would seem clear that it is a word of limitation, as though the provision read 'without making a settlement with a citizen which leaves him no poorer and no richer than he was before the property taken'. The measure of riches, at least at the present time, seems to be that amount of money one could realize from the sale of his worldly possessions.

It was urged in behalf of the three respondents in the case of United States v. Meyer, 7 Cir., 113 F.2d 387, that a statute of Illinois, under the conformity act, 28 U.S.C.A. § 724, required the United States, before instituting condemnati proceedings, to undertake and fail in direct purchase from the owner. This insistence was rejected, because, as held by

court, the Illinois act relied upon dealt with substantive and not procedural law, and that conformity to its requirements was not compelled by the conformity act, which deals with form and not substance. If compliance with the Tennessee statute requires a different result as to the ultimate amount to be paid the property owner as just compensation, the Tennessee statute likewise deals with matter of substantive and not procedural law.

[26] In the case of Kohl v. United States, 91 U.S. 367, 23 L.Ed. 449, it is held that if the United States have the power of eminent domain at all, it must be complete, and not subject either to enlargement or diminution by one of the several states, and that the manner of its exercise may not be prescribed by one of them. But it is argued in behalf of respondent here that the Tennessee statute does not enlarge or diminish the right or prescribe the manner of its exercise, as did the Illinois statute before the court in United States v. Meyer, supra; that the power is not questioned; that the conformity act is applicable because it prescribes merely procedural method of ascertaining the amount of damage done or the amount of compensation required in each instance where land or an easement thereon, over or under, is taken in Tennessee. If compliance with the Tennessee statute requires the sovereign United States to pay more than enough to compensate, as said in Wray v. Knoxville, etc., Railroad, supra, that is, if it gives the owner something 'in addition to the compensation provided by the Constitution, and separate from it', it becomes a matter of substantive law, because it conditions the right to take upon the payment of something more than the federal Constitution requires. This is the construction placed upon the statute by the Supreme ***820** Court of Tennessee, and leaves no room for the construction insisted upon by respondents, that the statute is purely procedural, and necessarily applicable under the conformity act. Wray v. Knoxville, etc., Railroad, supra;Kanakanui v. United States, 9 Cir., 244 F. 923; Tilden v. United States, D.C., 10 F.Supp. 377 .

The rule announced in this memorandum has reference to lands a part of which are actually taken, and as to a part of which easements for road locations have been imposed, and upon and/or under which lands there are deposits of marble and limestone. There is apparently no suggestion or evidence that the use to which the land taken or the easements imposed will be put will tend to enhance the value of the remaining land.

[27] [28]
The objection made to the before and after value rule, and pointed out in the case of Wray v. Knoxville, etc., Railroad supra, have been considered, but the federal rule which is applicable is not in accord with the reasoning of that case, and the decision there followed the Tennessee statute. All of the elements of value entering into just compensation are contained in the federal formula. If there be other distinctions between the Tennessee rule and the federal rule as to special and incidental benefits, that is not material here, but the federal rule is clearly stated in a number of federal cases, among them United States v. River Rouge Co., 269 U.S. 411, 414-416, 46 S.Ct. 144, 70 L.Ed. 339, and cases there cited; Karlson v. United States, 8 Cir., 82 F.2d 330. See also High Bridge Lumber Company v. United States, 6 Cir., 69 F. 320; Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142, 96 A.L.R. 1 .

United States v. North American Transportation & Trading Co., 253 U.S. 330, 40 S.Ct. 518, 64 L.Ed. 935, distinguishes between cases where the right to compensation is sourced in the Fifth Amendment to the United States Constitution, and cases in which the right to compensation arises out of an implied contract. Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 976, 42 L.Ed. 270.
In this last cited case, involving the basic question of just compensation as well as the construction of a statute of the United States relating to certain condemnation proceedings in the District of Columbia, the court said:

'The just compensation required by the constitution to be made to the owner is to be measured by the loss caused to him by the appropriation. He is entitled to receive the value of what he has been deprived of, and no more. To award him less would be unjust to him; to award him more would be unjust to the public.

