# **APPENDIX 6**

**Westlaw Delivery Summary Report for SINN,NATE R 6026349**

| | |
|---|---|
| Date/Time of Request: | Monday, July 28, 2008 17:36 Central |
| Client Identifier: | 0126/01 |
| Database: | FEDFIND |
| Citation Text: | 513 F.2d 1121 |
| Lines: | 455 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Westlaw.

513 F.2d 1121        Page 1

513 F.2d 1121, 19 Fed.R.Serv.2d 1397

**513 F.2d 1121**

▷

Langford v. Chrysler Motors Corp.
C.A.N.Y. 1975.

United States Court of Appeals, Second Circuit.
Francis J. LANGFORD, Individually and as natural guardian of Frank P. Langford, an infant, Plaintiff-Appellee,
v.
CHRYSLER MOTORS CORP., Defendant-Appellant,
andWoodbridge Dodge, Inc., Defendant-Appellee.
**No. 197, Docket 74-1637.**

Argued Oct. 24, 1974.
Decided March 17, 1975.

Action was brought by automobile owner against manufacturer and dealer for injuries sustained by owner's minor son while passenger in automobile which left the road. The United States District Court for the Eastern District of New Yc Mark A. Costantino, J., 373 F.Supp. 1251, entered a judgment awarding damages, dismissing manufacturer's claims for indemnity and contribution from the owner and from the dealer and allowing full indemnification from manufacturer to dealer on its cross claim. The manufac appealed. The Court of Appeals, Waterman, Circuit Judge, held, inter alia, that there was substantial evidence whic sufficient to support inference that defect in automobile's tie rod assembly existed prior to delivery of automob manufacturer, that admission of testimony of expert for plaintiff was within discretion of trial judge, that the quash subpoena duces tecum did not require reversal, that finding that the automobile owner was not negligent in operation vehicle was not clearly erroneous and that the $9,000 award was not excessive.

Affirmed.

West Headnotes

**[1] Products Liability 313A ⇌5**

313A Products Liability
 313AI Scope in General
  313AI(A) Products in General
   313Ak5 k. Strict Liability. Most Cited Cases

Under doctrine of strict products liability, manufacturer of defective product is liable to any person injured or damage defect was a substantial factor in bringing about his injury or damage, provided: that at time of occurrence product is being used for purpose and in the manner normally intended, that if person injured or damaged is himself the user of product he would not by exercise of reasonable care have both discovered the defect and perceived its danger, and the exercise of reasonable care person injured or damaged would not otherwise have averted his injury or damage.

**[2] Products Liability 313A ⇌83.5**

313A Products Liability
 313AII Actions
  313Ak82 Weight and Sufficiency of Evidence
   313Ak83.5 k. Automobiles. Most Cited Cases
 (Formerly 48Ak16)

Where owner of automobile, suing as guardian of minor passenger for injuries sustained when automobile left road, testified concerning circumstances of accident and in addition presented expert testimony about allegedly defective assembly of automobile, this circumstantial evidence, although controverted, was sufficient to support inference that defect existed prior to defendant manufacturer's delivery of automobile to dealer from whom it had been purchased.

**[3] Products Liability 313A ⇌83.5**

313A Products Liability
 313AII Actions
  313Ak82 Weight and Sufficiency of Evidence
   313Ak83.5 k. Automobiles. Most Cited Cases
 (Formerly 48Ak16)

Under New York law, plaintiff suing automobile manufacturer for damage caused because of alleged defect in automobile is not required to show by direct proof that the defect existed while automobile was in manufacturer's possession, existence of defect may be inferred from proof that product did not perform as intended by manufacturer.

**[4] Evidence 157 ⇌194**

157 Evidence
 157VI Demonstrative Evidence
  157k194 k. Articles Subject of or Connected with Controversy. Most Cited Cases

Positive identification by plaintiff, after examination of photographs of allegedly defective automobile taken both at time of accident and at time of inspection by plaintiff's expert, that the external condition of automobile was unchanged provided a sufficient foundation for admission in evidence of the allegedly defective tie rod assembly of aut notwithstanding the lapse of more than three months between date of accident and date of expert's inspection and removal of parts.

