# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEONARD LANGSTON, SR., individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) No. 07 C 5965 ) RIZZA CHEVROLET, INC., an Illinois corporation, JOE RIZZA FORD, INC. an Illinois corporation, and RIZZA CADILLAC/BUICK/HUMMER, INC., an Illinois corporation, ) ) ) ) ) ) ) Defendants. ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION

By motion Plaintiff Leonard Langston, Sr. (hereinafter "Plaintiff" or "Langston") has requested that this Court enter an order determining that this action may proceed as a class action under Fed.R.Civ.P. 23 (hereinafter "Rule 23") against the Defendants Rizza Chevrolet, Inc. (hereinafter "Chevrolet"), Joe Rizza Ford, Inc. (hereinafter "Ford"), and Rizza Caddillac/Buick/Hummer, Inc. (hereinafter "Cadillac"). This memorandum is submitted in support of said motion.

### INTRODUCTION

Class treatment is appropriate for this lawsuit. It arises out of the Defendants' course of conduct in obtaining consumer credit reports without written permission from the consumers or having a permissible purpose as defined under the Fair Credit Reporting Act ("FCRA"). See 15 U.S.C. 1681 *et seq.* (West 2007). The alternative to class certification is a series of individual lawsuits. Each would raise all of the same issues as the single class action, and each would seek

the same relief. In short, a single class action under Rule 23 will provide the most effective and efficient mechanism for redressing the Defendants' unlawful conduct.

## THE PROPOSED CLASS

Plaintiff asserts the claims of the First Amended Complaint on behalf of himself and the Proposed Class under Rule 23. The Proposed Class consists of all persons with Illinois addresses to whom Defendants have accessed their consumer credit report without written permission or a permissible purpose in violation of FCRA, within two years preceding the filing of this action on October 22, 2007. Plaintiff seeks certification of this class under Rule 23(b)(3).

### I. NATURE OF PLAINTIFF'S CASE

Plaintiff filed this class action under the FCRA and state law. Defendant Chevrolet accessed and/or obtained Plaintiff's consumer credit report without his written permission and without a "permissible purpose" as defined by the FCRA. *See* 15 U.S.C. § 1681b (West 2007). Likewise, Plaintiff has alleged that all Defendants have accessed and/or obtained the consumer credit reports of the putative class members without written consent or a permissible purpose in violation of FCRA.

As described in the First Amended Complaint (hereinafter "Complaint"), Plaintiff's sister, and now Third-Party Defendant Joyce Sledge (hereinafter "Sledge"), attempted to secure financing to purchase a new vehicle with Defendant Chevrolet. (Please see First Amended Complaint (hereinafter "Complaint"), ¶ 9). However, Sledge did not possess the requisite credit history or credit score to secure financing. (Please see Complaint, ¶ 10). As a result, Defendant Chevrolet attempted to discern from Sledge individuals superior credit histories and scores who might cosign for her in regards to her transaction with Chevrolet. (Please see Complaint, ¶ 11). Using the information obtained from Sledge and providing a false social security number,

Chevrolet then willfully obtained Plaintiff's consumer credit report without his written permission and no perceivable permissible purpose. (Please see Complaint, ¶¶ 12-16).

The aforementioned conduct by Chevrolet is a violation of the FCRA. (Please see Complaint, Count I). Additionally, such willful conduct by Chevrolet is a violation of state law and constitutes a deceptive business practice as defined by the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 et seq. (West 2007), (hereinafter "ICFA").

Chevrolet admits that it did not even attempt to obtain written consent and further avers that it was not required to. (Please see Chevrolet's Answer to the First Amended Complaint, ¶ 15). Therefore, Chevrolet is relying on having a permissible purpose to obtain Plaintiff's consumer credit report. As indicated by its Third-Party Complaint against Sledge, Chevrolet contends that because Sledge allegedly gave permission to Chevrolet to obtain Plaintiff's consumer credit report, it is not required to have Plaintiff's written consent. (Please see Chevrolet's Third-Party Complaint, ¶¶ 6-7). This contention that such conduct by Chevrolet falls under the definition of a permissible purpose is false. Such an understanding of the FCRA would allow any entity in Chevrolet's position to obtain any individual consumer's consumer credit report as long as a third-party with whom they were dealing arbitrarily said it was permissible.

