# **EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARMEN FLORES,<br><br>                Plaintiff,<br><br>    v.<br><br>DIAMOND BANK,<br><br>                Defendant. | Case No. 07 C 6403<br><br>Judge Hibbler<br><br>Magistrate Judge Valdez |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF
HER MOTION FOR CLASS CERTIFICATION**

**I.    Introduction**

In its opposition papers, Defendant Diamond Bank does not contest that Plaintiff satisfies each of the requirements of Fed. R. Civ. P. 23(a). Rather, Defendant only posits that Plaintiff fails to satisfy the requirements of Fed. R. Civ. P. 23(b)(3), claiming: (1) common issues do not predominate; (2) a class action is not a superior means of adjudicating the claims at issue; and (3) this case is not manageable as a class action. Because numerosity, commonality, typicality and adequacy as to the proposed class are not challenged, and because Defendant's Rule 23(b)(3) arguments all fail, the proposed class should be certified.

**II.    Legal Discussion**

**A.    Common Issues Predominate Over Individual Issues**

Defendant's sole basis for arguing that individual issues predominate over common issues is a premature merits claim; namely, that Plaintiff must prove detrimental reliance to

1

recover actual damages.[1] Demonstrating the flaw in this position, Defendant simultaneously concedes that Plaintiff meets the predominance requirements of Rule 23(b)(3) for statutory damages here by failing to contest that predominance of common issues exists for a statutory damages class. Therefore, even if this Court were to agree with Defendant, and rule on the merits that detrimental reliance is a necessary element of an Electronic Fund Transfers Act[2] claim for actual damages, a class would still be certified for statutory damages.

### 1. A Class Certification Motion Is Not An Appropriate Vehicle To Argue The Merits Of The Case.

While a court need not presume all allegations of a plaintiff's complaint are true, it is a long-standing rule that, when evaluating a motion for class certification, the court should not consider the merits of the underlying claim.[3] Defendant's argument that each class member will have to show he or she relied on "erroneous fee postings" to recover under EFTA is exactly the kind of merits issue that should not be considered at the class certification stage. As stated above, a class would be certified for statutory damages here regardless of the class's ability to obtain actual damages at trial. Therefore, the type of damages which are ultimately recoverable is an issue for trial, not a bar to certification. While Plaintiff disputes that any issue of individualized damage inquiry is necessary at trial, even if were, such inquiry does not prohibit certification – such questions can be resolved after the liability issue is decided.[4]

---

[1] Def.'s Mem. at pp. 3-5.

[2] See 15 U.S.C. § 1693 et seq. ("EFTA").

[3] See McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46, No. 05 C 0760, 2008 U.S. Dist. LEXIS 61040, *11 (N.D. Ill. Aug. 8, 2008)(citing Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 166 (1974); Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 676 (7th Cir. 2001)).

[4] As the court noted in Flanagan v. Allstate Ins. Co., 228 F.R.D. 617, 620-21 (N.D. Ill. 2005):

2

### 2. Defendant Identifies No Real Individual Issues.

As the plain language of the rule makes clear, Fed. R. Civ. P. 23(b)(3) requires only that common issues of law <u>or</u> fact predominate. Here, the common issue of law (whether the failure to post a fee notice on an ATM constitutes a violation of the EFTA) predominates because it is universal to each class member. Further, common questions of fact (whether Defendant failed to post a fee notice on its ATM but still imposed ATM fees on consumers when no such notice was posted) predominate as well. Those fact questions are the central and sole liability issues to be decided here.

