IN THE UNITED STATES DISTRIC COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARMEN FLORES, individually and on behalf of all others similarly situated,        Plaintiff, <br><br> v. <br><br> DIAMOND BANK, FSB,        Defendant. | Case No. 07 C 6403 <br> Judge Hibbler <br> Magistrate Judge Valdez |

**DEFENDANT DIAMOND BANK'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Defendant DIAMOND BANK, FSB (hereinafter the "Bank"), by and through its attorneys, Belongia & Shapiro, LLP, and in support of its Motion for Summary Judgment in its favor against Plaintiff CARMEN FLORES and all others similarly situated (hereinafter "Plaintiff"), states as follows:

**STATEMENT OF FACTS**

On or about August 2, 2007, Plaintiff used the automated teller machine number 049E4 (the "ATM"), located at 100 West North Avenue, Chicago, 60610. (Carmen Flores Deposition "Flores Dep.", p. 13, ln. 18-21; Second Amended Complaint, [dkt. 22], ("Complaint") ¶ 8).  On this occasion, Plaintiff was charged a $2.00 fee for a money withdrawal transaction from the ATM. (Flores Dep., p. 39, ln. 2-6; Complaint ¶ 9).  Prior to using the ATM on August 2, 2007, Plaintiff had never used the ATM at this Bank before. (Flores Dep., p. 19, ln. 2-5, p. 20. Ln.9-19). The Bank is neither close to her residence nor to her place of work. (Flores Dep., p. 6, ln 23-24, p. 7, ln. 1-11, p. 8, ln. 19-24, p. 1-4).

On August 2, 2007, Plaintiff inspected the physical structure of ATM for any fee notices prior to using the ATM. (Flores Dep., p. 36, ln. 2-24). Because she was not able to locate any fee notices, Plaintiff concluded that the transaction would be free. (Id.) After initiating, but before completing, the transaction at the ATM, however, Plaintiff saw and read the on-screen fee-notice indicating that a $2.00 charge would be applied to the non-costumers of the Bank for using the ATM. (Flores Dep., p. 36, ln. 18-24, p. 37, p. 1-3). The on-screen notice specifically provides:

1

> DIAMOND BANK, FSB, WILL CHARGE U.S. CARDHOLDERS A $2.00 FEE FOR THIS TRANSACTION. THIS FEE IS IN ADDITION TO ANY FEES WHICH MAY BE CHARGED BY YOUR FINANCIAL ISTITUTION.
>
> DO YOU WISH TO CONTINUE?
>
> YES (FEE WILL BE ASSESSED)
>
> NO (CANCEL. FEE WILL NOT BE ASSESSED)  (Declaration of B. Sand).

Based on the on-screen notice's unambiguous language, Plaintiff understood that she would be charged a $2.00 fee if she continued with the transaction. (Flores Dep., p. 37, ln. 4-7). Plaintiff also understood that upon seeing the on-screen notice, she was at liberty to cancel the transaction prior to being charged any fee. (Flores Dep., p. 38, ln. 2-9). Plaintiff knowingly and willingly accepted the fee and completed the transaction despite having the option to terminate the transaction before being charged any fee. (Flores Dep., p. 38, ln. 11-14). Upon completion of the transaction, Plaintiff received a receipt indicating a $2.00 charge. (Flores Dep., p. 38, ln. 22-24, p. 39, ln. 1-6). Subsequently, Plaintiff never contacted the Bank to object for being charged the fee because she willingly and knowingly accepted the $2.00 fee and proceeded with the transaction after seeing and reading the on-screen notice. (Flores Dep., p. 39, ln. 7-22).

In September of 2004, the Bank commenced the renovation project of the Bank building located at 100 West North Avenue, Chicago, 60610. (James A. Hubbard Deposition "Hubbard Dep.", p. 27, ln. 12-18). In 2005, Lawrence J. Ligas ("Ligas") was hired as a general contractor to oversee the renovation project. (Hubbard Dep., p. 28, ln. 6-17, p. 34, ln. 2-9). During the renovation project, the Bank relocated the ATM from inside the lobby to the outside of the building. (Id.) The Bank acquired a new ATM to be installed on the outside of the building. (Hubbard Dep., p. 34, 10-11).

