**Westlaw Delivery Summary Report for SINN,NATE R 6026349**

| | |
|---|---|
| Date/Time of Request: | Monday, September 15, 2008 18:19 Central |
| Client Identifier: | 0126/01 |
| Database: | FSFIND |
| Citation Text: | 457 F.Supp.2d 82 |
| Lines: | 499 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

457 F.Supp.2d 82                                                                                                                Page 1
457 F.Supp.2d 82

▷
Brown v. Bank of America, N.A.
D.Mass.,2006.

United States District Court,D. Massachusetts.
Douglas S. BROWN, Stephen Kawelti and James A. Prosser, Plaintiffs,
v.
BANK OF AMERICA, N.A., Defendant.
**Civil Action No. 05-10713-PBS.**

Oct. 17, 2006.

**Background:** Non-customers of bank brought proposed class action against bank, under Electronic Funds Transfer Act (EFTA) and state consumer protection laws, challenging the adequacy of fee notices for automatic teller machines (ATM) in four states. Bank filed motion for partial summary judgment on EFTA claim and for summary judgment on state-law consumer protection claims.

**Holdings:** The District Court, Saris, J., held that:
(1) court would give fee-disclosure regulation retroactive effect;
(2) plaintiffs could not establish causation element of claims under state consumer protection acts; and
(3) plaintiffs could not establish detrimental reliance element of disclosure-placement claim under EFTA.

Motions granted.

West Headnotes

**[1] Statutes 361 ⚷219(1)**

361 Statutes
   361VI Construction and Operation
      361VI(A) General Rules of Construction
         361k213 Extrinsic Aids to Construction
           361k219 Executive Construction
              361k219(1) k. In General. Most Cited Cases

**Statutes 361 ⚷219(2)**

361 Statutes
   361VI Construction and Operation
      361VI(A) General Rules of Construction
         361k213 Extrinsic Aids to Construction
           361k219 Executive Construction
              361k219(2) k. Existence of Ambiguity. Most Cited Cases

If a statute is silent or ambiguous with respect to the specific issue, the question is whether the agency's answer is based on a permissible construction of the statute, and judicial deference should be accorded to the agency as long as its interpretation is rational and consistent with the statute.

**[2] Administrative Law and Procedure 15A ⚷796**

15A Administrative Law and Procedure
   15AV Judicial Review of Administrative Decisions
      15AV(E) Particular Questions, Review of
         15Ak796 k. Law Questions in General. Most Cited Cases

Where an agency merely seeks to interpret the existing law, like a judicial determination construing and applying a statute to a case in hand, courts can give the agency's explanation retroactive effect.

**[3] Administrative Law and Procedure 15A ⚷326**

15A Administrative Law and Procedure
   15AIV Powers and Proceedings of Administrative Agencies, Officers and Agents
      15AIV(A) In General
         15Ak326 k. Law Questions in General. Most Cited Cases

An agency has the power to say what the law always has been so long as it does not substantively change the law.

**[4] Banks and Banking 52 ⚷133**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

52 Banks and Banking
    52III Functions and Dealings
        52III(C) Deposits
            52k133 k. Repayment in General. Most Cited Cases

**Banks and Banking 52 🗝️263**

52 Banks and Banking
    52IV National Banks
        52k263 k. Deposits in General. Most Cited Cases

**Banks and Banking 52 🗝️353**

52 Banks and Banking
    52VIII Federal Reserve System
        52k351 Creation and Supervision
            52k353 k. Federal Reserve Board. Most Cited Cases

Amendment to regulation promulgated by Board of Governors of Federal Reserve Board under Electronic Funds Transfer Act (EFTA), which amendment expressly allowed a provider of an automatic teller machine (ATM) to use the word "may" in fee disclosure statement in on-machine decal, was an interpretation of rather than a change in existing law, with respect to situation in which some ATM users would not be charged a fee, and thus, the court could apply the amended regulation retroactively, in proposed class action alleging that bank's on-machine fee disclosure statement violated the Act by using the word "may" because bank allegedly would almost always charge a fee to a non-customer using the ATM. Electronic Fund Transfer Act, § 904(d)(3)(A, B); 15 U.S.C.A. § 1693b(d)(3)(A, B); 12 C.F.R. § 205.16(c)(1)(ii).

