**Westlaw Delivery Summary Report for SINN,NATE R 6026349**

| | |
|---|---|
| Date/Time of Request: | Monday, September 15, 2008 18:24 Central |
| Client Identifier: | 0126/01 |
| Database: | FEDFIND |
| Citation Text: | 232 F.3d 433 |
| Lines: | 511 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

232 F.3d 433                                                                                                              Page 1
232 F.3d 433

Perrone v. General Motors Acceptance Corp.
C.A.5 (La.),2000.

United States Court of Appeals,Fifth Circuit.
Paula PERRONE, Individually and on behalf of others similarly situated; et al.; Plaintiffs,
Gilbert V. Andry, Jr.; Paul M. Perrone; Doris McCullough, Plaintiffs-Appellants,
v.
GENERAL MOTORS ACCEPTANCE CORPORATION, Defendant-Appellee.
No. 99-30958.

Nov. 2, 2000.

Class of automobile lessees brought suit under the Truth in Lending Act (TILA) and Consumer Leasing Act (CLA) to recover for automobile finance company's alleged disclosure violations. On motion to certify class, the United States District Court for the Eastern District of Louisiana, Ivan L.R. Lemelle, J., declined to certify on question of finance company's liability for actual damages, and lessees brought interlocutory appeal. The Court of Appeals, Edith H. Jones, Circuit Judge, held that: (1) detrimental reliance is element of claim for actual damages under either the TILA or CLA; and (2) claim for actual damages could not proceed upon class basis.

Affirmed and remanded.

West Headnotes

[1] Statutes 361 ⚷188

361 Statutes
   361VI Construction and Operation
      361VI(A) General Rules of Construction
         361k187 Meaning of Language
            361k188 k. In General. Most Cited Cases
In statutory construction case, court must begin with language of statute, and when statute speaks with clarity to issue, judicial inquiry into statute's meaning, in all but the most extraordinary circumstances, is finished.

[2] Statutes 361 ⚷188

361 Statutes
   361VI Construction and Operation
      361VI(A) General Rules of Construction
         361k187 Meaning of Language
            361k188 k. In General. Most Cited Cases
Courts give words of statute their ordinary, contemporary, common meaning, absent some indication that Congress intended them to bear some different import.

[3] Consumer Credit 92B ⚷61.1

92B Consumer Credit
   92BII Federal Regulation
      92BII(C) Effect of Violation of Regulations
         92Bk61 Civil Liabilities and Penalties for Violations
            92Bk61.1 k. In General. Most Cited Cases
Statutory remedy of "actual damages," for violation of Truth in Lending Act (TILA), requires direct causal relationship between amount of damages and injury or harm. Truth in Lending Act, § 130(a)(1), 15 U.S.C.A. § 1640(a)(1).

[4] Consumer Credit 92B ⚷61.1

92B Consumer Credit
   92BII Federal Regulation
      92BII(C) Effect of Violation of Regulations
         92Bk61 Civil Liabilities and Penalties for Violations
            92Bk61.1 k. In General. Most Cited Cases
"Actual damages" are sustained, as result of failure to disclose under Truth in Lending Act (TILA), if consumer can show that, had he been properly informed, he would have engaged in different or less-

expensive transaction. Truth in Lending Act, § 130(a)(1), 15 U.S.C.A. § 1640(a)(1).

**[5] Consumer Credit 92B ⟜61.1**

92B Consumer Credit
    92BII Federal Regulation
        92BII(C) Effect of Violation of Regulations
            92Bk61 Civil Liabilities and Penalties for Violations
                92Bk61.1 k. In General. Most Cited Cases

Detrimental reliance is element of claim for actual damages under either the Truth in Lending Act (TILA) or Consumer Leasing Act (CLA). Truth in Lending Act, §§ 130(a)(1), 185, 15 U.S.C.A. §§ 1640(a)(1), 1667d.

