## IN THE UNITED STATES DISTRIC COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CARMEN FLORES, individually and on behalf of all others similarly situated, ( ( ( Plaintiff, ( ( v. ( ( DIAMOND BANK, FSB, ( ( Defendant. ( | Case No. 07 C 6403 Judge Hibbler Magistrate Judge Valdez |

### DEFENDANT'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

NOW COMES Defendant DIAMOND BANK, FSB, by and through its attorneys, Belongia & Shapiro, LLP, and pursuant to Rule 56.1(a)(3) of the Federal Rules of Civil Procedure, submit the following statement of undisputed facts in support of its Motion for Summary Judgment:

1

**LIST OF EXHIBITS**

Exhibit A              Plaintiff's Second Amended Complaint

Exhibit B              Carmen Flores Deposition

Exhibit C              James A. Hubbard Deposition

Exhibit D              Lawrence J. Ligas Deposition

Exhibit E              Kimberly Cole Deposition

Exhibit F              Kimberly Cole Affidavit

Exhibit G              Lawrence J. Ligas Affidavit

Exhibit H              Brett Sand Affidavit

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Carmen Flores (hereinafter "Flores"), is a natural person residing in Illinois. (Second Amended Complaint, "Comp.," [Dkt. 22], Exhibit A, ¶ 1).

2. Defendant, Diamond Bank (hereinafter the "Bank"), is a federal savings bank with its principal place of business in Chicago, Illinois. (Comp. Ex. A, ¶ 2).

3. Federal questions jurisdiction exists under 28 U.S.C. §1331 because Plaintiff asserts a claim under the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.*, and Regulation E, 12 C.F.R. § 205.1 *et seq.* (Comp. Ex. A, ¶ 3)

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because the transaction at issue occurred in this district, Plaintiff resides in this district and Defendant resides in this district. (Comp. Ex. A, ¶ 4).

**ELECTRONIC FUNDS TRANSFER ACT – 15 U.S.C. 1693 *et seq*.**

5. On or about August 2, 2007, Plaintiff used the automated teller machine number 049E4 (hereinafter the "ATM"), located at 100 West North Avenue, Chicago, 60610. (Carmen Flores Deposition "Flores Dep.", Exhibit B, p. 13, ln. 18-21; Comp., Ex. A, ¶ 8).

6. On August 2, 2007, Plaintiff was charged a $2.00 fee for the money withdrawal from the ATM. (Flores Dep. Ex. B, p. 39, ln. 2-6; Comp. Ex. A, ¶ 9).

7. Prior to using the ATM on August 2, 2007, Plaintiff had never used an ATM at this Bank before. (Flores Dep. Ex. B, p. 19, ln. 2-5, p. 20, ln. 9-19).

8. The Bank is neither close to her residence nor to her place of work. (Flores Dep. Ex. B, p. 6, ln 23-24, p. 7, ln. 1-11, p. 8, ln. 19-24, p. 9, ln. 1-4).

9. On August 2, 2007, Plaintiff inspected the physical structure of ATM for any fee notices prior to using the ATM. (Flores Dep. Ex. B, p. 36, ln. 2-24).

10. Because she was not able to locate any fee-notices, Plaintiff concluded that the transaction would be free. (Flores Dep. Ex. B, p. 36, ln. 2-24).

11. After initiating, but before completing the transaction at the ATM, Plaintiff saw and read the on-screen fee-notice indicating that a $2.00-charge would be applied to the non-costumers of the Bank for using the ATM. (Flores Dep. Ex. B, p. 36, ln. 18-24, p. 37, p. 1-3).

12. The on-screen notice specifically provides:

> "DIAMOND BANK, FSB, WILL CHARGE U.S. CARDHOLDERS A $2.00 FEE FOR THIS TRANSACTION. THIS FEE IS IN ADDITION TO ANY FEES WHICH MAY BE CHARGED BY YOUR FINANCIAL ISTITUTION.
>
> DO YOU WISH TO CONTINUE?
>
> YES (FEE WILL BE ASSESSED)

NO (CANCEL. FEE WILL NOT BE ASSESSED).  (Brett Sand Affidavit, Exhibit G, ¶ 4-5).

13.    Plaintiff understood that if she continued with the transaction, she would be charged a $2.00 fee. (Flores Dep. Ex. B, p. 37, ln. 4-7).

14.    Plaintiff also understood that upon seeing the on-screen notice, she was at liberty to cancel the transaction prior to being charged any fee. (Flores Dep. Ex. B, p. 38, ln. 2-9).

15.    Plaintiff knowingly and willingly accepted the fee and completed the transaction despite having the option to terminate the transaction before being charged any fee. (Flores Dep. Ex. B, p. 38, ln. 11-14).

16.    Upon completion of the transaction, Plaintiff received a receipt indicating a $2.00 charge.  (Flores Dep. Ex. B, p. 38, ln. 22-24, p. 39, ln. 1-6).

17.    Plaintiff never contacted the Bank to object for being charged the fee because she knowingly and willingly accepted the $2.00 fee and proceeded with the transaction after seeing and reading the on-screen notice. (Flores Dep. Ex. B, p. 39, ln. 7-22).

18.    In September of 2004, the Bank commenced the renovation project of the Bank building located at 100 West North Avenue, Chicago, 60610.  (James A. Hubbard Deposition "Hubbard Dep.", Exhibit C, p. 27, ln. 12-18).

