10.    Client hereby indemnifies, holds harmless and agrees to defend A & R from any and all claims, actions, losses and expenses, including legal fees and expenses, A & R may incur or have threatened against it by any person or entity other than Client arising out of this agreement or resulting from A & R providing any services contemplated hereby whether such event was done or caused intentionally, recklessly, or through inadvertence, accident, oversight, neglect or otherwise.

11.    This Agreement is not assignable, in whole or part, by Client without the written consent of A & R. A & R may assign its rights and delegate the performance of any obligation hereunder without consent of Client. Any attempted assignment not made in conformity with this paragraph shall be void. This Agreement in its entirety shall be binding upon the successors and assigns of the parties. This agreement contains the entire, final agreement of the parties and no other statements or promises shall be of any force or effect.

12.    Client shall not hire directly or indirectly any employee of A & R for its own employment during the term or any renewal term of this Agreement and for a period of one (1) year after the termination of this Agreement. Hiring any existing or former A & R employee who previously worked at the Premises by any person or entity to work at the Premises during the period set forth in this paragraph shall constitute "indirect" hiring of such person by Client in violation hereof. In the event of breach of this provision, Client shall pay to A & R Five Thousand Dollars ($5,000.00) as liquidated damages, and not as a penalty.

13.    This Agreement is not binding unless countersigned by an Authorized Officer of A & R. If such approval is not obtained, the only liability of A & R shall be to return to Client the amount, if any, paid upon the signing of this Agreement by A & R's Sales Representative, less the value of any services actually rendered to Client. A & R shall not be liable for any delays or absence of service due to Acts of God, strikes or other events beyond its control. The prevailing party shall reimburse the other party for all fees, costs or expenses, including legal fees, A & R incurs in enforcing its rights or Client's obligations hereunder. This Agreement shall be governed and interpreted under the laws of the State of Illinois and any disputes related to this Agreement must be brought in the courts of the State of Illinois located in Cook County, which courts the parties agree shall be deemed proper for both jurisdiction and venue.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

A & R Security Services, Inc.                              (Client) DIAMOND BANK, FSB

By _____                    By _____  Execut VP

Date: ___3/31/86___                              Date: ___3/24/2006___

A & R SECURITY SERVICES, INC.
SECURITY GUARD SERVICE AGREEMENT

GREEMENT dated October 20, 2005 between A & R SECURITY SERVICES, INC. (herein called "A & R"), and Diamond Bank (herein called "Client"). For the considerations specified below, and on any riders attached, the parties mutually agree:

1.      A & R shall furnish security guard patrol service at 100 West North Ave. Chicago, Illinois 60610 (hereinafter called the "Premises") commencing November 7, 2005. The specific number, principal posts and hours of duty of security guards shall be determined by Client in writing. Client assumes complete responsibility for its selection of the number, principal posts and hours of duty of security guards. Client may alter the specific number, principal posts and hours of duty of security guards at anytime upon one (1) business day prior notice to A & R; however, A & R may elect to deem any alternation reducing the number of guards or total hours per week below the amount prevailing at inception of this Agreement as a termination of the Agreement by Client.

2.      For services hereunder, Client shall pay A & R at a straight billing rate of 23.15; overtime billing rate of 33.57; and a holiday billing rate of 44.56; per person, per hour, payable net payable net on receipt of invoice. Client shall be invoiced weekly. If payment is not made within fifteen (15) days after the date of invoice, a 1 3/4 % charge will be assessed against the amount due for each month said amount remains owing (15 % per annum). A & R may increase the rate charged for services upon giving Client at least thirty (30) days prior written notice. If it is unwilling to pay such increase, Client may terminate the unexpired term of this Agreement by notifying A & R in writing fifteen (15) days prior to the otherwise effective date of the increase. Client shall immediately pay all charges for services rendered through termination date.

3.      The term of this Agreement shall commence on the date stated in paragraph 1 and, except as otherwise provided herein, remain in force and effect for a period of two (2) years after the date the term commences. Either party may elect not to renew the Agreement for subsequent 1 year periods sending written notice of termination, by certified or registered mail or by hand delivery to the other party at least thirty (30) days prior to the end of the initial period of the renewal period then in effect. Client shall immediately pay all charges for services rendered through termination date.