'Consequently, when part only of a parcel of land is taken for a highway, the value of that part is not the sole measure of the compensation or damages to be paid to the owner; but the incidental injury or benefit to the part not taken is also considered. When the part not taken is left in such shape or condition as to be in itself of less value than before, the owner

is entitled to additional damages on that account. When, on the other hand, the part which he retains is specially and directly increased in value by the public improvement, the damages to the whole parcel by the appropriation of part of it are lessened'.

And in the case of United States v. River Rouge Company, supra, the court held, at page 415, of 269 U.S.,at page 146 of 46 S.Ct., 70 L.Ed. 339: 'We are of opinion that an increase in the value of the remaining portion of any parcel of land caused by its frontage on the widened river, carrying a right of immediate access to and use of the improved stream, would constitute a special a direct benefit within the meaning of the statute, as distinguished from a benefit common to all the lands in the vicin although the remaining portions of other riparian parcels would be similarly benefited. This is in accordance with recognized by this court and established by the weight of authority in the state courts in reference to special benefits to lands abutting upon a new or widened street'. Citing Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270; Allen v. Charleston, 109 Mass. 243; Hilbourne v. Suffolk, 120 Mass. 393, 21 Am.Rep. 522; Cross v. Plymouth, 125 Mass. 557; 2 Lewis Eminent Domain, 3rd Ed., sec. 702, p. 1216, inter alia.

The right of action in the land owner where condemnation proceedings are involved, as distinguished from tak circumstances in which the right of action arises from implied contractual obligation, is grounded in the Fifth Amendmen to the Constitution, or in the specific statute authorizing the taking, or both, and where the right to compensation is so rooted, the case of ***821**Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, has no application.

[29] [30] [31] [32] [33] It is contended that there is a difference between the so-called federal rule and the Tennessee rule as to the effect o easement. The Tennessee rule is that the compensation to be paid the owner is to be upon the assumption that the easement will be enjoyed to its fullest extent. That appears to be the Tennessee rule, and it is also the federal rule, exce under the federal rule the just compensation to be paid the land owner turns upon the question of the effect the rigl enjoyment of the easement to its fullest extent will have upon the cash market value of the property upon which the easement is imposed. Under either rule, whether the loss to the owner is to be paid as for damages inflicted by the imposition of an easement or by way of just compensation for the thing taken, the result should be the same if the marl value of the property before and after the imposition or taking is used as the measure of loss or damage. The question is how does the easement affect the market price of the property? Here again we have the willing and intelligent buyer a seller, neither acting under compulsion. They agree upon a price before the easement is imposed. But before the sale : closed the easement is imposed. They meet again, both willing to deal on the basis, of course, of the fair market value. But the situation is changed in one particular- the imposition of the easement or easements. The question is, how does tl changed situation affect the market price? The willing prospective buyer examines the instrument creating the outs easement as to its terms, whether it is perpetual; to what extent does it limit the use of the servient estate, and what maximum uses granted by the instrument? All in all, how much less valuable do the outstanding easements make the whole property? Specifically if the imposed easements leave the property less marketable because as to some of it the owner of the fee or servient estate cannot use it at all or cannot use it as effectively or profitably, the Commission will, from the material facts before it, determine the extent to which the inability to use the property upon which the easement is imposed at all or in parts, affects the fair cash market price of the whole. The adverse effect upon the market price, that is the amount the imposition of the easement has reduced it, will constitute the just compensation due the owner. It is therefore, that the effect of the easement upon the uses of the servient estate becomes a question of fact to be worked out by the Commission from the evidence before it. If the marble beneath and adjacent to the easement of road right of way has an element of profitable usability which would add market value to the premises, and if the terms of the easement of right of way destroys that valuable right to quarry and market such marble, and if by reason of the destruction of the valuable use the market value of the premises has been reduced, that and similar invasions of T.V.A. so adversely affecting the market value would be considered as elements entering into just compensation. If, on the other hand, t presence of marble on the property does not bear upon or influence the fair cash market value of the premises at all, or if the uses of the marble left to the servient estate are such as that the adverse effect upon the uses of some of it incident to the imposition of the easement, under all the facts and circumstances of the instant case, would not, in the opinic