**[5] Evidence 157 ⇌560**

157 Evidence
    157XII Opinion Evidence
        157XII(D) Examination of Experts
            157k560 k. Contradiction and Impeachment. Most Cited Cases

Refusal of trial court to permit defendant automobile manufacturer, being sued for injuries allegedly caused by automobile, to read transcript of unrelated state trial in which plaintiff's expert appeared was not an abuse of discretion and did not improperly limit defense attack on qualifications of plaintiffs' expert witness where transcript sought to be read did not directly concern the qualifications of witness as metallurgist but only fact that witness had signed numer reports in diverse fields concerning which defense counsel was permitted to ask witness questions.

[6] Federal Courts 170B ⟲904

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)6 Harmless Error
                170Bk904 k. Trial in General. Most Cited Cases
    (Formerly 106k406.6(3))

Where record did not show that defense counsel requested material from proposed expert witness for plaintiff on th specified in subpoena for compliance or that witness was unprepared to comply with or to object to the subpoena on i return date, and there was no claim of prejudice to defendants resulting from the one-day delay in entering motion to quash, the failure of movant to comply with literal requirements of rule did not provide ground for reversal of judgment. Fed.Rules Civ.Proc. rule 45(b), 28 U.S.C.A .

[7] Witnesses 410 ⟲9

410 Witnesses
    410I In General
        410k7 Subpoena
            410k9 k. Application and Proceedings Thereon. Most Cited Cases
    (Formerly 170Ak1223)

In absence of claim of privilege, party usually does not have standing to object to subpoena directed to a nonparty witness.

[8] Federal Courts 170B ⟲895

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)6 Harmless Error
                170Bk895 k. Pretrial Proceedings; Discovery and Depositions. Most Cited Cases
    (Formerly 106k406.6(3))

Quashing of subpoena duces tecum seeking voluminous material from plaintiffs' expert witness which had dubiou relevance to the witness' qualifications as a metal expert did not require reversal of judgment where moving plaintiff, whom it was claimed had no standing to object, was objecting not only to production of records but also the continue attack on witness and court permitted defense counsel ample opportunity to attack witness' qualifications.

[9] Contribution 96 ⟲3

96 Contribution
    96k2 Common Interest or Liability
        96k3 k. In General. Most Cited Cases

**Indemnity 208 ⚷59**

208 Indemnity
    208III Indemnification by Operation of Law
        208k56 Right of One Compelled to Pay Against Person Primarily Liable
            208k59 k. Relative Culpability. Most Cited Cases
(Formerly 208k13.1(2.1), 208k13.2(2), 208k13.1(2))

**Indemnity 208 ⚷64**

208 Indemnity
    208III Indemnification by Operation of Law
        208k63 Particular Cases and Issues
            208k64 k. In General. Most Cited Cases
(Formerly 208k15(9))

Right to apportionment of liability or to full indemnity under New York law as between parties who are involved together in causing damage by negligence or by breaches of warranty, rests on relative responsibility, and is to be determined on the facts.

**[10] Federal Courts 170B ⚷857**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)5 Questions of Fact, Verdicts and Findings
                170Bk855 Particular Actions and Proceedings, Verdicts and Findings
                    170Bk857 k. Automobiles, Carriers and Railroads. Most Cited Cases
(Formerly 106k406.3(14))

Finding of trial judge that plaintiff automobile owner, suing manufacturer and dealer for alleged defect in automobile which left road and caused injury to minor passenger son, was not negligent in operation of automobile was not c erroneous.

**[11] Federal Courts 170B ⚷842**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)5 Questions of Fact, Verdicts and Findings
                170Bk842 k. Weight or Preponderance of Evidence in General. Most Cited Cases
(Formerly 106k406.3(2))

**Federal Courts 170B ⚷844**

170B Federal Courts
    170BVIII Courts of Appeals

    170BVIII(K) Scope, Standards, and Extent
        170BVIII(K)5 Questions of Fact, Verdicts and Findings
           170Bk844 k. Credibility of Witnesses in General. Most Cited Cases

Unless clearly erroneous, evaluation of credibility of witnesses and weight of evidence is responsibility of trial judge.