Additionally, the aforementioned contentions asserted in Chevrolet's Answer to Plaintiff's Complaint and the Third-Party Complaint against Sledge are contrary to the explanation Chevrolet gave Plaintiff for its conduct in obtaining his consumer credit report prior to the filing of the instant law suit. (Please see Tom Kailer, Chevrolet's Operations Manager's June 13, 2007 letter to Plaintiff attached hereto as Exhibit "A"). Prior to Plaintiff initiating the instant litigation, Chevrolet believed it mistakenly obtained Plaintiff's consumer credit report as

3

it was "trying to access a report for someone with a similar name and inadvertently got your [Plaintiff's] file." (Please see Exhibit "A").

As alleged by Plaintiff, Chevrolet obtained Plaintiff's credit report without his written permission and without a permissible purpose as defined under the FCRA, 15 U.S.C. 1681b (West 2007). Chevrolet conducted itself in identical manner to all members of the Proposed Class. Likewise, the other Defendants followed the same course of conduct as Chevrolet in willfully ignoring the requirements of the FCRA in place to protect individual consumers and the members of the Proposed Class.

## II. STANDARD FOR CLASS CERTIFICATION

When evaluating the proposed class, the Court must consider the substantive allegations of the complaint as true. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *Roots Partnership v. Lands' End, Inc.*, 965 F.2d 1411, 1416 (7th Cir. 1992); *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 333 (N.D. Ill. 1997). At this stage, the Court may not inquire into the merits of Plaintiff's underlying claims, *Eisen*, 417 U.S. at 177-78; *Palmer v. Combined Ins. Co. of America*, 217 F.R.D. 430, 436 (N.D. Ill. 2003). The threshold question for a class certification is whether Plaintiff has met the requirements of Rule 23. *Pinkett v. Moolah Loan Co.*, Not Reported in F. Supp.2d, Case No. 99-C-2700, 1999 WL 1080596, 2 (N.D. Ill. 1999).

The United States Supreme Court has identified the important functions that class actions serve in our system of civil justice:

> "[Class actions achieve] the protection of the defendant from inconsistent obligations, the protection of the interests of absentees, the provisions of a convenient and economical means for disposing of similar lawsuits, and the facilitation of the spreading of litigation costs among numerous litigants with similar claims."

*United State Parole Comm'n v. Geraghty*, 445 U.S. 388, 402-03 (1980). Recognizing the value of the class action, the United States Court of Appeals for the Seventh Circuit has adopted a liberal construction of Rule 23 to support its policy in favoring maintenance of class actions. *King v. Kansas City Southern Industries, Inc.*, 519 F.2d 20, 25 (7th Cir. 1975); *See also Eisen*, 417 U.S. at 168; *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1988); *Weeks v, Bareco Oil Co.*, 125 F.2d 84, 88 (7th Cir. 1941).

This case is appropriate for class certification. The proposed class satisfies the requirements of Rule 23, and certification of this case as a class action is proper.

### III. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23

Rule 23(a) permits a case to be maintained as a class action if: (1) the class is so numerous that joinder of all member is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). The proposed class satisfies each of these requirements.

#### A. The hundreds or thousands of the Proposed Class members make joinder impracticable and satisfies the numerosity requirement of Rule 23(a)(1).

Rule 23(a)(1) provides that a class action may be maintained where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1) (West 2007). While numbers alone do not determine the practicability of joinder, a court may use common sense in evaluating numerosity. *Peterson v. H & R Block Tax Serv., Inc.*, 174 F.R.D. 78, 81 (N.D. Ill. 1997).

Plaintiff estimates the proposed class size to be in the hundreds or thousands. (See Complaint, ¶ 31). Additionally, Defendant Chevrolet admits that "it accessed between 56,000 and 71,000 consumer credit reports" based upon the number of vehicles it sold in the two years prior to December 13, 2007. (Please see Chevrolet's Response to Request to Admit ¶¶ 12 – 13 attached hereto as Exhibit "B"). This estimation by Chevrolet relates only to cars that it sold. This estimation fails to consider the number of potential individuals, such as Plaintiff, whose consumer credit reports were accessed without written permission and who did not purchase a vehicle or transact business with Chevrolet. Taken in consideration along with the fact that the estimation only accounts for one Defendant, the size of the proposed class is substantial and the numerousity requirement is met.

Illinois courts have in fact certified much smaller classes than the proposed class. *See, e.g., Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill. 1992) (certifying a class of 129 plaintiffs under Rule 23(a)); *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996) (assumed that a class of 60 would meet numerosity requirement); *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D.Ill.2002) ("Although there is no 'bright line' test for numerosity, a class of forty [40] is generally sufficient to satisfy Rule 23(a)(1)."); *Mirfashi v. Fleet Mortgage Corp.*, 2005 WL 1950386, 12 (N.D. Ill. 2005) ("[W]here the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met."). Furthermore, "to require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Swanson v. American Consumer Industries, Inc.* 415 F.2d 1326, 1333 (7th Cir. 1969).