Defendant's counsel himself acknowledged that "[e]fficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented."[5] Defendant's counsel further argued that "[t]he common questions must be central to all claims, yet they need not be dispositive of the entire action because 'predominate,' as used in Rule 23(b)(3), should not be equated with 'determinative.'"[6] Moreover, "[t]he United States Supreme Court has acknowledged that '[p]redominance is a test readily met in certain cases

---

We are setting aside the individualized issue of damages until after a determination of defendants' liability. If defendants are found liable, we will then proceed to resolve the issue of damages… *See e.g., Calvin v. Sheriff of Will County*, 2004 U.S. Dist. LEXIS 8717, 2004 WL 1125922 at *5 (N.D. Ill. 2004)("If defendants are found liable, the court may then revisit the damages issue, including whether to certify another class or subclasses, or hold individual hearings, for the purpose of resolving damages.") … *Green v. Wolf*, 406 F.2d 291, 301 (2d Cir. 1968) ("We see no sound reason why the trial court . . . cannot order separate trials on that particular issue, as on the question of damages, if necessary. The effective administration of 23(b)(3) will often require the use of the sensible device of split trials.")

[5]   *See* <u>Exhibit A</u> hereto – Doc. 72 in No. 07 C 5965, *Langston v. Rizza Chevrolet, Inc.*, Pl's Memorandum of Law in Support of His Motion for Class Certification at p. 11 written by Defendant's counsel, Mark D. Belongia (*citing Eovaldi v. First National Bank*, 57 F.R.D. 545 (N.D. Ill. 1972)).

[6]   *Id.* (*citing Pope v. Harvard Bancshares, Inc.*, 240 F.R.D. 383, 392 (N.D. Ill. 2006)).

3

alleging *consumer* or securities fraud."[7] Therefore, Defendant's counsel himself, contrary to the position he takes in the instant case, acknowledges that consumer cases like this are ripe for class certification and the mere existence of hypothetical individual issues is not determinative of the predominance requirement of Rule 23(b)(3).

### 3.    Detrimental Reliance Is Not Required To Recover Actual Damages.

Defendant's argument that detrimental reliance is required to obtain actual damages does nothing to overcome the predominance of issues Plaintiff identifies. Plaintiff alleges that Defendant violated the EFTA by failing to post the required fee notice on its ATM while still charging a transaction fee.[8] Because this case involves a lack of notice, Defendant essentially argues that Plaintiff and the class must rely on something that was not present in the first place.

Defendant contends that "[s]everal courts have determined that a prerequisite to obtaining actual damages [in an EFTA case such as this] is a showing of detrimental reliance" and that "[d]etrimental reliance inherently requires proof on a class member-by-class member basis."[9] But the cases cited by Defendant are premised on entirely different factual and legal theories than the instant case and are readily distinguishable. In the first case cited by Defendant, *Martz v. PNC Bank, N.A.*,[10] the magistrate actually recommended that the plaintiff be allowed to

---

[7]   *Id.* at 12 (*quoting Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) (emphasis in original brief).

[8]   *See* Pl.'s Sec. Am. Compl. at ¶¶ 6, 7.

[9]   Def.'s Mem. at p. 3.

[10]  No. CIV A 06-1075, 2006 U.S. Dist. LEXIS 94474, *17 (W.D. Pa. Nov. 30, 2006) ("we agree that it would be premature to conclude that the plaintiff cannot recover actual damages under EFTA.")

4

proceed in seeking actual damages, notwithstanding the court's reference to other cases holding that detrimental reliance is required to recover actual damages.

The plaintiff in *Martz* alleged that the defendant violated the EFTA because its posted fee notice advised consumers that it "may" charge a transaction fee for using an ATM, rather than that it "will" charge such a fee.[11] *Martz* is inapposite to the instant case. Whereas an argument exists that a consumer could be confused as to whether he or she will pay a transaction fee if the fee notice only states that a fee "may" be charged, the claim here is that Defendant failed to post any fee notice on the exterior of the machine. There is no individual determination needed as to a consumer's interpretation of language such as "will" or "may." Rather, the posted fee notice either existed or not. That factual issue is universal to all class members, without variance. Accordingly, the central factual issue in this case (whether Defendant posted a fee notice on its ATM) and the central legal issue (whether the failure to post a fee notice violates the EFTA), both predominate over the hypothetical individual issues raised by Defendant.