Ligas employed carpenter Matviekas Mindangas ("Mindangas") to conduct the installation of the new ATM. (Lawrence J. Ligas Deposition "Ligas Dep.", p. 29, ln. 7-15; Hubbard Dep., p. 35, ln. 22-24). Mindangas and Ligas were the only individuals working on the installation of the ATM. (Ligas Dep., p. 32, ln. 9-13, p. 33, ln. 9-17). The ATM finally became operable and active around January or February of 2006. (Ligas Dep., p. 19-23). After the completion of the installation, but before the activation of the ATM, pursuant to James Hubbard's ("Hubbard") request, Ligas removed the physical fee-notice signs ("old fee-notices")

from the old ATM previously located in the lobby of the Bank and attached them to the new ATM. (Ligas Dep., p. 79, ln. 21-24, p. 80, ln. 6-24, p. 81, ln. 1-24, p. 82, ln. 1-24, p. 84, ln. 1-24, p. 94, ln. 4-12; Hubbard Dep., p. 71, ln. 9, 16-17). Ligas attached the old fee-notices to the ATM using a two-sided weather-proof adhesion tape. (Ligas Dep., p. 84, ln. 22-24). The adhesion tape was strong enough to hold the signs attached to the ATM. (Ligas Dep., p. 85, ln. 1-20).

Ligas and Mindangas initially attached the fee-notices at the bottom of the black ATM frame. (Ligas Dep., p. 128, ln. 13-19). After they finished attaching the old-fee notices, Hubbard inspected the ATM and requested that Ligas and Mindangas remove the fee-notices from the frame and attach said notices to the ATM steel structure in order to make them more visible for the ATM customers. (Ligas Dep., p. 94, ln. 13-17, p. 131, ln. 10-13; Hubbard Dep., p. 77, ln. 15-23). Around July 2006, when Ligas conducted the final inspection at the Bank the fee-notices were still attached to the ATM. (Ligas Dep., p. 158, ln. 24, p. 159, ln. 1).

The Bank did not find out about the missing ATM fee-notice until the filing of the instant lawsuit on November 12, 2007. (Hubbard Dep., p. 15, ln. 3-20, p. 21, ln. 6-9; Kimberly Cole Deposition "Cole Dep.", p. 36, ln. 11-24, p. 37, ln. 1-3, p. 43, ln. 7-24, p. 45, ln. 5-12). Some time before the filing of the lawsuit the Bank was vandalized on multiple occasions. (Cole Dep., p. 106, ln. 7-23). During those incidents, vandals damaged the windows of the Bank and the ATM. (Cole Dep., p. 106, ln. 11-13; Ligas Dep., p. 45, ln. 11-12, p. 92, ln. 10-12, p. 148, ln. 5-23, p. 149, ln. 7-24). As soon as the Bank found out that the fee-notices were missing, immediately it took the necessary steps to remedy the situation. (Hubbard Dep., p. 21, ln. 6-9, Cole Dep, p. 36, ln. 11-24).

## LEGAL ANALYSIS

### I.   Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (West 2008).. In considering a motion for summary judgment, the court "draws all reasonable inferences in favor of the non-movant." *Venters v. City of Delphi*, 123 F.3d 956, 962 (7th Cir. 1997). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the

particular issue. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir. 1998).

The burden rests on the moving party to demonstrate "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. Catrett*, 477 U.S. 317, 325 (1986). Once the movant meets its initial burden, the burden shifts to the non-movant to go "beyond the pleadings" and point to evidence of genuine factual dispute precluding summary judgment. *Id.* at 322-23. If the non-movant fails to present evidence that "would reasonably permit the finder of fact to find in non-movant's favor on a material question, then the court must enter summary judgment against non-movant." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 249-52).