**[5] Administrative Law and Procedure 15A 🗝️796**

15A Administrative Law and Procedure
    15AV Judicial Review of Administrative Decisions
        15AV(E) Particular Questions, Review of
            15Ak796 k. Law Questions in General. Most Cited Cases

If an agency plainly states that it is merely clarifying the law, then such determination must be accorded deference by the courts, for purposes of the principle that when an agency merely seeks to interpret the existing law, courts can give the agency's explanation retroactive effect.

**[6] Antitrust and Trade Regulation 29T 🗝️135(1)**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(A) In General
            29Tk133 Nature and Elements
                29Tk135 Practices Prohibited or Required
                      29Tk135(1) k. In General; Unfairness. Most Cited Cases

The Massachusetts and California consumer protection statutes require loss causation, in actions brought by consumers. West's Ann.Cal.Bus. & Prof.Code § 17204; M.G.L.A. c. 93A, §§ 2, 9.

**[7] Antitrust and Trade Regulation 29T 🗝️209**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regulations
            29Tk209 k. Finance and Banking in General; Lending. Most Cited Cases

Even assuming that fee disclosure statement in on-machine decal on bank's automatic teller machines (ATM) was unfair or deceptive in stating that a fee "may" be charged for using the ATM, non-bank-customer users could not establish loss causation, as element of their claims under Massachusetts and California consumer protection statutes; bank's ATMs were equipped with click-through screen that notified users if they would be charged a fee and that required that the user consent before the transaction would proceed. West's Ann.Cal.Bus. & Prof.Code § 17204; M.G.L.A. c. 93A, §§ 2, 9.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**[8]** Banks and Banking 52 🗝️263

52 Banks and Banking
   52IV National Banks
      52k263 k. Deposits in General. Most Cited Cases

Even assuming that fee disclosure statement in on-machine decal on bank's automatic teller machines (ATM) did not comply with placement requirement in Electronic Funds Transfer Act (EFTA), non-bank-customer users could not establish causation of harm in the form of detrimental reliance, as required for recovery of actual damages under the Act; bank's ATMs were equipped with click-through screen that notified users if they would be charged a fee and that required that the user consent before the transaction would proceed. Electronic Fund Transfer Act, §§ 904(d)(3)(B)(i), 915(a)(1), 15 U.S.C.A. §§ 1693b(d)(3)(B)(i), 1693m(a)(1).

**[9]** Consumer Credit 92B 🗝️61.1

92B Consumer Credit
   92BII Federal Regulation
      92BII(C) Effect of Violation of Regulations
         92Bk61 Civil Liabilities and Penalties for Violations
            92Bk61.1 k. In General. Most Cited Cases

In order to recover actual damages for a violation of the Truth in Lending Act (TILA), plaintiffs must establish causation of harm through detrimental reliance. Truth in Lending Act, § 130(a)(1), 15 U.S.C.A. § 1640(a)(1).

**\*84** Cathleen M. Combs, Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL, Christopher M. Lefebvre, Pawtucket, RI, for Plaintiffs.
Christopher A. Edwards, E. Macey Russell, Robert M. Buchanan, Jr., Choate, Hall & Stewart, Boston, MA, Rebekah Elisabeth Kaufman, William L. Stern, Morrison and Forester, San Francisco, CA, for Defendant.

**MEMORANDUM AND ORDER**

SARIS, District Judge.

*INTRODUCTION*

Proposed class plaintiffs bring this action against Bank of America, N.A. to challenge the adequacy of the fee notices posted on automatic teller machines ("ATMs") in four states: Massachusetts, Rhode Island, Maryland, and California.[FN1] In the Second Amended Complaint, they allege that the notice provided by Bank of America is insufficient pursuant to the Electronic Funds Transfer Act, 15 U.S.C. § 1693 (2000) ("EFTA") (Count One), and violates the consumer protection laws of Massachusetts, Mass. Gen. Laws ch. 93A, §§ 2, 9 (2006) (Count Two), and California, Cal. Bus. & Prof.Code §§ 17200-17210 (2004) (Count Three).

> FN1. Plaintiffs seek to certify four state-only subclasses, defining the class as non-customers of Bank of America who were charged an ATM fee for using a Bank of America ATM to withdraw cash from their accounts with another bank.