**[6] Consumer Credit 92B ⟜61.1**

92B Consumer Credit
    92BII Federal Regulation
        92BII(C) Effect of Violation of Regulations
            92Bk61 Civil Liabilities and Penalties for Violations
                92Bk61.1 k. In General. Most Cited Cases

Statutory damages may be imposed, under Truth in Lending Act (TILA), as means of encouraging private attorneys general to police disclosure compliance even where no actual damages exist. Truth in Lending Act, § 130(a)(2), 15 U.S.C.A. § 1640(a)(2).

**[7] Consumer Credit 92B ⟜61.1**

92B Consumer Credit
    92BII Federal Regulation
        92BII(C) Effect of Violation of Regulations
            92Bk61 Civil Liabilities and Penalties for Violations
                92Bk61.1 k. In General. Most Cited Cases

Unlike statutory damages, which may be imposed under the Truth in Lending Act (TILA) as means of encouraging private attorneys general to police dis-closure compliance, actual damages awards must be assessed as an individualized harm. Truth in Lending Act, § 130(a)(1, 2), 15 U.S.C.A. § 1640(a)(1, 2).

**[8] Statutes 361 ⟜190**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k187 Meaning of Language
                361k190 k. Existence of Ambiguity. Most Cited Cases

**Statutes 361 ⟜217.4**

361 Statutes
    361VI Construction and Operation
        361VI(A) General Rules of Construction
            361k213 Extrinsic Aids to Construction
                361k217.4 k. Legislative History in General. Most Cited Cases

Only if court finds text of statute to be opaque or translucent, or even ambiguous, must court attempt to divine Congressional intent by applying prescribed canons of statutory interpretation, including, without limitation, resort to rule of lenity and legislative history.

**[9] Federal Civil Procedure 170A ⟜182.5**

170A Federal Civil Procedure
    170AII Parties
        170AII(D) Class Actions
            170AII(D)3 Particular Classes Represented
                170Ak182.5 k. Consumers, Purchasers, Borrowers, and Debtors. Most Cited Cases

Claim for actual damages under the Truth in Lending Act (TILA) or Consumer Leasing Act (CLA) could not proceed upon class basis, as individual reliance was necessary to prove actual damages under either the TILA or CLA. Truth in Lending Act, §§ 130(a)(1), 185, 15 U.S.C.A. §§ 1640(a)(1), 1667d; Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**\*434** Michael H. Ellis, Paula Paul Perrone (argued),

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

George B. Recile, Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, LA, Russell J. Weintraub, University of Texas School of Law, Austin, TX, Charles Scott LaBarre, Gauthier, Downing, LaBarre, Beiser & Dean, New Orleans, LA, for Plaintiffs-Appellants.

David S. Willenzik, Anthony Joseph Rollo, Jr., McGlinchey Stafford, New Orleans, LA, Yoav M. Griver, Joseph W. Gelb, Peter N. Cubita (argued), Weil, Gothal & Manges, New York City, for Defendant-Appellee.

Patricia M. Tulinski, McGehee & Pianelli, Houston, TX, Garth Jonathan Ridge, Baton Rouge, LA, for Natural Ass'n of Consumer Advocates, Amicus Curiae.

Kimberly A. Kralowec, Severson & Werson, San Francisco, CA, Gregory J. Digel, Laurie Webb Daniel, Holland & Knight, Atlanta, GA, for American Financial Services Ass'n, American Bankers Ass'n, Consumer Bankers Ass'n, Amicus Curiae.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, JONES and STEWART, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellants, a class of automobile lessees who brought an action under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and the Consumer Leasing Act ("CLA"), 15 U.S.C. § 1667, against General Motors Acceptance Corporation ("GMAC") have been granted an interlocutory appeal on the question of whether detrimental reliance must be proven to recover damages for a disclosure violation arising under those statutes. 28 U.S.C. § 1292(b). Agreeing with the district court that detrimental reliance is an element of a claim for actual damages, we remand to that court for further proceedings.

## I. BACKGROUND

Doris McCullough, Gilbert V. Andry, Jr., and Paul Perrone ("Appellants"), individually **435** and as representatives of a class, sued GMAC for its alleged failure to disclose and identify an administrative/acquisition fee in their pre-printed form contracts for automobile leases. Appellants sought actual damages, statutory damages and attorneys' fees pursuant to the civil liability provisions of CLA and TILA. See 15 U.S.C. § § 1640(a)(1),(2), 1667d.