19.    In 2005, Lawrence J. Ligas (hereinafter "Ligas") was hired as a general contarctor to oversee the renovation project. (Hubbard Dep. Ex. C, p. 28, ln. 6-17, p. 34, ln. 2-9; Lawrence J. Ligas Affidavit, "Ligas Aff.," Exhibit G, ¶ 2-3).

20.    During the renovation project, the Bank relocated the ATM from the lobby to the outside of the building. (Hubbard Dep. Ex. C, p. 28, ln. 6-17, p. 34, ln. 2-9; Ligas Aff., Ex. G., ¶ 2-3).

21. The Bank acquired a new ATM to be installed on the outside of the building. (Hubbard Dep. Ex. C, p. 34, 10-11).

22. Ligas employed carpenter Matviekas Mindangas (hereinafter "Mindangas") to conduct the installation of the new ATM. (Lawrence J. Ligas Deposition "Ligas Dep.", Exhibit D, p. 29, ln. 7-15; Hubbard Dep. Ex. C, p. 35, ln. 22-24).

23. Mindangas and Ligas were the only individuals working on the installation of the ATM. (Ligas Dep. Ex. D, p. 32, ln. 9-13, p. 33, ln. 9-17).

24. The ATM finally became operable and active around January or February of 2006. (Ligas Dep. Ex. D, p. 19-23).

25. After the completion of the installation, but before the activation of the ATM, pursuant to James Hubbard's request Ligas removed the fee-notice signs (hereinafter "old fee-notices") from the ATM previously located in the lobby of the Bank and attached them to the new ATM. (Ligas Dep. Ex. D, p. 79, ln. 21-24, p. 80, ln. 6-24, p. 81, ln. 1-24, p. 82, ln. 1-24, p. 84, ln. 1-24, p. 94, ln. 4-12; Hubbard Dep. Ex. C, p. 71, ln. 9, 16-17).

26. Ligas attached the old fee-notices to the new ATM using a two-sided weather-proof adhesion tape. (Ligas Dep. Ex. D, p. 84, ln. 22-24; Ligas Aff., Ex. G, ¶ 4-5).

27. The adhesion tape was strong enough to hold the signs attached to the ATM. (Ligas Dep. Ex. D, p. 85, ln. 1-20; Ligas Aff., Ex. G, ¶ 4).

28. Ligas and Mindangas initially attached the fee-notices at the bottom of the black ATM frame. (Ligas Dep. Ex. D, p. 128, ln. 13-19; Ligas Aff., Ex. G, ¶ 4).

29. After Ligas and Mindangas finished attaching the old-fee notices, James Hubbard inspected the ATM and requested that they remove the fee-notices from the frame and attach said notices to the ATM steel structure in order to make them more visible for the ATM

customers. (Ligas Dep. Ex. D, p. 94, ln. 13-17, p. 131, ln. 10-13; Hubbard Dep. Ex. C, p. 77, ln. 15-23).

30. Around July 2006, when Ligas conducted the final inspection at the Bank the fee-notices were still attached to the ATM. (Ligas Dep. Ex. D, p. 158, ln. 24, p. 159, ln. 1).

31. Around December 2006, when Kimberly Cole began her employment with the Bank the fee-notices were affixed on the ATM. (Kimberly Cole Affidavit, "Cole Aff.," Exhibit F, ¶ 2-3).

32. One of the notices informed non-Bank customers that they would be assessed a fee for using the ATM. (Cole Aff., Ex. F, ¶ 4).

33. The Bank did not find out about the missing ATM fee-notice until the filing of the instant lawsuit on November 12, 2007. (Hubbard Dep. Ex. C, p. 15, ln. 3-20, p. 21, ln. 6-9; Kimberly Cole Deposition "Cole Dep.", Exhibit E, p. 36, ln. 11-24, p. 37, ln. 1-3, p. 43, ln. 7-24, p. 45, ln. 5-12).

34. The Bank was vandalized on multiple occasions some time before August 2, 2007, and the filing of the lawsuit. (Cole Dep. Ex. E, p. 106, ln. 7-23).

35. On those occasions, vandals damaged the windows of the Bank and the ATM. (Cole Dep. Ex. E, p. 106, ln. 11-13; Ligas Dep. Ex. C, p. 45, ln. 11-12, p. 92, ln. 10-12, p. 148, ln. 5-23, p. 149, ln. 7-24).

36. No employee or agent of Diamond Bank removed the fee-notices from the ATM. (Cole Aff., Ex. F, ¶ 5; Ligas Aff., Ex. G, ¶ 6-7).

37. As soon as the Bank found out that the fee-notices were missing, immediately it took the necessary steps to remedy the situation. (Hubbard Dep. Ex. C, p. 21, ln. 6-9, Cole Dep. Ex. E, p. 36, ln. 11-24).

                Respectfully Submitted,

                DIAMOND BANK, FSB, Defendant,

Dated: September 15, 2008     By:   <u>/s/ Nathaniel R. Sinn</u>
                                                             One of its attorneys

Mark D. Belongia, Atty # 6269391
mbelongia@belongiashapiro.com
Kelly A. Saindon, Atty # # 6244793
ksaindon@belongiashapiro.com
Nathaniel R. Sinn, Atty # 6284004
nsinn@belongiashapiro.com
Belongia & Shapiro, LLP
53 W. Jackson Blvd., Suite 315
Chicago, Illinois 60604
P: 312.662.1030, F: 312.662.1040