4.      A & R shall furnish uniformed security guards. All equipment installed or placed in, on, or about the Premises by A & R shall remain the property of A & R, and A & R shall, at all times during and after the term of the Agreement, have the sole and exclusive right to tall, maintain, replace and remove same.

5.      The security guards will be A & R's employees. A & R will pay all salaries and expenses of its employees, withhold necessary Federal, State, and Social Security Taxes and pay any Federal and State Unemployment Taxes or similar taxes related to its employees.

6.      A & R shall maintain the following types insurance: (a) Worker's Compensation Insurance covering persons employed by A & R engaged in the performance of the work hereunder; (b) General Liability Insurance in the name of A & R, including bodily injury, property damages and personal injury for $1,000,000 single limit liability.

7.      A & R will remove from service any security guard who, in the opinion of Client, has engaged in improper conduct or cannot perform the work assigned upon Client's request.

8.      Overtime charges will only apply under strike and emergency conditions and special requests of Client. If a strike or emergency condition arises at the Premises that requires assignment of guards in excess of the normal guard contingent contemplated hereunder or if Client request a specific security guard to work additional hours or days, then Client shall reimburse A & R for all expenses incurred as a result of said strike or emergency condition and special request over and above the expenses incurred in supplying the normal guard contingent hereunder including, but not limited to, additional expenses incurred as a result of A & R's obligation to pay the security guard's overtime pay. Client agrees to pay **double** the then prevailing hourly charge hereunder per person hour worked on all holidays: New Year's Day, Martin Luther King Jr. Day, Memorial Day, Independence Day, Labor Day, Thanksgiving , Christmas Eve , Christmas and New Year's Eve.

9.      It is agreed that A & R is not an insurer, that insurance shall be obtained by Client, if any is desired, that the sums payable hereunder by Client are based upon the value of services offered and the scope of liability undertaken and that such terms are not related to the value of property belonging to Client or others located on the Premises. Client indemnifies and agrees to protect A & R against any claims for damages or losses caused or arising from, in whole or in part, hazards located on the Premises or from Client's property and operations, or from or to the property of any third party. Client shall comply with OSHA Hazard Communication Standards, make available to A & R all terial Safety Data Sheets and advise A & R of any precautionary measures that need to be taken to protect A & R personnel on the premises.

Cole Dep DPR000208

10.     Client hereby indemnifies, holds harmless and agrees to defend A & R from any and all claims, actions, losses and expenses, including legal fees and expenses, A & R may incur or have threatened against it by any person or entity other than Client arising out of this agreement or resulting from A & R providing any services contemplated hereby whether such event was done or caused intentionally, recklessly, or through inadvertence, accident, oversight, neglect or otherwise.

11.     This Agreement is not assignable, in whole or part, by Client without the written consent of A & R.  A & R may assign its rights and delegate the performance of any obligation hereunder without consent of Client.  Any attempted assignment not made in conformity with this paragraph shall be void.  This Agreement in its entirety shall be binding upon the successors and assigns of the parties.  This agreement contains the entire, final agreement of the parties and no other statements or promises shall be of any force or effect.

12.     Client shall not hire directly or indirectly any employee of A & R for its own employment during the term or any renewal term of this Agreement and for a period of one (1) year after the termination of this Agreement.  Hiring any existing or former A & R employee who previously worked at the Premises by any person or entity to work at the Premises during the period set forth in this paragraph shall constitute "indirect" hiring of such person by Client in violation hereof.  In the event of breach of this provision, Client shall pay to A & R Five Thousand Dollars ($5,000.00) as liquidated damages, and not as a penalty.

13.     This Agreement is not binding unless countersigned by an Authorized Officer of A & R.  If such approval is not obtained, the only liability of A & R shall be to return to Client the amount, if any, paid upon the signing of this Agreement by A & R's Sales Representative, less the value of any services actually rendered to Client.  A & R shall not be liable for any delays or absence of service due to Acts of God, strikes or other events beyond its control.  The prevailing party shall reimburse the other party for all fees, costs or expenses, including legal fees, A & R incurs in enforcing its rights or Client's obligations hereunder.  This Agreement shall be governed and interpreted under the laws of the State of Illinois and any disputes related to this Agreement must be brought in the courts of the State of Illinois located in Cook County, which courts the parties agree shall be deemed proper for both jurisdiction and venue.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

A & R Security Services, Inc.