Commission, on the basis of the evidence before it, reduce the market value of the whole, then the particular easemen would not require the payment of any compensation for loss of the right to quarry it, for the reason that the contiguous land of an owner suited for similar uses is to be treated as a parcel, and the imposition of easements or the taking of p thereof are to be considered on the basis of their effect upon the market value of such contiguous property of the ov Property of the same owner, even though contiguous, if dissimilar in the valuable uses to which it may be put, would not be within this general principle, if to arrive at just compensation it should become necessary to treat the property, even though contiguous, as distinct parcels.

[34]
The Commission should fix just compensation for each parcel taken and for each easement imposed, but the aggregate shall not exceed the difference between the before and after value of the entire boundary.

It will be noted, too, that the rule announced in the case of United States v. River Rouge Co., supra, leaves room differences of opinion as to benefits to the ***822** remainder of the property from which a part has been taken by the sovereign, as to whether or not the benefits are incidental benefits, incident to the use to which the severed property has been put, or whether the benefit so accruing is one common to all property in the vicinity to which the citizen would apparently be entitled, and of which he might deprived by way of its offset against severance damages adversely affecting the fair, cash market value of the who property. This distinction is of no importance in the instant case, perhaps, but it is desirable that the observation be made to indicate the limited application of some of the general terms employed throughout this memorandum. As to a p application of that principle I express no opinion.

[35] [36]
Fixing just compensation for land taken by multiplying the number of cubic feet or yards or tons by a given price per un has met with almost uniform disapproval of the courts. This is true because such valuation involves all of the unknown and uncertain elements which enter into the operation of the business of producing and marketing the product. It assume not only the existence, but the continued existence of a stable demand at a stable price. It assumes a stable production cc and eliminates the risks all business men know attend the steps essential to the conduct of a manufacturing enterpr eliminates the possible competition of better materials of the same general description and of the possible substitution o other and more desirable materials produced or possible of production by man's ingenuity, even to the extent of renderin the involved material unmarketable. It involves the assumption that human intelligence and business capacity are negligible elements in the successful conduct of business. It would require the enumeration of every cause of busine disaster to point out the fallacy of using this method of arriving at just compensation. No man of business experience would buy property on that theory of value. True it is that quality and quantity have a place in the mind of the buyer and the seller, but the product of these multiplied by a price per unit should be rejected as indicating market value when t willing seller meets the willing buyer, assuming both to be intelligent. Values fixed by witnesses on such a basis are practically worthless, and should not be accepted. To the extent the valuation fixed by any witness contains this speculative element, to the same extent is its value as evidence reduced.

[37]
It is not clear whether the question of the effect of bad faith will enter into the Commission's deliberations on the ba evidence either direct or circumstantial. The transcript of the evidence is not before me. The Commission would award just compensation for the property taken in any event. But if bad faith should appear from direct or circumstantial evidence, and if the Commission should, on the basis of such evidence, believe that the original market value of the property had been enhanced or increased by expenditures made on the premises intended to support unreal and non existent value, the Commission, in that event, would disallow as just compensation any enhancement to the mark attributable to such expenditures.

The court regrets its inability to pass by unnoticed certain unjustifiable and **improper** comments contained in respondents' **brief**, which provoked milder, more subtle and justifiable response. The court must, in order to discharge its functions to the maximum, have a respectful, cordial and cooperative attitude among its officers. A sharp, ugly or disrespectful attitude

on the part of one **officer** of the **court** toward another adds nothing to the pleasure of judicial position, to the **respect** of the public for the bar, and certainly is not helpful to the court in the performance of its difficult duties.

D.C.TENN. 1941.
U.S. ex rel. Tenn. Valley Authority v. Indian Creek Marble Co.
40 F.Supp. 811

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.