[12] Indemnity 208 €—102

208 Indemnity
    208V Actions
        208k98 Evidence
           208k102 k. Weight and Sufficiency. Most Cited Cases
   (Formerly 208k15(7))

Products Liability 313A €—83.5

313A Products Liability
    313AII Actions
        313Ak82 Weight and Sufficiency of Evidence
           313Ak83.5 k. Automobiles. Most Cited Cases
   (Formerly 48Ak16)

Evidence, in action against automobile manufacturer and dealer for injuries caused by defective tie rod assembly automobile in which manufacturer sought indemnity from dealer, failed to indicate that dealer was negligent in it automobile prior to its delivery and justified finding that dealer's degree of fault was minimal.

[13] Damages 115 €—127.13

115 Damages
    115VII Amount Awarded
        115VII(B) Injuries to the Person
           115k127.12 Head and Neck Injuries in General; Mental Impairment
               115k127.13 k. In General. Most Cited Cases
   (Formerly 115k130.1, 115k130(1))

Damages 115 €—127.14

115 Damages
    115VII Amount Awarded
        115VII(B) Injuries to the Person
           115k127.12 Head and Neck Injuries in General; Mental Impairment
               115k127.14 k. Mouth and Jaw Injuries. Most Cited Cases
   (Formerly 115k130.1, 115k130(1))

Damages 115 €—127.43

115 Damages
    115VII Amount Awarded
        115VII(B) Injuries to the Person
           115k127.43 k. Burns, Scars, and Skin Injuries. Most Cited Cases
   (Formerly 115k130.1, 115k130(1))

Award of $9,000 for injuries to six-year-old automobile passenger, who spent ten days in hospital, suffered a chipped tooth, swollen face and had a slight permanent scar, was not excessive.

*1123 Marshall G. Kaplan, Brooklyn, N. Y., for plaintiff-appellee.

Marvin V. Ausubel, Emile Z. Berman and A. Harold Frost, New York City, for Chrysler Motors Corp., defendant-appellant.

Julian H. Gottlieb, Markhoff, Gottlieb, Lazarus, D'Auria & Maldonado, New York City, for Woodbridge defendant-appellee.

Before WATERMAN, OAKES and GURFEIN, Circuit Judges.

WATERMAN, Circuit Judge:

In this diversity action, Francis J. Langford filed a complaint in the United States District Court for the Eastern District New York alleging that injuries sustained by his minor son in an automobile accident resulted from the neglige: manufacture of the automobile by the defendant Chrysler Motors Corp. (Chrysler) and from the negligent servicin automobile by the vendor, Woodbridge Dodge, Inc. Langford alleged that the defendants' breaches of their respe warranties, express and implied, provided the basis of liability. In its answer, Chrysler asserted a counterclaim aga Langford for indemnity or contribution, alleging that his negligent operation of the car caused the accident. Chrysler asserted a cross-claim against Woodbridge Dodge for indemnity or contribution alleging that its negligent servicing Langford car and its breach of its warranties caused the accident. After trial and in its brief on appeal Chrysler claimed that Langford sued the wrong defendant in that Chrysler Corporation rather than Chrysler Motors Corp. manufactu Langford automobile. At oral argument Chrysler withdrew this belated "wrong defendant" argument. Woodb: counterclaimed for indemnification from Chrysler alleging that Chrysler's defective manufacture of the automobile was the principal cause of the accident.

After a bench trial, Judge Costantino awarded $9,000 in damages to Langford and granted full indemnification fron Chrysler to Woodbridge Dodge. Chrysler appeals and advances six grounds for reversal of the decision below: ( insufficient proof under New York law to support a strict product liability award; (2) prejudicial erroneous admission certain testimony by the plaintiff's expert witness; (3) the limiting of Chrysler's attack upon the qualifications of plaintiff's expert witness; (4) the trial judge's handling of a subpoena duces tecum; (5) the various decisions of the court on t indemnity and contribution issues; and (6) the amount of damages awarded. We affirm the decision below in all respects.