Plaintiff has propounded on all Defendants written discovery and Requests for Admissions to ascertain a more accurate number for the total of the membership of the proposed

6

class.[1] (Please see February 19, 2008 Certificate of Service for Interrogatories and Document Requests served on each Defendant; and February 22, 2008 Requests for Admissions served on each Defendant attached hereto as Group Exhibit "C"). Furthermore, even though the exact size of the class has not yet been determined, Plaintiff does not need to establish the exact number of class members in order to satisfy this requirement. *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir. 1978). Plaintiff estimates this potential class size to be in the hundreds or thousands and this estimated number is sufficient to conclude that joinder is impracticable. Therefore, the numerosity requirement of Rule 23(a)(1) is satisfied.

### B. The Proposed Class shares common questions of law and fact and satisfies Rule 23(a)(2).

The commonality requirement of Rule 23(a)(2) will be satisfied by demonstrating that "there is at least one question of law or fact common to the class." *In re VMS Securities Litigation*, 136 F.R.D. 466, 473 (N.D. Ill. 1991). *See also Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 664 (N.D. Ill. 1996); *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992) (on the commonality issue "some factual variation among the class grievances will not defeat a class action"). Additionally, Rule 23(b)(3) requires that questions of law or fact common to all members of the class predominate over questions pertaining to individual members.

A class does not have to share all questions of law and fact in common, and a mere need to resolve individual facts and circumstances will not defeat commonality. For instance, certification is appropriate even when defendants have engaged in standardized conduct towards

---

[1] Plaintiff propounded Interrogatories and Document Requests pertinent to the class allegations on each of the Defendants on February 19, 2008. Plaintiff further served upon each of the Defendants, Requests for Admissions pertinent to the class allegations on February 22, 2008. Defendants have not yet responded to the aforementioned discovery. Defendants have responded to the Requests for Admissions, however, such responses are insufficient under Fed. R. Civ. Pro. 36(a).

7

members of the proposed class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (Court held that a form letter mailed by the defendants to the plaintiff seeking a collection fee was the same course of conduct engaged in by the defendants towards members of the class as well).

Plaintiff can readily show the existence of common questions of law or fact for the Proposed Class. Plaintiff challenges the Defendants' actions in obtaining the consumer credit reports of the members of the proposed class without written permission and without having a permissible purpose to do so under FCRA. The common questions of law and fact related to the Proposed Class are whether (1) the class members gave the Defendants written permission to obtain their consumer credit reports; (2) if not, whether the Defendants had a permissible purpose to do so under the FCRA; (3) whether the Defendants' conduct was willful; and (4) whether obtaining consumer credit reports constitutes a deceptive business practice under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, *et seq.* (West 2007) (hereinafter "ICFA"). *See Krey v. Castle Motor Sales, Inc.*, 241 F.R.D. 608 (N.D. Ill. 2007) ("the question of the mailing's compliance with FCRA ... provides a common issue of fact and law that is applicable to all members of the putative class").

The alleged conduct of obtaining consumer credit reports without written consent and for the purpose of qualifying the class members as prospective co-signers for another individual without the class members' knowledge, such as Sledge, is common to all class members. There may exist minor differences in the underlying individual situations concerning how the FCRA violation came about, however the conduct of the Defendants in wrongfully obtaining consumer credit reports will be the same for all class members. Thus, the commonality requirement of Rule 23(a)(2) is satisfied.

C.   **The claims of Plaintiff are typical of those of the Proposed Class and satisfy Rule 23(a)(3).**

To meet the typicality requirement, the claims of the class representative must be typical of the claims of the class. Fed.R.Civ.P. 23(a)(3) (West 2007). Typicality does not require a complete identity of claims. *Pope v. Harvard Banchares, Inc.*, 240 F.R.D. 383, 389 (N.D. Ill. 2006). Rather, the critical inquiry is whether the class representative's claims have the "same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). If the claims arise from a similar course of conduct that gives rise to the claims of the class members, and if it shares the same legal theory, factual differences will not render a claim atypical. *Id. See also Hickey v. Great Western Mortg. Corp.*, 158 F.R.D. 603, 609 (N.D. Ill. 1994). Because both commonality and typicality focus on the similarity of the claims, the two requirements tend to "merge." *General Tel. Co. v. Falcon*, 457 U.S. 147, 158 (1982).