The other case Defendant cites, *Polo v. Goodings Supermarkets, Inc.*,[12] involved allegations that the plaintiff was charged a fee in an amount different from the fee identified on the posted fee notice. In *Polo*, the plaintiff sought to certify of class of consumers that may have used any one of 15,000 ATMs. The court emphasized that the plaintiff could not show that any ATMs other than the one he used actually charged a fee higher than the amount stated on the

---

[11] *Id.* at *2-3.

[12] 232 F.R.D. 399, 402 (M.D. Fla. 2004). Incidentally, the *Polo* court's predominance analysis is mere *dicta*, as it determined that the plaintiff failed to meet any of the requirements of Rule 23(a). *See Polo*, 232 F.R.D. at 408 (holding that "[h]aving determined that the proposed class fails to satisfy each of the four requirements of Rule 23(a), the Court need not consider whether it satisfies the requirements of Rule 23(b)(3): predominance and superiority.")

5

posted fee notice. Therefore, the parties and the court would have had to make individual inquiry as to, first, whether any of the 15,000 ATMs had an incorrect fee notice and second, whether the consumers using such machines relied on the incorrectly stated amount.[13]

Contrary to *Polo*, Plaintiff here has not only identified common issues (as acknowledged by Defendant's lack of opposition to the commonality requirement), but she has demonstrated that the central common issue of fact (Defendant's failure to post a fee notice) not only predominates, but it is identical for each class member. The common issue of law (whether the failure to post a fee notice violates the EFTA) flows directly from the universal common fact. Accordingly, because *Polo* dealt with fee notices that existed, but stated amounts different from the amounts actually charged, it is inapposite to the instant case. Once again, this is not a "confusion" case but a "lack of notice" case.

*Martz* and *Polo* are also not dispositive of the issue since other courts have held the opposite. In *Voeks v. Wal-Mart Stores, Inc.*,[14] and *Mayotte v. Associated Bank, N.A.*,[15] the court held that detrimental reliance is <u>not</u> required to recover actual damages for an EFTA violation.[16] The court distinguished between statutory provisions prohibiting the imposition of fees and provisions requiring proper notice to support its holding that causation can be proven by something other than detrimental reliance.[17] The court held that causation, and thus actual

---

[13] *Id.* at 408.

[14] No. 07 C 0030, 2007 U.S. Dist. LEXIS 60759, *10, 11 (E.D. Wis. Aug. 17, 2007).

[15] No. 07 C 0033, 2007 U.S. Dist. LEXIS 60758, *13 (E.D. Wis. Aug. 17, 2007).

[16] *Voeks* was also a "may" versus "will" case like *Martz*, so it is not entirely applicable, but no court has addressed the issue of actual damages in a missing notice case like the case at bar.

[17] *Voeks*, 2007 U.S. Dist. LEXIS 60759 at *11.

damages, is shown by the imposition of the fee itself. The court held that "for violations of 15 U.S.C. § 1693b(d)(3)(C) [prohibiting the imposition of a fee unless the notice requirements are met], a defendant would fail to comply with the EFTA if it *charged a fee* without providing proper notice."[18] The court further held:

> Athough improper notice is an element of this statutory provision, the actual violation is not predicated on defective notice as in 12 C.F.R. § 205.16(b), but rather is predicated on the improper imposition of a fee. Such being the case, in order to recover actual damages for alleged violations of 15 U.S.C. § 1693b(d)(3)(A), a plaintiff would have to show that her damages were "as a result" of the defendant's improperly *charging her a fee*. Given that Voeks' alleged actual damages are her payment of the fee, the improper charging of this fee would arguably be the cause of her damages. Stated another way, Voeks' payment of the fee would be "as a result of" Wal-Mart's improper imposition of the fee. Given that the alleged violation itself is arguably the cause of Voeks' alleged actual damages, detrimental reliance is not needed to prove causation.[19]

In short, regardless of reliance on any particular language in a notice, the mere imposition of a fee is the cause of actual damages because an ATM operator is absolutely barred by the strict liability EFTA[20] from a imposing a fee at all if it fails to comply with the notice requirements. Therefore, a consumer's reliance is irrelevant; all that is relevant is whether a defendant complied with the notice requirements, a determination to be made based on uniform conduct.