**II.     Section 1693h(d) of the EFTA absolutely bars liability against the Bank.**

Section 1693h(d) of the Electronic Funds Transfer Act ("EFTA") absolutely bars liability against the Bank. The EFTA governs all varieties of electronic fund transfers, not just those involving ATMs. 15 U.S.C. 1693 *et seq.* (West 2008). Pursuant to Section 1693b(d)(3) of the EFTA, any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer must provide notice in accordance with subparagraph (B) of said section. 15 U.S.C. 1693b(d)(3) (West 2008). Section 1693b(d)(3)(B), titled "Notice Requirements," describes two (2) types of notices that must be given, on the machine notice and on the screen. Plaintiff alleges that "there was no notice on or near" the ATM and does not allege that the ATM was lacking any "on the screen" notice. (Complaint [dkt. 22], ¶ 10). As such, Plaintiff is more specifically alleging a violation of section 1693b(d)(3)(B)(i), which requires that the notice of a fee imposed "shall be posted in a prominent and conspicuous location on or at the automated teller machine." 15 U.S.C. 1693b(d)(3)(B)(i) (West 2008).

Specifically, section 1693b(d)(3)(B)(i) states, "The notice required under clause (i) of subparagraph (A) with respect to any fee described in such paragraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the costumer." *Id.*

The EFTA, however, provides a safe harbor provision for ATM operators pertaining to claims brought that the on-machine notice was not given. Section 1693h(d) provides an absolute bar to claims brought under the EFTA, which in the pertinent part states:

4

> "If the notice required to be posted pursuant to § 1693b(d)(3)(B)(i) … has been posted by such operator in compliance with such section and the notice is subsequently removed, damaged, or altered by any person other than the operator of the automated teller machine, the operator **shall have no liability** under this section for failure to comply with § 163b(d)(3)(B)(i) of this title." 15 U.S.C. 1693h(d) (West 2008) (**emphasis added**).

The word "shall" as used in a statute is the language of command. *Escoe v. Zerbst*, 295 U.S. 490, 493 (1935). As such, the mandatory term "shall" normally creates an obligation impervious to judicial discretion. *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (citing *Anderson v. Yungkau*, 392 U.S. 482, 485 (1947)); *see also Alabama v. Bozeman*, 533 U.S. 146, 153 (2001). Courts will only veer from the commanding language if there is some circumstance that will show, in a view of ends and aims, the language is contrary to the described results of the statute. *Escoe* at 493.

In the instant matter, the facts are undisputed that the fee-notice was missing when Plaintiff used the ATM. At the same time, the facts are undisputed that the Bank posted the required fee-notices and was in compliance with section 1693b(d)(3(B)(i). The evidence shows that after the completion of the installation, but before the activation of the ATM, Ligas attached the old fee-notices to the ATM pursuant to Hubbard's request. (Ligas Dep., p. 79, ln. 21-24, p. 80, ln. 6-24, p. 81, ln. 1-24, 82, ln. 1-24, 84, ln. 1-24, p. 94, ln. 4-12; Hubbard Dep., p. 71, ln. 9, 16-17). Specifically, the evidence shows that Ligas scraped off said notices from the ATM previously located in the lobby and attached them to the ATM located on the outside. (Ligas Dep., p. 79, ln. 21-124, p. 80, ln. 6-24). He described the old fee-notices as "metallic letters on a flat surface—adhered behind a flat surface. […] It was like […] raised letter, but it was on a flat surface that we were able to scrape from the back, remove it, and we were able to adhere it onto the fiberglass surround." (Ligas Dep., p. 81, ln. 4-6, 10-14; also see Hubbard Dep., p. 71, ln. 13-17). Using a two-sided weather-proof adhesion tape, Ligas attached the old fee-notices to the ATM. (Ligas Dep., p. 84, p. 22-24). The tape was strong enough to hold, and did hold, the signs attached to the ATM. (Ligas Dep., p. 85, ln. 1-20).