Bank of America has moved for partial summary judgment on the EFTA claim and for summary judgment on the state-law consumer protection claims. Defendant also seeks to cap all potential statutory relief granted to the plaintiffs at $500,000 pursuant to EFTA, and to establish that any deficiency in the notice did not cause a monetary loss. After hearing, the Defendant's motions are ***ALLOWED.***

*BACKGROUND*

When all reasonable inferences are drawn in favor of Plaintiffs, the record establishes the following facts. Bank of America conducts business in Massachusetts, Rhode Island, Maryland, and California. As part of its operations in these states, Bank of America operates ATMs, which allow customers and non-customers alike to conduct various banking transactions 24 hours a day. While customers of Bank of America may utilize these machines free of

charge, most, but not all, non-customers seeking to withdraw money from a Bank of America ATM must pay a small fee to the bank for the service.

The named plaintiffs in this proposed class action are not customers of Bank of America. Each conducted an electronic funds transfer at an ATM maintained by Bank of America, and was, in turn, assessed a fee.

Bank of America posts the following decals on its ATMs:

The owner of this terminal, Bank of America, may charge a $1.50 fee for a ***85** cash withdrawal from your NON-Bank of America account. This charge is in addition to any fees which may be assessed by your financial institution. This additional charge will be added to your total withdrawal amount. For questions, please contact your financial institution.

In addition to this "on-machine" notice, Bank of America also requires non-customers who will be charged a service fee to consent electronically prior to an assessment of costs. Before completing the transaction, a non-customer is warned on the ATM screen: "Bank of America, the owner of this ATM machine, adds an ATM usage fee to cash withdrawals. This fee is in addition to any fee which may be assessed by your financial institution. Do you want to continue with this transaction? Yes/No." Bank of America will not assess fees unless the ATM user affirmatively answers "yes" to this click-through query.

### SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir.1995) (quoting Fed.R.Civ.P. 56(c)). "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair,* 902 F.2d 140, 143 (1st Cir.1990); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" *Barbour,* 63 F.3d at 37 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Rogers,* 902 F.2d at 143 (quoting *Anderson,* 477 U.S. at 249-50, 106 S.Ct. 2505) (citations and footnote in *Anderson* omitted). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour,* 63 F.3d at 36.

### DISCUSSION

1. *"Wrongful Verb" Claim (Count One)*

Plaintiffs allege that the fee notice provided by Bank of America on its ATM machines is defective under EFTA in Maryland and California because it states that a fee "may" be charged when the bank always charges a fee to non-customers except in the case of benefits deposits.

As it relates to "on the machine" ATM fee notice, EFTA provides, in pertinent part:

(3) Fee Disclosures at Automated Teller Machines

(A) In general. The regulations prescribed under paragraph (1) shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such con-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

sumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of-

(i) the fact that a fee is imposed by such operator for providing that service; and

(ii) the amount of any such fee

**\*86** (B) Notice requirements.

(i) On the machine. The notice required under clause

(i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

15 U.S.C. § 1693b(d)(3)(a-b) (2000).

The Board of Governors of the Federal Reserve Board is required to "prescribe regulations to carry out the purposes of [EFTA]." 15 U.S.C. § 1693(a). It has adopted a number of administrative regulations specifying what types of notice that ATM operators must provide customers under the law. In April 2005, at the time the Plaintiffs filed the instant suit, the Board required:

An automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall:

(1) Provide notice that a fee *will* be imposed for providing electronic fund transfer services or a balance inquiry; and (2) Disclose the amount of the fee.

12 C.F.R. § 205.16(b) (2005) ("Regulation E") (Emphasis added).

Recent amendments to Regulation E, which went into effect on February 9, 2006, provide that an ATM operator can meet the requirements of Regulation E by posting a notice that a "fee may be imposed," for providing electronic fund transfer services or for a balance inquiry, but "only if there are circumstances under which a fee will not be charged for such services." Final Rule, 71 Fed.Reg. 1638, 1659. (Aug. 25, 2005) (to be codified at 12 C.F.R. § 205.16). These changes, as the Board noted, were intended to clarify that a notice utilizing the conditional verb "may" was proper because "a disclosure on the ATM that a fee 'will' be imposed in all instances could be overly broad." Id. at 1655. As such, the Board indicated in its commentary that the law allows ATM operators to provide notice on or at the ATM to "disclose on ATM signage that a fee will be imposed or, in the alternative, that a fee may be imposed." Id. (emphasis added). Thus, Regulation E, as currently interpreted by the Board, expressly permits the usage of the verb "may" in on-machine notice signage unless a fee is always charged. 12 C.F.R. § 205.16(c)(1)(ii) (2006).