Appellants signed pre-printed form vehicle lease agreements with automobile dealerships that were subsequently assigned to GMAC. They allege that the GMAC leases, used by dealers throughout the country, did not identify an "acquisition fee" of $400 charged by GMAC to the dealer at the inception of each lease. The non-itemization, they contend, violated the CLA and TILA and inflicted damages of $400 per lease.

GMAC responds that because the $400 fee was included in the computation of both the monthly amounts and total payments under the leases, it was sufficiently disclosed. Thus, the appellants knew exactly how much they were paying for their leases at signing and were charged no more than the disclosed amounts. While making the disclosure in question would not have changed either the monthly payment amount or the total payment disclosed in the leases, GMAC adds, the damages sought by the lessees could add up to several hundred million dollars.

The district court certified a class consisting of,

All natural persons resident in the U.S. who, at any time during the period after August 16, 1996 and prior to January 1, 1998, were parties to a motor vehicle lease agreement with GMAC or a lease which has been assigned to GMAC and whose lease: (1) were for a scheduled term in excess of four months; (2) primarily for personal, family, or household purposes; (3) for a total contractual obligation of $25,000 or less; and (4) wherein an administrative/acquisition fee was paid by and/or was charged the lessee and was not individually itemized and/or was not identified as an administrative/ac-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

quisition fee on the face of the lease agreement.

Subsequently, the court granted GMAC's motion to clarify the scope of the class regarding actual damages. Finding that "in order to prove actual damages, [each] plaintiff must prove detrimental reliance," the court then declined to certify the Appellants' class action as to the actual damages claim. A request for certification of an interlocutory appeal was approved by the district court and this court.

## II. DISCUSSION

[1] "In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue, judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Estate of Cowart v. Nicklos Drilling, Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992). The CLA, 15 U.S.C. § 1667-1667(e), comprises Chapter 5 of TILA, 15 U.S.C. § 1601 et seq., and adopts TILA's civil remedies provision, including the actual damages remedy, for violations of lease disclosure requirements. 15 U.S.C. § § 1640, 1667(d). Section 1640(a)(1) of TILA provides that plaintiffs may recover "any actual damage sustained by such person as a result of the failure" to make required consumer disclosures. The meaning of that subsection is at the heart of this appeal. Sections 1640(a)(2), (3), and (4) provide for statutory damages, attorney's fees and costs.

[2][3][4] "Courts give the words of a statute their 'ordinary, contemporary, common meaning,' absent an indication Congress intended them to bear some different import." *Williams v. Taylor,* 529 U.S. 420, 120 S.Ct. 1479, 1488, 146 L.Ed.2d 435 (2000). Black's Law Dictionary defines actual damages as "[c]ompensation for actual injuries or loss." *Black's Law Dictionary* 35 (6th ed.1990). They "flow[ ] from injury in fact" and "make good or replace the loss *436 *caused* by the wrong or injury." *Id.* (emphasis added). According to its plain meaning, the statutory remedy of "actual damages" in section 1640(a)(1) requires a direct causal relationship between the amount of damages and the injury or harm. That the "actual damages" must be "sustained by such person as a result of the failure" links the loss to the failure to disclose. 15 U.S.C. § 1640(a)(1). Actual damage is thus sustained as a result of a failure to disclose under the statute if a consumer can show that, had he been properly informed, he would have engaged in a different or less-expensive transaction.

[5] If the plain meaning alone does not clearly enough indicate that plaintiffs must show detrimental reliance upon a lessor's disclosure violation, the requirement becomes manifest when § 1640(a) is placed in its statutory context and contrasted with the statutory liquidated damages provision.