By _____

Date: _____

(Client) _DIAMOND BANK, FSB_

By _____

Date: __3/15/06__

A. & R. SECURITY SERVICES, INC.
SECURITY GUARD SERVICE AGREEMENT

GREEMENT dated October 20, 2005 between A & R SECURITY SERVICES, INC. (herein called "A & R"), and Diamond Bank (herein called "Client"). For the considerations specified below, and on any riders attached, the parties mutually agree:

1.    A & R shall furnish security guard patrol service at 100 West North Ave. Chicago, Illinois 60610 (hereinafter called the "Premises") commencing November 7, 2005. The specific number, principal posts and hours of duty of security guards shall be determined by Client in writing. Client assumes complete responsibility for its selection of the number, principal posts and hours of duty of security guards. Client may alter the specific number, principal posts and hours of duty of security guards at anytime upon one (1) business day prior notice to A & R; however, A & R may elect to deem any alternation reducing the number of guards or total hours per week below the amount prevailing at inception of this Agreement as a termination of the Agreement by Client.

2.    For services hereunder, Client shall pay A & R at a straight billing rate of 23.15; overtime billing rate of 33.57; and a holiday billing rate of 44.56; per person, per hour, payable net payable net on receipt of invoice.   Client shall be invoiced weekly. If payment is not made within fifteen (15) days after the date of invoice, a 1 3/4 % charge will be assessed against the amount due for each month said amount remains owing (15 % per annum). A & R may increase the rate charged for services upon giving Client at least thirty (30) days prior written notice. If it is unwilling to pay such increase, Client may terminate the unexpired term of this Agreement by notifying A & R in writing fifteen (15) days prior to the otherwise effective date of the increase. Client shall immediately pay all charges for services rendered through termination date.

3.    The term of this Agreement shall commence on the date stated in paragraph 1 and, except as otherwise provided herein, remain in force and effect for a period of two (2) years after the date the term commences. Either party may elect not to renew the Agreement for subsequent 1 year periods sending written notice of termination, by certified or registered mail or by hand delivery to the other party at least thirty (30) days prior to the end of the initial period of the renewal period then in effect. Client shall immediately pay all charges for services rendered through termination date.

4.    A & R shall furnish uniformed security guards. All equipment installed or placed in, on, or about the Premises by A & R shall remain the property of A & R , and A & R shall, at all times during and after the term of the Agreement, have the sole and exclusive right to install, maintain, replace and remove same.

5.    The security guards will be A & R's employees. A & R will pay all salaries and expenses of its employees, withhold necessary Federal, State, and Social Security Taxes and pay any Federal and State Unemployment Taxes or similar taxes related to its employees.

6.    A & R shall maintain the following types insurance: (a) Worker's Compensation Insurance covering persons employed by A & R engaged in the performance of the work hereunder; (b) General Liability Insurance in the name of A & R, including bodily injury, property damages and personal injury for $1,000,000 single limit liability.

7.    A & R will remove from service any security guard who, in the opinion of Client, has engaged in improper conduct or cannot perform the work assigned upon Client's request.

8.    Overtime charges will only apply under strike and emergency conditions and special requests of Client. If a strike or emergency condition arises at the Premises that requires assignment of guards in excess of the normal guard contingent contemplated hereunder or if Client request a specific security guard to work additional hours or days, then Client shall reimburse A & R for all expenses incurred as a result of said strike or emergency condition and special request over and above the expenses incurred in supplying the normal guard contingent hereunder including, but not limited to, additional expenses incurred as a result of A & R's obligation to pay the security guard's overtime pay.  Client agrees to pay **double** the then prevailing hourly charge hereunder per person hour worked on all holidays: New Year's Day, Martin Luther King Jr. Day, Memorial Day, Independence Day, Labor Day, Thanksgiving , Christmas Eve , Christmas and New Year's Eve.