The plaintiff had purchased a new automobile, equipped with power steering, from Woodbridge Dodge in July, 1971. H and his wife, the principal users of the automobile, experienced no trouble with the steering of the car during the first 4,000 miles of driving. On December 2, 1971, the plaintiff took the car for its initial service checkup to Woodbridge Dodge, which, in addition to servicing the Langfords' specific complaints, provided a customary inspection of tl automobile.

The plaintiff on the night of December 3, 1971 was driving his six year old son home from a Boy Scout meeting wh accident occurred. That night the road was lightly trafficked and well lighted, and the weather conditions were clear plaintiff testified that he heard a loud snapping sound in the right front section of the automobile, and that, despite immediate braking, the car veered off the road and struck a parked car and a retaining wall. Mr. Langford's testimony at the trial was contradicted in part by the police officer who *1124 was at the scene shortly after the accident and who testified that the plaintiff was in a "dazed condition" and had not then mentioned the snapping noise.

At the trial both Langford and Chrysler presented expert witnesses to testify about the possible cause of the acci Predictably, these witnesses disagreed sharply. Vasilis Morfopoulis testified for the plaintiff. He was of the opinion defective ball joint in the tie rod assembly caused the accident. Specifically, this expert stated that a pre-existing tightness of the ball joint caused the following sequence: galling on the upper bearing of the ball stud, a peculiar angularity of th stud, its pry-out, and finally a loss of steering control. Chrysler presented two expert witnesses, engineers in the employ of Chrysler Corporation, who testified to the effect that there was no evidence of any defects which existed prior to th

accident and that the pry-out was caused by the impact of the collision itself.

Judge Costantino accepted the version of Morfopoulis and found that, under the New York law of strict product lia Chrysler, as the manufacturer of the automobile, was liable, having caused the injuries to plaintiff's son, and the Woodbridge Dodge, as vendor of the automobile, the other defendant, was at fault only minimally, and was therefor entitled to full indemnification over and against Chrysler. Chrysler appeals these findings.

[1]
Chrysler's initial argument on this appeal concerns the proof necessary under the applicable law in this diversity action, New York law, to support a product liability award. In Codling v. Paglia, 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973), a case factually similar to ours, the New York Court of Appeals stated at page 342, 345 N.Y.S.2d at 470, 298 N.E.2d at 628:

We accordingly hold that, under a doctrine of strict products liability, the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury or damages; provided: ( that at the time of the occurrence the product is being used (whether by the person injured or damaged or by a third person) for the purpose and in the manner normally intended, (2) that if the person injured or damaged is himself the user of the product he would not by the exercise of reasonable care have both discovered the defect and perceived its danger, and (3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injury or damages.

See, also, Velez v. Craine & Clark Lumber Corp., 33 N.Y.2d 117, 350 N.Y.S.2d 750 (1973). It is clear that the plaintiff has satisfied these requirements. The automobile was being used for the purpose and in the manner normally intended There was no proof that Langford in the exercise of reasonable care could have discovered the defect. The issue of whether Langford negligently operated the automobile was before the Court, and the issue was resolved in Langford's favor.

[2]                                                                                                                    [3]
Chrysler's objection to the sufficiency of the evidence stems from the belief that under New York law a plaintiff must show by direct proof that the defect existed while the automobile was in the manufacturer's possession. In Codling, the Court of Appeals rejected the contention that the plaintiff there could not recover because of failure to show that the defect existed at the date of manufacture. The court stated in part "though the happening of the accident is not proof of a defective condition, a defect may be inferred from proof that the product did not perform as intended 1 manufacturer."Codling v. Paglia, supra, 32 N.Y.2d at 337, 345 N.Y.S.2d at 465, 298 N.E.2d at 325. Here, as in Codling, the plaintiff testified about the circumstances of the accident, and in addition, he presented expert testimony about defective part. Compare, Butkowski v. General Motors Corporation, 497 F.2d 1158 (2 Cir. 1974). See, also, *1125 Barker, Circumstantial Evidence in Strict Liability Cases, 38 Albany L.Rev. 11 (1973). This circumstantial evidenc although controverted, was sufficient to support an inference that the defect existed prior to Chrysler's delivery of automobile to Woodbridge Dodge. Cf. Wasik v. Borg, 423 F.2d 44 (2 Cir. 1970).