In the instant case, typicality is inherent in the class definition as each of the class members has been subjected to the same practice as the named Plaintiff. The named Plaintiff is challenging the same type of event, or the same statutory violation, that gives rise to the claims of all members of the Proposed Class. The Defendants wrongfully obtained the consumer credit reports of members of the Proposed Class without written permission and without a permissible purpose. The interests of the Plaintiff and the Proposed Class are perfectly aligned, and the Rule 23(a)(3) requirement is met.

D.   **Plaintiff and his counsel will adequately represent the Proposed Class and thus satisfy the adequacy requirement of Rule 23(a)(4).**

To satisfy the final requirement of Rule 23(a), the "representative parties [must] fairly and adequately represent the class." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

9

This requirement has two components: (1) the class representative must not have interests that conflict with or are antagonistic to those of the class; and (2) the class counsel must be qualified and must serve the interest of the entire class. *Id.*; *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 186 (N.D. Ill. 1992).

For the first element, it is not necessary that the interests of the class representative be identical to those of other class members. *Edmongson v. Simon*, 86 F.R.D. 375, 381 (N.D. Ill. 1980). In the present case, both Plaintiff and the class members seek statutory money damages as a result of the Defendants' violation of the FCRA and state law. The right to relief of the named Plaintiff, like that of the absent class members, depends on him demonstrating that the Defendants violated the FRCA. *See Shields v. Local 705, Intern. Broth. Of Teamsters*, Not Reported in F. Supp., Case No. 96-C-1928, 1996 WL 616548, 5 (N.D. Ill. 1996) (adequacy of representation requirement is satisfied because the plaintiffs are challenging the same allegedly unlawful conduct as all other class members). Furthermore, the requirement that a representative's interests not diverge from those of other class members is largely an alternative method of stating the typicality requirement as both requirements tend to merge together. *McDaniel v. Qwest Communitcation Corp.*, Not Reported in F.Supp.2d, Case No. 05 c 1008, 2006 WL 1476100, 9 (N.D. Ill. 2006) citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 158 (1982). For the reasons mentioned above, the typicality requirement is met. Plaintiff is asserting the same claims and seeking identical remedies as the rest of the class.

Defendants cannot validly challenge the adequacy of class counsel. Belongia & Shapiro, LLP, the firm representing the Plaintiff and the Proposed Class, is qualified, experienced, and able to conduct the proposed litigation. Belongia & Shapiro has extensive experience in complex litigation and is familiar with consumer class actions and FRCA claims. (Please see

Declaration of Mark D. Belongia attached hereto as Exhibit "D"). Therefore, Plaintiff's counsel satisfies the adequacy of representation prong.

The Plaintiff and Proposed Class therefore satisfies the adequacy requirement of Rule 23(a)(4), just as it satisfies all of the other requirements of Rule 23(a).

### E. Predominance and Superiority are met and the requirements of Rule 23(b)(3) are satisfied.

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D. Ill. 1972).

Finally, the Proposed Class meets the requirements of Rule 23(b)(3). Certification of a Rule 23(b)(3) class requires the Court to find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *See* F.Rul.Civ.P. 23(b)(3) (West 2007). Plaintiff satisfies these requirements because common questions of law and fact predominate, and a class action is not only superior, but the only realistic method for the fair and efficient adjudication of Plaintiff's FCRA claim.

First, Plaintiff satisfies the predominance requirement of Rule 23(b)(3). In order to satisfy this requirement Plaintiff must show that common issues not only exist, but will outweigh any individual questions. *Pope v. Harvard Banchares, Inc.*, 240 F.R.D. 383, 392 (N.D. Ill. 2006). The common questions must be central to all claims, yet they need not be dispositive of the entire action because "predominate," as used in Rule 23(b)(3), should not be equated with "determinative." *Id.* (citing *Pavone v. Aegis Lending Corp.*, Not Reported in F.Supp.2d, Case No. 05-C-5129, 2006 WL 2536632, at 4 (N.D. Ill. 2006)). Courts typically focus on questions of

liability in determining whether the predominance requirement is met. *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 332 (N.D. Ill. 2006); *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 435 (N.D. Ill. 2003). The United States Supreme Court has acknowledged that "[p]redominance is a test readily met in certain cases alleging *consumer* or securities fraud." *Amchem Prods. V. Windsor*, 521 U.S. 591, 625 (1997) (emphasis added).

Defendants' unlawful access of both the Plaintiff's and the Proposed Class members' consumer credit reports without written authorization or without a permissible purpose constitutes a common nucleus of operative facts. This practice, implemented by the Defendants, was imposed on every class member in the same manner. Where the common nucleus of operative facts is a scheme to interfere with FCRA rights like this one, courts have found the predominance requirement satisfied. *See Kudlicki v. Farraqut Financial Corp.*, Not Reported in F.Supp.2d, Case No. 05-C-2459, 2006 WL 927281, 3 (N.D. Ill. 2006) (granting plaintiff summary judgment on liability and finding defendant willfully failed to comply with FCRA on a class-wide basis).