The instant case is even more compelling than *Voeks*. Whereas in *Voeks*, the case was premised on whether the posted notice was adequate because it used a particular verb ("may" instead of "will"), Defendant here posted no notice at all. Issues of reliance are not raised because nothing existed upon which to rely. If Defendant failed to post a notice required by 15

---

[18]    *Id.* at 12 (emphasis in original).

[19]    *Id.* (emphasis in original).

[20]    *Burns v. First American Bank*, No. 04 C 7682, 2006 WL 3754820, *6 (EFTA is a strict liability statute. *See Bisbey v. D.C. National Bank*, 793 F.2d 315, 318-19 (D.C. Cir. 1986)).

7

U.S.C. 1693b(d)(3)(b)(i), it was prohibited from charging a fee, regardless of consent.[21] Therefore, the fees Defendant charged the class should be disgorged because Defendant never had a right to impose them. Each class member suffered actual damages in the amount of the fee that was illegally imposed in the first instance. Contrary to Defendant's contention that "[t]he trier of fact would therefore need to decide an array of facts to ascertain detrimental reliance by users of the Bank's ATM," the trier of fact actually needs to decide only one issue: whether there was a fee notice on Defendant's ATM when class members used it. That single issue, the only issue in this case, predominates over any alleged individual issues.

**B.    A Class Action Is The Superior Means Of Adjudicating This Case.**

Defendant's argument that a class should not be certified because statutory damages may only amount to $51.00 per class member has been rejected by the Seventh Circuit and judges in this district. In *Mace v. Van Ru*,[22] the court addressed the same argument Defendant tries here; namely that, because the statute at issue provides for a recovery of statutory damages and attorneys' fees, a certified class action will provide less than an individual recovery. The court disagreed, recognizing the small likelihood of many plaintiffs filing suit.

> True, the FDCPA allows for individual recoveries of up to $1000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.[23]

---

[21]   15 U.S.C. § 1693b(d)(3)(C).

[22]   109 F.3d 338, 344-45 (7th Cir. 1997).

[23]   *Id.*

8

Judge Kendall, when certifying a class in the *Burns* ATM fee case, similarly refused to accept the contention that a class should not be certified if an individual claimant can receive up to $1,000.[24] Judge Kendall noted that the policy at the core of the class action mechanism – overcoming the problem of small recoveries not providing the incentive for individual actions – still applies in this scenario. "This rule generally applies even where a statute allows for individual recoveries of up to $1000 and attorneys' fees. EFTA itself provides that a class action may proceed even if it would result in de minimus recovery for class members."[25]

Defendant also presumes that a successful individual plaintiff would receive $1,000 for an EFTA statutory damages violation. But a judge or jury may award damages under EFTA in "an amount not less than $100 nor greater than $1,000."[26] If an individual plaintiff will only receive $100, or less than $50 more than the certified class members will receive here, Defendant's argument carries even less weight.[27] Moreover, in this case, it is unlikely that the end result would be only $51.00 per class member. In the *Burns* case, those class members who returned claim forms indicating their desire to receive statutory damages each received $1,000.[28] In another case certified for settlement purposes under the EFTA, *Smith v. Credit Union 1*, upon

---

[24] *Burns*, 2006 WL 3754820, * 10 (*citing* 15 U.S.C. § 1693m(a)(2)(B); *Mace*, 109 F.3d at 345).

[25] *Id.*

[26] 15 U.S.C. § 1693m(a)(2)(A).

[27] *See* Exhibit A at p.13 ("…it is exceedingly unlikely that many individuals would wish to go to court for a potential recovery of $100.")

[28] *See* Exhibit B, signed Final Approval Order in Case No. 04 C 7682.