In fact, the Bank not only posted the notices as required by the EFTA, but it made sure that said notices were made visible to the customers using the ATM. During the post-installation inspection of the ATM, Hubbard, not being satisfied with the initial positioning of said notices, requested that Ligas move the notices from the fiberglass surround onto the ATM itself, in order

to make them more visible for the ATM customers. (Ligas Dep., p. 94, ln. 13-17, p. 131, ln. 10-13; Hubbard Dep., p. 77, ln. 15-23). In or around July of 2006, the fee-notices were still attached to the ATM when Ligas conducted the final inspection of the Bank building. (Ligas Dep., p. 158, ln. 24, p. 159, ln. 1). Therefore, the presented evidence shows that the Bank fully complied with EFTA requirements when it installed the ATM.

In this case, there is no dispute that the fee-notice was missing at the time Plaintiff used the ATM. However, some time before Plaintiff used the ATM and this lawsuit was filed, the Bank was a victim to multiple acts of vandalisms. (Cole Dep., p. 106, ln. 7-23). During these incidents, vandals damaged the windows of the Bank and the ATM. (Cole Dep., p. 106, ln. 11-23; Ligas Dep., p. 45, ln. 11-12, p. 92, ln. 10-12, p. 148, ln. 5-23, p. 149, ln. 7-24). Importantly, the evidence suggests that vandals destroyed the ATM fee-notices during these incidents. (Id.) The Bank, however, took all necessary steps to remedy the situation and continue to comply with EFTA requirements as soon as it found out about the missing notices. (Hubbard Dep., p. 21, ln. 6-9, Cole Dep., p. 36, ln. 11-24). The Bank fully complied with the EFTA notice requirements.

The presented evidence, therefore, shows that said notices were removed through no action or fault of the Bank or any of its agents. Consequently, section 1693h(d) provides an absolute bar to liability against the Bank in this situation. Section 1693h(d) clearly provides that because the fee-notice was posted by the Bank pursuant to section 1693b(d)(3)(B)(i), and the notice was subsequently removed by somebody other than the Bank, the Bank **shall** have no liability under the EFTA for failure to comply with § 1693b(d)(3)(B)(i). 15 U.S.C. 1693h(d) (West 2008) (**emphasis added**).

The absolute bar is further supported by the relevant case law, which reflects that the use of the word "shall" in the EFTA by the legislature indicates its intent that the particular statute at issue be a command. *Escoe*, at 493. Here, the word "shall" as used in section 1693h(d) by the legislature indicates that the exception must be strictly enforced. *Escoe* at 493. The legislature clearly crafted this exception to protect the operators of ATM's, such as the Bank, from incurring liability for the action of third-parties. Therefore, the Court is limited in its discretion to interpret section 1693h(d). As such, because the Bank was in compliance with section 1693b(d)(3)(B)(i) with its "on the machine" notice, section 1693h(d) acts as an absolute bar to the Bank's liability. In other words, pursuant to section 1693h(d), because the Bank placed the fee notice in a conspicuous location at the time when the ATM was installed, and the fee notice was

subsequently removed by someone other than the Bank; the Bank must not be held liable for Plaintiff's alleged damages for a purported EFTA violation.

The presented evidence shows that even when viewed in the light most favorable to Plaintiff, there is no basis for the Bank's liability. Plaintiff alleges that the on the machine notices were missing when she used the ATM. This undisputed fact, however, does not create liability for the Bank under the EFTA due to the safe harbor provision of section 1693h(d). In fact, the evidence shows that the Bank fully complied with EFTA requirements. Before the ATM became active, Ligas attached said notices to the ATM pursuant to the Bank's requirement. In or around July of 2006, a few months after being posted, said notices were still attached and visible to the costumers of the ATM. The evidence shows that at some later point in time said notices were removed through no action or fault of the Bank or any of its agents. Therefore, because the Bank complied with section 1693b(d)(3)(B)(i), the exception created by section 1693h(d) provides an absolute bar for liability. Consequently, even when the presented evidence is viewed in the light most favorable to Plaintiff, she cannot prove the violation of EFTA as a basis for the Bank's liability. Hence, since there are no issues of material facts, the Bank's motion for summary judgment should be granted.