Plaintiffs argue that under the statute the notice must state that a fee "will" be imposed even when there are situations where some customers won't have to pay. Trumpeting *Morrissey v. Webster Bank, N.A.,* 417 F.Supp.2d 183, 187 (D.Mass.2006), defendants urge this Court to reject this verb choice claim. In *Morrissey,* the Court stated:

Even read "plainly", the statute does not always require that a fee "will" be charged ... Though starting with the general statement that the notice provision applies to an ATM operator who imposes a fee "on *any* consumer", the statute then requires that the notice actually be given only "to *such* customer ... that a fee is imposed." Thus, the statute "plainly" requires on-machine only to those consumers on whom a bank imposes a fee ...

One is left, then, with the conundrum of a statute that "plainly" requires on-machine notice to some consumers but not others. If it were possible instantly upon a consumer walking up to an ATM to know whether the statute required on-machine notice to that particular consumer, then the statute easily could be followed. But it is a metaphysical

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

fact that is simply not possible until the consumer ***87** has proceeded to initiate the transaction ...

The obvious solution to this "problem" has no doubt occurred to the reader several pages ago: The notice "on the machine" should state that a fee "may" be imposed, while the notice "on the screen" should appear only when a fee is imposed. This interpretation of the statute and regulation accounts not only for the on-machine notice provision in the statute, but also logically integrates the on-screen notice requirements.

*Id.*

Based on discovery, Plaintiffs argue that *Morrissey* is distinguishable because only twenty-three percent of non-customers were charged a fee, whereas 99.5 percent of non-foreign non-customers are assessed ATM fees by Bank of America. Therefore, they claim that it is misleading to use the word "may" when it is overwhelmingly likely a fee will be charged. Bank of America responds by pointing out that certain categories of non-customers such as international bank cardholders, customers of certain other financial institutions, and individuals that receive government benefits through stored-value cards, will not be charged a fee. In California, there were 22,339,774 foreign withdrawals representing 1.435% of the total. In Maryland, 5,195,380 make up 1.22% of the total.

[1] The starting point for the analysis must begin with the statute which requires that a notice be placed on the ATM machine informing the consumer of "the fact that a fee is imposed" for providing the requested service. § 1693b(d)(3)(A)-(B). Regulation E, as amended, addresses the problem faced by ATM operators where certain categories of consumers will not be charged. Even though these amendments and comments to Regulation E went into effect in 2006, several months *after* the filing of the present action, these administrative interpretations should be accorded significant deference by this Court. *See Chevron U.S.A. Inc., v. Natural Res. Def. Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer"). If a statute is " 'silent or ambiguous with respect to the specific issue,' the question 'is whether the agency's answer is based on a permissible construction of the statute.' " *Harvey v. Veneman,* 396 F.3d 28, 34 (1st Cir.2005) (citations omitted). Deference should be accorded to the agency "as long as its interpretation is rational and consistent with the statute." *Id.*

In enacting the EFTA, Congress delegated to the Board broad powers to develop "such classifications, differentiations, or other provisions, and may provide for such adjustments and exceptions for any class of electronic fund transfers, *as in the judgment of the Board* are necessary or proper to effectuate the purposes of this subchapter, to prevent circumvention or evasion thereof, or to facilitate compliance therewith."  15 U.S.C. § 1692b(c) (emphasis added). In speaking of the identically-worded enabling statute under the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1604 (2000), the United States Supreme Court held that Board's interpretations of TILA through its Regulation Z should be accepted unless "demonstrably irrational." *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 565-66, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