Preliminarily, it is appropriate to examine the harm that Congress seeks to prevent through enforcement of the CLA and TILA. The CLA was intended "to assure a meaningful disclosure of the terms of leases of personal property for personal, family, or household purposes so as to enable the lessee to compare more readily the various lease terms available to him, limit balloon payments in consumer leasing, enable comparison of lease terms with credit terms where appropriate, and to assure meaningful and accurate disclosures of lease terms in advertisements." 15 U.S.C. § 1601(b). Congress concluded that consumers are harmed by a disclosure violation when it prevents them from making informed leasing decisions because they are unable accurately to compare contract terms. Evaluating whether an actual harm results from a disclosure violation requires, first, that the consumer relied on the particular lease terms; second, that the disclosure violation deterred him from inquiring into other lease alternatives; and third, that the alternatives would save money. In essence, the statute is addressing and seeking to combat detrimental reliance.

The CLA recognizes, however, that damages in these individually small transactions may be difficult to prove and adjusts its remedy to afford actual

damages or at least a statutory minimum. A comparison of these provisions supports the conclusion that actual damages are based on detrimental reliance. While the actual damages provision requires a casual connection with the disclosure violation, 15 U.S.C. § 1640(a)(1), the statutory damages provision dispenses with causation and imposes a penalty solely for failure to comply with disclosure requirements. 15 U.S.C. § 1640(a)(2). Without a causation requirement, actual damages would overlay the statutory damages for no apparent reason. Conceptually, however, statutory and actual damages perform different functions: statutory damages are reserved for cases in which the damages caused by a violation are small or difficult to ascertain. Actual damages may be recovered where they are probably caused by the violation. In this way, the damage measures are complementary rather than duplicative.

[6][7] The caselaw confirms that statutory damages may be imposed as a means to encourage private attorneys general to police disclosure compliance even where no actual damages exist. *See Davis v. Werne,* 673 F.2d 866, 869 (5th Cir.1995)(" 'The statutory damages are explicitly a bonus to the successful TILA plaintiff, designed to encourage private enforcement of the Act, and a penalty against the defendant, designed to deter future violations.' ")(quoting *Dryden v. Lou Budke's Arrow Finance Co.,* 630 F.2d 641, 647 (8th Cir.1980)); *see also Edwards v. Your Credit, Inc.,* 148 F.3d 427, 441 (5th Cir.1998)("the statutory civil penalties must be imposed for ... a [TILA] violation regardless of the district court's belief that no actual damages resulted or that the violation is de minimus") (quoting *Zamarippa v. Cy's Car Sales, Inc.,* 674 F.2d 877, 879 (11th Cir.1982)). On the other hand, actual damages have ***437** consistently been recognized as more difficult to prove. *See In re Wood,* 643 F.2d 188, 193 (5th Cir.1980)("[S]tatutory damages compensate the debtor for actual damages that may in fact be 'difficult to ascertain.' "); *see also McCoy v. Salem Mortgage Co., et al.,* 74 F.R.D. 8, 12 (E.D.Mich.1976)("[I]t seems likely that if actual damages could be computed by a simple formula, no statutory damage provision would have been necessary."). The distinction between statutory and actual damages comports with the notion that actual damages awards must be assessed as an individualized harm.[FN1] *See Williams v. Public Finance Corp.,* 598 F.2d 349, 356 (5th Cir.1979)("The remedial scheme in the TIL Act is designed to deter generally illegalities which are only rarely uncovered and punished, and not just to compensate borrowers for their actual injuries in any particular case."). *See also The Law of Truth in Lending,* ¶ 12.04[a] (1984) ("[F]ew if any TIL plaintiffs have proven or can prove actual damages".).

> FN1. In *McGowan v. King, Inc.,* this court stated that the basis of liability under section 1640(a) is "the failure to disclose information required to be disclosed" but that there was "no requirement that the plaintiff himself be deceived in order to sue in the public interest." 569 F.2d 845, 849 (5th Cir.1978). Our discussion of the remedial scheme, however, was only in the context of the "statutory penalty" awarded to the plaintiff. *Id.* We made no mention of the actual damages provision.