9.    It is agreed that A & R is not an insurer, that insurance shall be obtained by Client, if any is desired, that the sums payable hereunder by Client are based upon the value of services offered and the scope of liability undertaken and that such terms are not related to the value of property belonging to Client or others located on the Premises. Client indemnifies and agrees to protect A & R against any claims for damages or losses caused or arising from, in whole or in part, hazards located on the Premises or from Client's property and operations, or from or to the property of any third party. Client shall comply with OSHA Hazard Communication Standards, make available to A & R all Material Safety Data Sheets and advise A & R of any precautionary measures that need to be taken to protect A & R personnel on the premises.

10.     Client hereby indemnifies, holds harmless and agrees to defend A & R from any and all claims, actions, losses and expenses, including legal fees and expenses, A & R may incur or have threatened against it by any person or entity other than Client arising out of this agreement or resulting from A & R providing any services contemplated hereby whether such event was done or caused intentionally, recklessly, or through inadvertence, accident, oversight, neglect or otherwise.

11.     This Agreement is not assignable, in whole or part, by Client without the written consent of A & R. A & R may assign its rights and delegate the performance of any obligation hereunder without consent of Client. Any attempted assignment not made in conformity with this paragraph shall be void. This Agreement in its entirety shall be binding upon the successors and assigns of the parties. This agreement contains the entire, final agreement of the parties and no other statements or promises shall be of any force or effect.

12.     Client shall not hire directly or indirectly any employee of A & R for its own employment during the term or any renewal term of this Agreement and for a period of one (1) year after the termination of this Agreement. Hiring any existing or former A & R employee who previously worked at the Premises by any person or entity to work at the Premises during the period set forth in this paragraph shall constitute "indirect" hiring of such person by Client in violation hereof. In the event of breach of this provision, Client shall pay to A & R Five Thousand Dollars ($5,000.00) as liquidated damages, and not as a penalty.

13.     This Agreement is not binding unless countersigned by an Authorized Officer of A & R. If such approval is not obtained, the only liability of A & R shall be to return to Client the amount, if any, paid upon the signing of this Agreement by A & R's Sales Representative, less the value of any services actually rendered to Client. A & R shall not be liable for any delays or absence of service due to Acts of God, strikes or other events beyond its control. The prevailing party shall reimburse the other party for all fees, costs or expenses, including legal fees, A & R incurs in enforcing its rights or Client's obligations hereunder. This Agreement shall be governed and interpreted under the laws of the State of Illinois and any disputes related to this Agreement must be brought in the courts of the State of Illinois located in Cook County, which courts the parties agree shall be deemed proper for both jurisdiction and venue.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

A & R Security Services, Inc.

_____

Date: _____

(Client) DIAMOND BANK, FSB

By _____

Date: 3/29/2006

# A & R SECURITY SERVICES, INC.
## SECURITY GUARD SERVICE AGREEMENT

THIS AGREEMENT made this ___21st___ day of ___November___, 19_97_,

by and between A & R SECURITY SERVICES, INC. (hereinafter called "A & R"), and ___North Federal Savings Bank___

(hereinafter called the "Client"),

WITNESSETH: That for the considerations hereinafter specified below, and on any riders hereto attached the parties do, for themselves, their successors and assigns mutually agree:

1. A & R shall furnish security guard service at ___100 W. North Avenue___

(hereinafter collectively called the "Premises"). The specific number, principal posts and hours of duty of the security guards shall be determined by the Client subject to the approval of A & R.

2. For the services hereunder, the Client will pay A & R a rate of $ ___**___ ** St. Time $13.43   O.T. $18.72  Holiday $24._ per man per hour, payable not on receipt of invoice. It is further agreed that if payment is not made within fifteen (15) working days of the date of invoice, a 1-3/4% charge assessed against the amount due will be added for each month said amount remains owing (21% per annum). A & R shall have the right to increase the rate charged upon giving Client written notice of said increase thirty (30) days prior to the effective date of such increase. If Client is unwilling to pay such increase, Client may terminate this Agreement by notifying A & R in writing fifteen (15) days prior to the otherwise effective date of the increase, and by paying all accrued charges for services rendered to the date of such increase. Any advance payment made by Client for service to be supplied subsequent to the date of such termination shall be refunded to Client.