[4]
Chrysler objects to the testimony of the plaintiff's expert witness, Morfopoulis, on the ground that there was no ev indicating that the automobile was in the same condition on the date of his inspection and removal of parts in February 1972 and the date of the accident, December 3, 1971. Shortly after the accident the vehicle was towed from Staten Islan New York to a salvage pool yard in Newark, New Jersey. There was no testimony bearing upon the vehicle's journey Newark or upon relevant events in the intervening weeks. The plaintiff testified from examination of photographs automobile taken both at the time of the accident and at the time of Morfopoulis's inspection that the external condition c the automobile was unchanged. This positive identification provides a sufficient foundation for admission into evidence of the auto's tie rod assembly. Cf. Burris v. American Chicle Co., 120 F.2d 218 (2 Cir. 1941). The tie rod assembly, located well within the chassis of the vehicle, was not easily alterable, a fact to which the expert witnesses of Chrysler indir

testified when discussing the strength of the ball stud. This fact relaxes the requirement of showing that there had substantial changes in the evidence between the time of accident and the time of trial. Walker v. Firestone Tire & Rubber Company, 412 F.2d 60 (2 Cir. 1969). Prior to the testimony of Morfopoulis on this point, the two Chrysler experts had testified as to the condition of the tie rod assembly parts and had explained the tests they had performed in order to support their expert testimony. In light of this defense evidence the admission of Morfopoulis's testimony was properly within the discretion of the trial judge.

[5]
At the trial Chrysler went to great lengths to attack the credibility of plaintiff's expert witness, Morfopoulis, and now objects to the court's alleged restrictions on their efforts. As Technical Director of American Standard Testing Bureau, Inc., the witness worked on as many as two hundred reports a year and his signature appeared on 18,000 reports a y Defense counsel brought out these facts, and, in addition, questioned the witness on his other fields of claimed expertise. The trial judge permitted this inqui although he was openly skeptical about the relevancy of it to the issue of whether the witness could qualify as a metallurgist. In this connection, the judge forbade the reading of the transcript of an unrelated state court trial in which the witness had appeared, but allowed questions to be asked him about it. In Walker v. Firestone Tire & Rubber Compan supra, questions concerning misstatements of an expert witness's educational qualifications and the extent of his pa holdings given at a prior trial were, the Second Circuit held, improperly excluded for the fact that a witness, purportedly an expert, had lied at a previous trial about his qualifications had a direct bearing on his credibility. Here, apparentl evidence sought to be admitted did not directly concern the qualifications of the witness as a metallurgist, but only prov that the witness had signed numerous reports in diverse fields. The action of the court was not an abuse of discretion, an did not improperly limit the defense attack upon the qualifications of plaintiffs' expert witness.

Chrysler objects to the court's treatment of a subpoena duces tecum issued to American Standard Testing Bureau, Inc. The subpoena, issued September 6, 1973, first required the production of "all work notes, bills, and records" prepared for tl case; and, secondly, the production of

all records from 1965 to 1973 indicating the names of the cases, the Courts, the dates, the nature of the testimony and tl bills and fees for examinations and/or testimony charged in connection with any and all cases in which *1126 Vasillas (sic) Morfopoulis has appeared as a witness.

The return date was September 10, 1973, the day the trial commenced. On the second day of the trial, Morfopoulis testified that he had brought the subpoenaed documents to court. As to the underlying work reports of the present action, he testified that, with the exception of photographs, all his work product had been recorded on tape cartridges which had been erased after the completion of the two accident reports. Plaintiff's counsel promptly moved to quash the second item of the subpoena, the litigation-related work records of the witness from 1965 to 1973. Judge Costantino, finding the request to produce an unreasonable one, granted the motion to quash.

[6]
Chrysler argues that the motion to quash the subpoena duces tecum was untimely in that it was made after the time specified for compliance and that the plaintiff had no standing to object to the subpoena. Rule 45(b) Fed.R.Civ.P., requires that a motion to quash a subpoena duces tecum be made " promptly and in any event at or before the time specified subpoena for compliance therewith." There is nothing in the record to indicate that defense counsel had made a request fc the material on that date, or that the witness was unprepared to comply with, or to object to, the subpoena on its return date. Moreover, defendants raise no claim of prejudice resulting from the one day delay. Under these circumstances, failure of movant to comply with the literal requirements of Rule 45(b) does not provide grounds for a reversal of the judgment below. See, In re Surety Association of America, 388 F.2d 412 (2 Cir. 1967).