Every factual and legal issue implicated by Plaintiff's claims that the Defendants accessed Plaintiff's consumer credit report without permission or a permissible purpose is common to all proposed class members.

Moreover, the appropriate monetary remedy for each class member should be determined by the statutory guidelines. The statute permits damages of $100 to $1,000 for FCRA violations. 15 U.S.C. §1681n (West 2007). Because the Proposed Class is estimated to be in the hundreds or thousands, an award against the Defendants may well be in the millions, plus attorneys' fees. However, the "substantial nature of a potential damages award ... is not a proper ground on which to deny class certification." *Krey v. Castle Motor Sales, Inc.*, 241 F.R.D. 608, 617 (N.D.

12

Ill. 2007). The Seventh Circuit has stated that "[t]he reason that damages can be substantial ... does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person ... combined with [defendant]'s decision to obtain the credit scores of more than a million persons." *Murray v. GMAC Mortgage,* 434 F.3d 948, 953-53 (7th Cir. 2006). Therefore, because the Proposed Class is quite numerous, but the potential recovery for each member is quite small, it is exceedingly unlikely that many individuals would wish to go to court for a potential recovery of $100. Thus, the Proposed Class meets the first criterion of Rule 23(b)(3).

The second criterion of Rule 23(b)(3), "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy," also is satisfied. Factors pertinent to this evaluation include: (1) the interest of the members of the class in litigating their claims in separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *See* Fed.R.Civ.P. 23(b)(3) (West 2007). Given the predominance of common issues, resolution of these issues in a consolidated class action is superior to scores of individual trials. Such trials would require each class member to pursue his or her claim individually, entail needless duplication, waste the resources of both parties and the Court, and risk inconsistent adjudications.

The first and second factors weigh in favor of certification because based on the anticipated costs, uniformity of issues, and relief sought, the proposed class members have an interest in commonly facing Defendants' defense to this action. The maintenance of individual actions including substantial discovery, motion practice, and trial time render individual actions

uneconomical. Since numerous proposed class members "may not know their rights are being violated, may not have a monetary incentive to individually litigate their rights, and may be unable to hire competent counsel to protect their rights" a class action is the superior form for adjudicating this claim. *See Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998). Further, Plaintiff and his counsel are unaware of any individual lawsuits filed against defendants based on the wrongdoing alleged in Plaintiff's Amended Complaint. For these reasons, class certification would not result in duplicative litigation.

Moreover, the third factor also weighs in favor of certification of the proposed class. Concentration in one forum is desirable to avoid multiple trials of the common issues. As a matter of fairness, ruling on the alleged FCRA violation by the Defendants should be the same for all class members. Courts normally defer to Plaintiff's choice of forum. *See Fed. Deposit Ins. Co. v. Citizens Bank & Trust Co.*, 592 F.2d 364, 368 (7th Cir. 1979).

Finally, the management of this case as a class action should not present any substantial difficulties. While the proposed class will be large, issues of manageability are not a deterrent to class certification. Furthermore, the only individualized issues will involve determining how many times individual class members' consumer credit reports were accessed by the Defendants without permission or a permissible purpose. Pursuant to Fed.R.Civ.P. 53 and 28 U.S.C. § 636(b)(2), the Court could refer these determinations to a magistrate or special master. Management difficulties therefore will be minimal.

Based on the foregoing, the Proposed Class meets the requirements of Rule 23(b)(3) because common issues of law and fact predominate and a class action is the superior method of adjudicating the controversy. Accordingly, the Proposed Class should be approved pursuant to Rule 23(b)(3) for purposes of Count I.

## CONCLUSION

For all the reasons set forth above, Plaintiff respectfully requests the Court to grant Plaintiff's Motion for Class Certification and counsel for the Plaintiff be appointed class counsel.

**ORAL ARGUMENT REQUESTED**

Dated: April 21, 2008

Respectfully Submitted,

PLAINTIFF, LEONARD LANGSTON, SR.

/s/ Mark D. Belongia
One of Plaintiff's Attorneys

Mark D. Belongia, Esq. #6269391
mbelongia@belongiashapiro.com
Nathaniel R. Sinn, Esq. #6284004
nsinn@belongiashapiro.com
Belongia & Shapiro, LLP
53 W. Jackson Blvd., Suite 315
Chicago, Illinois 60604
P: (312) 662-1030
F: (312) 662-1040