9

final approval, class members will be receiving $1,000 for EFTA violations and over $100.00 per class member for violations of the Expedited Funds Availability Act.[29]

If Defendant were correct, Fair Debt Collection Practices Act[30] class actions would never be certified in this district because only in the rarest of cases (*i.e.*, one where there were only 500 class members and a 1% of net worth figure set at $500,000.00) would a class member receive $1,000. Yet FDCPA cases are routinely certified as class actions, even though the Act provides for statutory damages of up to $1,000, plus reasonable attorneys' fees and costs to the successful plaintiff.[31] FDCPA cases are even certified where a defendant has a negative net worth, rendering the potential class recovery even more de minimus.[32] And, just as the EFTA does, "the FDCPA 'contemplates class actions even though an individual recovery may be larger.'"[33]

---

[29]  See Exhibit C, signed Preliminary Approval Order in Case No. 07 C 5939 and affidavit regarding claim forms received.

[30]  15 U.S.C. § 1692 *et seq.* ("FDCPA").

[31]  *See, e.g., Gammon v. GC Services Limited Partnership*, 162 F.R.D. 313 (N.D. Ill. 1995); *Keele v. Wexler*, No. 95 C 3483, 1996 U.S. Dist. LEXIS 3253 (N.D. Ill. March 19, 1996), *aff'd*, 149 F.3d 589 (7th Cir. 1998); *Clark v. Retrieval Masters Creditors Bureau*, 185 F.R.D. 247 (N.D. Ill. 1998); *Daley v. Provena Hospitals*, 193 F.R.D. 526 (N.D. Ill. 2000); *Lang v. Winston & Winston, P.C.*, 00 C 5516, 2001 U.S. Dist. LEXIS 7480 (N.D. Ill. June 4, 2001); *Sanders v. OSI Education Services, Inc.*, No. 01 C 2081, 2001 U.S. Dist. LEXIS 12578, *5 (N.D. Ill. Aug. 2, 2001); *Hamid v. Blatt, Hasenmiller*, 00 C 4511, 2001 U.S. Dist. LEXIS 20012 (N.D. Ill. Dec. 3, 2001); *Kort v. Diversified Collection Services*, 01 C 0689, 2001 U.S. Dist. LEXIS 20988 (N.D. Ill. Dec. 17, 2001); *McCabe v. Crawford & Co.*, 01 C 8194, 2002 U.S. Dist. LEXIS 17997 (N.D. Ill. Sept. 25, 2002); *Weniger v. Arrow Fin. Services, LLC*, 03 C 6213, 2004 U.S. Dist. LEXIS 26248 (N.D. Ill. Dec. 21, 2004).

[32]  *See, e.g., Lang*, 2001 U.S. Dist. LEXIS 7480 at *14-15.

[33]  *Warcholek v. Medical Collections Sys.*, 241 F.R.D. 291, 296 (N.D. Ill. 2006) (*citing Nichols v. Northland Groups, Inc.*, Nos. 05 C 2701, 05 C 5523, 06 C 43, 2006 U.S. Dist. LEXIS 15037, * 41 (N.D. Ill. Mar. 31, 2006)).

Two of the out-of-jurisdiction cases Defendant relies on, *Jones* and *Sonmore*,[34] have been criticized in this district. In fact, Judge Pallmeyer even noted that the *Jones* court seemed predisposed to deny class certification in all FDCPA cases.[35] Similarly:

> The notion that individual plaintiffs may recover higher damages if they were to pursue their own claims is implicit in the very idea of a class action, and is part of the balance that is struck in Rule 23 of providing a vehicle for the aggregation of small claims while still seeking to protect those individual claimants.
>
> **The possibility that putative class members would be entitled to greater recovery should they pursue claims on their own arises in every class action, but it is not grounds for denying class certification, if the other criteria are met.**[36]

Defendant's reliance on the *Hamilton* case to support its argument fares no better because there, the subject matter was a vehicle loan in excess of $13,000, with a $2,000 down payment.[37] The court's finding that there would be an incentive to litigate that matter individually can be reconciled with the instant case because of the large amount of money and potential damages at stake in *Hamilton*. Additionally, the *Hamilton* court conceded that, "To be sure, the availability of attorneys fees and costs is not a *per se* bar against class certification."[38]

Accordingly, because Defendant's argument defeats the very reason behind the class action, and because Defendant cannot demonstrate that individual suits will better protect the claims of the proposed class members, the superiority requirement of Rule 23(b)(3) is met.