**III.   Plaintiff did not suffer damages as a result of the Bank's alleged violation of EFTA.**

Plaintiff did not suffer any damages as a result of the Bank's alleged noncompliance with EFTA. Section 1693m provides for imposition of civil liability in the event of a failure to comply with its provisions. 15 U.S.C. 1693m (West 2008). In the pertinent part, Section 1693m(a)(1) specifically provides that:

> (a) "Except as otherwise provided by this section and section 1693h[1] of this title, any person who fails to comply with any provision of this subchapter with respect to any consumer … is liable to such consumer in an amount equal to the sum of –
>
> (1) Any actual damages sustained by such consumer *as a result of such failure*."
>
> 15 U.S.C. 1693m(a)(1) (West 2008) (*emphasis added*).

The few reported cases that have discussed the actual damage provision of the EFTA have found that to recover actual damages, a plaintiff must establish causation of harm in the

---

[1] Please see Section II herein for a comprehensive discussion on section 1693h.

7

form of detrimental reliance. *Brown v. Bank of America*, 457 F.Supp.2d 82, 90 (D.Mass. 2006); also see *Polo v. Goodings Supermarkets*, Inc., 232 F.R.D. 399, 408 (M.D. Fla. 2004) (stating that plaintiff in that case "offers no authority for his inference that EFTA excuses plaintiffs from proving that their actual damages flowed from a detrimental reliance on erroneous fee postings"); *Id*. (denying class certification in part because court would have to determine whether each "consumer actually saw and relied on an improper notice in deciding to proceed with the ATM transaction").  In *Brown*, the court held that the plaintiffs could not establish causation of harm in the form of detrimental reliance to recover actual damages under EFTA, explaining:

> "Even if the on-machine notice provided to customers was not properly placed, an ATM user must always affirmatively consent to being charged a fee on [the Bank's] 'click through' screen before the Bank levies a fee. Given the electronic consent, Plaintiff cannot establish the causal link between an ill-placed decal and monetary loss necessary to recover actual damages under EFTA." *Brown*, at 88.

Similarly, the Truth in Lending Act ("TILA"), after which the EFTA is modeled, also requires allegations and proof of causation and "detrimental reliance." See *Johnson v. West Suburban Bank*, 225 F.3d 366, 378 (3rd Cir. 2000) (holding that the EFTA's class action language was drafted in 1978, after the identical language was placed in TILA by the 1974 and 1976 amendments); *Id*. (when discussing TILA and EFTA, the *Johnson* Court stated, "We do not believe that Congress would have different intended meanings for identical statutory language contained in similar statutes."); *Turner v. Beneficial Corp*., 242 F.3d 1023, 1028 (11th Cir. 2001) ("We hold that detrimental reliance is an element of TILA claim for actual damages, that is a plaintiff must present evidence to establish a causal link between the financing institution's noncompliance and his damages."); *Perrone v. General Motors Acceptance Corp*., 232 F.3d 433, 436 (5th Cir. 2000) (holding that award of "actual damages" pursuant to TILA "requires a direct casual relationship between the amount of damages and the injury of harm.").

In the instant matter, Plaintiff alleges that she incurred actual damages as a result of the Bank's alleged EFTA violation. (Complaint, [dkt. 22], ¶ 5).  Based on the evidence presented, however, Plaintiff cannot, nor will she ever be able, to prove that she in fact incurred actual damages "as a result of" the Bank's alleged EFTA violation.  In fact, the evidence shows, even when viewed in the light most favorable to Plaintiff, that she did not rely, detrimentally or

8

otherwise, on the lack of the "on the machine" notice, but that she in fact knowingly and willingly accepted a $2.00 fee.