[2][3] Plaintiffs contend that the Regulation E amendments should not be applied retroactively. The Supreme Court has held that an administrative amendment to the law should not be applied retroactively where the regulatory change substantively alters the law through an effort of "legislative rulemaking."  ***88** *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (finding that administrative change of wage-index could not be given retroactive effect because this change was neither authorized by Congress nor merely interpretive). However, where an agency merely seeks to interpret the existing law like "a judicial determination construing and applying a stat-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ute to a case in hand," courts can give these explanations retroactive effect. *Manhattan Gen. Equip. Co. v. Comm'r of Internal Revenue,* 297 U.S. 129, 135, 56 S.Ct. 397, 80 L.Ed. 528 (1936). An agency has the power to say what the law always has been so long as it does not substantively change the law. *Smiley v. Citibank (S.D.), N.A.,* 517 U.S. 735, 744 n. 3, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996) (discussing an agency's later clarification of applicability of interest calculations to credit card holders). A court may give such retroactive effect to these legal clarifications because "where ... a court is addressing transactions that occurred at a time when there was no clear agency guidance, it would be absurd to ignore the agency's current authoritative pronouncement of what the statute means." *Id.* Therefore, unless the new regulation "replaces a prior agency determination," this Court may find that the amendment merely provides an explanation for what the law always has been. *Id.*

[4][5] In order to determine if the amendments to Regulation E marked a change in the rules or served as an interpretation of existing law, this Court will first look to the stated intent of the Board in proffering the amendments. *See First Nat. Bank of Chicago v. Standard Bank & Trust,* 172 F.3d 472, 478 (7th Cir.1999) (holding regulatory amendment extending a bank's deadline for returning checks could be given retroactive effect). If an agency plainly states that it is merely clarifying the law, then this determination must be accorded deference by the Courts. *Id.; Alliance to Protect Nantucket Sound, Inc. v. U.S. Dep't of the Army,* 398 F.3d 105, 112 (1st Cir.2005) (stating that an "agency's interpretation during administrative adjudication of its own regulations 'must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.'") (citations omitted). Here, the Board declared on the face of the regulation that "this amendment does not represent a change in the Board's interpretation of the rule's requirements." 71 Fed.Reg. at 1655-56. The Board's statement that this amendment is clarification of existing law-and not legislative-must be ac-

corded significant weight unless it is inconsistent with EFTA or the prior regulations.

The prior version of Regulation E tracked the language of EFTA, requiring that ATM operators "provide notice that a fee will be imposed for providing electronic fund transfer services." 12 C.F.R. 205.16(b) (2004). It never addressed the situation where some customers would not be charged a fee. Because the Board's interpretation of these amendments as an explication of the law is neither plainly erroneous nor inconsistent with the preexisting regulations, this Court, will give significant deference to Regulation E's current substantive interpretation of EFTA which explicitly allows an ATM provider to utilize the verb "may" for its on-machine decal. *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994).

While there is a stronger argument for the use of the word "will" in this case than in *Morrissey,* nonetheless, giving great deference to Regulation E, the Court concludes that of EFTA does not require the use of "will" with on-machine notice provided that there are circumstances in **\*89** which the operator does not assess a fee. As such, Defendant is entitled to summary judgment on Plaintiffs' "verb choice" claim.

*Counts 2 and 3*

Plaintiffs also argue that the language of the notice, its print size, and its placement on the machine in a non-obvious location all violate state law. Defendant argues that even if the language or placement of the notice is deficient under the state consumer protection statutes, Plaintiffs have failed to show that the deficient notice caused an actual injury.

[6] Both the Massachusetts and California statutes require loss causation. Mass. Gen. Laws ch. 93A, § 2 (2006), provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." A consumer may

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

recover actual damages under Mass. Gen. Laws ch. 93A, § 9 (2006) if she proves that the Defendant's "unfair and deceptive act ... cause[d] loss of money, loss or property, or personal injury,". *Hershenow v. Enterprise Rent-A-Car of Boston, Inc.,* 445 Mass. 790, 791, 798-799, 840 N.E.2d 526, 533 (2006) ("proving a causal connection between a deceptive act and a loss to the consumer is an essential predicate for recovery under our consumer protection statute.")

California's recently amended consumer protection statute, California, Cal. Bus. & Prof.Code §§ 17200-17210 (2004), requires a similar showing of causation. A § 17200 claim requires the plaintiff to show that he or she "has suffered injury in fact and has lost money or property as a result of such unfair competition." Cal. Bus. & Prof.Code § 17204 (2004). The California Supreme Court has interpreted this recently inserted language to "prevent uninjured private persons from suing" under this statute. *Californians For Disability Rights v. Mervyn's,LLC,* 39 Cal.4th 223, 232, 46 Cal.Rptr.3d 57, 138 P.3d 207 (2006). Thus, absent a showing of a loss of money or property caused by a defendant's unfair practices, a plaintiff may not proceed in a claim under California's consumer protection law. *Id.* at 228.