In addition, the only other circuit decision on this issue holds that detrimental reliance is an element of causation in an actual damages award. Setting forth the elements for an actual damages award under § 1640, the Eighth Circuit held that a plaintiff must prove that the "TILA violation was the proximate cause of any actual damages." *Peters v. Lupient Oldsmobile Co.,* 220 F.3d 915, 917 (8th Cir.2000). In other words, a plaintiff must show that "(1) he read the TILA disclosure statement; (2) he understood the charges being disclosed; (3) had the disclosure statement been accurate, he would have sought a lower price; and (4) he would have obtained a lower price." *Id.* The plaintiff had bought credit life and disability insurance from a used car salesman for premiums paid to an insurance company. The contract for the policies did not

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

disclose that commissions were paid to the car company for the sale. Instead, the contract listed the premium totals as amounts paid to third parties on the plaintiff's behalf. The plaintiff sued for actual damages under TILA. The Eighth Circuit concluded that the plaintiff failed to meet the fourth element of its test because there was no evidence that he would have received a lower premium from any other insurance provider or that he suffered any actual damages.

Appellants urge us to follow the reasoning of the dissent in the *Peters* decision.[FN2] Urging a broad interpretation to effectuate the statute's purpose of protecting the consumer against inaccurate and unfair credit billing, the dissent asserts that actual damages in TILA claims should be measured by the amount of the violators' misrepresentation. The dissenting opinion cites *Gibson v. Bob Watson Chevrolet-Geo, Inc.,* 112 F.3d 283, 285-87 (7th Cir.1997) and *Jones v. Bill Heard Chevrolet, Inc.,* 212 F.3d 1356, 1363 n. 7 (11th Cir.2000) as support. Neither of these cases, however, speaks directly to the issue of actual damages. In *Jones,* the Eleventh Circuit, in a footnote, rejected the defendant's contention that the TILA claim failed because the plaintiff could not demonstrate reliance on its misrepresentation. *Jones* did not address whether an award of actual damages requires proof of detrimental reliance. In fact, the opinion does not indicate whether the plaintiffs even sought *438 actual as opposed to statutory damages. In *Gibson,* the Seventh Circuit concluded that the plaintiff stated a claim under TILA without showing that a lower price could have been obtained elsewhere, but again, the court did not distinguish between the remedies of actual or statutory damages.[FN3] Thus, the cases relied upon by the *Peters* dissent are not compelling.

> FN2. Appellants also argue that the plaintiff in *Peters* did not contest that the four-part test was the proper analysis for determining an actual damages recovery. *Peters,* 220 F.3d at 917. *Peters* nonetheless convincingly states the law, and we ordinarily defer to the decisions of sister circuits.

> FN3. Indeed, in *Edwards v. Your Credit, Inc.,* this court cited *Gibson* for the proposition that stating a claim for a TILA violation generally is different from alleging the type of harm. 148 F.3d 427, 441 (5th Cir.1998) (quoting *Gibson,* 112 F.3d at 287) ("[T]he issue is not whether these violations are technical, or whether technical violations should be actionable, or whether consumer class actions should be discouraged, but whether the complaints in these actions state a claim.").

We also take guidance from the Eleventh Circuit. In *Adiel v. Chase Federal Savings & Loan Assoc.,* 810 F.2d 1051 (11th Cir.1987), a class of mortgagors prevailed in a lawsuit to recover damages from Chase Federal Savings and Loan Association ("Chase") for Chase's failure to present them with truth-in-lending documents. *Id.* at 1053. The district court adopted a "but-for" test similar to detrimental reliance in its determination of whether to award actual damages. *Adiel v. Chase Federal Savings & Loan Assoc.,* 630 F.Supp. 131, 133 (1986). The Eleventh Circuit affirmed the award of statutory damages and the district court's denial of actual damages. *Adiel,* 810 F.2d at 1055. Indeed, the overwhelming majority of district courts to address this issue have held that detrimental reliance is an element of actual damages.[FN4]

> FN4. *See, e.g., Anderson v. Rizza Chevrolet, Inc.,* 9 F.Supp.2d 908, 913 (N.D.Ill.1998); *Barlow v. Evans,* 992 F.Supp. 1299,1310 (M.D.Al.1997); *Wiley v. Earl's Pawn & Jewelry, Inc.,* 950 F.Supp. 1108, 1114 (S.D.Al.1997) ("[u]nless a person can prove that he would have gotten a better interest rate or, perhaps, foregone the loan altogether, he has suffered no actual loss"); *Cirone-Shadow v. Union Nissan of Waukegan,* 955

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

F.Supp. 938, 943 (N.D.Ill.1997); *McCoy v. Salem Mortgage Co.,* 74 F.R.D. 8, 12 (E.D.Mich.1976).