3. The term of this Agreement shall commence on ___Jan. 5, 1998___ and, except as otherwise provided herein, this Agreement shall remain in force and effect for a period of one (1) year. ~~This Agreement shall automatically renew itself~~ for ~~successive~~ ~~one (1) year~~ ~~upon each anniversary~~. Either party may elect to terminate this Agreement by sending written notice of termination by certified or registered mail or by hand delivery to the other party at least thirty (30) days prior to the ___ date ___ of ~~Term~~ination. ~~Notice shall not be given by certified or registered mail or hand delivery.~~

Upon termination Client agrees to immediately pay any unpaid balance for services rendered.

4. A & R shall furnish security guards completely outfitted with uniforms. All equipment installed or placed in, on, or about the Premises by A & R in carrying out its obligations under this Agreement shall be and remain the property of A & R, and A & R shall, at all time during and after the term of this Agreement, have the sole and exclusive right to install, maintain, replace, and remove same.

5. The security guards will be employees of A & R and A & R will pay all salaries and expenses of said employees, and all Federal, State, Social Security Taxes, Federal and State Unemployment Taxes and any similar taxes related to such employees.

6. A & R agrees to furnish and keep in full force the following insurance during the term of this contract:

(a) Workers' Compensation Insurance covering all persons employed by A & R engaged in the performance of the work hereunder.

(b) General Liability Insurance in the name of A & R Security Services, Inc. including bodily injury, property damages and personal injury for $1,000,000 single limit liability.

7. The conduct of the security guards is to be guided by A & R's Standard Rules, a copy of which will be supplied to Client upon request, and such other special written instructions applicable to services as may be issued by the Client from time to time and approved by A & R.

8. A & R agrees that upon request by the Client, it will remove from service hereunder any security guard who, in the opinion of the Client, is guilty of improper conduct or is not qualified or needed to perform the work assigned to him.

9. Hourly charges to the Client are to be made without regard to any overtime charges which may be paid by A & R to its employees, with the exception of the following: a) If a strike and emergency conditions and special requests of Client described below. It is further agreed by and between A & R and the Client that a) If a strike condition or an emergency situation arises at the Premises that would require the assignment of guards in excess of the normal guard contingent contemplated hereunder or b) If Client requests a specific security guard to work additional hours or days and A & R agrees to supply such excess guard hereunder or to grant Client's request for a specific security guard, the Client shall reimburse A & R for all expenses incurred as a result of said condition as requested over and above the expenses incurred as a result of A & R's obligation to pay the security guard's overtime pay. Client further agrees that it will pay double the then prevailing hourly charge hereunder per man hour worked on all holidays: New Year's Day, Martin Luther King Jr. Day, Memorial Day, July 4th, Labor Day, Thanksgiving, Christmas Eve, Christmas, & New Year's Eve.

10. It is understood that A & R is not an insurer, that insurance shall be obtained by Client, if any is desired; that the sums payable hereunder to A & R by the Client are based upon the value of services offered and the ~~scope~~ of liability undertaken and such terms are not r~~__~~ to the value of property belonging to the Client or to others located on the Cli~~__~~ ~~P~~remises. The Client shall not seek indemnity by ~~a~~greement from A & R against any damages or losses caused by hazards to the Clie~~__~~ ~~p~~roperty, or to the property of any third party.

11.  A & R ~~_____~~

Cole Dep DPR000212

hereunder to A & R by the Client, are based upon the value of services offered and the value of property belonging to the Client or to others located on the Client's premises. The Client shall not seek indemnity by this Agreement from A & R against any damages or losses caused by hazards to the Client's property, or to the property of any third party.