[7]                                                                                                                          [8]
In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a

non-party witness. 5A J. Moore, Fderal Practice P 45.05(2), (2d ed. 1974). Plaintiff's motion to quash the subpoena aro after an extensive inquiry into the qualifications of plaintiff's witness. In this context, it appears that plaintiff was objecting not only to the production of these records but also to the continued attack upon his witness. Judge Costantino's somewhat inartful handling of this question does not warrant reversal of the judgment. The materials sought were not only voluminous, but also they had no relevance to the main issues in the case, and had but dubious relevance to the qualifications as a metallurgist. The Court had permitted defense counsel ample opportunity to attack the witness's qualifications. We are convinced that whatever additional information these unrelated materials might have provided would not have affected the substantial rights of the defendant. Fed.R.Civ.P. 61 ; See, also, Shaw v. Scoville, 369 F.2d 909 (2 Cir. 1966) .

Chrysler further contends that even if the trial court properly found it to be liable to plaintiff New York law entitle: indemnity from the plaintiff on its counterclaim against him, and from the other defendant, Woodbridge Dodge, o crossclaim against it.

[9] In Dole v. Dow Chemical Co., 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972) , the New York Court of Appeals rejected the concepts of " active and passive" negligence in the determination of indemnification among tortfeasors, and announced a rule of relative contribution, stating:

(The) right to apportionment of liability or to full indemnity, then, as among parties involved together in causing damage by negligence, should rest on relative responsibility and to be determined on the facts. Id. at 153, 331 N.Y.S.2d at 392, 282 N.E.2d at 295 .

This rule has been extended to cases involving breaches of warranty. Noble v. Desco Shoe Corp., 41 A.D.2d 908, 343 N.Y.S.2d 134 (1st Dep't 1973) .

[10]                                                                                                                                    [11]
As to the plaintiff Francis J. Langford, Chrysler argues that his negligence in the operation of the car caused the acciden and that therefore he should assume liability for the injuries to *1127 his son. Chrysler points out that the Dole rule of relative contribution can apply to situations in which the co-plaintiff, as driver of the automobile, was negligent. Moreno v. Galdorisi, 39 A.D.2d 450, 336 N.Y.S.2d 646 (2d Dep't 1972) . Here, however, the court found that Francis Langford had not been negligent. Langford's account of the accident was contradicted in part by the testimony of the police officer wh was at the accident scene, and by some of the testimony of the expert witnesses on how the accident happened. Unless clearly erroneous, the evaluation o credibility of witnesses and the weight of the evidence is the responsibility of the trial judge. We cannot say that the findings here are clearly erroneous.

[12]
As to Woodbridge Dodge, Chrysler maintains that in the course of its customary pre-delivery inspection or initial s checkup, Woodbridge Dodge should have discovered the defect found to have existed in the tie rod assembly. Read into the record was the deposition of Woodbridge Dodge's service manager, who testified that the automobile was inspected by raising the vehicle on a lift and by visually checking the parts for tightness or looseness. All that was visible of the ball joint were the top threads; its interior composition could not be seen. There was no evidence to indicate that Woodbridg was negligent when inspecting the Langford automobile, and there was no basis to infer this from the accident itself. V agree with the trial judge that Woodbridge Dodge's degree of fault was minimal and justified the award of fi indemnification from Chrysler.

[13]
Chrysler argues that the award of $9,000 for the child's injuries and his pain and suffering was an excessive award. The boy spent ten days in the hospital, suffered a chipped tooth and a swollen face, and has a slight permanent scar. Althougl the court's award may be thought generous, we do not find it excessive.

The judgment below is affirmed.

C.A.N.Y. 1975.
Langford v. Chrysler Motors Corp.
513 F.2d 1121, 19 Fed.R.Serv.2d 1397

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.