---

[34] *See* Def's Mem. at p. 6.

[35] *Nichols*, 2006 U.S. Dist. LEXIS 15037 at * 41.

[36] *Egge v. Healthspan Servs. Co.*, 208 F.R.D. 265, 272 (D. Minn 2002)(*citing Macarz v. Transworld Systems, Inc.*, 193 F.R.D. 46, 55 (D. Conn. 2000)) (emphasis added).

[37] *Hamilton v. O'Connor Chevrolet*, 399 F. Supp. 2d 860, 863 (N.D. Ill. 2005).

[38] *Hamilton v. O'Connor Chevrolet*, 02 C 1897, 2006 U.S. Dist. LEXIS 44149, *41 (N.D. Ill. June 12, 2006).

### C.  This Case Is Manageable As A Class Action.

Defendant contends that this case is unmanageable as a class action "because it is nearly impossible to identify the putative class members."[39] However, Defendant's contention is completely false. Identification of class members is merely a function of determining who is a member of a class. Plaintiff can absolutely identify each class member from Defendant's records. Specifically, each class member is identified in Defendant's records by his/her unique Personal Account Number.[40] Merely because Plaintiff does not readily have each class member's name and address does not mean that class members cannot be identified.

What Defendant is really doing is conflating class member identification with issues surrounding class notice. Given the many class notice options available, which have been approved by several judges in this District in similar EFTA cases, this Court should find this case is manageable as a class action. As the *Burns* court so thoroughly analyzed, individual notice is only required when class members can be identified through reasonable effort.[41] If this Court determines that individual notice is not reasonable, this case does not, as Defendant implies, become unmanageable. Rather, alternative means of notice are available.

"Rule 23(c)(2) entitles class members to individual notice when they 'can be identified through reasonable effort.'"[42] In *Burns*, the court considered expert testimony of a class action

---

[39]  Def's Mem. at p. 8.

[40]  *See Burns*, 2006 WL 3754820 at *11. Contrary to Defendant's assertion that a PAN only identifies the bank issuing the card, a PAN actually identifies the issuing financial institution and a unique identifier for the cardholder. *Id.*

[41]  *See* Fed. R. Civ. P. 23(c)(2).

[42]  *Burns*, 2006 WL 3754820 at *11 (*quoting* Fed. R. Civ. P. 23(c)(2)).

administrator that proposed various notice schemes available in an EFTA case such as this. Without determining which proposal was best, the court found that "[i]f the methods proposed in Anya Verkovskaya's affidavit for providing individual notice are not reasonable and no other reasonable method [for individual notice] can be found, certain forms of general public notice are available."[43] After considering the same argument raised by Defendant here, the *Burns* court certified an EFTA class and ultimately approved class notice by publication in the newspaper and on the internet and by posting a physical notice on the automated teller machines at issue in that case.[44]

Aside from individual notice to class members, this Court should be mindful of the greater purpose of the EFTA, which is the protection of individual consumer rights.[45] Compensating class members is only one consideration in consumer rights cases; statutory damages serve a punitive, as well as compensatory, purpose.[46] Assuming that Plaintiff succeeds on the merits of this case, if this case is not certified as a class action, the punitive aspect of this case will not be served. No other case has been filed against Defendant on this issue in the nine (9) months since this case was filed, and no such cases were filed prior to this case.[47] Therefore,

---

[43]   *Id.* A copy of Anya Verkovskaya's affidavit is attached as <u>Exhibit D</u>.

[44]   See <u>Exhibit E</u>, signed preliminary approval order in Case No. 04 C 7682. Other judges have approved similar class notices. *See* Doc. 29 in No. 05 C 3562, *Machiela v. Trizec Holdings* (publication and posted notice approved as fair and reasonable); Doc. 16-2 in No. 07 C 5471, *Drexler v. George Loukas Real Estate, Inc.* (same); Doc. 33 in No. 07 C 5808, *Marsh v. ATM Capital Management, Inc.* (same).