      Plaintiff testified that on August 2, 2007, she inspected the physical structure of the ATM for any fee notices prior to using the ATM. (Flores Dep., p. 36, ln. 2-24). Furthermore, Plaintiff testified that based on this inspection, she concluded that she would not be charged for withdrawing the money from the ATM. (Id.) Therefore, she decided to use the ATM. (Id.) During the same deposition, however, Plaintiff testified that after initiating the transaction, but before going forward with the transaction and being charged any fees, she saw, read and understood the "on-screen" notice which indicated that she would have to accept a $2.00 fee in order to withdraw the money from the ATM. (Flores Dep., p. 36, ln. 18-24, p. 37, p. 1-3). The on-screen notice specifically provides:

> DIAMOND BANK, FSB, WILL CHARGE U.S. CARDHOLDERS A $2.00 FEE FOR THIS TRANSACTION. THIS FEE IS IN ADDITION TO ANY FEES WHICH MAY BE CHARGED BY YOUR FINANCIAL ISTITUTION.
>
> DO YOU WISH TO CONTINUE?
>
> YES (FEE WILL BE ASSESSED)
>
> NO (CANCEL FEE WILL NOT BE ASSESSED)  (Declaration of B. Sand)

      Before going forward with the transaction and being charged any fees, Plaintiff was required to answer whether she desired to continue or cancel the transaction. The notice clearly and unambiguously informed Plaintiff that if she decided to continue with the transaction, the Bank would charge her a $2.00 fee. Importantly, Plaintiff testified that she understood that at this point she was at liberty to cancel the transaction before being charged any fee, however, she decided to knowingly and willingly accept the fee and complete the transaction. (Flores Dep., p. 38, ln. 2-14). Consequently, the evidence shows, even when viewed in the light most favorable to Plaintiff, that there is no direct or indirect causal relationship between the amount of damages and the injury of harm.

      The evidence also indicates that upon the completion of the transaction, Plaintiff received a receipt indicating a $2.00 charge. (Flores Dep., p. 38, ln. 22-24, p. 39, ln. 1-6). The receipt further notified Plaintiff that she accepted a $2.00 charge in return for withdrawing the money from the ATM. Before filing this lawsuit, however, Plaintiff did not take any action in an

attempt to get her money back from the Bank that allegedly improperly charged the fee. In fact, Plaintiff testified that after receiving the receipt, as well as reading the on-screen notice, she was fully aware of the charge, and that she willingly decided not to raise any objections with the Bank after withdrawing the money from the ATM. Plaintiff testified that she "**had chosen** to proceed with the transaction after reading the on-screen notice." (Flores Dep., p. 39, ln. 7-22) (**emphasis added**).

As a result, the evidence presented clearly establishes not only that there is no direct or indirect causal link between Plaintiff's alleged damages and the Bank's alleged violation, but that Plaintiff was in fact fully aware of the fee requirements, and that after reading the on-screen notice, she knowingly and willingly accepted such fee. Based on the evidence, it is undisputable that Plaintiff gave permission to the Bank, and the right, to charge her a fee. In turn, the Bank relied on Plaintiff's permission when it charged her a fee. Having voluntarily authorized the Bank to charge her a fee, and voluntarily proceeded with the transaction, Plaintiff cannot claim that she somehow relied on the Bank's alleged noncompliance. Consequently, the evidence shows, even when viewed in the light most favorable to Plaintiff, that there is no direct or indirect causal relationship between the amount of damages and the injury of harm. In other words, Plaintiff did not, nor will she ever be able, to present evidence establishing a causal link between the Bank's alleged noncompliance and her alleged damages. Therefore, since there are no issues of material facts, the Bank's motion for summary judgment should be granted.

**IV.     Plaintiff has breached her duty of fair dealings with the Bank.**

Plaintiff's relationship with the Bank was contractual in nature. When a consumer, such as Plaintiff, undertakes and completes an ATM transaction, she contracts with the ATM operator. Prior to completing the transaction at the ATM on August 2, 2007, Plaintiff was confronted with the Bank's on the screen notice[2] requiring Plaintiff to accept the charging of a $2.00 fee in order to complete her transaction. A contract was formed when Plaintiff pressed the "yes" button on the click-through screen, thereby agreeing to continue with the transaction and accept the fee. The EFTA itself explicitly recognizes that a "consumer **contracts** for an electronic fund transfer service," such as an ATM transaction. 15 U.S.C. 1693c(a) (**emphasis added**).