[7] Here, Bank of America's ATMs all require that a customer consent to the assessment of a fee before the Bank will levy a charge. Each ATM is equipped with a "click-through" screen that notifies the user that he or she will be charged a fee and requires that the user consent before the transaction will proceed. This screen ensures that every class member knows about the fee before it is assessed and guarantees that every class member assents to the transaction. Thus, even if Plaintiffs can establish that the on-machine notice is defective under state law, they cannot establish loss causation because the click-through screen breaks the causal connection between the defective notice and the payment of the fee. In other words, the second notice obviates any harm. Bank of America is entitled to summary judgment on Claims 2 and 3 of Plaintiffs' Second Amendment Complaint.[FN2]

> FN2. Defendant requests that the Court "cap" the Plaintiffs' potential recovery under the related state law claims at $500,000. EFTA provides that in "any class action or series of class actions arising out of the same failure to comply by the same person," statutory damages "shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant." 15 U.S.C. § 1693m(a)(2)(B) (2000). Both parties agree that Bank of America's net worth greatly exceeds $50 million. As such, Bank of America's exposure for statutory damages under EFTA for all four subclasses under this cap would be limited to $500,000. As the two state causes of action have been resolved in the Bank's favor, this Court need not reach the issue.

*\*90 2. The Placement Claim*

[8] Plaintiffs also allege in Count One that the placement of the notices on defendant's ATMs is not sufficiently "prominent and conspicuous" to satisfy EFTA (the "placement" claim). EFTA provides that an ATM operator who violates the provisions of the law will also be liable for "any actual damages sustained by such consumer as a result of such failure." 15 U.S.C. § 1693m(a)(1) (2000). These actual damages are exclusive of the aforementioned $500,000 cap. 15 U.S.C. § 1693m(a)(2)(B) (2000). Defendant argues that if plaintiffs cannot establish actual damages arising under their remaining "placement claim," then they cannot recover any damages without the limitation of for the statutory damages cap.

[9] There are no reported cases interpreting the actual damages provision of EFTA. As such, this Court borrows from caselaw interpreting the identical damages provision of TILA, another banking consumer-protection law. *See, e.g., Johnson v.*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*W. Suburban Bank,* 225 F.3d 366, 378-79 (3d Cir.2000) (finding identical class action language in TILA and EFTA to have identical substantive meaning because "we do not believe that Congress would have different intended meanings for identical statutory language contained in similar statutes"). Specifically, TILA provides recovery for "any actual damage sustained by such a person as a result of the [defendant's] failure." 15 U.S.C. § 1640(a)(1) (2000). In order to recover actual damages, Plaintiffs must establish causation of harm through detrimental reliance. *See Bizier v. Globe Financial Servs., Inc.,* 654 F.2d 1, 4 (1st Cir.1981) (stating that "damages and causation must be shown" to recover actual damages under an identically worded provision of Truth in Lending Act (TILA)); *see also Turner v. Beneficial Corp.,* 242 F.3d 1023, 1028 (11th Cir.2001) (finding that detrimental reliance is an element of a TILA claim for actual damages).

The Plaintiffs, though, cannot establish causation of harm in the form of detrimental reliance in this case under the placement claim. Even if the on-machine notice provided to customers was not properly placed, an ATM user must always affirmatively consent to being charged a fee on Bank of America's "click through" screen before the Defendant levies a fee. Given this electronic consent, Plaintiffs cannot establish the causal link between an ill-placed decal and monetary loss necessary to recover actual damages under EFTA.

### *ORDER*

The Court ***ALLOWS*** Bank of America's motion for summary judgment as it relates to the "verb choice" claim of Count 1; Count 2; and Count 3. The Court also ***ALLOWS*** Defendant's motion for summary judgment on its Ninth Affirmative Defense, thus prohibiting the Defendant from recovering actual damages under EFTA.

D.Mass.,2006.
Brown v. Bank of America, N.A.

457 F.Supp.2d 82

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.