Appellants make various arguments in support of their position that detrimental reliance should not be an element of actual damages. First, they would have us follow the reasoning of *In re Russell,* 72 B.R. 855 (Bankr.E.D.Pa.1987), where a bankruptcy judge articulated the test for actual damages as one where there has been a "substantial violation" as opposed to a "technical violation" of the statute. The plain language of the statute makes no such distinction. Nor has this court held that actual damages are to be confined to substantial violations. Moreover, this test would call upon the court to differentiate between technical and substantial violations. Such a test "marks a radical departure from established Truth in Lending case law." D. Edwin Schmelzer, *Truth in Lending Developments in 1987: An Active Year on Several Fronts,* 43 Bus. Law. 1041, 1067-68 (May, 1988).

Appellants also advocate their version of principles of contract law. They assert that TILA and CLA govern the contractual relationship between the parties. By not itemizing the acquisition fee, GMAC allegedly deprived the consumers of the benefit that they bargained for when they signed their agreements. Traditional breach of contract principles would give the aggrieved parties the "benefit of the bargain," which would place them in the position they would have had if the violation had not occurred. A return of the $400 acquisition fee, they contend, would accomplish that goal; reliance is irrelevant.

Even if this is a correct statement of contract law, we disagree with the attempt to transform this statute-based claim into one founded on contract. Congress gave no indication that courts should base damage awards on anything other than the explicit words of the statute. Rather, "[w]ith rigorous regard for providing consumers with full disclosure of the terms and conditions of credit purchases, Congress fashioned an elaborate system of **\*439** remedies and penalties to effectuate compliance with the Truth-in-Lending Act and to redress grievances stemming from its violation." *Sosa v. Fite,* 498 F.2d 114, 117 (5th Cir.1974). The statute is not a remedy for breach of contract. "The damage provisions, providing minimum and maximum limits, [are] inconsistent with such a thesis. Rather, § 1640 provides a 'civil penalty.'" *Sellers v. Wollman,* 510 F.2d 119, 122 (5th Cir.1975).

Next, appellants argue that the overall structure of TILA establishes that detrimental reliance is not an element of recovery. For example, proof of detrimental reliance is unnecessary for either regulatory enforcement or creditor self-policing. By contrast, they contend, the remedy of restitution is imbedded within the statute. First, appellants assert that *Regulation M,* 12 C.F.R. § 213 et. seq., the regulation implementing the consumer leasing provisions of TILA, made lessors subject to the enforcement agencies' restitution policy. Second, they focus on the "correction of errors" provision, which allows a creditor to avoid civil liability if, within sixty days after discovering an error, it notifies the consumer of the error and makes whatever adjustments are appropriate to assure that the person is not required to pay an amount in excess of the charge actually disclosed or the dollar equivalent of the annual percentage rate actually disclosed, whichever is lower. 15 U.S.C. § 1640(b).

We disagree with the implications appellants claim from other TILA remedial procedures. If Congress had meant for restitution to be the measure of actual damages, it could have easily said so in the statute. It did not. The fact that restitution is an available remedy for some purposes does not mean that Congress intended for this to be the measure of all other damages. Administrative, self-policing, and civil remedies serve distinct functions. Restitution seems more appropriate as a regulatory penalty because it is easy to measure and because an agency can be expected to enforce disclosure regulations with prosecutorial discretion, reining in the most harmful violations. The self-policing restitution

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

remedy encourages prompt, prophylactic cure of disclosure violations.[FN5] The actual damage remedy, however, speaks only to compensation of individual losses suffered from violations. While the remedies may share the common goal of increased disclosure, there is no reason to suppose that they must share the same mechanism of enforcement.[FN6]

> FN5. Finally, it is questionable whether the restitution remedy even applies to the type of disclosure violation at issue here. GMAC argues that the restitution authority of the administrative enforcement agencies is contained in TILA Section 108(e) and is limited to Annual Percentage Rate and finance charge disclosure violations by creditors. Such requirements do not apply to a consumer lease. *See* 15 U.S.C. § 1607(e)(1). Appellants counter that *Regulation M,* 12 C.F.R. § 213.1 specifically incorporated the TILA "administrative enforcement" provision, 15 U.S.C. 1607(e). In addition, they assert that because the Act gives the Federal Reserve Board wide latitude in prescribing regulations and delegates substantial enforcement powers, there is ample reason to find that lessors may be subject to agency enforcement restitution adjustments.