11. A & R MAKES NO WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE SERVICES IT FURNISHES UNDER THIS AGREEMENT. The Client agrees that A & R shall not be liable for any losses or damages, irrespective of origin, to persons or property, whether directly or indirectly caused by A & R's performance or non-performance of obligations imposed by this Agreement or by negligent acts or omissions of A & R, its agents or employees. The Client does hereby waive and release any rights of recovery against A & R that it may have hereunder. HOWEVER, IF NOTWITHSTANDING THIS AGREEMENT A & R SHOULD BE FOUND LIABLE FOR ANY LOSS OR DAMAGES ATTRIBUTABLE TO FAILURE OF SERVICES IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO A SUM EQUAL TO TEN PERCENT (10%) OF THE ANNUAL CHARGE HEREUNDER, OR $250.00, WHICHEVER IS LESSER AS LIQUI-DATED DAMAGES, AND NOT AS A PENALTY. If Client desires A & R to assume greater liability for the performance of its services hereunder, a choice is hereby given of obtaining full or limited liability by paying an additional amount proportioned to the responsibility, and an additional rider shall be attached to this Agreement, setting forth the additional liability of A & R and additional charge. The rider and additional obligation shall in no way be interpreted to hold A & R as an insurer.

12. If any person, not a party to this Agreement shall make any claim or file any lawsuit against A & R in any way related to A & R's negligent acts or omissions of A & R, its agents, or employees, then A & R hereby agrees to indemnify, defend and hold A & R harmless from any and all such claims and lawsuits including the payment of all damages, expenses, costs and attorneys' fees except as covered by those insurance policies mentioned in Paragraph 6.

13. This Agreement is not assignable, in whole or part, by Client without the written consent of A & R. Any attempted assignment not made in conformity with this paragraph shall be wholly void and totally ineffective for all purposes. Client hereby agrees that A & R has the right to assign its rights herein and to delegate the performance of any obligation owed Client under this Agreement.

14. The Client shall not hire directly or indirectly any employee of A & R for its own employment during the term of this Agreement, or for a period of two (2) years after the termination of this Agreement. In the event of breach of this provision, the Client shall pay to A & R the sum of Two Thousand Dollars ($2,000.00) as liquidated damages, and not as a penalty.

15. This Agreement is not binding unless countersigned by an Authorized Officer of A & R. If such approval is not obtained, the only liability of A & R shall be to return to Client the amount, if any, paid upon the signing of this Agreement by A & R's Sales Representative, less the value of any services actually rendered to Client.

16. A & R shall not be liable for any delays in service due to any event beyond the control of A & R and shall not be required to furnish service to Client while any such interruption shall continue.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

A & R SECURITY SERVICES, INC.

| | Credit | | Opns | |
|---|---|---|---|---|

By _____
        Sales Representative

Approved _____
        A & R Authorized Officer

_____
        Witness

_____ CLIENT
NORTH FEDERAL SAVINGS BANK

By _____

Title EXECUTIVE V.P. - SECRETARY

Cole Dep DPR000213

IN THE UNITED STATES DISTRIC COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CARMEN FLORES, individually and on behalf
of all others similarly situated,

        Plaintiff,

     V.

DIAMOND BANK, FSB,

        Defendant.

Case No. 07 C 6403

Judge Hibbler

Magistrate Judge Valdez

## AFFIDAVIT OF KNOWLEDGE

I, Kimberly Cole, first being sworn on oath, deposes and says that if sworn as a witness I could competently testify to the matters set forth herein from my own personal knowledge:

1.    I am the Senior Vice President and Chief Operating Officer of the Defendant Diamond Bank, FSB ("Bank").

2.    I began my employment with the Bank on December 13, 2006.

3.    It is my belief and to the best of my knowledge, when I began my employment at the Bank, there were two metal signs ("signs") affixed on the ATM surround.

4.    One of these signs informed non-bank customers that they would be assessed a fee for using the ATM, and the other sign informed consumers that funds deposited at that ATM machine might not be available for immediate withdrawal.

5.    No employee or agent of Diamond Bank removed these signs from the ATM surround.

6.    I have no knowledge as to how the two metal signs affixed to the ATM surround were removed, or who removed them.

FURTHER, AFFIANT SAYETH NOT.

Kimberly Cole

Δ π EXHIBIT _B_

Deponent _Cole_

Date _6-18-08_ Rptr. _JM_

WWW.DEPOBOOK.COM

Subscribed and Sworn to before
me this 6 day of February , 2008.

_Notary Public_

OFFICIAL SEAL
BARBARA I BOLDT
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/05/11