[45]   *See, e.g., Burns*, 2006 WL 3754820 at *2 (*citing* 15 U.S.C. § 1693b(d)(3)).

[46]   *Id.* at *11 (*citing Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352-53, 118 S. Ct. 1279 (1998)).

[47]   Given Defendant's conduct in this case, including issuing subpoenas seeking Plaintiff's medical

the statute's purpose is unlikely to be served through the use of individual cases if this Court does not certify this case as a class action.[48]

As of April 21, 2008, in a Fair Credit Reporting Act case, Defendant's counsel seemed to agree that this type of case is appropriate for class certification. He wrote that factors

> weigh in favor of certification because based on the anticipated costs, uniformity of issues, and relief sought, the proposed class members have an interest in commonly facing Defendants' defense to this action. The maintenance of individual actions including substantial discovery, motion practice, and trial time render individual actions unecomical. Since numerous proposed class members "may not know their rights are being violated, may not have a monetary incentive to individually litigate their rights, and may be unable to hire competent counsel to protect their rights" a class action is the superior form for adjudicating this claim. (citation omitted) Further, Plaintiff and his counsel are unaware of any individual lawsuits filed against defendants based on the wrongdoing alleged in Plaintiff's Amended Complaint. For these reasons, class certification would not result in duplicative litigation.[49]

Notwithstanding that he is taking a conflicting position in this case than he did in *Langston*, Mr. Belongia could not have done a better job stating why this Court should certify Plaintiff's proposed class here.

In support of its contention that class members would be "nearly impossible" to identify, Defendant cites no evidence and relies entirely on a single, readily-distinguishable, court opinion that fails to conduct any analysis of the many notice options available (*i.e.*, publication notice, website notice, posted notice).[50] First, the *Mowry* case involved approximately 21,000,000 ATM

---

and banking records, other plaintiffs would be even more unlikely to want to partake in this process for fear of being subjected to improper harassment.

[48]   *Mace*, 109 F.3d at 344.

[49]   See Exhibit A at pp. 13-14.

[50]   *Mowry v. JP Morgan Chase Bank, N.A.*, Case No. 06 C 4312, 2007 WL 1772142 (N.D. Ill. June 19, 2007) (Der-Yeghiayan, J.)

transactions at more than 7,000 ATMs nationwide, whereas here the case relates to <u>one</u> ATM and just over 5,000 transactions.[51] Indeed, providing notice to 21,000,000 class members across the country is considerably more burdensome than the instant case involving a community bank in a single Chicago neighborhood.  Second, when assessing the superiority issue, the *Mowry* court strongly considered the fact that the maximum recovery for each class member was 3¢. Given the resources needed to provide individual notice in *Mowry* for a recovery of 3¢, of course the superiority requirement was not met.

This case becomes no less manageable as a class action than it does as an individual action, because "[a]djudicating the class claims here will take no more effort than it would to adjudicate the claims of Plaintiff[] alone."[52]  Plaintiff is confident that this Court can manage this case as well as each other judge that has managed similar cases involving the very same statute and similar facts without manageability problems.

### III.   Conclusion

For all the foregoing reasons, Plaintiff Carmen Flores respectfully requests that this Court certify the following class:

> All persons who, from November 12, 2006 to December 31, 2007, were charged a transaction fee for the use of automated teller machine number 049E4, located at Diamond Bank, 100 W. North Ave., Chicago, IL 60610.

Respectfully submitted,

By: /s/ Lance A. Raphael
One of Plaintiff's Attorneys

---

[51]    *Id.* at *6 (finding that "[d]ue to the vast number of transactions involved in a potential class action, identifying the financial institutions that are not affiliated with [the defendant] in order to identify potential class members would be difficult.")

[52]    *See Burns*, 2006 WL 3754820 at *12.

15

Lance A. Raphael
Stacy M. Bardo
Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
180 West Washington, Suite 700
Chicago, IL 60602
Tel: (312) 782-5808
Fax: (312) 377-9930