---

[2] Please see pgs. 2 and 12 herein, and the Declaration of Brett Sand for the specific language of the on the screen notice.

10

Addressing similar click-through screens which appear on internet sites, courts have determined that by agreeing to continue the transaction, the consumer forms a contract. This district has found that when an individual, who was purchasing a domain name over the internet, clicked on a box agreeing to the terms of the transaction, a contract was formed. *DeJohn v. The .TV Corp. Int'l*, 25 F.Supp.2d 913, 915-916 (N.D.Ill. 2003). "The electronic format of the contract required [the purchaser] to click on a box indicating [t]hat he had read, understood, and agreed to the terms of the contract in order to accept its provisions and obtain the registration or reject the provisions and cancel the application." *Id*.

Similar to the click-the-box situation described in *DeJohn*, Plaintiff and the Bank entered into a contract when she used the ATM. Plaintiff received the benefit of withdrawing money and completing a transaction subject to the condition of paying the transaction fee. The click-the-box method of acceptance in these types of contracts is ubiquitous. It exists in connection with ATM transactions, software licenses, and every imaginable form of online commercial transaction. *FTC v. Cleverlink Trading Ltd.*, Not Reported in F.Supp.2d., 05-C-2889, 2006 WL 3106448, *6 (N.D.Ill. 2006) (citations omitted).

Plaintiff accepted the offered benefits of the Bank with knowledge of the terms of the offer, the $2.00 fee. The taking constituted an acceptance of the terms which became binding on the offeree, Plaintiff. "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract. It is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly becomes binding on the offeree." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2nd Cir. 2004); See also *Cleverlink* at *6.

Plaintiff was faced with the clear and unambiguous conditions of completing the transaction at the Bank's ATM. (Declaration of B. Sand). Plaintiff accepted these conditions and now seeks to impose liability on the Bank for acting as it contractually agreed to. (See Flores Dep., p. 39, ln. 7-22). Plaintiff's seeking to impose liability under the alleged technical violation of the EFTA after receiving the benefit she contracted for and pursuant to the conditions she agreed to, is an action in bad faith.

Parties to a contract have a duty to conduct dealings and perform their duties fairly and in good faith. The Restatement (Second) of Contracts states, "every contract imposes upon each

11

party a duty of good faith and fair dealing in its performance and its enforcement." Rest 2d Contr § 205 (West 2008). The Bank complied with its obligations under the contract with Plaintiff, and Plaintiff received everything she contracted for. Plaintiff seeking to impose liability under this windfall is a breach of her duty of fair dealing with the Bank. The Bank should not be penalized for Plaintiff's bad faith dealings simply because a windfall currently exists under the EFTA.

There is no material issue of fact that Plaintiff contracted with the Bank subject to the condition of a $2.00 fee, understood that condition, and accepted said condition. For the reasons herein, the Bank's Motion for Summary Judgment should be granted.

## CONCLUSION

For the reasons contained herein, and under the evidence presented, section 1693h(d) of the EFTA bars liability to the Bank. Plaintiff cannot prove that she relied on the missing on the machine notice to her detriment. Further, Plaintiff's actions constitute a breach of her implied duty of fair dealings with the Bank. Therefore, summary judgment should be granted in favor of the Bank and against Plaintiff and all others similarly situated.

Respectfully Submitted,

DIAMOND BANK, FSB, Defendant

Dated: September, 15 2008                    /s/ Nathaniel R. Sinn
                                             One of Plaintiff's Attorneys

Mark D. Belongia, Atty # 6269391
mbelongia@belongiashapiro.com
Kelly A. Saindon, Atty # # 6244793
ksaindon@belongiashapiro.com
Nathaniel R. Sinn, Atty # 6284004
nsinn@belongiashapiro.com
Belongia & Shapiro, LLP
53 W. Jackson Blvd., Suite 315
Chicago, Illinois 60604
P:  312.662.1030
F:  312.662.1040