> FN6. Appellants also observe that because TILA admonishes courts to consider "the amount of any actual damages awarded" in determining a class action award, § 1640(a), Congress intended that actual damages are available and anticipated for TILA class actions. There is no logical connection between this statement and the separate question of what formula to apply for measuring actual damages.

Appellants argue that we should apply to TILA the Supreme Court's reasoning in *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), in which the Court allowed an action for damages without proof of reliance for any material violation of Rule 10b-5. They attempt to analogize TILA to Rule 10b-5 by stating that the mandate that lessors disclose certain costs associated with obtaining credit, including the "acquisition fee" at issue here, makes **\*440** the existence of such costs "material" facts. But, "[u]nlike 10b-5, the roots of Truth in Lending are not in protection against common law fraud, and while any Truth in Lending violation necessarily makes the task of shopping for credit more difficult, that does not translate into a 'material' violation." *McCoy v. Salem Mortgage Co.,* 74 F.R.D. 8, 13 (E.D.Mich.1976).

[8] Both parties make use of legislative history. "Only if we find the text of [a statute] to be opaque or translucent, or even merely ambiguous, must we attempt to divine congressional intent by applying prescribed canons of statutory interpretation including, without limitation, a resort to the rule of lenity and legislative history." *U.S. v. Barlow,* 41 F.3d 935, 942 (5th Cir.1994). While we need not rely on legislative history, it appears to support the understanding that statutory damages serve as an incentive to ensure compliance, while actual damages are regarded as more difficult to prove.[FN7]

> FN7. GMAC points to the fact that actual damages were not an available remedy at the time of the initial enactment of TILA in 1968 in order to emphasize that statutory damages were included in order to encourage enforcement by private parties. Specifically, they note that the Senate Report accompanying the initial enactment include this goal as the purpose of the civil penalties section. *See* H.R.Rep. No. 90-1040, at 4 (1968), *reprinted in* 1968 U.S.C.C.A.N. 1962, 1976; *accord,* S.Rep. No. 93-278, at 14 (1973) ("The purpose of the civil penalties section under Truth in Lending was to provide creditors with a meaningful incentive to comply with the law."). When the act was amended in

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

1974, the Senate Report discussing the amendments notes that "[s]ince it is difficult to prove any actual monetary damage arising out of a disclosure violation, the Act provides that a consumer bringing a successful action is entitled to collect court costs and reasonable attorney's fees plus twice the amount finance charge but not less than $100 nor more than $1,000." S.Rep. No. 93-278, at 14 (1973). The report continues: "[m]ost Truth in Lending violations do not involve actual damages and ... some meaningful penalty provisions are therefore needed to ensure compliance." *Id.* at 15. In addition, the Senate Report that accompanied the CLA stated that "[t]he purpose of the legislation is to provide consumers with meaningful information about the component and aggregate costs of consumer leases, so that they can make better informed choices between leases, and between leases and credit sales." *See*S.Rep. No. 94-950 (1976), *reprinted in* 1976 U.S.C.C.A.N. 431, 432.

[9] Since individual reliance is necessary to prove actual damages, a class action may not be certified on this issue. See *Castano v. American Tobacco Co.,* 84 F.3d 734, 745 (5th Cir.1996).

## CONCLUSION

For the foregoing reasons, the district court's order disallowing certification of the class with respect to actual damages and requiring proof of detrimental reliance to establish actual damages, is AFFIRMED. The case is REMANDED for further proceedings consistent herewith.

C.A.5 (La.),2000.
Perrone v. General Motors Acceptance Corp.
232 F.3d 433

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.